Robert L. Weigel (RW 0163)
Howard S. Hogan (HH 7995)
Jennifer C. Halter (JH 7032)
Anne M. Coyle (AC 3158)
Kimberly Lindsay (KL 5776)
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,*
*Balenciaga America, Inc., Balenciaga S.A.,*
*Bottega Veneta International S.a.r.l., Bottega Veneta, Inc.,*
*Luxury Goods International (L.G.I.) S.A., and*
*Yves Saint Laurent America, Inc.*

JUDGE SULLIVAN

------------------------------------------------------------x
                               :

GUCCI AMERICA, INC., BALENCIAGA      :
AMERICA, INC., BALENCIAGA S.A., BOTTEGA  :
VENETA INTERNATIONAL S.A.R.L.,     :
BOTTEGA VENETA INC., LUXURY GOODS   :
INTERNATIONAL (L.G.I.) S.A. and YVES SAINT  :
LAURENT AMERICA, INC.          :

          Plaintiffs,              :

    -against-               :

WEIXING LI and LIJUN XU a/k/a JACK LONDON, :
all doing business as REDTAGPARTY,     :
MYLUXURYBAGS.COM,          :
XPRESSDESIGNERS.COM,        :
XPRESSDESIGNER.NET, and DESIGNER     :
HANDBAGS; ABC COMPANIES;       :
and JOHN DOES,            :

         Defendants.         :

------------------------------------------------------------x

10 CIV 4974

**COMPLAINT**



Plaintiffs Gucci America, Inc. ("Gucci"), Balenciaga America, Inc. and Balenciaga, S.A.

(together "Balenciaga"), Bottega Veneta International S.a.r.l. and Bottega Veneta, Inc. (together

"Bottega Veneta"), Luxury Goods International (L.G.I.) S.A. and Yves Saint Laurent America,

Inc. (together "YSL") (collectively, "Plaintiffs"), by their attorneys, Gibson, Dunn & Crutcher, LLP, for their complaint against Defendants Weixing Li and Lijun Xu a/k/a Jack London, all doing business as Redtagparty, Myluxurybags.com, Xpressdesigners.com, Xpressdesigner.net, and Designer Handbags; and ABC Companies; and John Does (collectively, "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Consumers instantly recognize the various trademarks used to identify the luxury items merchandised or manufactured by or under licenses from Gucci, Balenciaga, Bottega Veneta and YSL (collectively, the "Plaintiffs' Marks"). For decades, these famous, arbitrary, and fanciful Plaintiffs' Marks have received enormous exposure in the marketplace. Over the years, millions of consumers have been exposed to Plaintiffs' Marks through extensive advertising campaigns, in mainstream and fashion magazines and other periodicals, as depicted on television and in motion pictures, on the Internet, and in other forms of unsolicited media coverage. As a result, Plaintiffs' Marks are among the most widely-recognized trademarks in the United States, as well as among the most popular with consumers, which adds enormous value to the authentic products that the bear Plaintiffs' Marks ("Plaintiffs' Products").

2.      Defendants, who have no affiliation with the Plaintiffs, have attempted to capitalize on the popularity of the Plaintiffs' Marks. They manufacture and market counterfeit versions of Plaintiffs' Products (the "Counterfeit Products") in an effort to confuse consumers into believing that Defendants' products are authentic versions of Plaintiffs' Products or to otherwise compete directly with Plaintiffs' Products.

3.      To ensure that consumers make the association between Defendants' Counterfeit Products and the Plaintiffs' Products from which they were copied, Defendants not only copy the

designs, patterns, and color schemes associated with the Plaintiffs, but also expressly identify the Counterfeit Products as "Gucci," "Balenciaga," "Bottega Veneta" and "YSL" products.

4.      Defendants have manufactured and sold their Counterfeit Products without the permission, authorization, or approval of the Plaintiffs.  Their conduct is likely to cause, and has caused, consumers mistakenly to believe that the Counterfeit Products sold and promoted by Defendants either are authentic Plaintiffs' Products; are produced by Defendants under a license, agreement, joint venture or other form of authorization by the Plaintiffs; or are otherwise endorsed by or affiliated with the Plaintiffs, either at the point of sale or when consumers and potential consumers see the Counterfeit Products in use.

5.      For these and other reasons, Defendants have caused, and unless enjoined, will continue to cause, Plaintiffs irreparable harm and an incalculable loss of goodwill and damages.

## **PARTIES**

6.      Gucci is organized and exists under the laws of New York, with its principal place of business located at 685 Fifth Avenue, New York, New York 10022.  Gucci is the sole and exclusive distributor in the United States of items bearing the Gucci Marks (as defined herein) on leather goods, clothing, jewelry, accessories, home products, and related items (collectively, the "Gucci Products").

