# Exhibit 6

# CHAMBERS OF
# JUDGE JOHN G. KOELTL
# UNITED STATES COURTHOUSE
# 500 PEARL STREET
# NEW YORK, NEW YORK 10007
TEL. NUMBER: (212) 805-0222
FAX NUMBER: (212) 805-7912

## FACSIMILE COVER SHEET

DATE:   March 4, 2008

TO:     Robert Weigel, Esq.        (212) 351-5236
        Michael Bondi, Esq.        (612) 632-4309
        Magistrate Judge Eaton     x 6181

RE:     Gucci v. Myreplicahandbag.com, No. 07 Civ. 2438

FROM:   JUDGE KOELTL'S CHAMBERS


There are __11__ pages being transmitted, **including** this cover page. If there are any questions, please call 212-805-0222.

---

PLEASE NOTE:  The information contained in this facsimile is intended only for the use of the individual(s) named above and others who have been specifically authorized to receive such. If the recipient is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify Chambers immediately by telephone at (212) 805-0222. Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

GUCCI AMERICA, INC.; CHLOÉ SAS; and
ALFRED DUNHILL LIMITED,

        Plaintiffs,

   -against-

MYREPLICAHANDBAG.COM; WHOLESALE-
REPLICA.COM; REPLICA-WATCH-
TOWN.COM; TRADERINASIA CONSULTING
LLC; KELVIN CHO a/k/a KELVIN CHO YAW
COON a/k/a "CHO YAW KOON"; ABC
COMPANIES; and JOHN DOES,

        Defendants.

------------------------------------------------------------x

07 Civ. 2438 (JGK)

[PROPOSED]
JUDGMENT

WHEREAS, this action having been commenced on March 26, 2007 by the filing of the Summons and Complaint asserting that Defendants MyReplicaHandbag.com, Wholesale-Replica.com, Replica-Watch-Town.com, TraderinAsia Consulting LLC ("TraderinAsia"), and Kelvin Cho a/k/a Kelvin Cho Yaw Coon a/k/a "Cho Yaw Koon" ("Cho") and unidentified parties designated as "ABC Companies" and "John Does" (collectively "Defendants") have engaged in unlawful trademark counterfeiting, trademark infringement, trademark dilution, unfair competition and deception under federal and New York law through their unauthorized use of trademarks owned by Plaintiffs Gucci America, Inc. ("Gucci"), Chloé SAS ("Chloé") and Alfred Dunhill Limited ("Alfred Dunhill") (collectively "Plaintiffs"), (the marks being defined as "Plaintiffs' Marks" and defined on Ex hibit A hereto);

WHEREAS, copies of the Summons and Complaint were served in compliance with the Court's order to show cause and temporary restraining order issued on March 26, 2007 (the "March 26 Order");

WHEREAS, a Notice of Compliance with Service Provisions of the March 26 Order was filed on April 17, 2007;

WHEREAS, Defendants MyReplicaHandbag.com, Wholesale-Replica.com, Replica-Watch-Town.com never appeared in this action;

WHEREAS, despite receiving three extensions of time, Defendants Cho and TraderinAsia never complied with the terms of the Court's Order to Show Cause;

WHEREAS, despite receiving four extensions of time, Defendants Cho and TraderinAsia never produced any documents responsive to any of Plaintiffs' discovery requests, as directed in the March 26 Order, April 19, 2007 stipulation and order, May 4 order on consent, and June 22, 2007 order denying Defendants' motion to dismiss and granting Plaintiffs' motion for a preliminary injunction;

WHEREAS, on July 10, 2007, the Court granted an unopposed motion by the counsel who had been representing Defendants Cho and TraderinAsia in this lawsuit to withdraw and simultaneously ordered that if Defendant TraderinAsia did not appear by new counsel by July 27, 2007, and Defendant Cho did not appear by new counsel or *pro se* by July 27, 2007, Plaintiffs could seek default judgment against them;

WHEREAS, Defendants did not appear by a new attorney or file notice that Mr. Cho would appear *pro se*;

WHEREAS, Plaintiffs' Complaint and papers submitted in support of Plaintiff's application for a temporary restraining order and preliminary injunction made clear that Plaintiffs would seek the relief provided herein and monetary damages in excess of $424 million;

WHEREAS, the Court ordered, in the March 26 Order and as continued in the June 22 preliminary injunction, that any money, stocks, bonds, real or personal property, or other assets of Defendants (collectively "Defendants' Assets") were enjoined from being transferred, disposed of, secreted, or otherwise made unavailable to provide final relief to Plaintiffs;

