# Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/20/10

GUCCI AMERICA, INC., BALENCIAGA, S.A., and BALENCIAGA AMERICA, INC.,

Plaintiffs,

-v-

CURVEAL FASHION d/b/a REPLICASI.COM and SEMELUR.COM, et al.,

Defendants.

No. 09 Civ. 8458 (RJS)
MEMORANDUM & ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiffs commenced this action on October 5, 2009 by filing a Summons and Complaint. The Complaint alleges that Defendants sold counterfeit versions of Plaintiffs' handbags and other products through their websites, in violation of the Lanham Act, 15 U.S.C. § 1051, et seq. On October 9, 2009, the Court issued a Temporary Restraining Order and Order To Show Cause as to why a preliminary injunction should not be issued against Defendants. On October 9, 2009, Plaintiffs served Defendants with a copy of: the Summons and Complaint; the application for a Temporary Restraining Order and Order To Show Cause; the documents supporting that application; and the Court's Order granting it. Plaintiffs filed proof of service with the Court on October 22, 2009.

The Court held a conference on October 21, 2009, of which Defendants were provided notice but at which they failed to appear. The Court then issued a Preliminary Injunction and Order of Expedited Discovery on October 23, 2009. On November 30, 2009, Plaintiffs filed a motion for default judgment, supported by affidavit and by a notice of Defendants' default issued by the Clerk of the Court on November 23, 2009. Plaintiffs served a copy of the motion and supporting materials on Defendants on December 1, 2009, and filed proof of service with the Court on December 1, 2009.

On December 7, 2009, the Court issued an Order directing Defendants to show cause, in writing, by December 30, 2009, as to why a default judgment should not be entered against them pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Court further directed Defendants to appear in court on January 7, 2010 to show cause as to why a default judgment should not be entered against them. Plaintiffs served Defendants with this Order on December 8, 2009 and filed proof of service with the Court on December 22, 2009.

Defendants did not show cause in writing or appear at the conference on January 7, 2010. To date, Defendants have not answered the complaint, responded to any Court Order, appeared before the Court, or otherwise taken any action in the case. Consequently, Plaintiffs ask the Court to enter a default judgment in their favor.

### I. Standard for Default Judgment

"Entry of a default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Citgroup Global Mkts., Inc. v. JWS 1999 Holding B.V.*, No. 08 Civ. 5362 (RJS), 2009 WL 2981912 (S.D.N.Y. Sep. 11, 2009) (quoting *Cadlerock Joint Venture, L.P. v. Prado*, No. 07 Civ. 1207 (JS) (WDW), 2008 WL 4561611, at *2 (E.D.N.Y. Oct. 7, 2008) (internal quotation marks and citations omitted)); *see also Ontel Prods. Corp. v. Amico Intern. Corp.*, No. 07 Civ. 7356 (JGK) (FM), 2008 WL 4200164, at *1 (S.D.N.Y. Aug. 19, 2008). "Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (i) determined the proper rule for calculating damages on the claim, and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment." *Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK) (FM), 2006 WL 3518197, at *1

(S.D.N.Y. Dec. 7, 2006) (internal citations omitted).

## II. Liability

The Court finds that these requirements are met. Under the Lanham Act, "[a]ny person who shall, without consent of the registrant — (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided." 15 U.S.C. § 1114(1)(a). The Act further provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin . . . , which — in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B). Plaintiffs have submitted evidence showing that Defendants sold counterfeit Gucci and Balenciaga products online. As such, Defendants are liable for violating the Lanham Act and are subject to the remedies set forth therein. These include injunctive relief under 15 U.S.C. § 1116(a), as well as money damages under 15 U.S.C. § 1117(c).

## III. Remedies

### A. Injunctive Relief

"A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784 (RMB) (GWG), 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007) (quoting *Kingvision*

3

*PayPerView Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)); *see also La Barbera v. Les Sub-Surface Plumbing, Inc.*, No. 06 Civ. 3343 (NG) (KAM), 2008 WL 906695, at *10 (E.D.N.Y. Apr. 3, 2008). Under § 34 of the Lanham Act, a district court has "the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. Thus, the first prong of the inquiry is satisfied.

