# Exhibit 10



# WIPO Arbitration and Mediation Center

**ADMINISTRATIVE PANEL DECISION**

**Balenciaga v. Transure Enterprise Ltd**

**Case No. D2009-0660**

### 1. The Parties

The Complainant is Balenciaga of Paris, France, represented by IP Twins S.A.S., France.

The Respondent is Transure Enterprise Ltd of Tortola, British Virgin Islands.

### 2. The Domain Name and Registrar

The disputed domain name <baleciaga.com> (the "Domain Name") is registered with Above.com, Inc.

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on May 18, 2009. On May 18, 2009, the Center transmitted by email to Above.com, Inc. a request for registrar verification in connection with the Domain Name. On May 19, 2009, Above.com, Inc. transmitted by email to the Center its verification response disclosing registrant and contact information for the Domain Name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to Complainant on May 20, 2009 providing the registrant and contact information disclosed by the Registrar, and inviting Complainant to submit an amendment to the Complaint. Complainant filed an amendment to the Complaint on May 22, 2009. The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified Respondent of the Complaint, and the proceedings commenced on June 4, 2009. In accordance with the Rules, paragraph 5(a), the due date for Response was June 24, 2009. Respondent did not submit any response. Accordingly, the Center notified Respondent's default on June 30, 2009.

The Center appointed Christopher S. Gibson as the sole panelist in this matter on June 30, 2009. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

### 4. Factual Background

Complainant is the French company, Balenciaga, which is an old and well-known haute couture house. Cristobal Balenciaga established his first haute couture house in 1918 in San Sebastian, Spain, where local admiration for his designs led to the opening of a second haute couture house in Madrid and a third in Barcelona. In 1937, Cristobal Balenciaga opened a Parisian flagship store under the name "Balenciaga" and he was eventually hailed as "The Couturier of Couturiers" by designer Christian Dior. In 2001, the Gucci Group, in partnership with Nicolas Ghesquière as creative director, acquired the House of Balenciaga, which today creates women's and men's ready-to-wear, shoes and accessories, sold worldwide.

Apart from being the last name of the Spanish designer Cristobal Balenciaga, the name BALENCIAGA is a trademark registered or applied for in numerous countries worldwide. Complainant has submitted evidence to show ownership of numerous trademark registrations for the mark, BALENCIAGA. Complainant has registered its BALENCIAGA mark as a domain name, <balenciaga.com>, dating from March 1999, which serves as the address for its official website. Complainant has also registered its mark in many country-code top-level domains.

Respondent registered the Domain Name on May 21, 2008.

### 5. Parties' Contentions

#### A. Complainant

Complainant contends that the Domain Name is almost identical to the BALENCIAGA trademark in which the Complainant has rights. Complainant explains that the Domain Name includes the term "baleciaga," which bears only a single letter difference ("n") from Complainant's trademark, and is thus virtually identical to the mark. From a visual as well as from a phonetic point of view, the resemblance of" baleciaga" to BALENCIAGA is very close. The practice of omitting one letter from a trademark and registering the corresponding denomination as domain name is characteristic of "typosquatting. The typosquatted Domain Name is not sufficiently distinct from Complainant's trademark to avoid a finding of confusing similarity.

Complainant also contends that Respondent has no rights or legitimate interests in respect of the Domain Name. It is highly likely that Respondent does not own any trademark rights in "baleciaga" or rights on any company name or any trade name for that term. Instead, it appears from trademark searches performed among a number of country trademark registries on BALENCIAGA that Complainant is the sole owner of trademark registrations for this term. The trademarks retrieved from these searches are Complainant's trademarks. Moreover, Complainant has neither granted any license to use the mark BALENCIAGA, nor allowed its use as a domain name by Respondent. In addition, a search performed among the same registries does not disclose any trademarks for "baleciaga" registered in the name of Respondent. Thus, Respondent has no right to use Complainant's trademark in the Domain Name.

Respondent has not put forth any legitimate reason why it has registered the Domain Name. Respondent has not made any use (or demonstrable preparation of use) of the Domain Name, and does not provide any goods or services in connection with the Domain Name. Complainant has submitted evidence to show that the Domain Name simply resolves to a page of commercial links of the "pay per click" type. By checking the website at "www.baleciaga.com", Complainant obtained a page with links resolving to competitors' websites. Respondent thus has no rights or legitimate interests in respect of the Domain Name, nor is Respondent making a legitimate non-commercial or fair use of the Domain Name without intent for commercial gain.

