UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUCCI AMERICA, INC., BALENCIAGA AMERICA, INC., BALENCIAGA S.A., BOTTEGA VENETA INTERNATIONAL S.A.R.L., BOTTEGA VENETA, INC., LUXURY GOODS INTERNATIONAL (L.G.I.) S.A. and YVES SAINT LAURENT AMERICA, INC.,  )  )  )  )  )  )  ) | 10 Civ. 4974 |
| Plaintiffs,  ) | |
| v.  )  ) | |
| WEIXING LI and LIJUN XU a/k/a JACK LONDON, all doing business as REDTAGPARTY, MYLUXURYBAGS.COM, XPRESSDESIGNERS.COM, XPRESSDESIGNER.NET, and DESIGNER HANDBAGS; ABC COMPANIES; and JOHN DOES,  )  )  )  )  )  )  )  )  ) | |
| Defendants.  )  ) | |

## MEMORANDUM OF LAW OF NON PARTY BANK OF CHINA IN OPPOSITION TO THE PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF ITS ALTERNATIVE CROSS MOTION TO MODIFY THE COURT'S ORDERS

Dwight A. Healy
Marika Maris (of counsel)
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
Tel:  (212) 819-8200

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

    1.    The Motion To Compel Should Be Denied Because Disclosure Will Violate Chinese Law .........................................................................................................2

    2.    Gucci's Argument In Support Of An Asset Restraint Are Meritless ...........................3

STATEMENT OF FACTS ........................................................................................................4

    A.    The Complaint .................................................................................................4

    B.    Procedural History ..........................................................................................5

    C.    Bank Of China Responds To The Orders And Subpoena .................................5

ARGUMENT .......................................................................................................................6

I.    GUCCI'S MOTION TO COMPEL BOC TO PRODUCE DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES SHOULD BE DENIED .................6

    A.    Applying The Subpoena Extraterritorially Would Create A Conflict With Chinese Law ...................................................................................................6

    B.    The Subpoena Should Not Be Applied Extraterritorially ...............................12

    C.    Even If There Were Grounds To Compel Production Of Information In China Gucci Must Indemnify BOC For Any Expense Resulting Therefrom .........................13

II.    PLAINTIFFS' MOTION TO COMPEL A STATEMENT OF COMPLIANCE WITH THE COURTS ORDERS SHOULD BE DENIED AS A BACK DOOR ATTEMPT TO OBTAIN DISCOVERY ...............................................................14

III.    THE DISTRICT COURT DOES NOT HAVE THE AUTHORITY TO ISSUE A PRE-JUDGMENT EXTRATERRITORIAL RESTRAINT DIRECTED AT ASSETS HELD BY A THIRD PARTY ...........................................................14

    A.    Article 62 Of The N.Y. CPLR Does Not Apply Extraterritorially ...............14

    B.    Section 1116 Of The Lanham Act Does Not And Cannot Support The Issuance Of A Restraining Order Reaching Extraterritorial Assets ...............................16

        1.    The Lanham Act Does Not Provide For Restraints Against Assets .........................16

        2.    The Lanham Act Does Not Apply Extraterritorially ...............................16

    C.    The District Court Does Not Have The Inherent Equitable Power To Issue An Extraterritorial Pre-Judgment Asset Restraint .......................................16

        1.    The Asset Freeze Is Barred By Grupo Mexicano ...................................16

        2.    Even If Available, A Pre-Judgment Asset Freezing Does Not Apply Extraterritorially ........................................................................20

    D.    First National City Bank Does Not Support Plaintiffs' Position ...................20

E.     Under Any Circumstances, The Court Should Not Extend The Asset Freeze Order To BOC In China...............................................................................22

IV.    PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS FEES .....................................23

V.     ALTERNATIVELY, THE COURT SHOULD MODIFY THE ORDERS.......................24

CONCLUSION...............................................................................................25

## TABLE OF AUTHORITIES

### CASES

Alcan Intern. Ltd. v. S.A. Day Mfg. Co., Inc., 179 F.R.D. 398 (W.D.N.Y. 1998)..........................19

Allied Mar., Inc. v. Descatrade, SA, No. 09-5329-cv, 2010 WL 3447882 (2d Cir. Sept. 3, 2010) ..........................................................................................................................14

Aurelius Capital Partners, LP v. Republic of Arg., No. 07 Civ. 2715, 2009 WL 910783 (S.D.N.Y. Apr. 3, 2009)..........................................................................................11

Balenciaga American, Inc., et al. v. Sean Dollinger, No. 10 Civ. 2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) ......................................................................17, 22

Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v. Kvaerner, 671 N.Y.S.2d 902 (Sup. Ct. 1998) ..................................................................................................................11

Barcia v. Sitkin, Nos. 79 Civ. 5831, 79 Civ. 5899, 1997 WL 66785 (S.D.N.Y. Feb. 14, 1997).......6

Bodner v. Banque Paribas, 202 F.R.D. 370 (S.D.N.Y. 2000) .........................................................11

British Int'l Ins. Co. v. Seguros La Republica, S.A., 90 Civ. 2370, 2000 WL 713057 (S.D.N.Y. June 2, 2000)....................................................................................8, 11

Canal Auth. of the State of Fla. v. Callaway, 489 F.2d 567 (5th Cir. Fla. 1974) ...........................24

Citibank, N.A. v. Wells Fargo Asia Ltd., No. 88-1260, 1989 WL 1126987, at *14 (U.S. 1989) .................................................................................................................15

Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962) .........................................................................19

Daisy Group, Ltd. v. Newport News, Inc., 999 F. Supp. 548 (S.D.N.Y. 1998) .......................18, 19

De Beers Consol. Mines v. U.S., 325 U.S. 212 (1945)...........................................................19, 20

Dietrich v. Bauer, No. 95 Civ. 7051 (RWS), 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) .........11

Fid. Partners, Inc. v. Philippine Exp. & Foreign Loan Guarantee Corp., 921 F. Supp. 1113 (S.D.N.Y. 1996) .................................................................................................9, 14

First National City Bank v. IRS, 271 F.2d 616 (2d Cir. 1959)...........................................20, 21, 23

George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532 (2d Cir. 1992)..............................................17

Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308 (1961) .............. passim

Gucci Am., Inc, et al. v. MyReplicaHandbag.com et al., No. 07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ("MyReplicaHandbag")...................................................2, 12

Gucci Am., Inc. v. Accents, 994 F. Supp. 538 (S.D.N.Y. 1998)......................................................19

Gucci Am., Inc. v. Curveal Fashion, No. 09 Civ. 8458, 2010 WL 808639 (S.D.N.Y. March 8, 2010) ..........................................................................................................................8, 11

Hudson v. Hermann Pfauter GmbH & Co., 117 F.R.D. 33 (N.D.N.Y. 1987) .................................10

Ideal World Mktg., Inc. v. Duracell, Inc., 997 F. Supp. 334 (E.D.N.Y. 1998) ...............................18

In re One Grand Jury Subpoena, 1989 WL 49165 (D. Conn. 1989) ...............................................23

In re Payment Card Interchange Fee and Merchant Disc. Antitrust Litig., No. 05-MD-1720 (JG)(JO), 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) ...........................................................8

In re Ramaekers, 33 F. Supp. 2d 312 (S.D.N.Y. 1999) .....................................................................6

In re Vivendi Universal, S.A. Sec. Litig., No. 02 Civ. 5571 RJH, 2004 WL 3019766 (S.D.N.Y. Dec. 30, 2004) .................................................................................................10

Ings v. Ferguson, 282 F.2d 149 (2d Cir. 1960)....................................................................... passim

Intercont'l Credit Corp. v. Roth, 595 N.Y.S.2d. 602 (N.Y. Sup. Ct. 1991) ...................................10

ITC Ltd. v. Punchigini, 482 F.3d 135 (2d Cir. 2007) ......................................................................16

J.S. v. Attica Cent. Schs, No. 00-cv-513S(F), 2009 WL 230649 (W.D.N.Y. Jan. 29, 2009)..........24

John Wiley & Sons, Inc. v. Kirtsaeng, No. 08 Civ. 7834 (GEL) (DCP), 2009 WL 3003242 (S.D.N.Y. Sept. 15, 2009) ...............................................................................................15

Kennedy v. Lakso Co., 414 F.2d 1249 (3d Cir. 1969)......................................................................19

