UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUCCI AMERICA, INC., ET AL.,

        Plaintiffs,

– against –

WEIXING LI, ET AL.,

        Defendants.

10 Civ. 4974 (RJS)

ECF CASE

---

# NON-PARTY BANK OF CHINA'S
## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER DIRECTING ALTERNATIVE MEANS OF SERVICE

ALLEN & OVERY LLP
Pamela Rogers Chepiga
Lanier Saperstein
Andrew H. Reynard
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

April 28, 2011

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ...............................................................................................................................6

I. PLAINTIFFS' PROPOSED METHOD OF SERVICE THROUGH
BOC HAS NO SUPPORT UNDER THE LAW. ................................................................6

II. PLAINTIFFS' PROPOSED METHOD OF SERVICE THROUGH BOC
WOULD REQUIRE BOC TO ACT CONTRARY TO THE HAGUE
SERVICE CONVENTION AND TO VIOLATE CHINESE LAW. .................................8

    A. China Has Objected to Service by Postal Channels
under the Hague Service Convention. ...................................................................9

    B. Chinese Domestic Law Does Not Permit Foreign Litigants
to Serve Chinese Nationals by Mail.....................................................................10

III. GRANTING PLAINTIFFS' MOTION WOULD IMPOSE UNREASONABLE
BURDENS, RISKS AND COSTS ON BANK OF CHINA .............................................11

IV. BOC IS WILLING TO WORK WITH PLAINTIFFS .....................................................12

CONCLUSION...........................................................................................................................14

## TABLE OF AUTHORITIES

### CASES

Casio Computer Co. v. Sayo,
No. 98CV3772 (WK), 2000 WL 1877516 (S.D.N.Y. Oct. 13, 2000) ..........................................10

Chambers v. Capital Cities/ABC,
159 F.R.D. 441 (S.D.N.Y. 1995) ................................................................................................6

Chazin v. Lieberman,
129 F.R.D. 97 (S.D.N.Y. 1990) ..................................................................................................6

Ehrenfeld v. Salim a Bin Mahfouz,
No. 04 Civ. 9641(RCC), 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) .........................................7

Fed. Home Loan Mortgage Corp. v. Mirchandani,
No. 94 CV 1201 (FB), 1996 WL 534821(E.D.N.Y. Sept. 18, 1996) ............................................8

Intercontinental Indus. Corp. v. Luo,
No. CV 10-4174-JST (Ex), 2011 WL 221880 (C.D. Cal. Jan. 20, 2011)..................................8, 10

KPN B.V. v. Corcyra D.O.O.,
No. 08 Civ. 1549(JGK), 2009 WL 690119 (S.D.N.Y. Mar. 16, 2009) ..........................................7

Prewitt Enters. Inc. v. Org. of Petroleum Exporting Countries,
353 F.3d 916 (11th Cir. 2003) ..................................................................................................11

Prediction Co. LLC v. Rajgarhia,
No. 09 Civ. 7459(SAS), 2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) .......................................7

SEC v. Anticevic,
No. 05 CV 6991(KMW), 2009 WL 361739 (S.D.N.Y. Feb. 13, 2009) .......................................10

Sierra Rutile Ltd. v. Katz,
No. 90 Civ. 4913(JFK),1994 WL 185751(S.D.N.Y. May 11, 1994) ............................................6

United States v. Distribuidora Batiz CGH, S.A. DE C.V.,
No. 07cv370-WQH-JMA, 2009 WL 2487972 (S.D. Cal. Aug. 10, 2009) ....................................8

United Artists Corp. v. Masterpiece Prods., Inc.,
221 F.2d 213 (2d Cir. 1955).......................................................................................................7

United States v. Machat,
No. 08 Civ. 7936(JGK), 2009 WL 3029303 (S.D.N.Y. Sept. 21, 2009) .......................................7

United States v. Padilla,
  No. CIV.S-01-2301 FCD/JF, 2002 WL 471838 (E.D. Cal. Feb. 25, 2002) ...................................7

