```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED:  7-13 11                 │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUCCI AMERICA, INC, *et al.*,

                  Plaintiffs,

  -v-

WEIXING LI, *et al.*,

                  Defendants.

---

No. 10 Civ. 4974 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

On August 23, 2011, the Court issued a Memorandum and Order (i) denying non-party Bank of China's motion to modify the preliminary injunction entered on July 12, 2010, and (ii) granting Plaintiffs' motion to compel Bank of China (the "Bank") to produce the information requested by the subpoena dated July 16, 2010. On September 1, 2011, the Court received a letter from the Bank requesting a pre-motion conference with respect to its contemplated motion for leave to appeal the August 23, 2011 Order. Plaintiffs, by letter dated September 7, 2011, stressed that they have been waiting for over a year for the Bank to produce the requested documents and, therefore, "oppose any further delay to these proceedings."[1] For the reasons stated on the record at the September 12, 2011 conference, the Bank's motion for leave to appeal

---

[1] The Bank's September 1, 2011 letter and Plaintiffs' September 7, 2011 letter are attached to this Order.

is DEEMED MADE and is DENIED.  The Bank is HEREBY ORDERED to comply with the

Court's August 23, 2011 Order by September 22, 2011.

SO ORDERED.

Dated:          September 12, 2011
                New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

# ALLEN & OVERY

**By E-Mail**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007
(212) 805-0264
sullivannysdchambers@nysd.uscourts.gov

September 1, 2011

**Allen & Overy LLP**
1221 Avenue of the Americas
New York NY  10020

Tel              212 610 6300
Fax             212 610 6399
Direct line   212 756 1136
lanier.saperstein@newyork.allenovery.com

Re:     <u>Gucci America, Inc., et al. v. Li, et al.</u>, No. 2010 Civ. 4974 (RJS)

Dear Judge Sullivan:

We write on behalf of non-party Bank of China ("BOC" or the "Bank") in the above-referenced action. Pursuant to Rules 2.A and 1.D of Your Honor's Individual Practices, BOC respectfully requests a pre-motion conference and an extension of time with respect to the Order entered by Your Honor on August 23, 2011 (the "Order") denying BOC's motion to modify the preliminary injunction entered on July 12, 2010 (the "Preliminary Injunction") and granting plaintiffs' motion to compel BOC to produce the information requested by the Subpoena dated July 16, 2010 (the "Subpoena").

In the Order, Your Honor held that the Court "possesses the power to restrain Defendants' assets whether they are located domestically or abroad" and thus denied BOC's motion to modify the Preliminary Injunction. (Order at 5.)  Your Honor also held that BOC should be required to produce all information requested by the Subpoena, even if located in China, within fourteen days of the date of the Order, <u>i.e.</u>, by Tuesday, September 6, 2011.  (Order at 13.)

Respectfully, given the importance of the issues ruled upon in the Order and the uncertainty faced by the Bank in a number of other cases as a result of the Order, BOC wishes to promptly appeal, as part of a single appeal, both the denial of BOC's motion to modify the Preliminary Injunction and the granting of plaintiffs' motion to compel compliance with the Subpoena.

BOC can notice an appeal of the Court's denial of BOC's motion to modify the Preliminary Injunction as a matter of right pursuant to 28 U.S.C. § 1292(a)(1), which provides that "courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . refusing to . . . modify injunctions."

With respect to the Court's granting of plaintiffs' motion to compel, however, BOC recognizes that it may not be entitled to an interlocutory appeal as of right.  At the same time, as BOC has repeatedly explained, it cannot comply with the Subpoena without violating Chinese Banking laws and potentially subjecting itself to penalties in its home country.  (See, <u>e.g.</u>, Declaration of Zhipan Wu, dated December 22, 2010

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practice in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Beijing, Bratislava, Brussels, Budapest, Dubai, Düsseldorf, Frankfurt, Hamburg, Hong Kong, London, Luxembourg, Madrid, Mannheim, Milan, Moscow, New York, Paris, Prague, Riyadh (associated office), Rome, Shanghai, Singapore, Tokyo and Warsaw.

("Wu Decl.") ¶¶ 9-32.) Indeed, the Chinese Ministry of Justice previously informed BOC that it must comply with the domestic laws of the PRC with respect to the disclosure of bank records located in China, and where such information is sought by a litigant, a US court should "submit a Request by the procedure provided in [the Hague Convention]." A copy of the Ministry of Justice's April 28, 2007 letter to BOC is appended hereto as Exhibit A.

