UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUCCI AMERICA, INC., et al.,

                Plaintiffs,

– against –

WEIXING LI, et al.,

                Defendants.

No. 10 Civ. 4974 (RJS)

ECF CASE

## NON-PARTY BANK OF CHINA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION PURSUANT TO RULE 60(b) FOR RECONSIDERATION OF AND RELIEF FROM <u>THE COURT'S AUGUST 23, 2011 ORDER</u>

Pamela Rogers Chepiga
Andrew Rhys Davies
Andrew H. Reynard
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Fax: 212-610-6399

*Attorneys for Non-Party Bank of China*

Dated: November 30, 2011

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PROCEDURAL BACKGROUND ...................................................................................... 1

    A.    August 2011:  This Court Compels The Bank To Produce Account Records
        In China, And Denies Its Cross-Motion To Exclude Accounts In China
        From The Scope Of The Preliminary Injunction ..................................................... 1

    B.    September 2011:  BOC Is Forced To Produce Documents, But Appeals
        This Court's Ruling As To The Extension Of The Preliminary
        Injunction To Accounts In China; The Parties Meet And Confer
        Regarding A Second Subpoena Served On BOC ..................................................... 2

    C.    November 2011:  China's Banking Regulators Confirm That The Bank
        Cannot Produce Documents Or Freeze Account In China In Response To
        A U.S. Court Order, And That They Are Investigating Appropriate
        Sanctions For Its Production Of Documents In Response To The August 23
        Order; Judge Pauley Affirms Judge Pitman's Decision In *Tiffany* ......................... 4

STANDARD OF LAW ....................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    THE COURT SHOULD RECONSIDER ITS AUGUST 23 ORDER
    INSOFAR AS IT ORDERED THE BANK TO PRODUCE DOCUMENTS
    LOCATED IN CHINA. .......................................................................................... 7

II.    THE COURT SHOULD ALSO INDICATE ITS INTENTION TO GRANT
    RELIEF FROM ITS AUGUST 23 ORDER INSOFAR AS IT EXTENDED THE
    PRELIMINARY INJUNCTION TO ACCOUNTS IN CHINA. ...................................... 12

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

### CASES

*Badian v. BrandAid Commc'ns Corp.*,
   03 Civ. 2424 (DC), 2005 U.S. Dist. LEXIS 8395 (S.D.N.Y. May 9, 2005) ......................... 6

*British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*,
   No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057 (S.D.N.Y. June 2, 2000) ........................... 11

*D'Angelo v. State Farm Fire & Cas. Co.*,
   32 F. App'x 604 (2d Cir. 2002) ....................................................................................... 9

*Dietrich v. Bauer*,
   198 F.R.D. 397 (S.D.N.Y. 2001) .................................................................................... 6

*Dunlop v. Pan Am. World Airways, Inc.*,
   672 F.2d 1044 (2d Cir. 1982) ................................................................................. 6, 9, 12

*F. Hoffman-La Roche Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004) ..................................................................................................... 10

*Figueroa v. Savanar Restaurant, Inc.*,
   205 F.R.D. 110 (S.D.N.Y. 2001) ............................................................................. 7, 14

*Grace v. Bank Leumi Trust Co. of N.Y.*,
   443 F.3d 180 (2d Cir. 2006) ........................................................................................... 6

*Gucci Am., Inc. v. Curveal Fashion*,
   No. 09 Civ. 8458 (RJS)(THK), 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ..................... 11

*Hudson v. Hermann Pfauter GmbH & Co.*,
   117 F.R.D. 33 (N.D.N.Y. 1987) ............................................................................. 11, 12

*In re Lawrence*,
   293 F.3d 615 (2d Cir. 2002) ........................................................................................... 6

*Intercont'l Credit Corp. v. Roth*,
   595 N.Y.S.2d 602 (N.Y. Sup. Ct. 1991) ....................................................................... 12

*Klapprott v. United States*,
   335 U.S. 601 (1949) ....................................................................................................... 9

*Kosmond v. Kosmond (In re Kosmond)*,
   830 N.E.2d 596 (Ill. 2005) ........................................................................................... 13

*Kurzweil v. Philip Morris Cos.*,
  94 Civ. 2373 (MBM), 94 Civ. 2546 (MBM),1997 U.S. Dist. LEXIS 4451 (S.D.N.Y.
  Apr. 9, 1997) ........................................................................................................8, 9

*Laker Airways Ltd. v. Pan Am. World Airways*,
  607 F. Supp. 324 (S.D.N.Y. 1985)........................................................................12

*Mazzone v. Stamler*,
  157 F.R.D. 212 (S.D.N.Y. 1994) ............................................................................6

*Minpeco S.A. v. Conticommodity Servs., Inc.*,
  116 F.R.D. 517 (S.D.N.Y. 1987) ........................................................................8, 9