7.      Balenciaga, S.A. is organized and exists under the laws of France, with its principal place of business in Paris, France.  Balenciaga, S.A. is a corporate affiliate of Gucci Group, NV, which is organized and exists under the laws of the Netherlands.  Balenciaga America, Inc. is organized and existing under the laws of Delaware, with its principal place of business located at 50 Hartz Way, Secaucus, New Jersey 07094, and a New York office located at 542 W. 22nd Street, NY, NY 10011.  Balenciaga, S.A. and Balenciaga America, Inc. are

referred to collectively herein as "Balenciaga." Balenciaga and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the Balenciaga Marks (as defined herein) on leather goods, apparel, fragrances, jewelry, accessories, home products and related items (collectively, the "Balenciaga Products").

8.     Bottega Veneta International S.a.r.l. is organized and exits under the laws of Luxembourg with its principal address at 12, Rue Leon Thyes, L-2636 Luxembourg, Luxembourg. Bottega Veneta Inc. is organized and exists under the laws of New York, with its principal place of business located at 50 Hartz Way, Secaucus, New Jersey 07094. Bottega Veneta International S.a.r.l. and Bottega Veneta Inc. are referred to herein collectively as "Bottega Veneta." Bottega Veneta and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the Bottega Veneta marks (as defined herein) on leather goods, apparel, jewelry, accessories, home products, and related items (collectively, the "Bottega Veneta Products").

9.     Luxury Goods International (L.G.I.) S.A. is organized and exists under the laws of Switzerland with its principal place of business at Via Industria 19, 6814 Cadempino Switzerland. Luxury Goods International (L.G.I.) S.A. is the owner of the Yves Saint Laurent trademarks. Yves Saint Laurent America, Inc. is organized and exists under the laws of New York, with its principal place of business located at 3 East 57th Street, New York, New York 10022. Luxury Goods International (L.G.I.) S.A. and Yves Saint Laurent America, Inc. are referred to herein collectively as "YSL." YSL and its licensees and affiliates are the sole and exclusive distributors in the United States of items bearing the YSL marks (as defined herein) on leather goods, apparel, jewelry, accessories, home products, and related items (collectively, the "YSL Products").

10.     Upon information and belief, Lijun Xu a/k/a Jack London resides at 9155 Judicial Drive, Apt. 5120, San Diego, California 92122.  Upon information and belief, Lijun Xu a/k/a Jack London operates the fully interactive website Myluxurybags.com and is currently doing business as Myluxurybags.com from a business address at 8690 Aero Drive Suite 115-231, San Diego, California 92123-1886 and/or his personal address in San Diego.  Upon information and belief, Lijun Xu a/k/a Jack London is also doing business as Redtagparty, Xpressdesigners.com, Xpressdeisgner.net and Designer Handbags.

11.     Upon information and belief, Weixing Li resides at 3372 Daley Center Drive, San Diego, California 92123.  Upon information and belief, Weixing Li operates the fully interactive website Myluxurybags.com and is currently doing business as Myluxurybags.com from a business address at 8690 Aero Drive Suite 115-231, San Diego, California 92123-1886 and/or his personal address in San Diego.  Upon information and belief, Weixing Li is also doing business as Redtagparty, Xpressdesigners.com, Xpressdeisgner.net and Designer Handbags.

12.     Upon information and belief, ABC Companies are companies engaged in the manufacture, distribution, sale, and advertisement of Counterfeit Products, but whose identity and number are presently unknown.

13.     Upon information and belief, John Does are individuals who are consciously engaged in directing, controlling, ratifying, or otherwise participating in the manufacture, distribution, sale, and advertisement of Counterfeit Products, or who consciously and directly benefit financially from the manufacture, distribution, sale, and advertisement of Counterfeit Products, but whose identity and number are presently unknown.

## JURISDICTION AND VENUE

14.     This is an action arising under the Trademark Act of 1946, 15 U.S.C. § 1051, et

seq. (the "Lanham Act") and under the laws of the State of New York.

15.     This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331,

1338(a) and 1338(b).  This Court has supplemental jurisdiction over all other claims asserted

herein under 28 U.S.C. § 1367(a).  Personal jurisdiction is proper over all Defendants pursuant to

N.Y.C.P.L.R. § 302(a) because all Defendants have transacted and done business in New York,

have solicited consumers in this District, have entered into agreements with consumers and

businesses within this District, and have offered to sell and have sold Counterfeit Products to

consumers within this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to these claims arose in this District.