WHEREAS, the terms of the asset restraint provisions of the March 26 Order as continued in the June 22 preliminary injunction were made applicable to any banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real or personal property, and all persons acting in concert or in participation with any of the Defendants who are in possession of Defendants' Assets (collectively, "Defendants' Assets Holders");

WHEREAS, on August 23, 2007, Plaintiffs moved the Court to grant a default judgment against Defendants;

WHEREAS, Defendants did not oppose Plaintiffs' motion for a default judgment;

WHEREAS, at a hearing on September 7, 2007, the Court granted default judgment against Defendants and referred the case to Magistrate Judge Douglas F. Eaton to conduct an inquest into damages and to write a Report and Recommendation as to the amount of damages to be awarded against Defendants;

WHEREAS, Magistrate Judge Eaton issued a Report and Recommendation on January 25, 2007 recommending that: (1) Plaintiff Gucci America, Inc. be awarded $3,600,000 against the Defendants, jointly and severally; (2) Plaintiff Chloé SAS be awarded $400,000 against the Defendants, jointly and severally; (3) Plaintiff Alfred Dunhill Limited be awarded $300,000 against the Defendants, jointly and severally; (4) a permanent injunction

3

against the defendants be granted enjoining them from using any of the plaintiffs' trademarks or copyrights; (5) as partial satisfaction of the monetary judgment, the Court should order that Defendants' Assets that were "frozen" pursuant to the March 26 Order and the June 22, 2007 Preliminary Injunction Order, as identified in Paragraphs 64-69 of Plaintiff's Inquest Memorandum, be transferred to Gibson, Dunn & Crutcher, LLP; and (6) the final judgment shall apply to Traderinasia Sdn. Bhd., as well as to the five defendants that were identified in the caption of the Complaint;

WHEREAS, no parties have filed objections to the January 25, 2007 Report and Recommendation; and

WHEREAS, the Court adopted Judge Magistrate Eaton's Report and Recommendation on February 25, 2008; it is

ORDERED, ADJUDGED and DECREED:

1. That this Judgment shall apply to Traderinasia Sdn. Bhd., as well as to the five Defendants that were identified in the caption of the Complaint.

2. That the injunctive terms of the March 26 Order and the June 22 preliminary injunction are hereby made permanent and incorporated into this Judgment, and Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them are permanently enjoined from:

> (a) manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or otherwise offering for sale Counterfeit Products or any other products produced by Plaintiffs or confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiff's

Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(b) making or employing any other commercial use of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(c) using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiffs; and

(d) doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered or sponsored by Defendants come from Plaintiffs or their licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs; and

(e) further diluting and infringing all Plaintiffs' Marks and damaging Plaintiffs' goodwill; and

(f) otherwise competing unfairly with Plaintiffs or any of their authorized licensees in any manner; and

(g) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (f), or effecting any assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (f); and

3. That Defendants shall recall and remove from all stores, shops, markets, outlets, catalogues, websites or other channels of commerce any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same;

4. That Defendants shall deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

5. That Defendants shall deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of

Defendants bearing any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

6. That in lieu of an award of actual damages and profits, pursuant to 15 U.S.C. § 1117(c), and attorneys' fees incurred herein as a result of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h), Plaintiff Gucci America, Inc. is hereby awarded $3,600,000 against the Defendants, jointly and severally; Plaintiff Chloé SAS is hereby awarded $400,000 against the Defendants, jointly and severally; Plaintiff Alfred Dunhill Limited is hereby awarded $300,000 against the Defendants, jointly and severally, for a total amount of $4.3 million (collectively, the "Damages Award");

7. That in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, all Defendants' Asset Holders, as defined above, who receive notice of this order by personal service or otherwise are ordered to liquidate those Defendants' Assets and transfer the value of such Defendants' Assets to such accounts as may be specified by Defendants' counsel, Gibson, Dunn & Crutcher, LLP, in partial satisfaction of the Damages Award. This includes: (*i*) any and all funds identified by the Bank of China as associated with Defendants, including in Account No. 4766603-0188-121131-3 (Swift No. BKCHCNBJ400), as confirmed in a May 3, 2007 facsimile from counsel for Bank of China; (*ii*) any and all funds identified by ProPay USA, Inc. as associated with Defendants, including in Account No. 15099731811 as confirmed in an April 5, 2007 e-mail from legal counsel for ProPay USA, Inc.; (*iii*) any and all funds identified by Washington Mutual as associated with