To meet the second prong, in order "[t]o obtain a permanent injunction, [the requesting party] must demonstrate (1) actual success on the merits and (2) irreparable harm." *Duty Free Apparel*, 286 F. Supp. at 290. First, the Court finds that "plaintiffs have established success on the merits because the defendants' default constitutes an admission of liability." *Gucci Am., Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438 (JGK), 2008 WL 512789, at *5 (S.D.N.Y. Feb. 26, 2008). Second, "[i]n a trademark case, irreparable injury is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *DCH Auto Group (USA) Inc. v. Fit You Best Automobile*, No. 05 Civ. 2973, 2006 WL 279055, at *9 (E.D.N.Y. Jan. 10, 2006) (quoting *Lobo Enters., Inc. v. Tunnel, Inc.*, 822 F.2d 331, 333 (2d Cir. 1987)); *see also Duty Free Apparel*, 286 F. Supp. 2d at 290 ("[I]n this Circuit, a showing of likelihood of confusion establishes irreparable harm."). Given the finding above that a likelihood of confusion exists, the Court holds that this second prong is satisfied as well. The Court therefore finds that the granting of injunctive relief is proper.

B. Damages

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory

damages at any time before final judgment is rendered in the sum of not less than $1,000 nor more than $200,000 per counterfeit mark per type of goods. *See* 15 U.S.C. § 1117(c)(1). Further, if the Court finds that the use of the counterfeit mark was willful, then the Court may impose damages above the maximum limit, up to $2,000,000 per counterfeit mark per type of goods sold. *Id.* § 1117(c)(2). Section 1117(c) "does not provide guidelines for courts to use in determining an appropriate award as it is only limited by what the court considers just." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) (internal citation and quotation marks omitted).

The very nature of Defendants' business, which involved the open sale of "replica" handbags and other items, demonstrates that the infringement was willful. Furthermore, "[w]hen a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer." *Malletier v. WhenU.Com, Inc.*, No. 05 Civ. 1325 (LAK), 2007 WL 257717, at *4 (S.D.N.Y. Jan. 26, 2007); *see also Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005); *Tiffany v. Luban*, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003). Plaintiffs allege that Defendants have infringed (1) nine Gucci marks, multiplied by twenty-eight types of goods sold per mark, and (2) two Balenciaga marks, multiplied by one type of good sold per mark. When combined with the $2,000,000 damages per mark per type of good sold, the maximum statutory damages that this Court could award would be $508,000,000 — $504,000,000 for Gucci and $4,000,000 for Balienciaga. Notwithstanding this upper limit, Plaintiffs assert that $13,700,000 in statutory damages is an appropriate award.[1] They reach this amount by noting, first, that "for

---

[1] Plaintiffs actually request $13,500,000 — $13,300,000 for Gucci and $200,000 for Balienciaga — but it is clear from the formula they use to derive this number that they mean to request $13,700,00 — $13,500,000 for Gucci and $200,000 for Balienciaga.

purposes of the damages calculation, Plaintiffs request damages for infringement on only 15 types of counterfeit Gucci goods . . . and one Balenciaga good." Pls.' Br. at 9. They then multiply this figure by $100,000 per mark per type of good infringed, relying on a formula applied by Judge Eaton and adopted by Judge Koeltl in a similar case, *Gucci America Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438 (JGK) (DFE), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008). This works out to $13,500,000 for Gucci (nine marks, multiplied by fifteen types of goods, multiplied by $100,000), and $200,000 for Balenciaga (two marks, multiplied by one type of good, multiplied by $100,000).

After considering the factors set forth in *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 117 (2d Cir. 1986), the Court concludes that an award of $100,000 per mark per type of good infringed is appropriate to accomplish the dual goals of compensation and deterrence — and in particular to emphasize that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade. *See Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (noting that where "a defendant is shown to have acted wilfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others").

## IV. Decree

For the foregoing reasons, IT IS HEREBY ORDERED AND ADJUDGED that a final Default Judgment be entered in favor of the Plaintiffs, Gucci America, Inc., Balenciaga, S.A., and Balenciaga America, Inc., and against the Defendants, Curveal Fashion d/b/a Replicasi.com and Semelur.com, and Joseph Lee a/k/a Joe Yap.

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendants, their officers, directors,

agents, representatives, successors, or assigns, and all persons acting in concert or in participation with any of them are permanently enjoined from:

1. Manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling, or otherwise offering for sale counterfeit products or any other products produced by Plaintiffs or confusingly similar to Plaintiffs' products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusing similar thereto or likely to dilute or detract from Plaintiffs' marks; and

2. Making or employing any other commercial use of Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' marks; and

3. Using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed, or authorized by or affiliated or connected with Plaintiffs; and

4. Doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendants come from Plaintiffs or their licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs; and

5. Moving, returning, or otherwise disposing of, in any manner, any counterfeit products or any other products confusingly similar to Plaintiffs' products, or that otherwise bear, contain,

display, or utilize any of Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' marks; and

6. Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products which infringe Plaintiffs' marks; and

7. Further diluting and infringing all of Plaintiffs' marks and damaging Plaintiffs' goodwill; and

8. Otherwise competing unfairly with Plaintiffs or any of their authorized licensees in any manner; and

9. Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above paragraphs 1 through 8, or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs 1 through 8.