Complainant argues that the Domain Name was registered and used in full knowledge of Complainant's rights in the BALENCIAGA mark. As noted above, BALENCIAGA was originally a family name, not a common word or noun. The designer Cristobal Balenciaga began to create and sell fashion products under his name BALENCIAGA in 1918, and the House of Balenciaga has existed since then without interruption and is one of the most respected and successful fashion houses. The term BALENCIAGA is thus an original and distinctive term only used for fashion products (clothes, perfumes, shoes, hats, bags), with no particular meaning. The term is also very specific, with a search on Internet search engines

proving that BALENCIAGA refers only to Complainant's products. Furthermore, the trademark BALENCIAGA is very famous, regularly quoted in worldwide economic, fashion and women press and magazines, on TV shows around the world when the fashion parades take place. Complainant has submitted documents to evidence that BALENCIAGA is a famous trademark worldwide. The mark was marketed worldwide before registration of the Domain Name. The registration of the Domain Name by Respondent therefore could not result from chance or coincidence. Instead, the choice of the Domain Name was motivated by the will to create an illegitimate association with Complainant, and to misleadingly divert consumers or tarnish the trademark at issue. Respondent registered the Domain Name in full knowledge of Complainant's trademark rights, and Complainant's concludes that the registration of the Domain Name has been made in bad faith.

Moreover, Complainant emphasizes that Respondent's use of the Domain Name is not a legitimate use. Complainant has provided evidence to show that the Domain Name redirects to a page of commercial links of the "pay per click" type. Among other links, some are related to fashion, clothes and bags. Such use cannot be a "bona fide" use. By registering and using the Domain Name that is identical to Complainant's prior and well-known trademark rights, Respondent intentionally attempts to attract for commercial gain, Internet users to Respondent's web site. The redirection enables Respondent to benefit from web traffic and constitutes evidence of illegitimate use of the Domain Name. The registration by Respondent of the Domain Name creates a serious likelihood of confusion. It generates an unsafe situation for users. Indeed, a commercial link resolving to a competitor's website or to any other website referring to fashion and accessories brings a likelihood that a customer buys infringing products or a competitor's products. It also creates a likelihood of loss of profit for Complainant.

## B. Respondent

Respondent did not submit a Response to Complainant's contentions.

## 6. Discussion and Findings

Paragraph 15(a) of the Rules instructs the Panel to decide the complaint on the basis of the statements and documents submitted and in accordance with the Policy, the Rules and any rules and principles of law that it deems applicable.

Under paragraph 4(a) of the Policy, Complainant must prove each of the following:

(i) the Domain Name in issue is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

(ii) Respondent has no rights or legitimate interests in respect of the Domain Name; and

(iii) the Domain Name has been registered and is being used in bad faith.

Paragraph 4(b) of the Policy sets out four illustrative circumstances which for the purposes of paragraph 4(a)(iii) are evidence of the registration and use of a domain name in bad faith. Paragraph 4(c) of the Policy sets out three illustrative circumstances, any one of which if proved by Respondent may be evidence of Respondent's rights to or legitimate interests in the Domain Name for the purpose of paragraph 4(a)(ii) above. In this case, however, Respondent has not submitted a Response.

## A. Identical or Confusingly Similar

Complainant is required under paragraph 4(a)(i) of the Policy to prove that the Domain Name is identical or confusingly similar to a trademark in which Complainant has rights. The Panel finds that the Domain Name is nearly identical to Complainant's widely-known BALENCIAGA mark, entirely incorporating the mark except for the omission of a single letter "n" that does not change the overall impression of the term, but merely appears to be a slight misspelling of Complainant's mark.

## B. Rights or Legitimate Interests

As noted above, paragraph 4(c) provides examples of circumstances that can demonstrate the existence of rights or legitimate interests in a domain name. Complainant has provided evidence of its strong and long-established rights in the mark BALENCIAGA and that the Domain Name was registered by Respondent only relatively recently in May 2008. Based on Complainant's submissions, the Panel considers that, at that time, Complainant had acquired a considerable reputation

throughout the world for the BALENCIAGA mark in respect of fashion products (clothes, perfumes, shoes, hats, bags, sunglasses).

Complainant also contends that Respondent has never been licensed or authorized to use the BALENCIAGA mark. Moreover, there is no evidence that Respondent, identified as "Transure Enterprise Ltd" of the British Virgin Islands, is commonly known by the Domain Name. The Panel can find no reason whatsoever for why the Domain Name <baleciaga.com> was selected by Respondent. Moreover, Respondent's use of the Domain Name does not constitute a use in connection with a *bona fide* offering of goods and services, since Respondent's website is using a term virtually identical to Complainant's mark to direct Internet users to a commercial website offering competitive services to those offered by Complainant.

In line with previous UDRP decisions, the Panel considers that no good faith can be assumed in Respondent's conduct, in view of the fact that the Domain Name is confusingly similar with Complainant's trademark, there is no link between the Respondent and the Domain Name, and the Domain Name is used in connection with the promotion of competing services. See *Pfizer Inc v. Juan Gonzales*, WIPO Case No. D2004-0589 ("the Panel considers that no good faith can be assumed in Respondent's conduct, in view of the fact that the Domain Name is confusingly similar with Complainant's trademark and is used in connection with the promotion and sale of competing products"); *Chanel Inc. v. Cologne Zone*, WIPO Case No. D2000-1809; *National Collegiate Athletic Association and March Madness Athletic Association, L.L.C. v. Mark Halpern and Front & Center Entertainment*, WIPO Case No. D2000-0700; *Pfizer Inc. v. The Magic Islands*, WIPO Case No. D2003-0870; *Nikon, Inc. and Nikon Corporation v. Technilab Inc.*, WIPO Case No. D2000-1774).

In the light of the above analysis, Complainant has established *prima facie* evidence that none of the circumstances establishing legitimate interests or rights applies. As stressed by many UDRP decisions, in such a case the burden of proof shifts to Respondent to rebut the evidence (see among others *Carolina Herrera, Ltd. v. Alberto Rincon Garcia*, WIPO Case No. D2002-0806; *International Hospitality Management – IHM S.p.A. v. Enrico Callegari Ecostudio*, WIPO Case No. D2002-0683). Because Respondent failed to submit an answer to the Complaint, and given that the allegations of Complainant *prima facie* do not raise any substantial doubts, the Panel accepts as true the allegations set forth in the Complaint and holds that Respondent has no rights or legitimate interests in respect of the Domain Name.

## C. Registered and Used in Bad Faith

As mentioned above, Complainant's BALENCIAGA trademark is distinctive and has acquired worldwide reputation, identifying fashion products marketed by Complainant. It is therefore highly unlikely that Respondent registered the Domain Name in May 2008 without knowledge of Complainant's BALENCIAGA mark. Instead, Respondent appears to have intentionally registered the Domain Name, entirely incorporating Complainant's mark, but with a one letter misspelling, to take advantage of the goodwill associated with the BALENCIAGA mark. There is no plausible reason for why Respondent would have otherwise registered the Domain Name. Moreover, when viewing Respondent's website, one can observe that it attracts Internet users by creating a likelihood of confusion with Complainant's mark, which has a strong worldwide reputation among people interested in fashion, and offers some links to competing products.

This is evidence of Respondent's bad faith registration and use of the Domain Name under paragraph 4(c)(iii) of the Policy for which, due to the lack of any response from the Respondent, there is no attempt at any rebuttal. In the case *Nike, Inc. v. B. B. de Boer*, WIPO Case No. D2000-1397, the panel found as follows: "In the present case, the Panel finds that, since Complainant's trademark is well-known throughout the world, it is very unlikely, if not nearly impossible, that, when Respondent registered the Domain Name, it was not aware that it was infringing on Complainant's trademark rights. The Panel therefore concludes that the Respondent has registered the Domain Name in bad faith." (*Nike, Inc. v. B. B. de Boer* – WIPO Case No. D2000-1397). The same analysis applies here. See also *Kabushiki Kaisha Toshiba d/b/a Toshiba Corp. v. Liu Xingdong*, WIPO Case No. D2003-0408; *Ansell Healthcare Products Inc. v. Australian Therapeutics Supplies Pty, Ltd.*, WIPO Case No. D2001-0110; *The Body Shop International plc v. A-Team/ Lasse Nygaard*, WIPO Case No. DAS2003-0001; *Bartercard Ltd & Bartercard International Pty Ltd. v. Ashton-Hall Computer Services*, WIPO Case No. D2000-0177.

## 7. Decision

For all the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Domain Name <baleciaga.com> be transferred to Complainant.