Koehler v. Bank of Bermuda, 12 N.Y.3d 533 (2009)......................................................................15

Kosmond v. Kosmond, 830 N.E.2d 596 (Ill. 2005).........................................................................23

La Grande v. Adecco, No. 1:03-CV-1453, 2006 WL 2806402 (N.D.N.Y Sept. 28, 2006).............25

Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982 (11th Cir. 1995) .....................17, 20

Lok Prakashan Ltd. v. India Abroad Publ'n, Inc., No. 00 Civ. 5862 (LAP), 2002 WL 1585820 (S.D.N.Y. July 16, 2002) ...........................................................................14, 15, 22

Maness v. Myers, 419 U.S. 449 (1975) ..........................................................................................24

Minpeco, S.A. v. Conticommodity Servs., Inc., 116 F.R.D. 517 (S.D.N.Y. 1987)....................7, 10

Morrison v. Nat'l Austl. Bank, 130 S. Ct. 2869 (2010)........................................................... passim

Motorola Credit Corp. v. Uzan, 288 F. Supp. 2d 558 (S.D.N.Y. 2003) ....................................14, 16

N. Face Apparel Corp. v. TC Fashions, Inc., No. 05 Civ 9083 (RMB), 2006 WL 838993
     (S.D.N.Y. March 30, 2006)..................................................................................................16, 17

Norex Petroleum Ltd. v. Access Indus., Inc., et al., No. 07-4553-cv, 2010 WL 4968691 (2d
     Cir. Dec. 8, 2010)................................................................................................... passim

Oriental Commercial & Shipping Co., Ltd. v. Rosseel N.V., 125 F.R.D. 398 (S.D.N.Y. 1989) ......9

Orlich v. Helm Bros., 160 A.D.2d 135, 560 N.Y.S.2d 10 (1st Dep't 1990)...................................10

Oxford Indus., Inc. v. Hartmarx Corp., No. 88 C 0322, 1990 WL 65792 (N.D. Ill. May 2,
     1990) ....................................................................................................................................17, 19

Pierce v. Underwood, 487 U.S. 552 (1988) .................................................................................24

Playboy Enters., Inc. v. Chuckleberry Pub., Inc., 687 F.2d 563 (2d Cir. 1982) ............................12

Proa v. NRT Mid Atlantic, Inc., 633 F. Supp. 2d 209 (D. Md. 2009) ............................................24

Quantum Corp. Funding Ltd. v. Assist You Home Health Care Svcs. of Va., LLC, 144 F.
     Supp. 2d 241 (S.D.N.Y. 2001)...........................................................................................17

Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468 (9th Cir. 1992)...........................23

Sequa Corp. v. Gelmin, No. 91 Civ. 8675 (DAB), 1995 WL 404726 (S.D.N.Y. July 7, 1995)........9

Ssangyong Corp. v. Vida Shoes Int'l, Inc., No. 03 Civ 5014 KMW DFE, 2004 WL 1125659
     (S.D.N.Y. May 20, 2004)....................................................................................................11, 12

Trade Dev. Bank v. Cont'l Ins. Co., 469 F.2d 35 (2d Cir. 1972) ............................................6, 8, 23

U.S. v. Chase Manhattan Bank, N.A., 590 F. Supp. 1160 (S.D.N.Y. 1984) ...................................12

U.S. v. First Nat'l Bank of Chi., 699 F.2d 341 (7th Cir. 1983) ...................................................7, 11

U.S. v. First Nat'l City Bank, 321 U.S. 14 (2d Cir. 1963), rev'd, 379 U.S. 378 (1965) .....20, 21, 22

U.S. v. Kyle, 21 F.R.D. 163 (E.D.N.Y. 1957) ................................................................................9

United States v. Bank of Nova Scotia, 740 F.2d 817 (11th Cir. 1984)...........................................23

W. Union Tel. Co. v. Pennsylvania, 368 U.S. 71 (1961).................................................................23

## STATUTES AND RULES

15 U.S.C. § 1116.............................................................................................3, 5, 14, 16, 21

15 U.S.C. § 1117(a) ..........................................................................................................17, 18

26 U.S.C. § 7402(a) ...............................................................................................................21

CPLR Article 62 ...............................................................................................................14, 15

Fed. R. Civ. P. 37(a)(5)......................................................................................... 23-24

Fed. R. Civ. P. 45 ..........................................................................................11, 13, 14

Fed. R. Civ. P. 65 ..................................................................................................20

Restatement (Second) of Foreign Relations Law § 40 .............................................8

Restatement (Third) of Foreign Relations Law § 442 ..............................................8

Restatement (Third) of Foreign Relations Law § 441(1).........................................23

Securities Exchange Act of 1934.............................................................................13

## OTHER AUTHORITIES

5 McCarthy on Trademarks and Unfair Competition § 30.59 (4th ed.) ........................17

## PRELIMINARY STATEMENT

By a motion made under Rules 37 and 45, Gucci[1] seeks to compel production of records (if any) previously sought by the Rule 45 Subpoena served on the New York Branch of the Bank of China ("BOCNY").  The records purportedly are located in China and relate to bank accounts at the head office or Chinese branches of the Bank of China ("BOC" or the "Bank"), a bank organized under, based in, and subject to, the laws of the People's Republic of China ("PRC" or "China").  Gucci also seeks to compel BOC to "comply with this Court's orders" by "confirm[ing] that it has frozen all of Defendants' accounts" (Pl. Mem. 3-5), although the Court's Order does not call for such confirmation.[2]

Apparently believing that accusing BOC of wrongdoing or bad faith will strengthen its motion, Gucci argues that BOC is complicit in the trademark violations attributed to the Defendants in this action.  The Complaint, however, does not name BOC as a defendant, and does not allege any wrongdoing by, or seek any relief against, BOC.  The bald statement that the Bank "either knew that Defendants were engaged in counterfeiting or did not care to find out" and was "turning a blind eye" to Defendants' actions (Pl. Mem. at 4) is unsupported by any allegation of fact (and is not true).[3]  Gucci's additional assertion that BOC is trying to "protect"

---

[1] The following abbreviations are used herein:  Gucci America, Inc., and the other plaintiffs ("Plaintiffs" or "Gucci"); Memorandum of Law in Support of Plaintiffs' Motion to Compel Third Party Bank of China To Comply With This Court's Order and Plaintiffs' Subpoena, dated December 6, 2010 ("Pl. Mem."); defendants in this action ("Defendants"); Declaration of Robert L. Weigel, dated December 6, 2010 ("Weigel Dec."); Declaration of Donald Clarke, dated June 27, 2008 ("Clarke Dec.") (Weigel Dec. Ex. 15); Declaration of Dwight A. Healy, dated December 22, 2010, submitted in opposition ("Healy Dec."); Declaration of Zhipan Wu, dated December 22, 2010, ("Wu Dec."); Temporary Restraining Order, Asset Restraining Order, Order Authorizing Expedited Discovery and Order to Show Cause, dated July 2, 2010 ("TRO"); Preliminary Injunction and Order Authorizing Expedited Discovery, dated July 13, 2010 ("PI" and together with the TRO, the "Orders"); Subpoena, dated July 16, 2010 ("Subpoena"); Complaint, dated June 24, 2010 and filed on June 25, 2010 ("Complaint") (Healy Dec. Ex. A).

[2] Gucci also requests permission to file a contempt motion.  In light of the substantial issues raised below as to the Court's authority to issue the Orders, that request is not only premature, but is without basis.

[3] The Bank is not, as Gucci seems to suggest, under an affirmative obligation to determine whether or not any of its customers were selling products outside of China that violated the trademark laws of some other nation.

the Defendants (id.) is similarly baseless.  The Bank is not trying to protect anyone other than itself by assuring that it does not violate the prohibitions of Chinese law.

Equally wrong is Gucci's contention that the Bank has somehow acted in bad faith in responding to the Subpoena or the Orders.  Contrary to Gucci's claim that the Bank "simply refused to comply" with the Subpoena (Pl. Mem. at 3), the Bank timely served appropriate Rule 45 objections and responses and produced responsive information located in its New York Branch.  From the outset – four months before Gucci decided to file its motion – BOC has made clear that it was constrained by Chinese law from producing information located in China, and did not believe that the Subpoena or Order reach accounts in China.

      1.      The Motion To Compel Should Be Denied
               Because Disclosure Will Violate Chinese Law

First, there is no question that Chinese law prohibits disclosures of account information located in China, a fact demonstrated by the plain terms of the relevant provisions of the Chinese Commercial Bank Law ("CBL") and related  regulations, and Chinese Criminal Law, all of which are cited and discussed in the accompanying Affidavit of Professor Zhipan Wu, one of the drafters of the CBL.  The facile (and qualified) expert opinion (of Donald Clarke) proffered by Gucci in an earlier case does not cite the key provisions of the CBL or regulations, which may account for Mr. Clarke's opinion that Chinese law does not prohibit disclosure.

Second, BOC's actions in connection with the MyReplicaHandbag.com litigation are not inconsistent with the Bank's position.  At the outset of that case, the customer had consented to disclosure and freezing, a fact not present here.  The issues between Gucci and the Bank in that case were ultimately resolved by a settlement under which BOC made a confidential disclosure of customer information.  There was no determination by the court that Chinese law did not

prohibit disclosure or freezing (absent consent) and there was no finding that BOC had violated any U.S. court order or compelling the Bank to produce documents or freeze assets.

Third, the case law in this Circuit does not support an order compelling a third party non-U.S. bank to provide information in violation of the law of its home jurisdiction especially where, as here, evidence can be obtained through the Hague Convention on the Taking of Evidence Abroad ("Hague Convention").  Finally, Gucci's request that the Court order the Bank to disclose whether it has frozen assets in China is simply an indirect way to obtain discovery about any accounts that may exist in China and should be denied for the same reasons as the motion to compel discovery.

> 2.      Gucci's Argument In Support Of An Asset Restraint Are Meritless

None of the bases advanced by Gucci for the issuance of the freeze order support such an order.

> (a)      An Attachment would not reach assets located abroad.  Although Plaintiffs

asserted in their motion for a preliminary injunction that New York's attachment statute supported a freeze order, an attachment served on the New York Branch of a foreign bank does not reach accounts located at non-U.S. branches.

> (b)      Section 1116(a) of the Lanham Act does not authorize an asset freeze.

Section 1116(a) of the Lanham Act, cited in the Orders, authorizes an injunction against defendants to prevent violations of Plaintiffs' trademark rights.  It does not authorize a pre-judgment freeze order directed at a third party allegedly holding assets abroad.

> (c)      The Court lacks inherent equitable power to issue such relief.  The Court's

"inherent equitable power," the third (and final) basis cited for the freeze order, also does not support the relief granted.  The Complaint requests a freeze order "so that Plaintiffs' right to the

damages set forth in this Complaint is not later rendered meaningless." Complaint (Healy Dec. Ex. A) at 35, ¶ 11. The Supreme Court in <u>Grupo Mexicano de Desarrollo</u> v. <u>Alliance Bond Fund, Inc.</u>, 527 U.S. 308 (1961), ruled that federal courts do not have inherent equitable power to grant such relief. The fact that the Lanham Act authorizes recovery of defendants' profits does not alter that conclusion. The claim for profits pleaded by Gucci is legal, not equitable, and the addition of a request for an accounting does not change that fact.

(d)      <u>Neither the Lanham Act nor the Federal Rules Permit an Extraterritorial Asset Freeze</u>. Even if the Court had authority to grant a pre-judgment freeze order directed at BOC, under <u>Morrison</u> v. <u>Nat'l Austl. Bank</u>, 130 S. Ct. 2869, 2877-8 (2010), and the Second Circuit's recent decision in <u>Norex Petroleum Ltd.</u> v. <u>Access Indus., Inc., et al.</u>, No. 07-4553-cv, 2010 WL 4968691 (2d Cir. Dec. 8, 2010), there is no basis to extend that freeze order extraterritorially. Nothing in the Lanham Act or Rule 65, which embodies the Court's equitable power to issue preliminary injunctions, expressly authorizes extraterritorial application of the remedial provision of the Lanham Act or the Federal Rules.

## STATEMENT OF FACTS

### A.      The Complaint

Gucci asserts claims for trademark infringement and unfair competition and deceptive practices, and seeks injunctive relief against Defendants, including an order prohibiting them from continued violation of Plaintiffs' trademarks. Complaint at pp. 31-34, ¶¶ 1, 5-6.

With respect to monetary relief, Gucci seeks an order directing "Defendants to account to Plaintiffs for their profits and order[ing] that the Plaintiffs recover their damages arising out of the acts of deception and infringement . . ." as well as statutory and punitive damages. <u>Id.</u> at pp. 33, ¶¶ 2-4. The Complaint also requests a pre-judgment asset restraint providing that "any of

Defendants' assets . . . be restrained and frozen so that Plaintiffs' right to the damages set forth in this Complaint is not later rendered meaningless."  Id. at p. 35, ¶ 11.

> ### B.    Procedural History

In seeking a TRO and PI, Gucci argued that "[a]n asset freeze is crucial to preserve the funds in Defendants' accounts until Plaintiffs obtain a judgment in this action.  Indeed, Plaintiffs have obtained judgments against counterfeiters in numerous cases in the past, and recovered significantly greater amounts of the damages to which they were equitably entitled where the court ordered a prejudgment asset freeze."  Healy Dec. Ex. B at 27 (emphasis added).  Plaintiffs also argued that an asset restraint was supported by the New York attachment statute (made available by Rule 64) but did not ask for an attachment.  Id. at 28.

In June and July 2010, this Court signed the TRO and the PI, which contain restraints on the transfer, disposition, or secreting of assets of Defendants.  Id. Ex. C at 6-7; Ex. D at 6-7.  The Orders cite three grounds for that relief:  "Rule 64 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief."  Id. Ex. C at 6; Ex. D at 6.  The PI Order authorized expedited discovery from Defendants and third parties and contemplated that third parties could be served with a subpoena.  Id. Ex. D at 9.

> ### C.    Bank Of China Responds To The Orders And Subpoena

The TRO was served on BOCNY on July 9, and the PI on July 13, 2010.  Weigel Dec. Exs. 3 and 4.  On July 16, Plaintiffs served a Rule 45 Subpoena on BOCNY.  Id. Exs. 5 and 6. By a July 21 letter, White & Case advised that BOCNY "have no accounts or assets for the defendants or accounts identified in your letters (i.e., under the TRO or PI)."  Id. Ex. 7.   The

letter also states that BOC did not believe that the Orders "reach[ed] accounts or assets that might be located in the Bank of China somewhere outside the United States." Id.

In accordance with Rule 45, on July 26, 2010, the Bank served objections and responses ("Response") to the Subpoena.  The Response objected to production of any documents that were not under the control of BOCNY, advised that BOCNY did not have possession, custody or control over information located in any other office of BOC, and further objected to the extent that producing documents "would violate any applicable domestic or foreign law, including the banking, commercial and criminal law of the People's Republic of China."  Weigel Dec. Ex. 8. Consistent with its Response, BOCNY commenced a search of its records in New York and kept Gucci's counsel apprised of the progress of that search.  Healy Dec. ¶ 12.  On September 16, 2010, BOCNY produced the responsive documents so located.  Id.

## ARGUMENT

I. **GUCCI'S MOTION TO COMPEL BOC TO PRODUCE DOCUMENTS LOCATED OUTSIDE OF THE UNITED STATES SHOULD BE DENIED**[4]

A. **Applying The Subpoena Extraterritorially Would Create A Conflict With Chinese Law**

The traditional rule, based on principles of comity, is that bank secrecy constraints are by themselves a substantial reason to deny discovery, and consistent with that rule courts in this Circuit have repeatedly declined to order the non-U.S. head offices and branches of a foreign bank to produce documents in contravention of the secrecy laws of their home jurisdictions.  See Trade Dev. Bank v. Cont'l Ins. Co., 469 F.2d 35, 41 (2d Cir. 1972) (refusing to order defendant Swiss bank to disclose customer information in violation of Swiss laws); Ings v. Ferguson, 282

---

[4]     Gucci asserts that an order compelling production is mandatory unless BOC demonstrates that "compliance [with the Subpoena] is impossible." Pl. Mem. at 15.  That proposition is rooted in neither the Rules nor the case law Gucci cites.  Barcia v. Sitkin, Nos. 79 Civ. 5831 (RLC), 79 civ. 5899 (RLC), 1997 WL 66785 (S.D.N.Y. Feb. 14, 1997), addressed a motion to hold a party in contempt for violating a stipulation and order for attorneys' fees, not a motion to compel discovery.  In re Ramaekers, 33 F. Supp. 2d 312 (S.D.N.Y. 1999), did not adopt or even suggest such a standard.

F.2d 149, 151-152 (2d Cir. 1960) (third party not required to produce records held by bank branches in Canada); <u>Minpeco, S.A.</u> v. <u>Conticommodity Servs., Inc.</u>, 116 F.R.D. 517, 530 (S.D.N.Y. 1987).  Other circuit courts have done the same.  <u>See</u> <u>U.S.</u> v. <u>First Nat'l Bank of Chi.</u>, 699 F.2d 341, 345 (7th Cir. 1983).

As stated by Professor Wu, a drafter of the CBL, China has adopted bank secrecy rules as part of a comprehensive scheme of bank regulation.  <u>See</u> Wu Dec. ¶¶ 9-18.  Chinese Banks are prohibited from disclosing information about, or freezing or turning over, customer deposits without customer consent or authorization from Chinese governmental authorities.  <u>Id.</u> ¶ 16. None of the Defendants alleged to be a customer of BOC has consented to the disclosure of confidential information or the restraint of its assets.  Absent customer consent, or an order from a Chinese "Competent Organ" (which does not include a U.S. court), BOC would be subject to monetary sanctions, and would also face civil liability to its customer(s), if it were to provide information about (or freeze) assets located in China in response to the Subpoena or Orders.  <u>See</u> <u>id.</u> ¶¶ 19-26.  China also has recently adopted Section 253(A) of its Criminal Law which makes employees of a Chinese Bank as well as the Bank itself subject to criminal sanctions – including imprisonment – for disclosure of individual customer account information (or unauthorized restraint of individual customer accounts).  <u>See</u> Wu Dec. ¶¶ 25-26.

The opinion of Donald Clarke cited by Gucci (Pl. Mem. at 3) is "incorrect" (Wu Dec. ¶ 27) to the extent it suggests that Chinese law "provides the bank with the *right* to refuse certain requests" but "does not impose a *duty*."  <u>See</u> Clarke Dec. at 34.  In making that assertion Mr. Clarke ignores the relevant Chinese laws, in existence at the time of his Declaration, that prohibit disclosure of customer information, as well as the recently enacted Section 253(A) of the Criminal Law.  Wu Dec. ¶ 28.  In fact, Mr. Clarke does not offer an unqualified opinion on

whether Chinese law prohibits disclosure (or freezing of assets).  He says only that "Chinese law,

at least insofar as its provisions have been cited by the BOC, does not prohibit the BOC from

complying with the order of  a U.S. court . . . ."  See Clarke Dec. ¶ 11 (emphasis added).  Thus,

the limited, and qualified, opinion of Mr. Clark does not contradict the opinion of Professor Wu.

There is no question that Chinese law prohibits disclosure here.  Compare Pl. Mem. at 20.

The Second Circuit has adopted the test set forth in Restatement (Second) of Foreign

Relations Law § 40 to determine whether to order a party to produce documents in contravention

of the law of a foreign country.  See Trade Dev. Bank, 469 F.2d at 41.  More recent district court

decisions have adopted the nearly identical, but more discovery-specific, test of Restatement

(Third) of Foreign Relations § 442(1)(c), which sets forth seven principal factors as relevant to

any comity analysis.  See In re Payment Card Interchange Fee and Merchant Disc. Antitrust

Litig., No. 05-MD-1720 (JG)(JO), 2010 WL 3420517, at *6-7 (E.D.N.Y. Aug. 27, 2010)

(refusing to order disclosure of European Commission documents in violation of EC

confidentiality restriction and noting the difference between general blocking statute and explicit

confidentiality constraints); see also Gucci Am., Inc. v. Curveal Fashion, No. 09 Civ. 8458, 2010

WL 808639, at *8 (S.D.N.Y. March 8, 2010) (Pl. Mem. at 15).  All of those factors weigh

against ordering discovery here.

1.    Importance of the information requested.  Gucci asserts, but does not demonstrate,

that the "documents sought are highly relevant, indeed critical, to this action" (Pl. Mem. at 15)

and cites to a judgment enforcement case that states that there is "arguably no information

concerning a [judgment debtor's] financial situation which is of greater potential relevance . . .

than the identity and location of debtor's assets."  Id. (quoting British Int'l Ins. Co. v. Seguros La

Republica, S.A., 90 Civ. 2370, 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000)).  The Subpoena

was issued months before any judgment was sought and cannot be justified on the basis that the information requested might be relevant to judgment enforcement.  See Sequa Corp. v. Gelmin, No. 91 Civ. 8675 (DAB), 1995 WL 404726 at *2 (S.D.N.Y. July 7, 1995) (discovery concerning an opposing party's assets is not ordinarily permitted, unless such discovery is relevant to the merits of the pending claim, or in response to a defense); Oriental Commercial & Shipping Co., Ltd. v. Rosseel N.V., 125 F.R.D. 398 (S.D.N.Y. 1989).  Having moved for a default judgment Plaintiffs have no need for the information sought in order to adjudicate the merits.

   2. Degree of specificity of the request.  The requests are neither specific nor tailored, and seek a broad range of information.  See Weigel Dec. Ex. 5.  The requests on their face do not even expressly request information located abroad.

   3. Origin of information.  Any documents related to accounts of Defendants that may exist in China undoubtedly originated in China and Plaintiffs do not claim otherwise.  In addition, the New York Branch does not have access or control over account information in China.  See Beauchemin Dec. ¶ 2.  Thus, in contrast to a U.S. bank headquartered here, which likely has managerial control over documents in its foreign branches, that is not the case for BOCNY, a fact recognized by the Second Circuit in refusing to compel production of documents from a non-U.S. office of a foreign bank in violation of the law of its home country.  See Ings, 282 F.2d at 152; see also Fid. Partners, Inc. v. Philippine Exp. & Foreign Loan Guarantee Corp., 921 F. Supp. 1113, 1120 (S.D.N.Y. 1996); U.S. v. Kyle, 21 F.R.D. 163, 164 (E.D.N.Y. 1957).

   4. Availability of alternative means of securing the information.  Plaintiffs can obtain information through use of the Hague Convention.  New York federal and state courts have required litigants to make use of the Hague Convention when the foreign country involved is a signatory, as is China (Wu Aff. ¶ 33).  See In re Vivendi Universal, S.A. Sec. Litig., No. 02

Civ. 5571 RJH, 2004 WL 3019766, at *1 (S.D.N.Y. Dec. 30, 2004); Hudson v. Hermann Pfauter

GmbH & Co., 117 F.R.D. 33 (N.D.N.Y. 1987); see also Orlich v. Helm Bros., 160 A.D.2d 135,

144, 560 N.Y.S.2d 10, 15 (1st Dep't 1990); Intercont'l Credit Corp. v. Roth, 595 N.Y.S.2d. 602,

603 (N.Y. Sup. Ct. 1991).

     5.     Interests of states.  BOC is a Chinese bank, organized and subject to the banking

laws of China.  China has a vital interest in upholding its banking and bank secrecy laws.  Wu

Dec. ¶ 9.  Although the United States also has a significant interest in upholding its trademark

laws, that interest must be weighed against the United States' interest in and desire to respect the

sovereignty of other nations.  See, e.g., Ings, 282 F.2d at 151-152.  As such, this factor weighs

against requiring discovery, or at least in favor of resort to the Hague Convention (see above).

     6.     Nature of hardship.  BOC and its employees would be violating Chinese law and

would be subject to civil and criminal liability in China if forced to comply with the subpoena.

Wu Dec. ¶¶ 19-26; see also Minpeco, 116 F.R.D. at 525-6.  A non-party bank opposing

discovery is not, as Gucci seems to suggest (Pl. Mem. at 18-19), required to prove that it will

actually be prosecuted for breaking the law; it must only show that disclosure is prohibited by the

foreign law at issue.  See Minpeco, 116 F.R.D. at 526 (denying disclosure even though "neither

side has provided helpful information regarding frequency of enforcement and punishments

imposed under [Swiss law]"); Intercont'l, 595 N.Y.S.2d at 603 (requiring resort to the Hague

Convention even where bank "ha[d] not presented a single case in which a bank was prosecuted

in Israel for disclosing depositor information pursuant to an order of a foreign court"); see also

First Nat'l Bank of Chi., 699 F.2d at 345.[5]

---

[5]     Bodner v. Banque Paribas, 202 F.R.D. 370, 376 (S.D.N.Y. 2000), (Pl. Mem. at 20), is inapposite.  The
court addressed the impact of the French blocking statute (which has generally been viewed with disfavor) on
discovery from a party.  The court found that the French secrecy laws did not apply because the bank was a party.

7.     Good faith of party resisting discovery.  Having complied with Rule 45, BOC has

acted in good faith.  BOCNY searched its records for information responsive to the Subpoena

and promptly provided Gucci with information in its custody and control in New York.  See

Healy Dec. ¶ 12.  From the outset, BOC advised Gucci of its position that the Subpoena only

reaches information in New York.  See Weigel Dec. Ex. 8.

Curveal, 2010 WL 808639, at *8 (Pl. Mem. at 15), does not support issuance of an order

to compel.  In that case, the Court noted that the prohibition on bank disclosures in the Malaysian

law at issue contained "several exceptions" potentially applicable in that case, including a

provision permitting disclosure "where the licensed institution has been served a garnishee

order."  Curveal, 2010 WL 808639 at *4.[6]  No comparable exception has been shown here.  See

Wu Dec. ¶¶ 9-18.  In Curveal, Malaysia was not a party to the Hague Convention so Gucci

would have had to commence a separate action in Malaysia and secure a judgment in Malaysia to

obtain discovery.  2010 WL 808639 at *4-5.  Compare Wu Dec. 33.[7]

Plaintiffs' heavy reliance on Gucci Am., Inc., et al. v. MyReplicaHandbag.com et al., No.

07 Civ. 2438 (JGK), 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ("MyReplicaHandbag"), is both

---

[6]     The court in Curveal did not state a general rule that the U.S. interest in enforcing judgment always outweighs the interest of a foreign country in enforcing its bank secrecy laws.  Pl. Mem. at 21.  The court found only that the interest of Malaysia in the specific Malaysian law at issue in that case did not outweigh U.S. interests.

[7]     Gucci's other cases are equally inapposite.  In British Int'l, 2000 WL 713057 at *5, the court ordered post judgment discovery against the defendant where Mexican law did not prohibit disclosure and there was no alternative means (e.g., Hague Convention) of obtaining discovery.  Dietrich v. Bauer, No. 95 Civ. 7051 (RWS), 2000 WL 1171132 at *5 (S.D.N.Y. Aug. 16, 2000), did not apply the Restatement test, as the party objecting to discovery had not briefed the issue.  No argument was advanced that discovery was prohibited by foreign law.  Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v. Kvaerner, 671 N.Y.S.2d 902, 904-05 (Sup. Ct. 1998), a New York State trial court case, addressed discovery from a party, not a third party, and on that basis distinguished the controlling Appellate Division case law that requires resort to the Hague Convention when discovery is sought from a third party.  Aurelius Capital Partners, LP v. Republic of Arg., No. 07 Civ. 2715, 2009 WL 910783 (S.D.N.Y. Apr. 3, 2009), does not support the proposition that "even if Chinese law did prohibit disclosure" the court could still order disclosure.  (Pl. Mem. at 21)  In that case "there [was] no showing that foreign law bars this discovery…."  Aurelius, 2009 WL 910783, at *4.  In Ssangyong Corp. v. Vida Shoes Int'l, Inc., No. 03 Civ. 5014 KMW DFE, 2004 WL 1125659 (S.D.N.Y. May 20, 2004), the third party had waived its objections; the Hong Kong law was common law only, there being no statute prohibiting disclosure, and that law contained exceptions for, among other things, "disclosure under compulsion of law."  Id. at *6.  U.S. v. Chase Manhattan Bank, N.A., 590 F. Supp. 1160 (S.D.N.Y. 1984), involved a motion for contempt for failure to comply with an earlier order to comply with an IRS subpoena issued to a United States bank.

inappropriate and misplaced.  Under FRE 408, Gucci cannot introduce a settlement from a prior action to support its position here.  See Playboy Enters., Inc. v. Chuckleberry Pub., Inc., 687 F.2d 563, 568-569 (2d Cir. 1982) ("Plaintiff's settlement dealings with PLAYGIRL are not admissible as evidence probative of the issues in this case).  The letter attached to Gucci's submission expressly recites that the referenced documents were being produced subject to the terms of an existing settlement agreement.  See Healy Dec. ¶ 22.

Moreover, the events in that case do not assist Plaintiff.  As reflected in a Stipulation and Order entered in that case, the defendant, who maintained an account with a BOC branch in China, had agreed that "the Bank of China account identified in the March 26 Order [i.e., the temporary restraining order calling for disclosure and asset freezing] shall be treated in accordance with the terms and the spirit of the March 26 order, including but not limited to the asset restraint and the disclosure requirement."  Healy Dec. Ex. F at 2-3.  Professor Wu confirms that disclosure is not prohibited if the customer has consented.  Wu Dec. n. 11.  There is no consent here.  BOC in MyReplicaHandbag did express concerns as to whether this agreement was a sufficient consent to authorize complete disclosure and freezing by BOC, but in light of the existence of the stipulation and order, the Bank's agreement, as part of a settlement, to allow Gucci to inspect account records in confidence, hardly demonstrates that BOC is not subject to Chinese secrecy laws here.  There was no determination by the Court in MyReplicaHandbag that such prohibitions do not exist or are not enforced in China, and the Court never issued an opinion on whether or not BOC should be forced to produce documents in violation of Chinese law.  See Healy Dec. ¶¶ 20, 24.

**B.    The Subpoena Should Not Be Applied Extraterritorially**

In <u>Morrison</u>, the Supreme Court reaffirmed the rule that "unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions."  130 S.Ct. at 2877 (citations and internal quotations omitted).  The Court rejected an attempt by plaintiffs to apply provisions of the Securities Exchange Act of 1934 extraterritorially, abrogating the Second Circuit's long standing "conduct and effects test" for extraterritorial application.  <u>Id.</u> at 2878.

The Second Circuit has since made clear that <u>Morrison</u> means what it says.  In <u>Norex</u>, the court applied the "bright line test" set forth in <u>Morrison</u> and held that since the civil RICO statute "is silent as to any extraterritorial application" it did not apply extraterritorially.  <u>Norex</u>, 2010 WL 4968691, at *3.  In its ruling the court rejected an argument that because RICO applies to any "enterprise which is engaged in, or that activities of which affect, interstate or <u>foreign</u> commerce" (emphasis added) it should be construed to have a broader application.  <u>Id.</u>

The Subpoena was issued under Federal Rule of Civil Procedure 45.  The enacting statute, the Federal Rules generally and Rule 45 itself are all "silent as to any extraterritorial application."  <u>Id.</u>  Under <u>Morrison</u> and <u>Norex</u>, Rule 45, and the Subpoena issued under it, should have no extraterritorial application.  Accordingly, Gucci's effort to obtain information that is not located here, and is not under the control of the New York Branch of BOC, should be denied.

## C.     Even If There Were Grounds To Compel Production Of Information In China Gucci Must Indemnify BOC For Any Expense Resulting Therefrom

Rule 45(C)(1)(b)(ii) mandates that any order to compel "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  As noted, BOC will be subject to sanction and criminal penalties and civil liability to its customer for complying with any such order.  Under the plain terms of Rule 45, an order to compel must

protect BOC from such expense, so if the Court orders discovery it should be conditioned on

Plaintiffs indemnifying BOC for any cost or expense that flows therefrom.  Rule 45(C)(1)(b)(ii).

## II.   PLAINTIFFS' MOTION TO COMPEL A STATEMENT OF COMPLIANCE WITH THE COURTS ORDERS SHOULD BE DENIED AS A BACK DOOR ATTEMPT TO OBTAIN DISCOVERY

Plaintiffs' request to compel the Bank to confirm or deny its compliance with the Orders

is really an alternative request for discovery as to whether there are accounts in China.  Since

Plaintiffs are not entitled to such discovery, this aspect of the motion should also be denied.[8]

## III.   THE DISTRICT COURT DOES NOT HAVE THE AUTHORITY TO ISSUE A PRE-JUDGMENT EXTRATERRITORIAL RESTRAINT DIRECTED AT ASSETS HELD BY A THIRD PARTY

None of the grounds cited in the Orders for the asset restraint order supports that relief.

### A.   Article 62 Of The N.Y. CPLR Does Not Apply Extraterritorially

The "separate entity" rule has been long recognized under New York law and in banking

law generally.  See Fid. Partners, 921 F. Supp. at 1119 (separate entity rule recognized "by

courts throughout the country").  Under that rule "each branch of a bank is a separate entity, in

no way concerned with accounts maintained by depositors in other branches or at the home

office." Lok Prakashan Ltd. v. India Abroad Publ'n, Inc., No. 00 Civ. 5862 (LAP), 2002 WL

1585820, at *1 (S.D.N.Y. July 16, 2002) (citation and internal quotation omitted); see also

Motorola Credit Corp. v. Uzan, 288 F. Supp. 2d 558, 560 (S.D.N.Y. 2003).  The situs of an

account is at the branch where the account is carried.  See Allied Mar., Inc. v. Descatrade, SA,

No. 09-5329-cv, 2010 WL 3447882 at *3 (2d Cir. Sept. 3, 2010) ("[B]ecause Descatrade's

account with BNP Paribas is in Paris – and only in Paris – that account cannot be attached in

---

[8]   Gucci contends that BOC should be compelled to "comply with this Court's Orders" by confirming whether it has frozen assets (Pl. Mem. at 3), but the Orders do not call for such confirmation and the Lanham Act does not provide for it.  See also 15 U.S.C. § 1116 (providing that a court may require defendant to confirm compliance with a preliminary injunction).

New York"); see also John Wiley & Sons, Inc. v. Kirtsaeng, No. 08 Civ. 7834 (GEL) (DCP), 2009 WL 3003242 at *3 (S.D.N.Y. Sept. 15, 2009).[9]  Neither CPLR Article 62 nor Rule 64 can support extraterritorial application of the restraining notice.

Koehler v. Bank of Bermuda, 12 N.Y.3d 533 (2009) (Pl. Mem. at 11), does not authorize a prejudgment asset freeze of deposits at BOC in China by service of an attachment on BOCNY. In Koehler, the court addressed judgment enforcement remedies, and confirmed that prejudgment attachments are "based on jurisdiction over property" (not in personam jurisdiction over the third party).  Id. at 37.  Koehler also did not address and does not alter the separate entity rule, as reflected in Allied and John Wiley, both decided post-Koehler.

Gucci's argument that this Court has "jurisdiction" over Bank of China does not alter this conclusion.  Pl. Mem. at 10, 17-18.  The separate entity rule provides that even where jurisdiction is predicated on the presence in New York of a bank branch, the New York branch is to be treated as a separate entity from the non-U.S. head office and branches for purposes of determining whether pre-judgment attachment or post-judgment enforcement process served on the New York branch reaches assets abroad.  Thus, regardless of whether there is a basis for jurisdiction, under the separate entity rule the non-U.S. head offices and branches (and the assets they may hold) are not viewed as "present" in New York for purposes of attachment by reason of the presence of the branch.  See Lok Prakashan, 2002 WL 1585820, at *1 (denying asset freeze directed at accounts located in Indian branch of Indian bank with New York branch); Motorola, 288 F. Supp. 2d at 560.

---

[9]      The separate entity rule has significant choice of law implications, particularly in the international context. See Citibank, N.A. v. Wells Fargo Asia Ltd., Brief for the United States as Amicus Curiae Supporting Petitioner, No. 88-1260, 1989 WL 1126987, at *14 (U.S. 1989) ("In terms of international banking law, the separate entity doctrine thus gives recognition to the fact that any banking operation in a foreign country is necessarily subject to the foreign sovereign's own laws and regulations regarding such matters as the timing and amount of withdrawals; rates of interest; convertibility into foreign currency; local capital, reserve and insurance requirements; and the scope of permissible activities . . . If a deposit made in one country could be converted into an obligation payable in another country, however, these laws and regulations could be readily evaded.").

**B.     Section 1116 Of The Lanham Act Does Not And Cannot Support The Issuance Of A Restraining Order Reaching Extraterritorial Assets**

1.     <u>The Lanham Act Does Not Provide For Restraints Against Assets</u>

Section 1116 of the Lanham Act provides that courts have the right to grant injunctions to "prevent the violation of any right of the registrant of a mark . . . ."  It does not provide for a restraint of assets, pre-judgment or post-judgment.  Indeed, Gucci's cases (Pl. Mem. at 10) do not rely on Section 1116(a) for authority to issue such an order.  <u>See</u> <u>N. Face Apparel Corp.</u> v. <u>TC Fashions, Inc.</u>, No. 05 Civ. 9083 (RMB), 2006 WL 838993, at *3 (S.D.N.Y. March 30, 2006).

2.     <u>The Lanham Act Does Not Apply Extraterritorially</u>

Even if Section 1116 did provide for a pre-judgment asset restraint, that restraint cannot apply extraterritorially.  The Lanham Act, and Section 1116(a) are silent as to extraterritorial application.  <u>Cf.</u> <u>ITC Ltd.</u> v. <u>Punchigini</u>, 482 F.3d 135, 155 (2d Cir. 2007) ("The principle of territoriality is basic to American trademark law").  Under <u>Morrison</u> and <u>Norex</u>, the statute cannot be applied to records and assets held by a third party abroad.

**C.     The District Court Does Not Have The Inherent Equitable Power To Issue An Extraterritorial Pre-Judgment Asset Restraint**

1.     <u>The Asset Freeze Is Barred By Grupo Mexicano</u>

Federal courts do not have the inherent equitable authority to issue global pre-judgment asset restraints in civil cases to secure an award of damages.  <u>See</u> <u>Grupo Mexicano</u>, 527 U.S. at 310 (rejecting notion that "a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed").[10]  Yet that is what Plaintiff seeks to do through the Court's Orders.  <u>See</u> <u>id.</u> at 330-

---

[10]     The fact that Gucci could not reach assets abroad through an attachment order is itself confirmation that such relief is not available under the Court's inherent power. <u>See</u> <u>id.</u> at 330-1 ("[t]he remedy sought here could render [FRCP] 64, which authorizes use of state prejudgment remedies, a virtual irrelevance.  Why go through the trouble of complying with local attachment and garnishment statutes when this all-purpose prejudgment injunction is available?").

31.  In Plaintiffs' words (Complaint at 35, ¶ 11), the freeze order was intended to assure "that Plaintiffs' right to damages set forth in this Complaint is not later rendered meaningless." (Emphasis added).

In an apparent attempt to avoid Grupo Mexicano (and rewrite its Complaint), Gucci matter-of-factly states that it has an "equitable" claim for Defendants' profit.  Pl. Mem. at 10.  But it does not offer any analysis to support the proposition that a request to recover profits under Section 1117(a) of the Lanham Act is necessarily an equitable one.[11]

"An award of the trademark infringer's profits was traditionally rationalized as a way of compensating the plaintiffs for sales lost to the infringer."  5 McCarthy on Trademarks and Unfair Competition § 30.59 (4th ed.).  More recently, the courts have identified three distinct bases for an award of profits under the Lanham Act:  (1) the defendant has been unjustly enriched; (2) the plaintiff has sustained damages from the infringement; or (3) such an award is necessary to deter a willful infringer from doing so again.  See id; George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992).  Where a plaintiff in a trademark infringement action seeks an award of the defendant's profits as a proxy for damages, that claim is properly viewed as a legal rather than an equitable claim.  See Oxford Indus., Inc. v. Hartmarx Corp., No. 88 C 0322, 1990 WL 65792, at *4 (N.D. Ill. May 2, 1990); Daisy Group, Ltd. v. Newport News, Inc., 999 F. Supp. 548, 551 (S.D.N.Y. 1998) (an award of profits based on deterrence, or used as

---

[11]      The cases cited by Gucci assume that a claim for profits is equitable and that therefore a pre-judgment asset freeze is appropriate.  See Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 986-87 (11th Cir. 1995), cited in N. Face Apparel Corp., 2006 WL 838993, at *3; see also, Balenciaga American, Inc., et al. v. Sean Dollinger, No. 10 Civ. 2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010).  But they do not analyze whether in fact such a claim is equitable.  As noted in text, claims such as those put forth by Gucci here are not equitable.  Gucci does not assert a claim for "specific funds" (Pl. Mem. at 10), a fact that is only highlighted by its citation of Quantum Corp. Funding Ltd. v. Assist You Home Health Care Svcs. of Va., LLC, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001).  In that case, plaintiff brought an action (not a trademark case) to enforce a lien against defendants' assets.

a surrogate for a damage award is a legal remedy); see also Ideal World Mktg., Inc. v. Duracell, Inc., 997 F. Supp. 334, 338 (E.D.N.Y. 1998).

That is what Gucci does here.  Its request for profits is contained in a single paragraph lumped together with a request for damages.  See Complaint at p. 33 ¶ 2 (requesting that the court "[d]irect defendants to account to Plaintiffs for their profits and order that the Plaintiffs recover their damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages . . . ").  Gucci does not characterize its claim as one for unjust enrichment.  Nor does it seek one of the forms of equitable remedy, such as a constructive trust, or an equitable lien, that might lend some credence to the assertion that Gucci's request for profits is equitable.[12]  And neither the relief sought in the Complaint nor the Orders were limited to specific funds that allegedly represented Defendants' unlawful profits or were subject to some claimed equitable interest (constructive trust or lien).  Indeed, the Complaint's request for an asset freeze confirms the nature of the claim asserted and relief sought.  Gucci did not seek restraint of a specific fund.  Rather, Gucci sought an unlimited global asset freeze "so that Plaintiffs' right to the **damages** set forth in this Complaint is not later rendered meaningless." Complaint at p. 35 ¶ 11 (emphasis added).  The remedy sought by Gucci is "fundamentally compensatory" and therefore "legal in nature."  See Alcan Intern. Ltd. v. S.A. Day Mfg. Co., Inc., 179 F.R.D. 398, 402 (W.D.N.Y. 1998).[13]

---

[12]     That Section 1117 refers to "principles of equity," does not support Gucci's argument.  That language applies to each of the three categories of relief specified in the section, namely profits, damages ("which are indisputably legal"), and costs.  See Ideal World, 997 F. Supp. at 339.  In addition, Section 1117 notes that any sum awarded "shall constitute compensation and not a penalty."  Id. (citing 15 U.S.C. § 1117(a)).  "This language lends support to the [ ] conclusion that an award of profits is intended to be compensatory and is therefore akin to a legal damages remedy."  Id.

[13]     Although ignored by Gucci here, in prior trademark infringement actions brought by Gucci, courts have determined the conclusion would be the same if the rationale supporting a profits award was deterrence.  See Gucci Am., Inc. v. Accents, 994 F. Supp. 538, 540 (S.D.N.Y. 1998).

The fact that Plaintiffs also seek an "accounting" is of no consequence.  The Supreme

Court has held that an action for trademark infringement seeking damages is an action at law, not

equity, regardless of whether Gucci calls the relief it seeks an accounting.  Dairy Queen, Inc. v.

Wood, 369 U.S. 469, 478 (1962) (absent a showing that an inquiry into the amount claimed

would be "too complicated for the jury adequately to handle alone," there was no basis to view

plaintiff's requested relief as a request for an equitable accounting).  In Daisy Group, the court

relied on Dairy Queen and specifically found that a claim for an accounting of profits (in a

Lanham Act case) did not give rise to an equitable claim.  See Daisy Group, 999 F. Supp. at 552

("[A]n action for trademark infringement is legal, and that conclusion is not altered merely by

calling the requested remedy an 'accounting'"); see also Oxford, 1990 WL 65792, at *6 (an

accounting for profits is a legal remedy); Kennedy v. Lakso Co., 414 F.2d 1249, 1252 (3d Cir.

1969) ("It is similarly indecisive whether plaintiff affixes the label of 'accounting' to the remedy

he seeks.  For the plaintiff must always establish the amount which he is entitled to recover.");

Alcan, 179 F.R.D. at 400 (claim of accounting for profits under Lanham Act is legal remedy).

Finally, that Plaintiffs seek some equitable relief (e.g., an injunction against continued

violation of Gucci's trademarks), does not support a pre-judgment asset freeze, as the Supreme

Court made clear in Grupo Mexicano.  There, the Court cited with approval its earlier decision in

De Beers Consol. Mines v. U.S., 325 U.S. 212, 222 (1945), where the Court held that a claim for

a permanent injunction prohibiting violation of the Sherman Act did not support a pre-judgment

order, restraining defendant from transferring assets, that was intended to secure compliance with

the final relief sought.  Even in an equitable action, intermediate relief can only be granted if it is

of the same "character" as that which may be granted finally.  Grupo Mexicano, 527 U.S. at 327

(citing De Beers, 325 U.S. at 222-223).  As the Court cautioned, the "flexibility [of equity] is

confined within the broad boundaries of traditional equitable relief," and granting relief beyond those boundaries is "to invoke a default rule not of flexibility but of omnipotence." <u>Grupo Mexicano</u>, 527 U.S. at 322.  That caution has particular force in circumstances such as these, where Gucci seeks to constrain the conduct of a third party acting in a foreign country.

2.  Even If Available, A Pre-Judgment Asset
Freezing Does Not Apply Extraterritorially

Any inherent equitable power of the court to issue pre-judgment injunctive ruling is subsumed by Federal Rule of Civil Procedure 65.  <u>See Grupo Mexicano</u>, 527 U.S. at 318-19 ("[t]he substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief are not altered by [Rule 65] and depend on traditional principles of equity").  Nowhere in the language of Rule 65 is there any indication that Congress intended the rule to apply extraterritorially.  Thus, based on <u>Morrison</u> and <u>Norex</u>, Rule 65, and any preliminary injunction issued pursuant to it, does not have extraterritorial application.[14]

**D.  First National City Bank Does Not Support Plaintiffs' Position**

In <u>First National</u> (Pl. Mem. at 10-11), the court addressed an action brought by the United States against banks and other institutions which held assets of the taxpayer seeking to enforce a lien on those assets created by the Internal Revenue Code.  <u>U.S.</u> v. <u>First Nat'l City Bank</u>, 321 F.2d 14, 16-7 (2d Cir. 1963), *rev'd*, 379 U.S. 378, 379 (1965).  The pre-judgment restraining order had been issued under 26 U.S.C. § 7402(a), which broadly authorized any injunction "necessary or appropriate for the enforcement of the *internal revenue laws*."  <u>First National</u>, 379 U.S. at 380 (emphasis added).

---

[14] Even if a pre-judgment restraint could be issued, it should be limited to those assets that can be traced to illegal activity.  <u>See</u> <u>Levi Strauss</u>, 51 F.3d at 987 (Pl. Mem. at 10).  Particularly where the assets Plaintiffs' seek to restrain are held by third parties, this Court should not impose a sweeping freeze of any and all assets and should not require a third party such as BOC to demonstrate what assets are not traceable to allegedly illegal activity as a predicate to limiting the scope of the restraint.

In upholding the injunction, the Supreme Court found that courts of equity may "go much farther" in granting relief "in furtherance of the public interest" than when only "private interests are involved."  Id. at 382; see also Norex, 2010 WL 4968691, at *3 (finding civil RICO did not apply extraterritorially, but declining to extend that holding to criminal RICO); Ings, 282 F.2d at 152 (highlighting difference between a subpoena issued by "the government" and one issued in a private action).  Indeed, Grupo Mexicano distinguished First National, specifically noting that the tax laws and the public interest were involved.  Grupo Mexicano, 527 U.S. at 326.

Moreover, the bank defendant in First National was a United States bank, and the head office of the bank, located in New York, conceded that it had the ability to prevent transfer of assets located in accounts at its branches abroad.  379 U.S. at 384.  Finally, the court in First National emphasized that there was no showing that freezing the foreign account would violate foreign law or place the bank at risk of double liability.  Id.

None of the factors that supported relief in First National are present here:  (1) This action is brought by a private party, not the United States, and involves private interests.  (2) BOC is a third party, not a defendant, and Gucci does not seek to enforce an equitable lien on assets held by BOC.  Gucci seeks an award of money, not recovery of a specific fund.  (3) Section 1116(a) of the Lanham Act is not remotely comparable to Section 7402(a) of the Tax Code used in First National.  Section 1116(a) authorizes injunctions to prevent violation of plaintiffs' trademark rights.  It does not authorize "any relief necessary or appropriate" to enforce the Lanham Act.  (4) The New York Branch of the BOC does not have authority over the head office or Chinese branches of the Bank, and BOC in China is prohibited from complying with the freeze order.  Beauchemin Dec. ¶ 3; Wu Dec. ¶ 16.  (5) In contrast to First National, where there was no demonstrated risk of sanctions or civil liability to the customer, BOC would be

liable to its customers and subject to sanctions because under Chinese law, the bank can only freeze assets pursuant to a direction from Chinese authorities.

In <u>Lok Prakashan</u>, Judge Preska refused to grant a post-judgment freeze order covering assets defendant held at the Bhadra (India) branch of the Bank of Baroda, an Indian bank with a New York branch.  Noting that (as here) plaintiff had served the New York branch of a foreign bank, not a bank head office located in New York, and that (as here) the New York branch did not have any information as to accounts in the Indian branches of the Bank of Baroda, the court found that the separate entity rule precluded the requested relief.  <u>Lok</u>, 2002 WL 1585820, at *1. Distinguishing <u>First National</u>, Judge Preska held that, under the separate entity rule, the head office and its Indian branches were not before the court – "Bank of Baroda is not present here" – and could not be subject to a freeze order.  <u>Id.</u> at 2.  The same rationale applies here.[15]

### E.   Under Any Circumstances, The Court Should Not Extend The Asset Freeze Order To BOC In China

While the court in <u>First National</u> upheld a preliminary injunction that applied extraterritorially, it did so with the explicit caveat that there had been no showing that freezing the foreign accounts would violate foreign law or "place respondent under any risk of double liability."  379 U.S. at 532.  Here, in contrast, Bank of China has shown that it would be violating Chinese law and placing itself at the risk of double liability if it freezes property of the Defendants in China at the direction of a U.S. court.  Wu Aff. ¶¶ 19-20.  As Professor Wu states, a Chinese court will not recognize an order from a New York court directing a Chinese bank to turn over funds on deposit in China.  Wu Aff. ¶ 16.[16]

---

[15]   <u>Balenciaga</u> (Pl. Mem. at 11), is equally distinguishable.  That case addressed the court's authority to enjoin the defendant (not a third party) from transferring assets.  In addition, the defendants there did not cite <u>Morrison</u> and the court was evidently not aware of the <u>Morrison</u> decision.  <u>See id.</u> at 8 (noting that defendants cited only one case to support their position, which was inapposite).

[16]   Subjecting Bank of China to liability in these circumstances may well also violate due process.  <u>See W. Union Tel. Co.</u> v. <u>Pennsylvania</u>, 368 U.S. 71, 75 (1961) (concluding that a person "is deprived of due process of law

In any event, under the Restatement, this Court should not require BOC to produce from China the information Gucci seeks.  See Restatement (Third) of Foreign Relations Law § 441(1) ("In general, a state may not require a person . . . to do an act in another state that is prohibited by the law of that state or by the law of the state of which he is a national . . . . ")  These principles apply with greater force to the more intrusive act of requiring BOC to restrain assets in China in violation of Chinese law than to discovery.  See supra page 8; see also Kosmond v. Kosmond, 830 N.E.2d 596, 602 (Ill. 2005) (using Restatement factors, reversing lower court TRO and PI which did not give "meaningful consideration to the possible effect of German law").[17]

## IV.   PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS FEES

Plaintiffs' claim for attorneys' fees under Federal Rule of Civil Procedure 37(a)(5) (Pl. Mem. at 22) is also without merit.  That subsection does not authorize an award of attorneys' fees against a non-party recipient of a document subpoena.  Compare 37(a)(5) (providing for an award of reasonable expenses against "party or deponent") with 35(a)(2) (distinguishing motions made against a "party" and a "non-party").  Even if Rule 37(a)(5) applied, the court "must not"

---

if he is compelled to relinquish it [property] without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment").

[17]      Plaintiffs' argument that BOC must be forced to violate Chinese law simply because it has brought suit in the United States before on unrelated matters is specious.  Pl. Mem. at 12.  None of the Restatement factors discussed above focus on whether a plaintiff has brought a U.S. suit before.  Nor do any of the cases cited by Gucci support its position.  For example, First National City Bank v. IRS, 271 F.2d 616 (2d Cir. 1959), involved an IRS subpoena served under the Code at the head office of a U.S. bank, and the court concluded that the Bank's control over the documents requested had been sufficiently demonstrated, and no showing had been made that "either the constitution or the laws of Panama or international comity, prevented production."  Id. at 618.  The case predates Ings, which distinguished First National on grounds equally applicable here, and Trade Development Bank.  As discussed above, BOCNY does not have control over records in China, and Chinese law, as well as international comity militate against ordering BOC in China to comply with the Subpoena or the Orders.  The other cases cited are similarly inapposite.  United States v. Bank of Nova Scotia, 740 F.2d 817 (11th Cir. 1984), addressed a contempt citation for repeated violations of a court order (not present here) to comply with a grand jury subpoena (not present here); the court relied, among other things, on  the "broad investigatory powers of the grand jury;" and the fact that there were many exceptions to the Cayman Islands bank secrecy law at issue.  In re One Grand Jury Subpoena, 1989 WL 49165 (D. Conn. 1989), is distinguishable for many of the same reasons, and relied on, among other things, the U.S.'s "strong interest in enforcing its criminal laws. . . . [and] [i]n particular . . . prosecuting tax fraud."  Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468 (9th Cir. 1992), involved judgment enforcement discovery against a party, which had waived its objections, not a third party bank which timely and properly raised objections.

award fees if the party opposing a motion compel had "substantial justification" for doing so. BOC has shown that its position is more than substantially justified. See Pierce v. Underwood, 487 U.S. 552, 565 (1988) (substantially justified under Rule 37 does not mean "justified to a high degree" but rather whether there is a "genuine dispute"); J.S. v. Attica Cent. Schs, No. 00-cv-513S(F), 2009 WL 230649, at *2-4 (W.D.N.Y. Jan. 29, 2009); Proa v. NRT Mid Atlantic, Inc., 633 F. Supp. 2d 209 (D. Md. 2009) (finding that "a legal position in 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact'").

## V.    ALTERNATIVELY, THE COURT SHOULD MODIFY THE ORDERS

Although BOC does not believe that the Orders reach assets held by BOC in China, BOC respectfully requests that the Court modify the Orders to make that limitation clear. The relevant authority, outlined above, supports that relief.

Contrary to Plaintiffs' claim, BOC has not waived its right to request modification of the Order. Pl. Mem. at 11-12. The PI permits a motion to be made upon two days written notice; it does not specify a date by which BOC was required to make such a motion. There is no general rule that bars such relief because of delay. See Canal Auth. of the State of Fla. v. Callaway, 489 F.2d 567, 578 (5th Cir. Fla. 1974) (unless plaintiffs have "established that the failure to take an earlier appeal is somehow relevant to one of the prerequisites for a preliminary injunction . . . the delay is irrelevant to the proper disposition of the present motion to modify").[18]

---

[18]    Neither of the cases cited by Plaintiffs support their position. In Maness v. Myers, 419 U.S. 449, 458-59 (1975), the court refused to sanction a lawyer for advising his client, during the trial of a civil case, to refuse to produce subpoenaed materials when "the lawyer believes in good faith that the material may tend to incriminate his client." In La Grande v. Adecco, the court noted that "time and time again, th[e] Court warned Plaintiff of the consequences of his failure to comply." 2006 WL 2806402 at *9 (finding dismissal of pro se litigant's Title VII action appropriate where, for two years, Plaintiff continuously and willfully disregarded the court's orders and warnings).

## CONCLUSION

For the foregoing reasons, the Bank of China respectfully requests that the Court deny the

Plaintiffs' motion to compel.

Dated:  December 22, 2010                    WHITE & CASE LLP


                                             By: /s/ Dwight A. Healy
                                                 Dwight A. Healy
                                                 Marika Maris (of counsel)
                                                 1155 Avenue of the Americas
                                                 New York, New York  10036
                                                 Telephone:  (212) 819-8200
                                                 Facsimile:   (212) 354-8113

                                                 *Attorneys for Bank of China*