**RULES**

Fed. R. Civ. P. 4(f)(3) ................................................................................................7, 8, 10, 11

**OTHER AUTHORITIES**

1993 Advisory Committee Notes, Fed. R. Civ. P. 4(f)(2) ............................................................8

1993 Advisory Committee Notes, Fed. R. Civ. P. 4(f)(3) ............................................................8

**MISCELLANEOUS**

Red Luxury, "Gucci in China: 'We're Not Done'"
http://red-luxury.com/2011/03/03/gucci-in-china-were-not-done/
(last visited April 28, 2011) ........................................................................................................13

Non-party Bank of China ("BOC") respectfully submits this memorandum of law in opposition to Plaintiffs' Motion for an Order Directing Alternative Means of Service (the "Motion") insofar as the Motion relates to BOC.

**PRELIMINARY STATEMENT**

Plaintiffs seek an order from the Court granting them permission to serve seven newly named Defendants who Plaintiffs believe reside in China (the "New Defendants"). Plaintiffs propose three different methods of service: (i) publication of the summons and notice in the Chinese newspaper Beijing News; (ii) service of the summons and notice upon current Defendants Weixing Li, Lijun Xu and Ting Xu with a cover letter requesting that they forward the summons and notice to the New Defendants; and (iii) service of the summons and notice "via personal service on upon BOC's counsel and BOC's New York [Branch], along with a cover letter requesting that it either forward the summons and notice to the New Defendants or provide Plaintiffs with the New Defendants' contact information." (Pls.' Memo at 20.)

BOC takes no position regarding Plaintiffs' proposed alternative means of service via methods (i) and (ii). However, BOC objects to Plaintiffs trying to effect service via method (iii), as it would force BOC to violate the applicable international treaty in effect between the U.S. and China and Chinese domestic law, as well as impose on BOC a significant and unjustifiable burden.

Plaintiffs' Motion should be denied as it relates to BOC and its counsel for at least three independent reasons.

First, Plaintiffs' request that they effect service of the New Defendants through BOC is unprecedented and unsupported by any applicable authority of which BOC is aware. Each of the pertinent cases cited by Plaintiffs in their Motion involved service on a party's

- 2 -

attorney, or, in one case, a party's attorney as well as her daughter. Those cases are inapposite. BOC is not a party to the underlying litigation, and there are no allegations that BOC is the agent of, or BOC's counsel are attorneys for, any of the New Defendants.

Second, Plaintiffs' request would force BOC and Bank of China, New York Branch ("BOCNY") to violate China's agreements under the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Criminal Matters (the "Hague Service Convention") as well as Chinese domestic laws. As set forth in the accompanying declaration of Professor James Feinerman of Georgetown University Law Center, under Chinese law, service on Chinese nationals in connection with a foreign litigation can only be effected through the Hague Service Convention, and China has expressly objected to service by postal channels under the Hague Service Convention.

Third, Plaintiffs' attempt to transfer the burden of finding and serving the New Defendants onto non-party BOC is unjustified and improper. BOCNY, on whom Plaintiffs propose serving its summons with notice, does not have the ability to enter the names of the New Defendants into a database to retrieve their contact information. Further, if BOC has the contact information of the New Defendants as Plaintiffs assert, BOC cannot effect service on behalf of Plaintiffs without violating the Hague Service Convention and Chinese domestic law. Finally, for BOC to provide Plaintiffs with the addresses of the New Defendants would be a violation of Chinese banking laws and regulations, subjecting BOC and its employees to potential fines, penalties, criminal sanctions and jail time.

\*   \*   \*

Plaintiffs essentially argue that they are caught in a Catch-22, whereby they cannot effect service through the Hague Service Convention because they do not have the

contact information for the New Defendants and they cannot obtain the pertinent contact information from either Defendant Lijun Xu—with whom they have settled—or BOC. However, Plaintiffs propose two alternative means of service that do not involve placing BOC and BOCNY in the untenable position of being forced to flout international treaties as well as domestic Chinese law.

Further, BOC's newly substituted counsel confirmed during the meet and confer process with Plaintiffs that BOC is willing to work with Plaintiffs in order to attempt to both obtain documents from the New Defendants (and, for that matter, the current Defendants) and serve the New Defendants pursuant to the relevant Hague Convention procedures.  Plaintiffs, however, rejected BOC's offer, expressing concerns with the effectiveness of the Hague Evidence Convention.  Plaintiffs chose instead to continue to pursue their Motion requesting that BOC violate the relevant international treaties and domestic Chinese laws in an attempt to effect service on the New Defendants.

In order to try to address Plaintiffs' concern with respect to the Hague Evidence Convention, BOC is prepared to take whatever reasonable steps it can in China, including, if permitted, submitting an application to the Central Authority in support of any properly tailored request that Plaintiffs submit pursuant to the Hague Evidence Convention.  BOC is prepared to work with Plaintiffs, but it simply cannot violate the applicable international treaties as well as Chinese domestic law to aid Plaintiffs.  Accordingly, Plaintiffs' Motion, insofar as it relates to BOC and its counsel, should be denied.

## BACKGROUND

On June 25 and October 4, 2010, Plaintiffs filed their Complaint and Amended Complaint, respectively, naming three individual defendants, Weixing Li, Lijun and Xu, Ting

Xu, as well as the companies under which they allegedly conducted business.  Plaintiffs subsequently entered into a confidential settlement agreement with Defendant Lijun Xu and, on November 1, 2010, the Court entered a Final Order and Judgment on Consent against Defendant Lijun Xu.

On February 10, 2011, Plaintiffs submitted an ex parte application for leave to file a Second Amended Complaint because, based on documents received from JP Morgan Chase ("Chase"), they purportedly identified additional individuals who appeared to have received wire transfers in 2009 and 2010 from Defendants Lijun Xu and Ting Xu.  (Weigel Decl. Ex. 1.)  Plaintiffs informed the Court that they were "reluctant" to make the request because they had already moved for default judgment against many of the current Defendants, but they chose to do so anyway.  (Id. Ex. 1 at 3.)

The Court granted Plaintiffs leave to file a Second Amended Complaint on February 23, 2011.  (See Wiegel Decl. Ex. 2.)  Plaintiffs named the following seven New Defendants:  Wenying Guo; Xiaochao Shang; Lei Xu; Fengyuan Zhao; Liqun Zhao; Ming Zhao; and Peiyuan Zhao.  (See Saperstein Decl. Ex. A at ¶¶ 13(b) -13(h).)  Plaintiffs alleged that the purported counterfeiting operation was a family-run enterprise controlled by the Xu-Zhao family.  (Id. ¶ 13(i).)  Notably, however, Plaintiffs do not allege in the Second Amended Complaint that BOC is an agent of any of the Defendants, or that BOC conspired with or aided and abetted any of the Defendants' alleged wrongdoing.  Plaintiffs simply allege that certain of the Defendants maintained accounts at BOC and/or transferred money to accounts located at BOC.

On February 23, 2011, Plaintiffs served BOCNY with a subpoena (the "Subpoena") seeking documents related to the newly identified accounts.  (Wiegel Decl. Ex. 7.)  On March 7, BOCNY served timely objections and responses to the Subpoena.  (Id. Ex. 10.)  As

it had done previously with respect to a prior subpoena, BOCNY advised that it did not have possession, custody or control over information located in any other branch of BOC, and it objected to the extent that producing documents or information in response to the Subpoena "would violate any applicable domestic or foreign law, including banking, commercial and criminal laws of the People's Republic of China." (Id.)

Plaintiffs filed this Motion on March 31, 2011. On April 7, newly substituted counsel for BOC contacted Plaintiffs in hopes of coming to an agreement that would avoid the need for further briefing on Plaintiffs' Motion insofar as it relates to BOC. (See Saperstein Decl. Ex. B.) Specifically, BOC indicated that it was prepared to draft for Plaintiffs' review an application for documents through the procedures set forth in the Hague Evidence Convention, and that BOC would work with the Plaintiffs to effect service of the New Defendants through the Hague Service Convention. (Id. at 2.) Plaintiffs rejected BOC's offer and declined to withdraw their Motion as it relates to BOC, stating that they "do not have confidence in the effectiveness of using the Hague [Evidence] Convention." (See Saperstein Decl. Exs. C and D.)

# ARGUMENT[1]

The Court should decline to allow Plaintiffs to effect service on the New Defendants by service of the summons and notice "via personal service on upon BOC's counsel and BOC's New York [Branch], along with a cover letter requesting that it either forward the summons and notice to the New Defendants or provide Plaintiffs with the New Defendants' contact information." (Pls.' Memo at 20.)

## I.    PLAINTIFFS' PROPOSED METHOD OF SERVICE THROUGH BOC HAS NO SUPPORT UNDER THE LAW

Plaintiffs do not cite any cases in which service of process was effected using the method they have requested here, and BOC has not been able to find any case either. Plaintiffs assert that "Federal courts have . . . permitted service of process via a third party where a plaintiff does not have a current address for a defendant." (Pls.' Memo at 4 (citing cases).) But every single case that Plaintiffs cite in support of that proposition involves service on a party's

---

[1] During the meet and confer process, Plaintiffs stated that BOC did not have standing to oppose the Motion. (See Saperstein Decl. Ex. C at 1.) Plaintiffs appeared at the time to believe that BOC was challenging the Motion "on behalf of . . . third parties" such as the New Defendants. (Id.) However, BOC made clear that it intended only to challenge the Motion insofar as it related to BOC. To the extent that Plaintiffs continue to believe that BOC lacks standing to oppose their Motion, they are incorrect. The Motion proposes to involve BOC in effecting service on the New Defendants in a manner that implicates BOC's substantive rights and could result in injury, thus giving BOC standing to challenge the Motion. See Chambers v. Capital Cities/ABC, 159 F.R.D. 441, 444 (S.D.N.Y. 1995) ("Under basic standing rules, anyone significantly injured by allegedly improper behavior or threatened behavior ordinarily has standing to raise the issue insofar as that party is affected."); cf. Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913 (JFK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994) (finding that parties had standing to move to quash third-party subpoenas because the parties had "sufficient privacy interest in the confidentiality of records pertaining to their personal affairs so as to give them standing to challenge the subpoenas"); Chazin v. Lieberman, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) (finding that standing existed where party had "personal privacy rights" in the issue being litigated). Indeed, although Plaintiffs did not serve BOC with a copy of their request to file a Second Amended Complaint, they did serve BOC with their Motion, illustrating that they recognize that BOC's rights and interests are implicated by the Motion.

attorney, not on the party's purported bank. See Prediction Co. LLC v. Rajgarjhia, No. 09 Civ. 7459 (SAS), 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (permitting service on defendant's New York counsel with a request that such counsel forward the notice and summons to defendant in India); United States v. Padilla, No. CIV.S-01-2301-FCD/JF, 2002 WL 471838, at *2 (E.D. Cal. Feb. 25, 2002) ("[T]he court deems an acceptable method of service on defendant . . . to be personal service . . . on her daughter and her attorney in another matter."); KPN B.V. v. Corcyra D.O.O., No. 08 Civ. 1549 (JGK), 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (service on defendant's counsel where he had been in touch with defendants and had made a limited appearance on behalf of defendant permissible); United States v. Machat, No. 08 Civ. 7936 (JGK), 2009 WL 3029303, at *4 (S.D.N.Y. Sept. 21, 2009) ("service on [defendant] . . . by email and by service on her attorney . . . will be authorized"); Ehrenfeld v. Salim a Bin Mahfouz, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *2-*3 (S.D.N.Y. Mar. 23, 2005) (finding that "[s]ervice on Defendant's U.K. and U.S. attorneys would satisfy" standards under Rule 4(f) where attorneys have been in contact with defendant).

Plaintiffs do not allege that BOC or BOC's New York counsel are the agents of any of the New Defendants for this or any other matter. Plaintiffs do not allege that BOC has any special relationship with the New Defendants. Plaintiffs do not allege that BOC has any contractual arrangements with the New Defendants that would authorize it in any way to act as a process server. Plaintiffs simply allege that the New Defendants maintain bank accounts at BOC in China into which Defendants Lijun Xu and Ting Xu wired funds. That is not the sort of relationship that would satisfy the requirements of Rule 4(f)(3). United Artists Corp. v. Masterpiece Prods., Inc., 221 F.2d 213, 217 (2d Cir. 1955) ("[b]asic considerations of fairness . . . dictate that potential parties cannot be forced to enter litigation without due service of process

upon them."); Fed. Home Loan Mortgage Corp. v. Mirchandani, No. 94cv1201 (FB), 1996 WL 534821, at *4 (E.D.N.Y. Sept. 18, 1996) ("service must comply with due process, which requires that the service be 'reasonably calculated, under all the circumstances, to apprise the parties of the pendency of the action and afford them the opportunity to present their objections'") (citation omitted); accord United States v. Distribuidora Batiz CGH, S.A. DE C.V., No. 07cv370-WQH-JMA, 2009 WL 2487972, at *3-*4, *9 (S.D. Cal. Aug. 10, 2009) (quashing attempted service of process where defendants had no office, place of business or ownership interest in the served entity, but giving plaintiff time to effect service where plaintiff had "every intention of serving the defendants in Mexico, pursuant to the Hague Convention or some other internationally agreed means," and that plaintiff "may discover the [parties'] addresses through discovery on the served Defendants or non-parties").

Plaintiffs' request as it relates to BOC is unprecedented, and respectfully, it should be denied.

## II. PLAINTIFFS' PROPOSED METHOD OF SERVICE THROUGH BOC WOULD REQUIRE BOC TO ACT CONTRARY TO THE HAGUE SERVICE CONVENTION AND TO VIOLATE CHINESE LAW

Not only is Plaintiffs' requested method of service involving BOC unprecedented, but it would also require BOC to act contrary to China's agreements under the Hague Service Convention and to violate Chinese domestic law.

Plaintiffs seek to serve the New Defendants pursuant to Rule 4(f)(3). (Pls.' Memo at 3, 10-11.) "To satisfy Rule 4(f)(3), the service 'must be (1) directed by the court; and (2) not prohibited by international agreement." Intercontinental Indus. Corp. v. Luo, No. CV 10-4174-JST (Ex), 2011 WL 221880, at *2 (C.D. Cal. Jan. 20, 2011). Also, for any proposed method of service under rule 4(f)(3), an "earnest effort should be made to devise a method of

communication that is consistent with due process and minimizes offense to foreign law." 1993 Advisory Committee Notes, FED. R. CIV. P. 4(f)(3); accord 1993 Advisory Committee Notes, FED. R. CIV. P. 4(f)(2) ("Service by methods that would violate foreign law is generally not authorized.").

### A. China Has Objected to Service by Postal Channels under the Hague Service Convention

The Hague Service Convention, which went into force as between the U.S. and China in 1991, provides the method under Chinese law by which a foreign litigant can effect service of a Chinese national. (Feinerman Decl. ¶ 13.)[2] China takes its treaty commitments seriously, and has adopted laws expressly providing for enforcement of its Hague Service Convention obligations. (Id. ¶ 12.) Indeed, in its 2008 response to a questionnaire to contracting states, China stated that in 2007 it had received 2,209 incoming requests for service on its citizens and had effected 74 percent of them within 6 months. (Feinerman Decl. ¶ 21.)

Despite China' receptiveness to service through the Hague Service Convention, however, China has not adopted all of its provisions. Contrary to Plaintiffs' representation that "China has not objected to the means of service" proposed by Plaintiffs in their Motion (Pls.' Memo at 17 n.7), China has, in fact, expressly objected to service by postal channels under Article 10(a) of the Hague Service Convention. Indeed, Plaintiffs' own papers confirm that point. (See Weigel Decl. Ex. 11 (declaring "to oppose the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention

---

[2] Plaintiffs assert that "the Hague [Service] Convention is inapplicable where defendant's address is not known." (Pls.' Memo at 17 n.7 (citations omitted).) However, to the extent that Plaintiffs are unable to determine the New Defendants' addresses but BOC is able to determine them in order to carry out Plaintiffs' request to "forward the summons and notice to the New Defendants" (Pls.' Memo at 4), the Hague Service Convention would apply to BOC's attempt to serve the New Defendants. Thus, the Hague Service

[including service through postal channels]"); Feinerman Decl. Ex. C (same).)

U.S. courts have also recognized that China prohibits service of process through postal channels or, for that matter, through personal courier.  See, e.g., Intercontinental, 2011 WL 221880, at *2-*3 (noting that "service . . . cannot be effected by postal channels in China" and holding that, based on "other courts' treatment of private couriers as postal channels, the Court cannot authorize service to [a Chinese defendant] through a commercial carrier pursuant to Rule 4(f)(3) as it is prohibited by international agreement"); accord Casio Computer Co. v. Sayo, No. 98CV3772, 2000 WL 1877516, at *28 (S.D.N.Y. Oct. 13, 2000) (holding that plaintiff had not effected service on an individual in Japan by sending summons and complaint by overnight courier because Japan, which was a signatory to the Hague Service Convention, objected to Article 10(a) and did not allow service by mail).

Accordingly, if BOC or BOCNY were to carry out Plaintiffs' request to "forward the summons and notice to the New Defendants" (Pls.' Memo at 4), it would be acting in direct contravention of China's agreements under the Hague Service Convention.  Such method of service is prohibited and thus does not satisfy the requirements under Rule 4(f)(3).  See SEC v. Anticevic, No. 05 cv 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) ("A court may not order a means of service, pursuant to Rule 4(f)(3), that is prohibited by international agreement.").

### B. Chinese Domestic Law Does Not Permit Foreign Litigants to Serve Chinese Nationals by Mail

China's objection to service by postal channels through the Hague Service Convention is consistent with its domestic law regarding service of process by foreign litigants. Pursuant to Article 261 of the Civil Procedure Law of the People's Republic of China, other than

---

Convention is directly applicable to the relief sought from BOC in Plaintiffs' Motion.

through channels stipulated in international treaties or through diplomatic channels, "no foreign organ or individual may, without obtaining an approval from the relevant authorities of the People's Republic of China, serve documents or conduct any investigation and collection of evidence within the territory of the People's Republic of China." (Feinerman Decl. ¶ 15.) China's domestic law forbids foreign litigants from directly serving Chinese nationals because, as with many other civil law jurisdictions, service of process is regarded as an extension of the state's sovereign power that may not be performed by foreign private persons. (Feinerman Decl. ¶ 9.)

Accordingly, if the Court were to order BOC or BOCNY to "forward the summons and notice to the New Defendants" (Pls.' Memo at 4), they would be directly violating Chinese domestic law. (See Feinerman Decl. ¶¶ 18-19.) Service by such means would likewise not be permitted by Rule 4(f)(3). See Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 924-27 (11th Cir. 2003) (finding that the district court would abuse its discretion "in directing service . . . by registered mail" where such "service was prohibited under Austrian law," and noting that the Court "cannot read [Rule] 4(f)(3) as permitting that which has already been specifically prohibited under [Rule] 4(f)(2)").

### III. GRANTING PLAINTIFFS' MOTION WOULD IMPOSE UNREASONABLE BURDENS, RISKS AND COSTS ON BANK OF CHINA

Putting aside the fact that Plaintiffs' Motion as it relates to BOC is unprecedented under U.S. law and seeks relief from BOC that would force it to violate international treaty and Chinese domestic law, Plaintiffs should not be entitled to shift the burden and expense of finding and serving the New Defendants from themselves to BOC. Plaintiffs alone chose to amend their Complaint to name the New Defendants, despite being "reluctant" to do so. (See Wiegel Decl. Ex. 1 at 3.) Accordingly, Plaintiffs alone should bear the burden and expense of effecting

service on the New Defendants, whether it is through one of the other means of service requested by Plaintiffs that does not involve BOC or otherwise.

BOCNY does not have the ability to enter the names of the New Defendants into a database to retrieve their contact information.  (Saperstein Decl. Ex. E.)  Nor can BOC simply provide Plaintiffs with the New Defendants' contact information (see Pls.' Memo at 20), because doing so would violate China's Commercial Bank Laws and implementing regulations.  These banking laws and regulations set forth the fundamental principle that banks must safeguard the rights of their customers from interference or incursion from any party.  (Feinerman Decl. ¶ 22.)[3]  As such, the laws would likely prohibit the release to Plaintiffs of the New Defendants' addresses (to the extent that BOC could obtain them), and BOC and its employees could face fines, penalties, criminal sanctions and even jail time for violating such laws.  (Id. ¶¶ 25-26.)

## IV.     BOC IS WILLING TO WORK WITH PLAINTIFFS

BOC is willing to work with Plaintiffs in this action.  It is not, however, willing to undertake significant burdens and costs while at the same time risking violation of international treaties and Chinese domestic law in order to help Plaintiffs accomplish their goals.  Indeed, BOC does not object to Plaintiffs serving the New Defendants.  But BOC cannot risk violation of its own laws or international agreements in order to aid Plaintiffs in doing so.

As counsel for BOC informed Plaintiffs, BOC is willing to draft and work with Plaintiffs in submitting an application for documents from the current and New Defendants through the procedures set forth in the Hague Evidence Convention.  (See Saperstein Decl. Ex. B

---

[3]     China's banking laws and regulations reflect a considered decision by the Chinese government that providing some assurance of confidentiality regarding customer information is essential to fostering a modern banking system in China that will be in line with banking systems of other nations.  (See Feinerman Decl. Ex. E ¶ 11.)  They also reflect sensitivity to history, given the traditional reluctance by many Chinese to make use of banks.  (Id.)

at 2.)[4]  Further, in order to try to address Plaintiffs' concern that going through the Hague Evidence Convention may not be successful, BOC is prepared to take whatever reasonable steps it can in China, including, if permitted, submitting an application to the Central Authority in support of any properly tailored request that Plaintiffs submit pursuant to the Hague Evidence Convention.[5]

BOC is prepared to cooperate with Plaintiffs in this action, but respectfully, the Court should not order BOC to undertake substantial burdens and to risk violating Chinese law and international treaties in order to do so.

---

[4]  Indeed, if Plaintiffs had chosen to go through the Hague Evidence Convention back in July 2010 when they served their first Subpoena on BOC-NY, they may very well have already obtained the documents they seek and also could have avoided substantial motion practice in this Court.

[5]  Given that Gucci is reaping the benefits of a "wildly successful presence in China," see Red Luxury, http://red-luxury.com/2011/03/03/gucci-in-china-were-not-done/ (last visited April 28, 2011), it should not find it difficult or burdensome to use the country's specified international procedures in order to obtain the information it needs, especially with the help of BOC.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion, insofar as it relates to BOC and its counsel, should be denied.

Dated:  New York, New York
       April 28, 2011

ALLEN & OVERY LLP

By:  /s/ Lanier Saperstein
   Pamela Rogers Chepiga
   pamela.chepiga@allenovery.com
   Lanier Saperstein
   lanier.saperstein@allenovery.com
   Andrew H. Reynard
   andrew.reynard@allenovery.com

1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Fax: 212-610-6399

*Attorneys for non-party Bank of China*