BOC has therefore been placed in the extremely difficult position of either attempting to comply with the Court's Order and violating the laws of its home country, thereby facing potential penalties there, or violating the Court's Order and complying with Chinese banking laws, thereby facing the potential for a contempt order and sanctions here. Simply put, notwithstanding the Court's finding that BOC's "representation of the liability [in China] that it faces [is] unduly speculative" (Order at 12), BOC is caught between the proverbial rock-and-a-hard place with respect to the Court's Order on plaintiffs' motion to compel.

Given the importance of this issue to BOC and the difficult position in which BOC now finds itself, it wishes to appeal the Court's granting of plaintiffs' motion to compel along with the Court's denial of BOC's motion to modify the Preliminary Injunction as part of a single appeal. As the Court held, its inquiry into the discovery issue was "far from completely one-sided," BOC had a "legitimate basis" for its objection to producing any account-related information from China and it had raised a "genuine dispute" with plaintiffs. (Order at 13.) BOC, as well as other Chinese banks, are likely to face this issue on numerous occasions in the future.

Further, not only is BOC caught between conflicting jurisdictions, it now faces conflicting decisions within this District. As this Court is aware, under almost identical circumstances, the Court in Tiffany (NJ) LLC, et al. v. Qi Andrew, et al., No. 10 Civ. 9472 (WHP) (HBP), 2011 WL 3135850 (S.D.N.Y. July 25, 2011) (M. J. Pitman) recently came to the opposite conclusion from that of this Court, directing the plaintiffs to seek any bank records located in China via the Hague Convention. BOC respectfully wishes to obtain guidance from the Second Circuit regarding the Court's granting of plaintiffs' motion to compel, as it believes that any such guidance will remove the uncertainty currently faced by the Bank and have valuable application for it and others in future cases.

BOC therefore respectfully requests, pursuant to Rule 2.A of Your Honor's Individual Practices, a pre-motion conference to discuss filing a motion for leave to appeal the Court's granting of plaintiffs' motion to compel pursuant to 28 U.S.C. § 1292(b) or other applicable procedural means of putting this important issue before the Second Circuit at the same time as the Court's denial of BOC's motion to modify the Preliminary Injunction. BOC respectfully submits that allowing both of these important issues to be appealed at once will, inter alia: (i) conserve the judicial resources of the parties, this Court and the Second Circuit; (ii) avoid the unnecessary delay that will undoubtedly result if BOC is required to appeal one Order on two separate occasions; and (iii) prevent the possibility for inconsistent or incompatible rulings on two separate appeals. BOC requests a pre-motion conference with the Court to discuss the best possible means of furthering these goals.

BOC also respectfully requests, pursuant to Rule 1.D of Your Honor's Individual Practices, an extension of the deadline set forth in the Order for BOC's compliance with the Subpoena. BOC's compliance with the Subpoena is currently due on September 6, 2011—the day after Labor Day. BOC requests that the deadline be extended to 21 days after any pre-motion conference is held. To the extent Your Honor is not inclined to hold a pre-motion conference, BOC requests that the deadline be extended by 21 days from the current deadline of September 6, 2011.

This is BOC's first request for an extension of time.  BOC needs the additional time in order to, <u>inter alia</u>: (i) obtain the Court's guidance through a pre-trial conference with respect to the possibility for an appeal; and (ii) evaluate its options, if any, with respect to complying with the Order on the one hand, and Chinese banking laws, on the other.  Further, I was on vacation when Your Honor issued the decision, giving me less time to evaluate, discuss potential options and communicate with BOC regarding the Order.  BOC has conferred with plaintiffs regarding its request for an extension, and plaintiffs have indicated that they would not agree unless BOC was seeking the extension only in order to produce documents located in China in response to the Subpoena.

*          *          *

Given the importance of these issues to BOC, as well as the Court's Order that BOC produce documents in response to the Subpoena, even if located in China, by September 6, 2011, BOC respectfully requests a pre-motion conference at Your Honor's earliest convenience.  If the Court is unable to hold a pre-motion conference on or before September 6, 2011, BOC respectfully requests that the Court grant BOC's request for an extension of time on or before September 6, 2011, if at all possible, to avoid the possibility of BOC being held in contempt.

Respectfully submitted,

Lanier Saperstein

cc:     Robert L. Weigel, Esq. (counsel for plaintiffs, by e-mail w/encls.)
        Howard S. Hogan, Esq. (counsel for plaintiffs, by e-mail w/encls.)
        Jennifer Colgan Halter, Esq. (counsel for plaintiffs, by e-mail w/encls.)
        Anne M. Coyle, Esq. (counsel for plaintiffs, by e-mail w/encls.)

# Exhibit A

# 中华人民共和国司法部

（2007）司协函 67 号

中国银行股份有限公司法律与合规部：

2007 年 4 月 25 日中银法文[2007]38 号函收悉。

关于美国有关部门要求中国银行纽约分行提供中国境内其他分行证据材料的问题，经研究，我们认为：

一、中国银行位于中国境内的各分支机构必须严格遵守中国《刑事诉讼法》、《商业银行法》等国内法律。根据中国法律，任何个人或组织如需为诉讼的目的查询保存在上述分支机构中的银行记录，只能通过中国主管机关依据中国法律规定的程序调取。

二、中国银行及其设在中国境内的各分行不在美国法律和法院的管辖范围之内，根据国际法公认的准则，美国法院无权通过中国银行纽约分行直接调取中国境内中国银行及其各分行的有关证据材料。根据中国的法律规定，中国银行及其纽约分行也无权超越中国司法主权管辖的范围而将中国境内各分行的证据材料提供给美国法院。

三、如果美国政府或法院为刑事或者民事调查需要希望取得中国银行在中国境内各分行的证据资料，属于民事案件的，应通过《海牙取证公约》规定的途径进行；属于刑事案件的，应通过

《中美刑事司法协助协定》或《联合国打击跨国有组织犯罪公约》规定的途径进行。即：在这种情况下，应由美国受诉法院向中国司法部提出司法协助请求，然后由中国司法机关依请求并按中国法律予以执行。

四、《海牙取证公约》、《中美刑事司法协助协定》和《联合国打击跨国有组织犯罪公约》是中美司法机关之间开展司法协助的合法有效的依据。只要美国司法机关提出的请求符合上述《协定》或《公约》规定的条件，并且不违反中国法律的基本原则，中国司法机关都会认真对待，并给予合理的协助。

此复。



司法部司法协助外事司
二○○七年四月二十八日

抄送：外交部条法司

# 中华人民共和国司法部

## MINISTRY OF JUSTICE OF THE PEOPLE'S REPUBLIC OF CHINA

No. Chaoyangmen Nandajie, Chaoyang District, Beijing 100020 P. R. China

Telephone: ++86 10 6520 5234     Facsimile: ++86 10 6520 5211

---

(2007) S.X.H. No.67

*(Translation from Chinese version)*

**To the Legal and Compliance Department of Bank of China Limited,**

Your Letter of ZH.Y.F.W. [2007] No.38 dated April 24, 2007 was received.

Regarding the issue that the relevant departments of the United States required Bank of China New York Branch to provide evidentiary materials of the bank's other branches within the territory of the People's Republic of China, we, after investigation and discussion, consider that:

I.      All branches of BOC within the territory of the PRC must comply with such domestic laws as *the Criminal Procedure Law of the PRC* and *the Commercial Banking Law of the PRC*. According to laws of the PRC, any individual or entity that, for the purpose of investigation and litigation, needs to collect bank records maintained within the above branches shall submit a Request for collecting evidential material to a relevant Authority of the PRC through procedures provided by laws.

II.    BOC and its branches within the territory of the PRC are not subject to the

jurisdiction of a court of the USA. A court of the USA, in accordance with the fundamental principles commonly recognized by the international law, is not entitled to make a Request for directly collecting any evidentiary material of BOC and its branches via BOC's New York Branch. On the other hand, pursuant to laws of the PRC, BOC and its New York Branch are not entitled to do anything, which is beyond the judicial jurisdiction of the PRC, to provide such evidential material of the branches within the territory of the PRC to any court of the USA.

III.    Where the US Government or its court intend to obtain the evidential material

of the branches of BOC within the territory of the PRC as needed for the nature of conducting criminal or civil investigation, they shall submit a Request by the procedure provided in *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* (the Hague Convention) in the context of civil case, or through the procedure stated in *the Agreement between the Government of the People's Republic of China and the Government of the United States of America on Mutual Legal Assistance in Criminal Matters* (the MLAA) or *the United Nations Convention against Transnational Organized Crime* (the UNTOC) in the context of criminal case.

Namely, in this case, the US court shall submit a Request for assistance to the MOJ - the Central Authority for China via the Central Authority for USA, i.e. the OIA, Criminal Division, the US Department of Justice. Upon the Request, the Central Authority and the Competent Authority of the PRC shall review and implement the Request by the Agreement and the laws of the PRC.

*IV.*     The Hague Convention, the MLAA and the UNTOC are the effective legal

basis for judicial assistance and cooperation between the judiciary organs of the PRC
and the USA. As long as a Request submitted by the Central Authority for the USA
being consistent with the terms of the above Agreement or Convention, and does not
violate the basic principles of laws of the PRC, the Chinese authority will take it
seriously and try their best to provide assistance reasonably.

It is replied hereby.

Department of Judicial Assistance and Foreign Affairs

the Ministry of Justice of the P.R. China (Seal)

April 28, 2007

CC: Department of Treaty and Law of Ministry of Foreign Affairs of the P.R. China

3

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert L. Weigel
Direct: 212.351.3845
Fax: 212.351.5236
RWeigel@gibsondunn.com

Client: T 35409-00027

September 7, 2011

<u>VIA E-MAIL</u>

Honorable Richard J. Sullivan
United States District Court
500 Pearl Street, Room 640
New York, New York 10007
E-mail: sullivannysdchambers@nysd.uscourts.gov

Re:  <u>Gucci America, Inc., et al. v. Weixing Li, et al., 2010 Civ. 4974 (RJS)</u>

Dear Judge Sullivan:

In keeping with this Court's September 2, 2011 order, I write on behalf of Plaintiffs in the above-captioned action in response to the September 1, 2011 letter addressed to Your Honor from Bank of China ("BOC" or the "Bank") requesting a pre-motion conference or, in the alternative, a 21-day extension to comply with this Court's August 23, 2011 order (the "Order"). As Your Honor is aware, the Order required BOC to produce the documents called for by Plaintiffs' July 16, 2010 subpoena no later than September 6, 2011. (Order at 5, 13.) Plaintiffs have been waiting over a year for these documents, and therefore must respectfully oppose any further delay to these proceedings.

Amazingly, while asking this Court's indulgence to extend its time to comply with the Order, BOC does not assert that it will maintain the status quo while the requested extension is in place. BOC still refuses to either state that it has complied with—or even if it is currently complying with—this Court's order requiring BOC to freeze the counterfeiters' accounts. As Your Honor noted, "[i]n the months following the Court's issuance of the Injunction, Plaintiffs made several requests for confirmation that the Bank had, in fact, froze Defendants' assets. The Bank refused to provide such confirmation . . . ." (*Id.* at 3.) Now that this Court has applied well-settled law and unequivocally rejected the Bank's argument that the counterfeiters' overseas accounts are outside this Court's reach, there is no excuse for the Bank's coy refusal to state whether or not it has complied with the asset freeze provisions of the Preliminary Injunction. If BOC did not comply with this Court's order, it is understandable that they want to delay revealing that fact—but that does not make it right.

The timing is especially critical at this juncture because the counterfeiters now know that their financial records and transactions are about to be revealed. The counterfeiters have every incentive to move their assets out of their BOC accounts and put those assets where they will be difficult, if not impossible, to locate—the very outcome that this Court's Preliminary Injunction was intended to prevent. (*Id.* at 4.)

# GIBSON DUNN

Hon. Richard J. Sullivan
September 7, 2011
Page 2

Moreover, there is no reason to allow BOC to circumvent the well-established finality
principle that "orders enforcing subpoenas issued in connection with civil and criminal
actions . . . are *not* final, and therefore *not* appealable." *United States v. Constr. Prods.
Research, Inc.*, 73 F.3d 464, 468 (2d Cir. 1996) (emphasis in original). If BOC wishes to
challenge the grant of Plaintiffs' motion to compel, the Second Circuit has long held that "[a]
non-party witness ordinarily may not appeal directly from an order compelling discovery but
must instead defy the order and be found in contempt in order to obtain review of the court's
initial order." *Dove, III v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992); *see also
Constr. Prods.*, 73 F.3d at 469 ("To obtain appellate review, the subpoenaed party must defy
the district court's enforcement order, be held in contempt, and then appeal the contempt
order, which is regarded as final under § 1291."); *In re Air Crash at Belle Harbor, N.Y. on
Nov. 12, 2001*, 490 F.3d 99, 105 (2d Cir. 2007) (denying non-party's appeal of discovery
order and noting that "[r]equiring the subject of a subpoena to submit to contempt before
appealing promotes the 'strong congressional policy'—embodied in 28 U.S.C. § 1291—
'against piecemeal reviews, and against obstructing or impeding an ongoing judicial
proceeding by interlocutory appeals'") (quoting *United States v. Nixon*, 418 U.S. 683, 690
(1974)); *EEOC v Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers*,
133 F.R.D. 445, 449 (S.D.N.Y. 1990) (order requiring non-party to produce financial records
pursuant to subpoena "is not appealable; one must either obey the subpoena's commands or
refuse to do so and challenge the validity of the subpoena if one is later held in contempt for
failure to obey") (citing *United States v. Ryan*, 402 U.S. 530, 532 (1971); *Kaufman v.
Edelstein*, 539 F.2d 811, 814 (2d Cir. 1976)).

BOC attempts to avoid having a contempt order issued against it by asserting that
interlocutory review of the order compelling production is available under 28 U.S.C.
§ 1292(b). There is no merit to this suggestion, as this discovery dispute is not the type of
"extraordinary case[]" for which interlocutory review under Section 1292(b) is reserved.
*See, e.g., German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398
(S.D.N.Y. 1995). Indeed, the Second Circuit has "urge[d] the district courts to exercise great
care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas
Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992); *see also Philip Morris*, 71 F. Supp. 2d at
161 (noting that during a ten-year period when the Second Circuit heard more than 40,000
appeals from final judgments, "only 138 interlocutory orders were certified under section
1292(b) for appeal, of which the court of appeals agreed to hear only 93") (citation omitted).[1]

---

[1]  Equally questionable is BOC's assertion that 28 U.S.C. § 1292(a)(1) allows the Bank an
appeal as of right from this Court's refusal to modify the Preliminary Injunction. As
Judge Weinstein observed in *National Asbestos Workers Medical Fund v. Philip Morris,
Inc.*, 71 F. Supp. 2d 139 (E.D.N.Y. 1999), "[a]lthough the language of section 1292(a)(1)

[Footnote continued on next page]

# GIBSON DUNN

Hon. Richard J. Sullivan
September 7, 2011
Page 3

To establish the exceptional circumstances necessary for interlocutory certification under Section 1292(b), the Court must find:  (1) that the "order involves a controlling question of law"; (2) that "there is substantial ground for difference of opinion" with respect to the issue decided; and (3) that "an immediate appeal from that order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see Convolve, Inc. v. Compaq Computer Corp.*, No. 00 Civ. 5141 (GBD), 2006 WL 2788234, at *2-3 (S.D.N.Y. Sept. 27, 2006) (denying motion for certification of interlocutory appeal of discovery order).  These three criteria, each of which must be satisfied to justify certification, are not met here.  *See, e.g., Local 580*, 133 F.R.D. at 449 (upholding Special Master's order requiring non-party production of financial documents and denying request for certification because the order did not meet any of the Section 1292(b) criteria).

*First*, while the Order granting Plaintiffs' motion to compel provides Plaintiffs with a key tool for enforcing their trademark rights and the Court's orders, it does not involve a "controlling question of law" for purposes of Section 1292(b).  Courts have found an issue of law "controlling" only where:  (1) reversal of the court's decision on the issue of law would terminate the action; or (2) the court's decision on the issue of law affects a large number of cases.  *See Shipping Corp. of India v. Am. Bureau of Shipping*, 752 F. Supp. 173, 175 (S.D.N.Y. 1990) (denying motion for certification under Section 1292(b)).  Neither circumstance exists here.  Courts have specifically rejected the notion that a discovery order involves a "controlling" question of law, since such matters are largely within the district court's discretion.  *See Convolve*, 2006 WL 2788234, at *2 ("Fact-dependent matters that are within the district court's discretion . . . do not involve a 'controlling issue of law' under § 1292(b).") (citations omitted).  Indeed, several courts have recognized that where, as here,

---

[Footnote continued from previous page]
appears to allow immediate appeal as of right from any injunctive order . . . the Supreme Court and the courts of appeals have applied it more narrowly in light of the policies underlying the final judgment rule."  *Id.* at 155 (citing *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.*, 385 U.S. 23, 24 (1966)).  "'Generally, an order is appealable as an injunction [under section 1292(a)(1)] only when it is directed to a party, is enforceable by contempt, and grants (or denies) part or all of the ultimate relief sought by the suit."  *Id.* at 156 (quoting *Chronicle Publ'g Co. v. Hantzis*, 902 F.2d 1028, 1030 (1st Cir. 1990) (per curiam) (alteration in original) (finding that an order directed to counsel rather than a party was not appealable under section 1292(a)(1))).  The provision of the Preliminary Injunction to which BOC objects is not "directed to a party"— that provision is directed to the third party financial institutions in possession of the counterfeiters' accounts.  Nor does this provision "grant[] (or den[y]) part or all of the ultimate relief sought by the suit."  Instead, the asset freeze provision of the Preliminary Injunction merely maintains the status quo pending a ruling on the merits of Plaintiffs' action.

# GIBSON DUNN

Hon. Richard J. Sullivan
September 7, 2011
Page 4

reversal of the Court's decision would not terminate this action, interlocutory appeal is inappropriate. *See German*, 896 F. Supp. at 1398 ("While there is no doubt that a ruling on appeal in favor of the City or Freddie Mac would reduce the discovery each would be required to produce, it would not end the litigation as to either of them . . . .").

*Second*, a finding that there is "substantial ground for difference of opinion" means that "there must be 'substantial doubt' that that the district court's order was correct." *Shipping*, 752 F. Supp. at 175 (citation and internal quotation marks omitted). District courts have broad discretion in resolving discovery disputes, *Convolve*, 2006 WL 2788234, at *2, and the Order here was based upon established precedent and tailored to the facts of this case, all in accordance with the Supreme Court's mandate in *Aérospatiale*. Accordingly, BOC cannot demonstrate that there is any "substantial" question as to the merits of the Court's Order.

*Third*, as noted above, certification would not end this action and, therefore, would not "materially advance the ultimate termination of the litigation." None of the Defendants have appeared in this action other than Defendant Lijun Xu, with whom Plaintiffs settled last year. At this point, all of the Defendants have been served, including the Defendants that were subject to this Court's order, dated July 14, 2011, authorizing alternative service. Within the next several weeks, Plaintiffs will move for a default judgment as to all Defendants in this action. If anything, "[a]n interlocutory appeal would only serve to further delay the ultimate resolution" of this case. *See id.* In sum, BOC cannot make the required showing to justify the extraordinary relief afforded by Section 1292(b).[2]

Further, even if the Bank is permitted an interlocutory appeal of the Order, it is not entitled to a stay pending such an appeal. "When deciding a motion to stay discovery pending interlocutory appeal, a court must determine whether: (1) [appellants] have shown a likelihood of success on appeal; (2) [appellants] will suffer irreparable harm; (3) a stay will not injure the other parties in the case; and (4) the stay is in the public interest." *Hargroves v. City of N.Y.*, No. 03 CV 1668(RRM)(ALC), 2010 WL 3619542, at *1 (E.D.N.Y. Sept. 10, 2010) (citing *Am. Civil Liberties Union v. Dep't of Def.*, 357 F. Supp. 2d 708, 711 (S.D.N.Y. 2005); *Daniels v. City of N.Y.*, 138 F. Supp. 2d 562 (S.D.N.Y. 2001)). For the same reasons set forth in detail in the Order, BOC cannot make a sufficient showing as to any of these

---

[2] Even if BOC was able to meet the three-part test, "[t]he legislative history, congressional design and case law indicate that district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even when the three legislative criteria of section 1292(b) appear to be met." *Philip Morris*, 71 F. Supp. 2d at 162 (citations omitted).

# GIBSON DUNN

Hon. Richard J. Sullivan
September 7, 2011
Page 5

factors:

1. The Order is well reasoned and relies on clear, controlling precedent. Thus, the BOC cannot show a likelihood of success on appeal.

2. As the Court concluded, the harm to BOC from complying with the Order is speculative at best. *See* Order at 12.

3. A stay will exacerbate the irreparable harm caused by BOC's continuing refusal to comply with this Court's orders. *See, e.g., id.* at 6 (noting the importance of the documents sought).

4. Any stay would undermine the "the United States['] powerful interest in enforcing the acts of Congress, especially those, such as the Lanham Act, that are designed to protect intellectual property rights and prevent consumer confusion." *Id.* at 10-11.

In light of BOC's continued refusal to confirm that it has complied with this Court's directive to freeze the counterfeiters' accounts and given the delay already caused by BOC's non-compliance with the provisions of the Preliminary Injunction calling for the production of documents back in July 2010, Plaintiffs object to allowing the counterfeiters any additional time to conceal their assets and to evade complying with this Court's Orders.

Respectfully submitted,

Robert L. Weigel

cc: Lanier Saperstein, Esq. (via e-mail) (counsel to Bank of China)