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986)..........................................................................6, 7, 9

*Orlich v. Helm Bros.*,
  560 N.Y.S.2d 10 (1st Dep't 1990).......................................................................12

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
  No. M8-85(HB), 5:04CV1153, 2005 WL 3046284 (S.D.N.Y. Nov. 14, 2005) ....................10

*Rose v. Barnhart*,
  01 Civ. 1645 (KMW)(RLE), 2007 U.S. Dist. LEXIS 12775 (S.D.N.Y. Feb. 14, 2007) .....6, 14

*Ryan v. U. S. Lines Co.*,
  303 F.2d 430 (2d Cir. 1962)..................................................................................7

*SEC v. Wojeski*,
  752 F. Supp. 2d 220 (N.D.N.Y. 2010) .............................................................8, 13

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*,
  482 U.S. 522 (1987)........................................................................................6, 11

*Tiffany (NJ) LLC v. Qi Andrew*,
  No. 10 Civ. 9471 (WHP)(HBP), 2011 WL 3135850 (S.D.N.Y. July 25, 2011) ............ passim

*Toliver v. Cnty. of Sullivan*,
  957 F.2d 47 (2d Cir. 1992)...............................................................................7, 14

*Tufts v. Corp. of Lloyd's*,
  981 F. Supp. 808 (S.D.N.Y. 1996).........................................................................8

*United States v. Am. Soc'y of Composers, Authors & Publishers (In re Warren)*,
  No. 41-1395 (WCC), 01-0032 WP, 2001 U.S. Dist. LEXIS 18409 (S.D.N.Y.
  June 21, 2009).................................................................................................7, 14

*United States v. Cirami,*
    563 F.2d 26 (2d Cir. 1977)..................................................................................................9

*United States v. First Nat'l City Bank,*
    396 F.2d 897 (2d Cir. 1968)..........................................................................................12, 13

*United States v. Int'l Bhd. of Teamsters,*
    179 F.R.D. 444 (S.D.N.Y. 1998) ...................................................................................7, 8

*United States v. Pink,*
    315 U.S. 203 (1942).........................................................................................................13

*United States v. Vetco Inc.,*
    691 F.2d 1281 (9th Cir. 1981) .........................................................................................11

## RULES AND STATUTES

28 U.S.C. § 1292.....................................................................................................................3

Fed. R. Civ. P. 60(b) ....................................................................................................... passim

## OTHER AUTHORITIES

Restatement (Third) of Foreign Relations of the United States § 441 ..........................................13

Restatement (Third) of Foreign Relations of the United States § 442 ..........................................10

Non-party Bank of China ("BOC" or the "Bank") respectfully submits this memorandum of law in support of its motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for reconsideration of and relief from the Court's August 23, 2011 Order (the "August 23 Order").

## PROCEDURAL BACKGROUND

A. **August 2011:  This Court Compels The Bank To Produce Account Records In China, And Denies Its Cross-Motion To Exclude Accounts In China From The Scope Of The Preliminary Injunction**

In the August 23 Order, this Court granted plaintiffs' motion to compel non-party BOC to produce documents in response to a subpoena plaintiffs served on BOC's New York Branch on July 16, 2010 (the "Subpoena"), even if the documents are located in China and production of them would violate Chinese law.  (August 23 Order at 5-13.)   In the course of its comity analysis, the Court determined, *inter alia*, that:  (i) the balance of national interests weighed in favor of plaintiffs and against BOC, as the Chinese government had not intervened to articulate its interest nor voiced an objection to disclosure in this case (*id.* at 11); (ii) BOC's representation of the liability it would face in China was "unduly speculative" (*id.* at 12); and (iii) the Hague Convention on the Taking of Evidence in Civil and Commercial Matters (the "Hague Convention") was not a viable alternative method of securing the evidence plaintiffs sought (*id.* at 10).

In the same Order, the Court denied BOC's cross-motion to exclude any accounts held at BOC in China from the scope of the asset-freeze portion of the preliminary injunction dated July 12, 2010 (the "Preliminary Injunction").  (*Id.* at 4-5.)  The Court did not address BOC's argument that, even if the Court had the power to issue an extraterritorial asset freeze, it should not, as a matter of comity, require BOC to freeze accounts in China because BOC cannot do so without violating Chinese law.  (*See* Mem. of Law of Non-Party Bank of China dated Dec.

22, 2010 ("BOC Mem.") Section III.E.)[1]

**B.      September 2011:  BOC Is Forced To Produce Documents, But Appeals This
Court's Ruling As To The Extension Of The Preliminary Injunction To
Accounts In China; The Parties Meet And Confer Regarding A Second
Subpoena Served On BOC**

On September 1, 2011, BOC wrote to the Court to request a pre-motion

conference, raising the possibility of appealing, "as a part of a single appeal, both the denial of

BOC's motion to modify the Preliminary Injunction and the granting of plaintiffs' motion to

compel compliance with the Subpoena." (Reynard Decl. Ex. B at 1.)  On September 12, 2011,

the Court held a conference, during which it indicated that, while it did not need to decide

whether BOC could appeal the order denying BOC's motion to modify the preliminary

injunction, it was not inclined to certify an interlocutory appeal (under 28 U.S.C. § 1292(b) or

otherwise) of the Court's order granting plaintiffs' motion to compel, and that, in order for the

Bank to appeal that order, BOC would need to refuse to comply with the order and be held in

contempt. (*See* Reynard Decl. Ex. C at 2:23-3:8.)  The Court therefore ordered BOC to comply

with the Subpoena by September 22, 2010.  (Order dated September 12, 2011 at 2.)

Lacking the opportunity to appeal without being held in contempt, BOC was

stuck between the proverbial "rock-and-a-hard-place" with respect to the Court's order granting

plaintiffs' motion to compel, presented with a choice between violating the law of China or being

held in contempt of the August 23 Order.

Under these circumstances, on September 22, 2011, BOC reluctantly produced to

plaintiffs documents located in China in response to the Subpoena.  BOC reserved all rights with

respect to the production, "including but not limited to the right to seek recovery from plaintiffs

---

[1]      (*See also* Transcript of Hearing dated January 5, 2011, attached hereto as Exhibit A to the
Declaration of Andrew H. Reynard, sworn to on November 30 ("Reynard Decl.") at 35:11-
38:22.)

for any fines or penalties that BOC incurs in China as a result of this production," the right to object "to future productions in this action or any other action," and the "right to seek reconsideration of the [August 23] Order due to any actions taken in China as a result of this production." (Reynard Decl. Ex. D at 1.)[2]

Also on September 22, 2011, BOC filed a Notice of Appeal with this Court, pursuant to 28 U.S.C. § 1292, from this Court's ruling declining to modify the Preliminary Injunction so that it would not reach accounts in China.[3] The issues to be raised on appeal include whether, even if this Court had jurisdiction to enter an extraterritorial asset freeze (which BOC will argue it did not), the Court erred by declining to modify the Preliminary Injunction without addressing China's laws prohibiting BOC from freezing accounts in response to a U.S. court order, or by declining, as a matter of comity, to limit the scope of the Preliminary Injunction so that it did not place BOC in the invidious position of being caught between the conflicting laws of two jurisdictions. (Reynard Decl. Ex. F at 2.)

On October 10, 2011, plaintiffs wrote to counsel for BOC, claiming that BOC's production in response to the Subpoena did "not compl[y] with the [August 23] Order." (Reynard Decl. Ex. G at 1.) Plaintiffs claimed that BOC had failed to produce documents pertaining to additional accounts that plaintiffs had identified in a second subpoena served on BOC on February 23, 2011 that was not the subject of the August 23 Order (the "2011 Subpoena"). (*Id.* at 1-3.) On October 19, 2011, BOC informed plaintiffs that the documents to which they referred were not the subject of the August 23 Order, but that, in any event, BOC had

---

[2]    BOC subsequently discovered eight additional documents responsive to the Subpoena and promptly produced them to plaintiffs on September 29, 2011, reserving the same rights. (*See* Reynard Decl. Ex. E.)

[3]    28 U.S.C. § 1292 provides that the "courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . refusing to . . .

"begun collecting documents responsive to the 2011 Subpoena." (Reynard Decl. Ex. H at 1.)

BOC also informed plaintiffs that, subject to a reservation of rights in the event of "any response

or actions taken" by the People's Bank of China (the "PBOC") or the China Banking Regulatory

Commission (the "CBRC") as a result of BOC's prior production, BOC planned to produce non-

privileged documents responsive to the 2011 Subpoena that it located after a reasonable search.

(*Id.* at 1-2.)

C.    **November 2011:  China's Banking Regulators Confirm That The Bank
       Cannot Produce Documents Or Freeze Accounts In China In Response To
       A U.S. Court Order, And That They Are Investigating Appropriate
       Sanctions For Its Production Of Documents In Response To The August 23
       Order; Judge Pauley Affirms Judge Pitman's Decision In** *Tiffany*

           On November 3, 2011, in response to this Court's August 23, 2011 Order and the

contrary decision of the Honorable Henry B. Pitman in *Tiffany (NJ) LLC, v. Qi Andrew*, No. 10

Civ. 9471 (WHP) (HBP), 2011 WL 3135850 (S.D.N.Y. July 25, 2011), *aff'd* Nov. 14, 2011 ("*Qi*

*Andrew*"), the PBOC and the CBRC—the principal Chinese governmental agencies responsible

for the regulation of Chinese banks and enforcement of China's banking laws (collectively, the

"Chinese Regulators")—sent a letter to this Court and the Honorable Henry Pitman, William H.

Pauley, III, and Deborah A. Batts.[4]  (Reynard Decl. Ex. I at 1.)

           In their letter (hereinafter, the "Chinese Regulators' Letter"), the Chinese

Regulators informed the Court that:  (i) China's banking confidentiality laws prohibit banks such

---

modify injunctions."

[4]       BOC and other Chinese banks are involved as non-parties in cases before Magistrate
Judge Pitman and Judge Pauley in *Tiffany (NJ) LLC, et al. v. Andrew, et al.*, No. 10 Civ. 9471
(WHP) (HBP) ("*Qi Andrew*") and Judge Batts in *Gucci America, Inc., et al. v. Bagsmerchant,
LLC, et al.*, No. 10 Civ. 2911 (DAB) (JCF), as well as before the Honorable Naomi Reice
Buchwald in *Tiffany (NJ) LLC, et al. v. Bruce Forbse, et al.*, No. 11 Civ. 4976 (NRB).  In all of
those cases, luxury goods manufacturers, all represented by the same counsel, have sought to
require non-party Chinese banks, including, in each case, BOC, to violate Chinese law by
freezing accounts in China and turning over account records and deposits located in China.

as BOC from disclosing information about accounts located in China or freezing or turning over funds in such accounts pursuant to a U.S. court order (*id.* at 2); (ii) China has "material interests" in the enforcement of its banking confidentiality laws and the Chinese government believes those laws to be an important part of engendering client confidence in China's relatively undeveloped banking system, thereby promoting its further development (*id.*); and (iii) U.S. court orders compelling production of bank account information located in China or freezing or turning over assets located in China will have an adverse impact on U.S.-China relations and ongoing efforts to foster cross-border legal cooperation (*id.* at 3).

The Chinese Regulators went on to state that they are aware of BOC's production of documents in response to this Court's August 23 Order, have determined that production to be a violation of Chinese law, have already issued a "stern warning" to the Bank, and are evaluating appropriate further sanctions. (*Id.*)

Finally, the Chinese Regulators stated that the proper course for obtaining documents located in China is by a request through the Hague Convention, and the two agencies are committed to work with the Chinese Ministry of Justice to ensure that such requests are satisfied within a reasonable time period pursuant to the Hague Convention processes. (*Id.* at 2). In that regard, the Chinese Regulators endorsed Magistrate Judge Pitman's July 25, 2011 decision in *Qi Andrew*, 2011 WL 3135850, denying the motion of another manufacturer of luxury goods to enforce a subpoena served on the New York branches of two Chinese banks, including BOC, for bank account records in China, and directing that plaintiff to proceed under the Hague Convention, and urged the U.S. courts to follow Judge Pitman's decision. (*Id.* at 2.)

On November 14, 2011, Judge Pauley, an addressee of the Chinese Regulators' Letter, affirmed Judge Pitman's decision, noting that "the Chinese banks are not parties to this

action, and they have shown that complying with Tiffany's subpoenas could subject them to adverse legal consequences in their domicile." (Reynard Decl. Ex. J (*Qi Andrew*, 10 Civ. 9471 (WHP) (HBP), Order dated Nov. 14, 2011) at 3.)  As Judge Pauley held, the Magistrate Judge "meticulously analyzed each of the five Restatement factors," "properly considered the hardship of compliance on the witnesses from whom discovery is sought," as well as the good faith of the Banks, and thus correctly engaged in the "'delicate task of adjudication' required in foreign discovery disputes of this nature." (*Id.* at 2-3 (citing *Societe Nationale Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)).)

## STANDARD OF LAW

Rule 60(b) provides, in relevant part, that "the court may relieve a party . . . from a final judgment, order, or proceeding" based on "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," or "(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).[5]  "It is within the court's broad discretion to grant relief under Rule 60(b)." *Mazzone v. Stamler*, 157 F.R.D. 212, 214 (S.D.N.Y. 1994) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61-62 (2d Cir. 1986)). "While Rule 60(b) is not meant to act as 'a substitute for appeal,' it does 'encompass judicial mistake in applying the appropriate law.'" *Rose v. Barnhart*, 01 Civ. 1645 (KMW) (RLE), 2007 U.S. Dist. LEXIS 12775, at *3 (S.D.N.Y. Feb. 14, 2007) (citing *Badian v. BrandAid Commc'ns. Corp.*, 03

---

[5]     Non-parties may move under Rule 60(b) where the movant is "sufficiently connected and identified" with the case. *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1052 (2d Cir. 1982); *see also Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006) (third party had standing to bring Rule 60(b) motion where third party was "strongly affected" by the judgment); *In re Lawrence*, 293 F.3d 615, 627 & n.11 (2d Cir. 2002) (non-party may bring Rule 60(b) motion where its "interests are strongly affected"); *Dietrich v. Bauer*, 198 F.R.D. 397, 399-401 (S.D.N.Y. 2001).  Here, the BOC's interests are not only "strongly affected" by the August 23 Order, but the Bank is actually specifically named, "identified" and targeted by the August 23 Order.  As such, there can be no dispute that BOC has standing to seek reconsideration of and

Civ. 2424 (DC), 2005 U.S. Dist. LEXIS 8395, at *5-*6 (S.D.N.Y. May 9, 2005)). Further, Rule 60(b) relief is appropriate "where a court may have overlooked certain parties' arguments or evidence in the record." *Id.* In general, a Rule 60(b) motion "should be broadly construed to do substantial justice." *Nemaizer*, 793 F.2d at 61 (citation omitted).

A district court may consider a Rule 60(b) motion even when the order at issue has been appealed. Although, "[t]raditionally, when an appeal is taken from the district court, the district court is divested of jurisdiction, 'except to take action in aid of the appeal until the case is remanded to it by the appellate court,'" *United States v. Int'l Bhd. of Teamsters*, 179 F.R.D. 444, 446 (S.D.N.Y. 1998), "a line of authority exists within this circuit which departs somewhat from that rule by permitting a district court to both consider and deny a [R]ule 60(b) motion, while refraining from acting upon an expressed inclination to grant the motion." *Id.* (citing *Ryan v. U. S. Lines Co.*, 303 F.2d 430, 433-34 (2d Cir. 1962)); *see also Toliver v. Cnty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992).[6]

## ARGUMENT

### I.   THE COURT SHOULD RECONSIDER ITS AUGUST 23 ORDER INSOFAR AS IT ORDERED THE BANK TO PRODUCE DOCUMENTS LOCATED IN CHINA.

As shown above, the Chinese Regulators' Letter undermines three of the fundamental bases on which the August 23 Order was premised—(i) that China's failure to

---

[6]   With respect to the Court's denial of BOC's motion to modify the Preliminary Injunction, therefore, the Court may either deny BOC's 60(b) motion, or, "should the [Court] be inclined to grant the motion, the [C]ourt may do so . . . upon expressing its inclination and the parties obtaining a remand from the Second Circuit." *Figueroa v. Savanar Restaurant, Inc.*, 205 F.R.D. 110, 112-13 (S.D.N.Y. 2001) (citing *Toliver*, 957 F.2d at 49). BOC will then "obtain the necessary remand from the Court of Appeals so that this Court may grant" the Rule 60(b) motion. *United States v. Am. Soc'y of Composers, Authors & Publishers*, No. 41-1395 (WCC), 01-0032 WP, 2001 U.S. Dist. LEXIS 18409, at *7-*8 (S.D.N.Y. June 21, 2009).

object to disclosure "'militates against a finding that strong national interests of the foreign country are at stake'" (August 23 Order at 11 (quoting *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 525 (S.D.N.Y. 1987))); (ii) that BOC's representation of the liability it would face in China was "unduly speculative" (*id.* at 12); and (iii) that the Hague Convention was not a viable alternative method of securing the evidence plaintiffs sought (*id.* at 10). As a result, the Court should reconsider and grant BOC relief from its August 23 Order.

Relief may be granted under either Rule 60(b)(2) or Rule 60(b)(6) because, for the reasons set forth below, the Chinese Regulators' Letter clearly meets the requirements of both sub-parts. The Chinese Regulators' Letter satisfies Rule 60(b)(2), because, for the reasons set forth below, this newly-discovered evidence "would probably change the result of the prior ruling." *SEC v. Wojeski*, 752 F. Supp. 2d 220, 223 (N.D.N.Y. 2010); *Int'l Bhd. of Teamsters*, 179 F.R.D. at 447; *Tufts v. Corp. of Lloyd's*, 981 F. Supp. 808, 812 (S.D.N.Y. 1996).[7] Indeed, the Court acknowledged in its August 23 Order that the outcome of the comity-based analysis was "far from completely one-sided." (August 23 Order at 13.) That the original decision was so finely balanced makes reconsideration particularly appropriate, as the Chinese Regulators' Letter bears heavily on several of the factors that the Court previously found to weigh against

---

[7] The Chinese Regulators' Letter also satisfies the other three requirements under Rule 60(b)(2)—that "(1) [the] evidence exist[ed] at the time of the prior decision, (2) the evidence could not have been discovered in the exercise of reasonable diligence, [and] (3) that [the] evidence is admissible." *Wojeski*, 752 F. Supp. 2d at 223. Although the Chinese Regulators' Letter itself did not exist at the time of the August 23 Order (and could not, therefore, have been discovered in the exercise of reasonable diligence), the facts underlying it, *i.e.*, China's prohibition on the production of account documents in located in China and on the freezing or turnover of accounts in China in response to the U.S. court order and its interest in and commitment to the enforcement of those laws, together with China's commitment to the effective use of the Hague Convention process, clearly did exist at that time. Finally, the Chinese Regulators' Letter is also "admissible" for purposes of Rule 60(b)(2) to support BOC's opposition to plaintiffs' motion to compel and BOC's motion to modify the Preliminary Injunction. *See, e.g., Wojeski*, 752 F. Supp. 2d at 223; *Kurzweil v. Philip Morris Cos.*, 1997 U.S.

BOC.

In the alternative, Rule 60(b)(6) permits relief for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6), and "represents a grand reservoir of equitable power [that should be] liberally applied." *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1051 (2d Cir. 1982) (citing *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977)). Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Dunlop*, 672 F.2d at 1051 (citing *Klapprott v. United States*, 335 U.S. 601, 615 (1949)); *see also D'Angelo v. State Farm Fire & Cas. Co.*, 32 F. App'x 604, 605 (2d Cir. 2002) (Rule 60(b)(6) should be invoked where a decision "may work an extreme and undue hardship" on the movant (citing *Nemaizer*, 793 F.2d at 63)).

As explained above, the August 23 Order "work[s] an extreme hardship" on BOC because it forces the Bank to either be held in contempt in violation of U.S. law, on the one hand, or face severe fines and penalties from the Chinese Regulators for violating Chinese law, on the other—a fact strongly confirmed by the Chinese Regulators' Letter.

*First*, in the August 23 Order, the Court ruled that the balance of national interests weighed in favor of plaintiffs, because China's failure to object to disclosure in this case "'militates against a finding that strong national interests of the foreign country are at stake.'" (August 23 Order at 11 (citing *Minpeco*, 116 F.R.D. at 525).) That ruling must be revisited now that the Chinese Regulators have written specifically to assert China's "material interest" in enforcement of its banking privacy laws and their "vital importance" to China's efforts to develop its banking sector, and to urge U.S. courts to follow Magistrate Judge Pitman's decision in the *Tiffany* case requiring plaintiffs to use the Hague Convention process to obtain evidence in

Dist. LEXIS 4451, at *17-*18 (S.D.N.Y. Apr. 9, 1997).

China.  (*See* Reynard Decl. Ex. I at 3.)

Such an expression of the foreign nation's interest is extremely significant to the comity analysis.  *See, e.g.*, *Minpeco*, 116 F.R.D. at 525 (denying a motion to compel, relying on two official statements of the Swiss government attesting to the importance of Switzerland's bank privacy laws); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, No. 04 CV 1153 (HB), 2005 WL 3046284, *2 (S.D.N.Y. Nov. 14, 2005) (denying a motion to compel production, in light of two official statements of interest from the Korean government).

*Second*, in the August 23 Order, the Court noted that it was not persuaded "that compliance with a foreign court order would subject [BOC] to civil or criminal penalties" and found that "[BOC]'s representation of the liability that it faces [if it produces to plaintiffs documents located in China] to be unduly speculative." (*Id.* at 12.)  But the Chinese Regulators' Letter dispels any doubt about the jeopardy in which the August 23 Order places BOC and its employees.  The Chinese Regulators represent that they have "already issued a severe warning to [BOC]" for producing to plaintiffs documents located in China on September 22, 2011 in response to the August 23 Order, and that they are currently "determin[ing] the appropriate sanctions" in response to BOC's production.  (Reynard Decl. Ex. I at 3.)  Clearly, therefore, the liability that BOC faces in China for producing documents is far from "speculative."[8]

*Third*, after ruling that the standard for evaluating the availability of the Hague

---

[8]     The potential for liability and international conflict—as set forth in the Chinese Regulators' Letter (*see* Reynard Decl. Ex. I at 2-3)—should be given even more weight in this context given that this action is brought by "private plaintiffs," who "often are unwilling to exercise the degree of self-restraint and consideration of foreign government sensibilities generally exercised by the U.S. Government."  *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 171 (2004); *see also* Restatement (Third) of Foreign Relations Law § 442, Reporter's Note No. 9 (noting that "requests by private parties, particularly private plaintiffs, should be scrutinized more carefully than requests initiated by the United States government" because private parties tend to have less "concern for the national interest").

Convention is whether the information can be "easily obtained" through that means—a standard

that BOC respectfully submits is itself in error[9]—the Court concluded in the August 23 Order

that use of the Hague Convention was "not a viable alternative method of securing the

information Plaintiffs seek." (August 23 Order at 7-10.)  The Court based this conclusion in

large part on the fact that it did not have "concrete evidence suggesting that China's compliance

with Hague Convention requests has, in fact, dramatically improved." (*Id.* at 10.)  But the

Chinese Regulators' Letter provides exactly that—the PBOC and CBRC expressly represent that

they "are committed to actively coordinating with the PRC Ministry of Justice and judicial

organs in the PRC to ensure that they satisfy the requests for seeking evidence under the Hague

Convention within a reasonable time period and by following the procedures thereunder."

(Reynard Decl. Ex. I at 2-3.)

        Provided with such a representation, the Court should, at the very least, require

---

[9]     Nowhere in *Societe Nationale Industrielle Aerospatiale v. United State District Court for the Southern District of Iowa*, 482 U.S. 522 (1987), which is the leading case on this issue, did the Supreme Court state that information had to be "easily obtained" through an alternative means for a party to be required to use such means.  Nor has the Second Circuit ever stated that "easily obtained" is the correct standard.  *Cf. United States v. Vetco Inc.*, 691 F.2d 1281, 1290 (9th Cir. 1981) (holding that the proper standard in the Ninth Circuit is whether an alternative means is "substantially equivalent" to obtaining the documents through U.S. courts), *cited in British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, No. 90 Civ. 2370 (JFK)(FM), 2000 WL 713057 *9 (S.D.N.Y. June 2, 2000).  Moreover, *Gucci Am. Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS)(THK), 2010 WL 808639, *3 (S.D.N.Y. Mar. 8, 2010), the case that the Court cited in the August 23 Order in support of the "easily obtained" standard, involved a bank in Malaysia, which was not a party to the Hague Convention. *Id.  Curveal* is therefore inapposite where, as here, a viable option such as the Hague Convention exists.  And, in any event, a court need not be convinced that the Hague Convention will work seamlessly to be legally justified in ordering its use, especially given the Hague Convention's important goals. *See Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33, 38-39 (N.D.N.Y. 1987) (holding that, "[t]o assume that the 'American' rules are superior to those procedures agreed upon by the signatories of the Hague Convention without first seeing how effective Convention procedures will be in practice would reflect the same parochial biases that the Convention was designed to overcome").  To hold otherwise and employ an "easily obtained" standard for determining the availability of alternative means would effectively eviscerate use of the Hague Convention as such an

plaintiffs to *try* to obtain the documents they seek through the Hague Convention and see whether the process works, and if it does not, only *then* should the Court evaluate whether to order BOC to produce documents in violation of Chinese law. As Judge Pauley held in affirming Magistrate Judge Pitman's decision to require plaintiffs to attempt to obtain evidence using the Hague Convention in *Qi Andrew*, the Court's "willingness to reconsider the use of the Hague Convention procedures if they prove futile is sensible, and should minimize any burden on Tiffany." (Reynard Decl. Ex. J at 3.)[10]

For all the foregoing reasons, the Court should exercise its "grand reservoir of equitable power," *Dunlop*, 672 F.2d at 1051, and, consistent with the decisions of Judge Pauley and Magistrate Judge Pitman in *Qi Andrew*, afford BOC relief from the August 23 Order by requiring plaintiffs to use the Hague Convention to obtain any further the documents they may seek, including documents responsive to the 2011 Subpoena described above. (*See* Reynard Decl. Ex. H at 1-2.)

## II.    THE COURT SHOULD ALSO INDICATE ITS INTENTION TO GRANT RELIEF FROM ITS AUGUST 23 ORDER INSOFAR AS IT EXTENDED THE PRELIMINARY INJUNCTION TO ACCOUNTS IN CHINA.

In its cross-motion to modify the Preliminary Injunction filed December 22, 2010, BOC argued that, even if the Court had the power to issue an extraterritorial asset restraint,

---

alternative means, regardless of where documents are sought.

[10]    *Accord Hudson*, 117 F.R.D. at 38-39; *United States v. First Nat'l City Bank*, 396 F.2d 897, 902 (2d Cir. 1968) (considerations of comity requires a district court "to minimize possible conflict between its orders and the law of a foreign state affected by its decision"); *Laker Airways Ltd. v. Pan Am. World Airways*, 607 F. Supp. 324, 326 (S.D.N.Y. 1985) (service of subpoenas in New York for documents overseas was a "transparent attempt to circumvent the Hague Convention"); *Orlich v. Helm Bros.*, 560 N.Y.S.2d 10, 14 (1st Dep't 1990) (denying motion to compel and directing use of the Hague Convention because when "discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Convention, which encompasses principles of international comity, is virtually compulsory"); *Intercont'l Credit Corp. v. Roth*, 595 N.Y.S.2d 602, 603 (N.Y. Sup. Ct. 1991) (vacating subpoena and deposition

which it does not under the circumstances of this case, as a matter of comity, the Court should

not impose such a requirement on BOC because BOC cannot comply without violating Chinese

law. (*See* BOC Mem., Section III.E; Wu Decl. ¶¶ 16-20; Reynard Decl. Ex. A at 35:11-38:22.)

Although the Court did not rule on that argument in its August 23 Order, the

Chinese Regulators' Letter confirms that BOC cannot comply with the Preliminary Injunction

without violating Chinese law, and that its compliance is likely to result in sanctions in China.

(Reynard Decl. Ex. I at 2.)  The Chinese Regulators' Letter thus underscores the Court's error in

failing to address BOC's comity-based objections to the Preliminary Injunction.[11]

The Court should not have refused to modify the Preliminary Injunction because

holding otherwise undoubtedly requires BOC "to do an act in another state that is prohibited . . .

by the law of the state of which [it] is a national."  Restatement (Third) of Foreign Relations Law

§ 441(1); *see also United States v. Pink*, 315 U.S. 203, 220 (1942) (government of foreign

nation's statements on application of foreign law are "conclusive"); *First Nat'l City Bank*, 396

F.2d at 901 (admonishing courts to "empathize with the party or witness subject to the

jurisdiction of two sovereigns and confronted with conflicting commands").

Accordingly, the Court should reconsider its decision to deny BOC's motion to

modify the preliminary injunction.  *See Wojeski*, 752 F. Supp. 2d at 231 (granting Rule 60(b)(2)

motion and finding that new evidence submitted after the court's decision regarding a

preliminary injunction was sufficient to conclude that "the result of the motion for a preliminary

---

notice with respect to bank accounts outside of the United States in light of *Orlich*).

[11]       Indeed, principles of comity apply with even greater force in the context of the
Preliminary Injunction because freezing a customer's account is even more intrusive than
producing documents pertaining to that account.  *See Kosmond v. Kosmond*, 830 N.E.2d 596,
602 (Ill. 2005) (using Restatement factors and reversing lower's temporary restraining order and
preliminary injunction because they did not give "meaningful consideration to the possible effect
of German law").

injunction would . . . probably have been different"); *Rose*, 2007 U.S. Dist. LEXIS 12775, at \*3 (Rule 60(b) "encompass[es] judicial mistake in applying the appropriate law" and applies "where a court may have overlooked certain parties' arguments or evidence in the record").[12]

Finally, even if this Court continues to disagree with BOC as to the Preliminary Injunction, considerations of judicial economy militate in favor of this Court reconsidering that aspect of its August 23 Order at this stage. Otherwise, the parties and the Second Circuit may spend considerable resources on an appeal, only for the Court of Appeals to remand the issue to this Court to consider the Chinese Regulators' Letter.

Accordingly, the Court should also indicate its intention to grant this motion with respect to the Court's decision denying BOC's motion to modify the Preliminary Injunction, at which point BOC will "obtain the necessary remand from the Court of Appeals so that this Court may grant" the Rule 60(b) motion with respect to the Preliminary Injunction. *See Am. Soc'y of Composers, Authors & Publishers*, 2001 U.S. Dist. LEXIS 18409, at \*7-\*8.

---

[12]    As noted above (see *supra* note 6), if the Court is inclined to grant BOC's motion with respect to its order denying BOC's motion to modify the Preliminary Injunction, it should "express[] its inclination" to do so in its Order on this motion. *Figueroa*, 205 F.R.D. at 112 (citing *Toliver*, 957 F.2d at 49). BOC will then "obtain the necessary remand from the Court of Appeals so that this Court may grant" the Rule 60(b) motion with respect to the Preliminary Injunction. *Am. Soc'y of Composers, Authors & Publishers*, 2001 U.S. Dist. LEXIS 18409, at \*7-\*8.

## CONCLUSION

For all the foregoing reasons, the Court should grant BOC's motion for reconsideration of and relief from the Court's August 23, 2011 Order, and order that plaintiffs must seek any further documents from BOC, including documents responsive to the 2011 Subpoena, through the Hague Convention process.  The Court should also find that the Preliminary Injunction does not reach accounts and assets located in China.


Dated:   New York, New York                    ALLEN & OVERY LLP
         November 30, 2011


                                               By: /s/ Andrew Rhys Davies
                                                   Pamela Rogers Chepiga
                                                   pamela.chepiga@allenovery.com
                                                   Andrew Rhys Davies
                                                   andrew.rhys.davies@allenovery.com
                                                   Andrew H. Reynard
                                                   andrew.reynard@allenovery.com

                                                   1221 Avenue of the Americas
                                                   New York, New York 10020
                                                   Tel: 212-610-6300
                                                   Fax: 212-610-6399

                                                   *Attorneys for Non-Party Bank of China*