## PLAINTIFFS' BUSINESS AND MARKS

17.     The Gucci, Balenciaga, Bottega Veneta and YSL brands of luxury products are

enormously popular with the general public.  The Plaintiffs' advertising, promotional, and

marketing efforts have resulted in widespread and favorable public acceptance and recognition of

Gucci, Balenciaga, Bottega Veneta and YSL brands of luxury products.  As a result, the

Plaintiffs' Marks have become famous and highly valuable marks, possessing strong secondary

meaning among consumers.

18.     Gucci is the owner of the right, title and interest in and to, inter alia, the following

federally registered trademarks and/or service marks:

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| GUCCI | 876,292<br>1,168,477<br>1,200,991<br>1,321,864<br>1,340,599 | 09/09/1969<br>09/08/1981<br>07/13/1982<br>02/26/1985<br>06/11/1985 |
| GUCCI  | 3,061,918 | 02/28/2006 |
| NON-INTERLOCKING GG MONOGRAM  | 1,106,722<br>1,107,311<br>3,378,755 | 11/21/1978<br>11/28/1978<br>02/05/2008 |
| GUCCI CREST  | 1,097,483<br>1,097,555 | 07/25/1978<br>07/25/1978 |
| GREEN-RED-GREEN STRIPE  | 1,122,780 | 07/24/1979 |

| | | |
|---|---|---|
| INTERLOCKING FACING GG DESIGN  | 1,158,170<br>1,464,522<br>3,376,129 | 06/23/1981<br>11/10/1987<br>01/29/2008 |
| INTERLOCKING GG DESIGN  | 3,039,629<br>3,039,630<br>3,039,631 | 01/10/2006<br>01/10/2006<br>01/10/2006 |
| SQUARE G  | 2,042,805<br>2,234,272 | 03/11/1997<br>03/23/1999 |
| REPEATING GG DESIGN  | 2,680,237<br>3,072,549 | 01/28/2003<br>03/28/2006 |
| REPEATING HORSE-BIT  | 3,274,316 | 08/07/2007 |

| HALF HORSEBIT  | 3,238,962 | 05/08/2007 |
|---|---|---|
| HORSEBIT  | 3,456,239 | 07/01/2008 |
| HORSEBIT  | 3,456,238 | 07/01/2008 |

19.     Annexed hereto as Exhibit 1 are true and correct copies of United States Patent and Trademark Office ("PTO") registration certificates evidencing Gucci's ownership of these trademarks and printouts from the PTO's website setting forth the status of Gucci Marks.  All of the registrations set forth in Exhibit 1 are valid, subsisting, unrevoked, and uncancelled. Additionally, many of these registrations are incontestable.  Gucci also owns common law rights in the above and other marks for use in connection with the Gucci Products.  These registered and common law trademarks are collectively referred to as the "Gucci Marks."

20.     The Gucci Marks are in full force and effect.  Gucci has never abandoned the Gucci Marks, nor has Gucci ever abandoned the goodwill of Gucci's businesses in connection

thereto.  Gucci intends to continue to preserve and maintain its rights with respect to the Gucci Marks.

21.    Balenciaga is the owner of the right, title and interest in and to, inter alia, the following federally registered trademarks and/or service marks:

| Mark | Reg./Serial No. | Date of Registration |
|------|-----------------|----------------------|
| BALENCIAGA | 3,044,207<br>3,344,631 | 01/17/2006<br>11/27/2007 |

22.    Annexed hereto as Exhibit 2 are true and correct copies of PTO registration certificates evidencing Balenciaga's ownership of these trademarks and printouts from the PTO's website setting forth the status of Balenciaga's Marks.  All of the registrations set forth in Exhibit 2 are valid, subsisting, unrevoked, and uncancelled.  Additionally, many of these registrations are incontestable.  Balenciaga also owns common law rights in the above and other marks for use in connection with apparel and handbags, among other goods.  These registered and common law trademarks are collectively referred to as the "Balenciaga Marks."

23.    The Balenciaga Marks are in full force and effect.  Balenciaga has never abandoned the Balenciaga Marks, nor has Balenciaga ever abandoned the goodwill of Balenciaga's businesses in connection thereto.  Balenciaga intends to continue to preserve and maintain its rights with respect to the Balenciaga Marks.

24.    Bottega Veneta is the owner of the right, title and interest in and to, inter alia, the following federally registered trademarks and/or service marks:

| Mark | Reg./Serial No. | Date of Registration |
|------|-----------------|----------------------|
| BOTTEGA VENETA<br><br>BOTTEGA VENETA | 3,454,021 | 06/24/2008 |
| BOTTEGA VENETA – TYPED DRAWING | 1,086,395 | 02/28/1978 |

25.     Annexed hereto as Exhibit 3 are true and correct copies of PTO registration certificates evidencing Bottega Veneta's ownership of these trademarks and printouts from the PTO's website setting forth the status of Bottega Veneta's Marks.  All of the registrations set forth in Exhibit 3 are valid, subsisting, unrevoked, and uncancelled.  Additionally, many of these registrations are incontestable.  Bottega Veneta also owns common law rights in the above and other marks for use in connection with apparel and handbags, among other goods.  These registered and common law trademarks are collectively referred to as the "Bottega Veneta Marks."

26.     The Bottega Veneta Marks are in full force and effect.  Bottega Veneta has never abandoned the Bottega Veneta Marks, nor has Bottega Veneta ever abandoned the goodwill of Bottega Veneta's businesses in connection thereto.  Bottega Veneta intends to continue to preserve and maintain its rights with respect to the Bottega Veneta Marks.

27.     YSL is the owner of the right, title and interest in and to, inter alia, the following federally registered trademarks and/or service marks:

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| YVES SAINT LAURENT  | 1,711,127 | 09/01/1992 |
| YVES SAINT LAURENT  | 1,745,483 | 01/12/1993 |

28.     Annexed hereto as Exhibit 4 are true and correct copies of PTO registration

certificates evidencing YSL's ownership of these trademarks and printouts from the PTO's

website setting forth the status of YSL's Marks.  All of the registrations set forth in Exhibit 4 are

valid, subsisting, unrevoked, and uncancelled.  Additionally, many of these registrations are

incontestable.  YSL also owns common law rights in the above and other marks for use in

connection with apparel and handbags, among other goods.  These registered and common law

trademarks are collectively referred to as the "YSL Marks."

29.     The YSL Marks are in full force and effect.  YSL has never abandoned the YSL

Marks, nor has YSL ever abandoned the goodwill of YSL's businesses in connection thereto.

YSL intends to continue to preserve and maintain its rights with respect to the YSL Marks.

30.     Plaintiffs' Marks have been widely promoted, both in the United States and

throughout the world.  Plaintiffs' Marks are among the world's most famous and widely

recognized, and the public and consumers have come to recognize that Plaintiffs' Products

originate exclusively with Plaintiffs.

31.     Plaintiffs each maintain strict quality control standards for all of Plaintiffs' Products.  Customers, potential customers, and other members of the public and industry associate Plaintiffs' Products with exceptional materials, style, and workmanship.  Many consumers purchase Plaintiffs' Products because of Plaintiffs' reputation for quality.  Plaintiffs' Products are among the most popular luxury products offered for sale in the United States.

32.     Plaintiffs display their respective Gucci, Balenciaga, Bottega Veneta and YSL Products in their respective advertising and promotional materials.  To date, Plaintiffs have spent hundreds of millions of dollars in advertising and promoting Plaintiffs' Marks and Plaintiffs' Products, and Plaintiffs, their predecessors-in-interest and its affiliated companies have enjoyed billions of dollars in sales.

33.     Plaintiffs' continuous and broad use of Plaintiffs' Marks has expanded their renown and enabled Plaintiffs to achieve fame and celebrity in their various product markets.  Plaintiffs' respective reputations are a direct result of their extensive advertising and promotion, and concomitant widespread sales, the care and skill utilized in the manufacture of the Plaintiffs' Products, the uniform high quality of such products sold under, or in connection with the Plaintiffs' Marks, and the public acceptance thereof.  Plaintiffs have created invaluable goodwill throughout the United States and elsewhere by selling products of dependable quality.  Based on the extensive sales of the Plaintiffs' Products and such products' wide popularity, the Plaintiffs' Marks have developed a secondary meaning and significance in the minds of the purchasing public, and the services and products utilizing and/or bearing such marks and names are immediately identified by the purchasing public with Plaintiffs.

## THE COUNTERFEIT PRODUCTS

34.      Defendants, without authorization or license from Plaintiffs, have willfully and intentionally used, reproduced and/or copied Plaintiffs' Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products.  Defendants have shipped at least certain of the Counterfeit Products to New York.

35.      Defendants' website claims that the Counterfeit Products are "guaranteed authentic designer handbags."  For example, shown below is an image of an authentic Gucci "Pelham Shoulder Bag."  The product displayed below bears Gucci's federally registered GUCCI trademark name, non-interlocking "GG" monogram,  repeating "GG" design and horsebit ornamentation.  See Ex. 1 (U.S. Reg. Nos. 876,292, 1,107,311; 3,072,549; 3,456,239).



36.      Set forth below is an image of a Counterfeit Product offered by Defendants for sale to the public through the Myluxurybags.com website.  The handbag displayed below has handles and ornamentation that are designed to appear like the handles and ornamentation on the authentic Gucci handbag shown above.  The overall effect of the design of this Counterfeit Product is not only confusingly similar to the design of the authentic Gucci product shown

above, it also bears an exact copy of Gucci's federally registered trademark name, non-interlocking "GG" monogram, repeating "GG" design and green-red-green stripe.



37.     Similarly, shown below is an image of an authentic Balenciaga "First" handbag. The product displayed below bears Balenciaga's federally registered BALENCIAGA trademark name and Balenciaga design.  See Ex. 2 (U.S. Reg. Nos.; 3,044,207; 3,344,631).



38.     Set forth below is an image of a Counterfeit Product offered by Defendants for sale to the public through the Myluxurybags.com website.  The handbag displayed below is designed to appear like the authentic Balenciaga handbag shown above.  The overall effect of the design of this Counterfeit Product is not only confusingly similar to the design of the authentic Balenciaga product shown above, it also bears an exact copy of Balenciaga's federally registered trademark name and Balenciaga design.



39.     Similarly, shown below is an image of an authentic Bottega Veneta "Veneta Intrecciato" bag.  The product displayed below bears Bottega Veneta's federally registered BOTTEGA VENETA trademark name and standard character mark.  See Ex. 3 (U.S. Reg. Nos. 3,454,021; 1,086,395).



40.     Set forth below is an image of a Counterfeit Product offered by Defendants for sale to the public through the Myluxurybags.com website.  The handbag displayed below is designed to appear like the authentic Bottega Veneta handbag shown above.  The overall effect of the design of this Counterfeit Product is not only confusingly similar to the design of the authentic Bottega Veneta product shown above, it also bears an exact copy of Bottega Veneta's federally registered trademark name.



41.     Finally, shown below is an image of an authentic YSL Large "Muse" Top Handle Bag.  The product displayed below bears YSL's federally registered YVES SAINT LAURENT trademark name, words in stylized form, and typed drawing.  See Ex. 4 (U.S. Reg. Nos. 1,745,483; 901,660; 1,712,998).



42.     Set forth below is an image of a Counterfeit Product offered by Defendants for sale to the public through the Myluxurybags.com website.  The handbag displayed below is designed to appear like the authentic YSL handbag shown above.  The overall effect of the design of this Counterfeit Product is not only confusingly similar to the design of the authentic YSL product shown above, it also bears an exact copy of YSL's federally registered trademark name.



43.     All of Defendants' Counterfeit Products follow this pattern – each uses the color

scheme, pattern, and design of one of Plaintiffs' Products and bears an exact duplicate of at least

one of Plaintiffs' Marks.

44.     Even though they are of inferior quality and workmanship, the Counterfeit

Products appear superficially similar, and in some cases superficially identical, to genuine

Plaintiffs' Products.  The design of the Counterfeit Products and the display of the Plaintiffs'

Marks communicate to consumers, and consumers are therefore likely to be confused into

believing, that the Counterfeit Products were manufactured, licensed, approved or sponsored by,

or otherwise affiliated with, the Plaintiffs.

45.     Indeed, Defendants claim that their products are crafted and designed by

Plaintiffs.  In fact, Defendants website boasts the Counterfeit Products are "guaranteed authentic

designer handbags."

46.     Defendants have offered these Counterfeit Products for sale without permission,

authority or license from Plaintiffs and, upon information and belief, such actions were taken in

bad faith with full knowledge of the Plaintiffs' ownership of and/or exclusive rights to use and

license the Plaintiffs' Marks. At all relevant times and in furtherance of their infringing

activities, Defendants have willfully and intentionally used and continue to use Plaintiffs' Marks

on Counterfeit Products.

47.     The result of Defendants' manufacturing, advertisement, distribution, and sale of

Counterfeit Products will be to deceive and mislead consumers into believing that Defendants'

products or activities are authorized or sponsored by the Plaintiffs or to cause mistake or to

deceive.

48.     In particular, Defendants' website makes liberal use of the Plaintiffs' Marks to

make an explicit connection between their Counterfeit Products and Plaintiffs' Products.  Set

forth below are true and accurate screenshots from Defendants' Myluxurybags.com website

describing their Counterfeit Products as, respectively, "Gucci," "Balenciaga," "Bottega Veneta"

and "YSL":









49.     The Counterfeit Products are not genuine Plaintiffs' Products bearing the

Plaintiffs' Marks.  Plaintiffs did not manufacture, inspect, or package the Counterfeit Products,

and did not approve the Counterfeit Products for sale and/or distribution. Plaintiffs have carefully examined samples of the Counterfeit Products and determined each to be counterfeit.

50.     Defendants offer their Counterfeit Products both directly to consumers through their website and to be resold to the public through conventional channels on a wholesale basis.

51.     Defendants have infringed at least 13 Gucci Marks by collectively selling, offering to sell, and/or distributing at least 6 different types of goods bearing counterfeits of Gucci Marks, including, but not limited to:  (1) wallets; (2) totes; (3) shoulder bags; (4) hobos; (5) top handle bags; and (6) messenger bags.

52.     Defendants have infringed at least 1 Balenciaga Marks, by collectively selling, offering to sell, and/or distributing at least 3 different types of goods bearing counterfeits of Balenciaga Marks, including, but not limited to:  (1) top handle bags, (2) hobos, and (3) briefcases.

53.     Defendants have infringed at least 2 Bottega Veneta Marks, by collectively selling, offering to sell, and/or distributing at least 1 type of good bearing counterfeits of Bottega Veneta Marks, including, but not limited to:  (1) hobos.

54.     Defendants have infringed at least 4 YSL Marks, by collectively selling, offering to sell, and/or distributing at least 1 type of good bearing counterfeits of Yves Saint Laurent Marks, including, but not limited to:  (1) top handle bags.

55.     Defendants have made use of the services of at least the following banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real property in order to carry out, facilitate, complete, or ratify the unlawful transactions complained of herein or used such entities to hold,

transfer, transmit, relay, maintain, or invest profits from the unlawful activities described herein:

American Express, Mastercard, Visa, and Frontline Processing Corporation.

56.    Defendants' website www.Myluxurybags.com is supported and powered by

EZOT, Inc.

57.    Defendants purchased internet advertisements to further the sale of their

Counterfeit Products from Google, Inc. in order to attract customers to the unlawful activities

described herein.

58.    Defendants' internet advertisements appear when consumers search for certain

terms, such as "Gucci Handbags," or "Balenciaga Handbags," on the internet search engines.

Defendants' advertisement and a link to Defendants' website appears in close proximity to

Plaintiffs' Marks.  For example, shown below are true and correct screen shots of Defendants'

"sponsored link" internet advertisements except that boxes have been added to direct the reader's

attention to the relevant text:





## FIRST CAUSE OF ACTION

(Trademark Infringement Under Section 32
of the Lanham Act, 15 U.S.C. § 1114(1)(a))

59.     Plaintiffs repeat and reallege each and every allegation in the foregoing

paragraphs as if fully set forth herein.

60.     Plaintiffs' Marks and the goodwill of the businesses associated with them in the

United States and throughout the world are of great and significant value, are highly distinctive

and arbitrary, and have become universally associated in the public mind with the products and

services of the very highest quality and reputation.

61.     Defendants' actions described above have caused and are likely to cause

confusion and mistake and to deceive potential customers and the general purchasing public as to

the source, origin, or sponsorship of their Counterfeit Products, and are likely to deceive the

public into believing that the Counterfeit Products sold by Defendants originate from, are

associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

62.     Defendants' unauthorized use of Plaintiffs' Marks constitutes trademark infringement of federally-registered Plaintiffs' Marks, the full extent of which is presently unknown but is substantial. This has caused damage to Plaintiffs and the substantial business and goodwill symbolized by Plaintiffs' Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63.     Defendants' actions described above, including the unauthorized use of Plaintiffs' Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to Plaintiffs, to Plaintiffs' Marks, and to the business and goodwill represented thereby, leaving Plaintiffs with no adequate remedy at law.

## SECOND CAUSE OF ACTION

(Trademark Counterfeiting Under Sections 32, 34 and 35,
of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), & 1117(b)-(c))

64.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

65.     Without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in Plaintiffs' Marks, Defendants have distributed, advertised, offered for sale and/or sold their Counterfeit Products to the consuming public in direct competition with Plaintiffs, in or affecting interstate commerce.

66.     Defendants' Counterfeit Products reproduce, counterfeit, copy, and colorably imitate the Plaintiffs' Marks or display spurious designations that are identical with, or substantially indistinguishable from Plaintiffs' Marks. Defendants have applied their

reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendants' Counterfeit Products, which is likely to cause confusion, or to cause mistake, or to deceive.

67.     Defendants' unauthorized use of Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs.  Defendants' actions constitute willful counterfeiting of Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

68.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damage to their valuable Plaintiffs' Marks, and other damages in an amount to be proved at trial.

69.     Plaintiffs do not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of Counterfeit Products unless this Court enjoins Defendants from such fraudulent business practices.

### THIRD CAUSE OF ACTION

(False Designation of Origin Under Section 43(a)
of the Lanham Act, 15 U.S.C. § 1125(a))

70.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

71.     As a result of the experience, care, and service of Plaintiffs in producing and providing Plaintiffs' Products, Plaintiffs' Products have become widely known and have acquired a worldwide reputation for excellence.  Moreover, Plaintiffs' Marks have become associated with Plaintiffs' Products, and have come to symbolize the reputation for quality and

excellence of Plaintiffs' Products.  As such, Plaintiffs' Marks have attained secondary meaning. Plaintiffs' Marks are also inherently distinctive.

72.    Defendants' use of Plaintiffs' Marks on or in connection with the Counterfeit Products, as alleged above, is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and is likely to cause such people to believe in error that the Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

73.    Defendants' actions, including but not limited to their unauthorized use in commerce of Plaintiffs' Marks, constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are likely to cause, confusion, mistake and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.    Defendants' actions described above, including their unauthorized, false, and misleading use in commerce of Plaintiffs' Marks on Counterfeit Products and other uses of Plaintiffs' Marks in interstate commerce, have caused, and unless restrained, will continue to cause, great and irreparable injury to Plaintiffs, and to the business and goodwill represented by Plaintiffs' Marks in an amount that cannot presently be ascertained, leaving Plaintiffs with no adequate remedy at law.

## FOURTH CAUSE OF ACTION

(Trademark Dilution Under the Federal Trademark
Dilution Act, 15 U.S.C. § 1125(c))

75.     Plaintiffs repeat and reallege each and every allegation in the foregoing

paragraphs as if fully set forth herein.

76.     Plaintiffs' Marks are famous within the meaning of the Trademark Dilution

Revision Act of 2006.  Among other things:  (a) they have a high degree of inherent

distinctiveness; (b) they have been used continuously for decades throughout the United States to

promote many goods and services; (c) Plaintiffs and their authorized licensees have advertised

and publicized Plaintiffs' Marks continuously for decades throughout the United States;

(d) Plaintiffs have used Plaintiffs' Marks in a trading area of broad geographical scope

encompassing all of the states and territories of the United States; (e) Plaintiffs' Marks are

among the preeminent marks in the luxury goods market; (f) Plaintiffs' Marks have an extremely

high degree of recognition among consumers; (g) there are no trademarks similar to those of

Plaintiffs; and (h) many of Plaintiffs' Marks are the subject of valid and subsisting registrations

under the Lanham Act on the Principal Register.

77.     Because Plaintiffs' Products have gained a reputation for superior quality and

excellence, Plaintiffs' Marks have gained substantial renown and reputation.

78.     Defendants' use of Plaintiffs' Marks is likely to cause blurring to and of

Plaintiffs' Marks and impair the distinctiveness of Plaintiffs' Marks.  Consumers are likely to

associate Defendants' uses of Plaintiffs' Marks with the Plaintiffs' Marks themselves because of

the similarity between Defendants' use of Plaintiffs' Marks and Plaintiffs' Marks themselves.  In

particular, on information and belief, the following factors make dilution by blurring likely:

(a) Defendants are making uses of Plaintiffs' Marks themselves; (b) Plaintiffs' Marks have

acquired tremendous distinctiveness through Plaintiffs' continuous promotion and uses of Plaintiffs' Marks; (c) Plaintiffs' Marks have become famous and achieved a high level of recognition among the consuming public; (d) Plaintiffs' commercial use of Plaintiffs' Marks is substantially exclusive to Plaintiffs and its agents and licensees; (e) on information and belief, Defendants intend to create an association between Defendants' uses of Plaintiffs' Marks and Plaintiffs' Marks themselves; and (f) on information and belief, many consumers actually associate Defendants' uses of Plaintiffs' Marks confusingly similar thereto with Plaintiffs' Marks themselves.

79.     Defendants' conduct as alleged above is also likely to cause tarnishment among Plaintiffs' Marks that harms the reputation of Plaintiffs' Marks because of the similarity between Defendants' uses of Plaintiffs' Marks and Plaintiffs' Marks themselves.  In particular, the Counterfeit Products sold, offered for sale, and/or distributed by Defendants display Plaintiffs' Marks in a manner that is confusingly similar to Plaintiffs' Products and therefore mislead consumers that Plaintiffs' Products are of low quality.

80.     Defendants' conduct described above dilutes, blurs, tarnishes, and whittles away the distinctiveness of Plaintiffs' Marks, and has caused actual dilution and has detracted from the distinctiveness of the famous Plaintiffs' Marks with consequent damage to Plaintiffs, and to the substantial business and goodwill symbolized by Plaintiffs' Marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

81.     Defendants' acts of trademark dilution have caused and, unless restrained, will continue to cause, great and irreparable injury to Plaintiffs, and to Plaintiffs' Marks and to the substantial business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Plaintiffs with no adequate remedy at law.

82.     Defendants' conduct has been undertaken with a willful intent to trade on the reputation of Plaintiffs and to cause dilution of the famous Plaintiffs' Marks, and this conduct entitles Plaintiffs to damages and the other remedies available pursuant to 15 U.S.C. § 1125(c)(2).

## FIFTH CAUSE OF ACTION

(Trademark Infringement Under New York Law)

83.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

84.     Defendants' acts as described above constitute trademark infringement under New York common and/or statutory law.  N.Y. Gen. Bus. Law §§ 360-k, 360-o.

## SIXTH CAUSE OF ACTION

(Trademark Dilution Under New York Law)

85.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

86.     Defendants' acts as described above dilute and detract from the distinctiveness of the famous Plaintiffs' Marks, resulting in damage to Plaintiffs and the substantial business and goodwill symbolized by Plaintiffs' Marks in violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-l.

## SEVENTH CAUSE OF ACTION

(Unfair Competition Under New York Law)

87.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

88.     Defendants' acts as described above constitute unfair competition under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## EIGHTH CAUSE OF ACTION

(Deceptive Acts and Practices Under New York Statutory Law)

89.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

90.     Defendants' acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.


WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Immediately and permanently enjoin Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from:

(a)     manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or otherwise offering for sale Counterfeit Products or any other products produced by Plaintiffs or confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(b)     making or employing any other commercial use of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(c)     using any other false designation of origin or false description or

representation or any other thing calculated or likely to cause

confusion or mistake in the mind of the trade or public or to deceive

the trade or public into believing that Defendants' products or

activities are in any way sponsored, licensed or authorized by or

affiliated or connected with Plaintiffs; and

(d)     doing any other acts or things calculated or likely to cause confusion

or mistake in the mind of the public or to lead purchasers or consumers

or investors into the belief that the products or services promoted,

offered, or sponsored by Defendants come from Plaintiffs or their

licensees, or are somehow licensed, sponsored, endorsed, or authorized

by, or otherwise affiliated or connected with Plaintiffs; and

(e)     moving, returning, or otherwise disposing of, in any manner, any

Counterfeit Products or any other products confusingly similar to

Plaintiffs' Products, or that otherwise bear, contain, display, or utilize

any of Plaintiffs' Marks, any derivation or colorable imitation thereof,

or any mark confusingly similar thereto or likely to dilute or detract

from the Plaintiffs' Marks; and

(f)     secreting, destroying, altering, removing, or otherwise dealing with the

unauthorized products or any books or records which contain any

information relating to the importing, manufacturing, producing,

distributing, circulating, selling, marketing, offering for sale,

advertising, promoting, renting, or displaying of all unauthorized

products which infringe Plaintiff's Trademarks; and

(g)     further diluting and infringing all Plaintiffs' Marks and damaging

Plaintiffs' goodwill; and

(h)     otherwise competing unfairly with Plaintiffs or any of their authorized

licensees in any manner; and

(i)     assisting, aiding, or abetting any other person or business entity in

engaging in or performing any of the activities referred to in the above

subparagraphs (a) through (h), or effecting any assignments or

transfers, forming new entities or associations, or utilizing any other

device for the purpose of circumventing or otherwise avoiding the

prohibitions set forth in subparagraphs (a) through (h).

2.      Direct Defendants to account to Plaintiffs for their profits and order that the

Plaintiffs recover their damages arising out of the acts of deception and infringement described

above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to

15 U.S.C. § 1117(a) and (b);

3.      Award Plaintiffs statutory damages of $174,000,000 representing $2,000,000 per

counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to

15 U.S.C. § 1117(c);

4.      Award Plaintiffs punitive damages pursuant to New York State common law (as

preserved by N.Y. Gen. Bus. Law § 360-o) on account of Defendants' gross, wanton, willful, and

malicious conduct;

5.      Direct Defendants to recall and remove from all stores, shops, markets, outlets, catalogues, websites, or other channels of commerce any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same;

6.      Direct Defendants to deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

7.      Direct Defendants to deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

8.      Direct Defendants to supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, and to provide

the manner through which the Counterfeit Products or other products were paid, including any bank accounts to, through, or from which funds were wired;

9.      Direct Defendants to file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action;

10.     Award Plaintiffs their reasonable attorneys' fees along with the costs and disbursements incurred herein as a result of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h);

11.     Order that any of Defendants' assets that are held by or within the control of entities that are subject to the jurisdiction of this Court, be restrained and frozen pending the outcome of this action so that Plaintiffs' right to the damages set forth in this Complaint is not later rendered meaningless.

12.     Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        June 24, 2010

Respectfully submitted,

GIBSON, DUNN & CRUTCHER

By:_____
    Robert Weigel (RW 0163)
    Howard S. Hogan (HH 7995)
    Jennifer C. Halter (JH 7032)
    Anne M. Coyle (AC 3158)
    Kimberly M. Lindsay (KL 5776)

200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc., Balenciaga S.A., Balenciaga America, Inc., Bottega Veneta International S.a.r.l., Bottega Veneta Inc., Luxury Goods International (L.G.I.) S.A., and Yves Saint Laurent America, Inc.*