7

Defendants, including in Account Nos. 32400006185462, 09700001139615, and 09700001139673, as confirmed in a May 11, 2007 facsimile by a levy processor for Washington Mutual; *(iv)* any and all funds identified by NetBank as associated with Defendants, including in Account Nos. 15099731811, 00099731810001, and 1100372t315, as confirmed in a May 2, 2007 e-mail from corporate counsel for NetBank; *(v)* any and all funds identified by PayPal, Inc. as associated with Defendants, including in Account No. 15644510593397211163 in the name of "Yaw Koon Cho," Account No. 1507329365951233430 in the name of "Kelvin Cho," and Account No. 18660812635339776404 in the name of "Yaw Cho," as confirmed in letters dated March 29, 2007 and May 17, 2006 from an escalations specialist for PayPal, Inc.; and *(vi)* any and all funds identified by Commerce Payment as associated with Defendants, as confirmed in March 30, 2007 and April 2, 2007 e-mails from Commerce Payment.

8. That the "IT IS FURTHER ORDERED" paragraph running from page 6 to page 7 of the March 26 Order, as confirmed by the June 22 preliminary injunction, is hereby made permanent as long as the Damages Award described above in Paragraph 6 remains unfulfilled, in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, such that in addition to the Defendants' Assets identified in Paragraph 7 above, any banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real or personal property, who receive actual notice of this Judgment by personal service or otherwise, are, without prior approval of the Court, temporarily restrained and enjoined from transferring, disposing of, or secreting any money, stocks, bonds, real or personal property, or

other assets of Defendants or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to any of the Defendants, or into or out of any accounts associated with or utilized by any of the Defendants. To the extent that such additional Defendants' Assets may be necessary to satisfy any remaining unpaid portion of the Damages Award, Defendants may apply to this Court for a further order compelling the liquidation and payment of additional funds necessary to satisfy this Court's Damages Award.

9. That the provision of this Court's March 26 Order requiring Plaintiffs to post a bond is hereby lifted, the bond issued in this matter on March 27, 2007 and filed with the Clerk of the Court on March 30, 2007 shall be and hereby is dissolved, and Plaintiffs need not post any further bond with the Clerk of the Court.

10. That the Clerk of the Court shall close this case and remove it from my docket. This Court, however, shall retain jurisdiction to: (a) issue such orders as may be necessary to enforce this Judgment or satisfy any remaining unpaid portion of this Court's Damages Award; (b) adjudicate any motion to find any of Defendants' Asset Holders in contempt of this Court's orders; or (c) reopen this matter in the event it is necessary to pursue sanctions for any violations of this Judgment.

IT IS SO ORDERED:

_____  Dated: March 4, 2008
HONORABLE JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

EXHIBIT A

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| GUCCI | 876,292<br>959,338<br>972,078<br>1,168,477<br>1,321,864 | 09/09/'59<br>5/22/'73<br>10/30/'73<br>09/08/'81<br>02/26/'85 |
| NON-INTERLOCKING GG MONOGRAM | 1,106,722 | 11/21/'78 |
| GUCCI CREST | 1,112,601 | 02/06/'79 |
| GREEN-RED-GREEN STRIPE | 1,122,780<br>1,483,526 | 07/24/'79<br>04/05/'88 |
| SQUARE G | 2,042,805 | 03/11/'97 |
|  | 2,234,272 | 03/23/'99 |
| REPEATING GG DESIGN | 3,072,549 | 03/28/'06 |

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| CHLOE | 1,491,810 | 06/14/88 |
| | 1,513,535 | 11/22/88 |
| | 1,925,176 | 10/10/95 |
| | 2,745,487 | 08/05/03 |
| | 3,198,388 | 01/16/07 |
| CHLOE IN STYLIZED FORM  Chloé | 950,843 | 01/16/73 |
| | 1,020,289 | 09/16/75 |
| | 1,103,275 | 10/03/78 |
| | 1,182,862 | 12/22/81 |
| | 78,761,371 | pending |
| PADDINGTON | 78,863,562 | pending |
| SILVERADO | 78,863,566 | pending |

| Mark | Reg./Serial No. | Date of Registration |
|---|---|---|
| DUNHILL | 843,270 | 01/30/68 |
| | 858,928 | 10/22/68 |
| | 858,964 | 10/22/68 |
| | 859,052 | 10/22/68 |
| | 1,135,644 | 05/20/80 |
| | 1,172,665 | 10/06/81 |
| DUNHILL IN STYLIZED FORM  dunhill | 527,207 | 07/04/50 |
| | 540,389 | 04/03/51 |
| | 881,310 | 11/25/69 |
| | 1,555,840 | 09/12/89 |
| | 1,734,900 | 11/24/92 |
| | 1,799,883 | 10/19/93 |
| FACET WATCH – ONE ASPECT | 2,852,116 | 06/08/04 |