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendants shall recall and remove from all stores, shops, markets, outlets, catalogues, websites, or other channels of commerce any counterfeit products or any other products confusingly similar to Plaintiffs' products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' marks, that are in Defendants' possession or control and all means of making the same.

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendants shall deliver up for destruction all counterfeit products or any other products confusingly similar to Plaintiffs products, or that otherwise bear, contain, display, or utilize any or Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' marks, that are in Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118.

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendants shall deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' marks, in accordance with 15 U.S.C. § 1118.

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendant shall supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold counterfeit products or any other products confusingly similar to Plaintiffs' products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from Plaintiffs' marks.

IT IS FURTHER ORDERED AND ADJUDGED THAT Plaintiffs are awarded statutory damages as follows

1. Plaintiff Gucci America, Inc. is awarded statutory damages against Defendants in the amount of $13,500,000;

2. Plaintiffs Balienciaga S.A. and Balienciaga America, Inc. are awarded statutory damages against Defendants in the amount of $200,000.

3. Plaintiffs are also entitled to post-judgment interest, pursuant to 28 U.S.C. § 1961(a).

IT IS FURTHER ORDERED AND ADJUDGED THAT, in accordance with Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, all of Defendants' asset holders — defined as any banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real or personal property, and all persons acting in concert or in participation with any of Defendants, who are in possession of Defendants' assets — who receive notice of this order by personal service or otherwise are ordered to liquidate those of Defendants' assets — defined as any money, stocks, bonds, real or personal property, or other assets of Defendants — that have been previously identified as frozen or otherwise restrained in compliance with the Court's October 23, 2009 Order, and pay the value of such Defendants' assets to Plaintiffs in partial satisfaction of the damages award. This includes, but is not limited to: (i) any and all Royal Bank of Scotland Worldpay accounts that are associated with or utilized by www.Replicasi.com, www.Semelur.com, and/or any of Defendants, including but not limited to an account in the name of "CURVEAL FASHION"; (ii) any and all United Overseas Bank Limited accounts that are associated with or utilized by www.Replicasi.com, www.Semelur.com, and/or any of Defendants, including but not limited to any accounts in the name of "CURVEAL FASHION," including but not limited to account number 387-3-001282-8, Swift Code UOVBMYKL.

IT IS FURTHER ORDERED AND ADJUDGED THAT in accordance with Rule 64 of the

Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, in addition to liquidating the Defendants' assets identified in the preceding paragraph and paying them to Plaintiffs as set forth above, any person currently holding any other assets of Defendants and any persons who come into the possession of Defendants' assets who receive actual notice of this Order by personal service, registered or certified mail, or other means reasonably calculated to give actual notice are permanently restrained and enjoined from transferring, disposing of, secreting, or otherwise paying or transferring into or out of any accounts associated with or utilized by any of Defendants any of Defendants' assets that may be identified in the future and/or that have not yet been frozen, without prior approval of the Court, and shall respond to an information subpoena consisting of written questions within seven days of its receipt. To the extent that such additional of Defendants' assets may be necessary to satisfy any remaining unpaid portions of the damages award, Defendants' asset holders are directed to liquidate Defendants' assets and take such other steps as may be reasonable and appropriate to pay the value of Defendants' assets to Plaintiffs up to the amount of the damages award. Plaintiffs shall not collect any assets in excess of the amount of the damages award and shall promptly return any funds received in excess of the damages award to Defendants.

IT IS FURTHER ORDERED AND ADJUDGED THAT Defendants shall file with the Court and serve on counsel for Plaintiffs within thirty days after entry of this default judgment an account setting forth in detail the manner and form in which they have complied with the terms of this default judgment.

Default judgment having been granted, the Clerk of the Court is respectfully directed to close this case and remove it from my docket, without prejudice to Plaintiffs' ability to: (a) enforce this

default judgment or any outstanding obligations to comply with the discovery provisions of this Court's prior orders; (b) file a motion to find any of Defendants' asset holders in contempt of this Court's Orders; or (c) make an application to reopen this matter in the event it is necessary to pursue sanctions for any violations of this default judgment.

SO ORDERED.

DATED:    January 20, 2010
               New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE