UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

GUCCI AMERICA, INC., BALENCIAGA
AMERICA, INC., BALENCIAGA S.A., BOTTEGA
VENETA INTERNATIONAL S.A.R.L.,
BOTTEGA VENETA INC., LUXURY GOODS
INTERNATIONAL (L.G.I.) S.A. and YVES SAINT
LAURENT AMERICA, INC.

            Plaintiffs,

     -against-

WEIXING LI a/k/a XIN LI, LIJUN XU a/k/a JACK
LONDON and TING XU a/k/a JACK LONDON
a/k/a XU TING a/k/a REBECCA XU, WENYING
GUO, XIAOCHAO SHANG, LEI XU, FENGYUAN
ZHAO, LIQUN ZHAO, MING ZHAO, and
PEIYUAN ZHAO, all doing business as
REDTAGPARTY, MYLUXURYBAGS.COM,
KUELALA.COM, XPRESSDESIGNERS.COM,
XPRESSDESIGNER.NET, and DESIGNER
HANDBAGS; ABC COMPANIES;
and JOHN DOES,

           Defendants.

------------------------------------------------------------------x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

2010 Civ. 4974 (RJS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
NON-PARTY BANK OF CHINA'S MOTION PURSUANT TO RULE 60(b)
FOR RECONSIDERATION AND RELIEF FROM THE COURT'S AUGUST 23 ORDER**

GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,
Balenciaga America, Inc., Balenciaga S.A.,
Bottega Veneta International S.A.R.L., Bottega
Veneta Inc., Luxury Goods International S.A.
and Yves Saint Laurent America, Inc.*

New York, New York
December 23, 2011

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 6

I.     BOC IS NOT ENTITLED TO RELIEF UNDER RULE 60(b) ......................................... 6

    A.     BOC's Motion is Procedurally Improper ............................................................... 7

    B.     BOC's Motion Fails As A Matter of Substance ..................................................... 8

        1.     The PBOC Letter is Not "Newly Discovered Evidence" Under Rule 60(b)(2) ....................................................................................... 8

            a)     The PBOC Letter is New, Not "Newly Discovered" .................... 10

            b)     BOC Offers No Evidence to Support a Finding of "Due Diligence" ................................................................................... 11

            c)     The PBOC Letter is Not "Admissible" ....................................... 12

            d)     The PBOC Letter is "Cumulative" of Other Evidence and Does Not Change the Court's Comity Analysis .......................... 13

        2.     There Are No "Extraordinary Circumstances" Justifying Relief Under Rule 60(b)(6) ............................................................................. 18

            a)     The Court Properly Considered BOC's Comity Argument .......... 18

            b)     BOC's Conflicting Obligations Do Not Constitute "Exceptional Circumstances" ....................................................... 19

II.     BOC WOULD FAIL TO SATISFY THE REQUIREMENTS FOR RECONSIDERATION OF NON-FINAL ORDERS UNDER LOCAL RULE 6.3 ......... 21

    A.     BOC's Motion Would Be Untimely ................................................................... 21

    B.     BOC's Motion Would Fail on the Merits ............................................................ 21

III.     BOC'S RECONSIDERATION MOTION IS AN ATTEMPT TO ESCAPE THE CONSEQUENCES OF ITS DEFIANCE OF THIS COURT'S ORDERS .................... 22

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alvarez v. Am. Airlines*,
  No. 98 Civ. 1027 (MBM), 2000 WL 145746 (S.D.N.Y. Feb. 8, 2000)............................... 7, 20

*Am. Civil Liberties Union v. Dep't of Def.*,
  406 F. Supp. 2d 330 (S.D.N.Y. 2005) ...................................................... 9, 10, 14, 18

*Balenciaga Am., Inc. v. Dollinger*,
  No. 10 Civ. 2912 (LTS), 2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) .................................... 17

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*,
  247 F.R.D. 427 (S.D.N.Y. 2007), *aff'd*, 298 Fed. App'x 87 (2d Cir. 2008)............................ 14

*Boule v. Hutton*,
  170 F. Supp. 2d 441 (S.D.N.Y. 2001) ...................................................................... 11

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*,
  509 F. Supp. 2d 334 (S.D.N.Y. 2007) ................................................................... 12, 13

*Cancel v. Mazzuca*,
  No. 01 Civ. 3129 (NRB), 2002 WL 1891395 (S.D.N.Y. Aug. 15, 2002) ........................... 7, 21

*Charter Oak Fire Ins. Co. v. Nat'l Wholesale Liquidators*,
  No. 99 Civ. 5756 (JSR), 2003 WL 22455321 (S.D.N.Y. Oct. 29, 2003) .................................. 7

*Dove, III v. Atl. Capital Corp.*,
  963 F.2d 15 (2d Cir. 1992) ................................................................................... 3

*EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers*,
  133 F.R.D. 445 (S.D.N.Y. 1990) ............................................................................ 3

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000) ................................................................................. 21

*Finkelstein v. Mardkha*,
  518 F. Supp. 2d 609 (S.D.N.Y. 2007) ..................................................................... 21

*First Nat'l City Bank of N.Y. v. I.R.S.*,
  271 F.2d 616 (2d Cir. 1959) ................................................................................. 20

*Frankel v. ICD Holdings S.A.*,
  939 F. Supp. 1124 (S.D.N.Y. 1996) .................................................................... 10, 11

*Grand River Enters. Six Nations, Ltd. v. King*,
  No. 02 Civ. 5068 (JFK), 2009 WL 1739893 (S.D.N.Y. June 16, 2009) ............................. 8, 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,*
490 F.3d 99 (2d Cir. 2007) ................................................................... 3

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.,*
08 MDL No. 1963, 2011 WL 321142 (S.D.N.Y. Feb. 1, 2011) ................................. 7

*In re Grand Jury Subpoena dated Aug. 9, 2000,*
218 F. Supp. 2d 544 (S.D.N.Y. 2002) ........................................... 15, 20

*In re One Grand Jury Subpoena Returnable Jan. 11, 1989,*
CIV. Nos. N-89-7 (TFGD), N-89-6 (TFGD), 1989 WL 49165
(D. Conn. Mar. 22, 1989) ................................................................... 20

*In re Optionable Sec. Litig.,*
No. 07 Civ. 3753 (PAC), 2009 WL 1653552 (S.D.N.Y. June 15, 2009) ................................. 6

*In re World Trade Ctr. Disaster Site Litig.,*
No. 21 MC 100 (AKH), 2008 WL 2704317 (S.D.N.Y. July 10, 2008) ................................. 22

*Indem. Ins. Co. of N. Am. v. Reisley,*
153 F.2d 296 (2d Cir. 1946) ................................................................... 7

*JW Oilfield Equip., LLC v. Commerzbank AG,*
764 F. Supp. 2d 587 (S.D.N.Y. 2011) ........................................... 18, 19

*Kaufman v. Edelstein,*
539 F.2d 811 (2d Cir. 1976) ................................................................... 4

*Kurzweil v. Phillip Morris Cos.,*
Nos. 94 Civ. 2373 (MBM), 94 Civ. 2576 (MBM), 1997 WL 167043
(S.D.N.Y. April 9, 1997) ........................................................... 8, 10, 12

*Leone v. CSX Transp., Inc.,*
No. 5:06-CV-0389 (NAM/GJD), 2008 WL 828125 (N.D.N.Y. Mar. 26, 2008) ..................... 13

*Lykes Pasco, Inc. v. Ahava Dairy Prods. Corp.,*
No. CV-97-0652, 1998 WL 427570 (E.D.N.Y. Jan. 26, 1998) ........................................ 11, 12

*Mancuso v. Consol. Edison Co. of N.Y., Inc.,*
905 F. Supp. 1251 (S.D.N.Y. 1995) ........................................................... 14

*Mendell ex rel Viacom, Inc. v. Gollust,*
909 F.2d 724 (2d Cir. 1990), *aff'd*, 501 U.S. 115 (1991) ........................................ 6

*Minpeco, S.A. v. Conticommodity Servs., Inc.,*
116 F.R.D. 517 (S.D.N.Y. 1987) ........................................................... 18, 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Munoz v. China Expert Technology, Inc.*,
    No. 07 Civ. 10531 (AKH) (S.D.N.Y. Nov. 4, 2011) ............................................... 15

*National Asbestos Workers Medical Fund v. Philip Morris, Inc.*,
    71 F. Supp. 2d 139 (E.D.N.Y. 1999) .................................................................... 4, 7

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986) ................................................................................... 6, 9

*Quiroga v. Fall River Music, Inc.*,
    No. 93 Civ. 3914 (RPP), 1998 WL 851574 (S.D.N.Y. Dec. 7, 1998).................... 13

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) ............................................................................... 15

*Ryan v. U.S. Lines Co.*,
    303 F.2d 430 (2d Cir. 1962) .................................................................................. 10

*S.E.C. v. Save the World Air, Inc.*,
    No. 01 Civ. 11586 (GBD), 2005 WL 1208525 (S.D.N.Y. May 19, 2005).............. 7

*Sank v. City Univ. of N.Y.*,
    No. 94 Civ. 0253 (RWS), 1997 WL 65910 (S.D.N.Y. Feb. 13, 1997).................... 8

*Schwartz v. Capital Liquidators, Inc.*,
    984 F.2d 53 (2d Cir. 1993) ..................................................................................... 11

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
    482 U.S. 522 (1987).................................................................................................. 15

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
    374 F.3d 158 (2d Cir. 2004) .................................................................................... 9

*United Airlines, Inc. v. Brien*,
    588 F.3d 158 (2d Cir. 2009) .................................................................................... 19

*United States v. Bank of N.Y.*,
    14 F.3d 756 (2d Cir. 1994) ....................................................................................... 6

*United States v. Constr. Prods. Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996) ................................................................................... 3, 7

*United States v. First Nat'l City Bank*,
    379 U.S. 378 (1965).................................................................................................. 17

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. First Nat'l City Bank,*
396 F.2d 897 (2d Cir. 1968) ........................................................................... 17

*United States v. Int'l Bhd. of Teamsters,*
247 F.3d 370 (2d Cir. 2001) ....................................................................... 9, 13

*United States v. Nixon,*
418 U.S. 683 (1974) ......................................................................................... 3

*United States v. Ryan,*
402 U.S. 530 (1971) ......................................................................................... 4

**Statutes**

15 U.S.C. § 1116 (d)(1)(A) ............................................................................. 16

28 U.S.C. § 1291 ............................................................................................... 3

28 U.S.C. § 1292 ........................................................................................... 3, 4

**Rules**

Fed. R. Civ. P. 60(b) ................................................................................. passim

Fed. R. Civ. P. 62.1(a)(2) ................................................................................. 4

Local Rule 6.3 ................................................................................................. 21

Plaintiffs Gucci America, Inc., Balenciaga America, Inc., Balenciaga S.A., Bottega Veneta International S.A.R.L., Bottega Veneta Inc., Luxury Goods International (L.G.I.) S.A. and Yves Saint Laurent America, Inc. (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion filed by non-party Bank of China ("BOC" or the "Bank") seeking reconsideration of this Court's August 23, 2011 order (the "August 23 Order" or the "Order") pursuant to Federal Rule of Civil Procedure 60(b).[1]

## PRELIMINARY STATEMENT

In a transparent attempt to a get a second bite at the apple, BOC now moves this Court for reconsideration of an Order that the Bank has openly defied.  The Bank's motion is all the more improper because BOC fails to meet the most basic procedural requirements of the very rule under which it seeks relief; namely, the requirement that the order at issue be a final order.

Apart from fatal procedural defects, BOC's motion fails substantively as well.  BOC's motion for reconsideration relies heavily upon the November 3, 2011 letter to this Court from People's Bank of China and China Banking Regulatory Commission (the "PBOC Letter"). Though BOC paints the PBOC Letter as "newly discovered evidence," BOC's conclusory, self-serving statements fall far short of meeting the Second Circuit's onerous four-part test for evaluating "newly discovered evidence" under Rule 60(b)(2).

Similarly, there is nothing to support BOC's request for relief under Rule 60(b)(6), which requires "exceptional circumstances" or "undue hardship."  BOC's contention that this Court did

---

[1] On December 16, 2011, the Court issued an order setting the briefing schedule for BOC's reconsideration motion and stating that Plaintiffs could allow their December 14, 2011 letter to the Court to serve as an opposition brief.  Dkt. No. 93.  Plaintiffs submit this opposition brief to provide a fuller exposition of the relevant case law and incorporate by reference their December 14 letter to the Court.  A copy of the December 14 letter is attached as Exhibit A to the Declaration of Jennifer Colgan Halter, dated December 23, 2011 (the "Halter Decl.").

not address its comity arguments is directly contradicted by even a cursory review of the August 23 Order, nearly half of which is devoted to a comity analysis of U.S. and Chinese law. *See* August 23 Order at 7-12.  Moreover, the fact that BOC may face conflicting obligations as a result of having availed itself of the privilege of doing business in the U.S. is not an "exceptional circumstance."  It is simply a cost of doing business in multiple jurisdictions.

Lastly, BOC's open defiance of the very Order from which it seeks relief further justifies denying the Bank's motion.  There is no dispute that BOC is subject to this Court's jurisdiction and was therefore required to comply with this Court's orders.  Yet BOC admits that it has failed to comply with this Court's directive to produce all documents responsive to Plaintiffs' subpoena by September 22, 2011.  The PBOC Letter does not provide any justification for BOC's contempt of this Court's orders, particularly where BOC's non-compliance *pre-dates* the PBOC Letter.  Indeed, BOC offers no explanation as to how its failure to comply with the Court-ordered production deadline in *September* is excused by the *November* PBOC Letter.

Accordingly, Plaintiffs respectfully request that BOC's motion for reconsideration be denied.

## STATEMENT OF FACTS

On August 23, 2011, this Court issued an order:  1) granting Plaintiffs' motion to compel the production of documents from BOC; and 2) denying BOC's cross-motion to modify the Court's July 13, 2010 preliminary injunction (the "PI").  The Court ordered BOC to "produce all information requested by the Subpoena within fourteen days"—*i.e.*, by September 6, 2011.  August 23 Order at 13.

On September 1, 2011, BOC requested a pre-motion conference with the Court and a twenty-one day extension of time to comply with the August 23 Order.  Dkt. No. 79 at 3-5.

Recognizing the interlocutory nature of the August 23 Order, pursuant to 28 U.S.C. § 1292(b), BOC sought the Court's permission to appeal the portion of the Order that granted Plaintiffs' motion to compel.  BOC also asserted that it intended to appeal the Court's denial of the Bank's motion to modify the PI "as a matter of right pursuant to 28 U.S.C. § 1292(a)(1), which provides that 'courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . refusing to . . . modify injunctions.'"  Dkt. No. 79 at 3.

On September 7, 2011, Plaintiffs submitted a letter to the Court responding to BOC's requests for relief.  Among other things, Plaintiffs pointed out that BOC's request was in direct contravention to "the well-established finality principle that 'orders enforcing subpoenas issued in connection with civil and criminal actions . . . are *not* final, and therefore *not* appealable.'" *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 468 (2d Cir. 1996) (emphasis in original)."  Dkt. No. 79 at 13.  Plaintiffs also noted the well-established precedent within this Circuit holding that "[a] non-party witness ordinarily may not appeal directly from an order compelling discovery but must instead defy the order and be found in contempt in order to obtain review of the court's initial order." *Dove, III v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992); *Constr. Prods. Research*, 73 F.3d at 469 ("To obtain appellate review, the subpoenaed party must defy the district court's enforcement order, be held in contempt, and then appeal the contempt order, which is regarded as final under § 1291.").[2]

---

[2] *See also In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 490 F.3d 99, 105 (2d Cir. 2007) (denying non-party's appeal of discovery order and noting that "[r]equiring the subject of a subpoena to submit to contempt before appealing promotes the 'strong congressional policy'—embodied in 28 U.S.C. § 1291—'against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals'") (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974)); *EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers*, 133 F.R.D. 445, 449 (S.D.N.Y. 1990) (order requiring non-party to produce financial records pursuant to subpoena "is not appealable; one must either obey the subpoena's commands or refuse to do so and challenge the validity of

Plaintiffs further took issue with BOC's assertion that it was entitled to an interlocutory appeal as of right regarding the portion of the Order denying the Banks' motion to modify the PI. Dkt. No. 79 at 13-14 n.1 ("As Judge Weinstein observed in *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139 (E.D.N.Y. 1999), '[a]lthough the language of section 1292(a)(1) appears to allow immediate appeal as of right from any injunctive order . . . the Supreme Court and the courts of appeals have applied it more narrowly in light of the policies underlying the final judgment rule.'") (citation omitted).

By order dated September 12, 2011, the Court denied BOC's request for an interlocutory appeal and ordered the Bank to comply with the August 23 Order by September 22, 2011 (extending the September 6 deadline).  Dkt. No. 79 ("September 12 Order") at 1-2.  Further, at the conference regarding BOC's request, the Court stated that "[i]t's also not readily apparent . . . . [t]hat there's – an appeal [as of] right with respect to the refusal to modify the preliminary injunction."  Dkt. No. 81 at 3:9-16.  The Court recognized, however, that this would be an issue for the Second Circuit to determine and it did not need to reach that issue.

On September 22, 2011, BOC filed a notice of appeal with the Second Circuit indicating its intent to appeal the Court's denial of the Bank's motion to modify the PI.[3]  The same day, BOC produced 66 pages of documents to Plaintiffs in response to the Court's August 23 Order and September 12 Order, most of which were handwritten deposit and withdrawal receipts. On September 29, 2011, BOC made a supplemental production containing 8 pages of wire transfer records.

---

the subpoena if one is later held in contempt for failure to obey") (citing *United States v. Ryan*, 402 U.S. 530, 532 (1971); *Kaufman v. Edelstein*, 539 F.2d 811, 814 (2d Cir. 1976)).

[3] Although BOC filed a notice of appeal with the Second Circuit regarding this Court's denial of its motion to modify the PI, this Court retains jurisdiction to deny BOC's reconsideration motion.  *See, e.g.*, Fed. R. Civ. P. 62.1(a)(2).

Upon reviewing a translated version of BOC's production, it became clear that BOC only produced partial account records for two of the Defendants' nine accounts at the Bank. Even as to these two accounts, BOC did not produce records listing all deposits and withdrawals into the accounts. Plaintiffs first alerted BOC to the deficiencies in the Bank's production by email on September 28, 2011, and by formal letter on October 10, 2011 requesting a meet-and-confer. At the October 24, 2011 meet-and-confer, Lanier Saperstein, then-counsel to BOC, represented to Plaintiffs' counsel that the Bank had collected documents for the remaining accounts and was in the process of completing those efforts for the final two accounts but could not provide an estimated date for production. Mr. Saperstein also stated that the Bank had provided him with a spreadsheet reflecting the running balance in the accounts (information that was missing from BOC's productions), but that he needed his client to confirm that the information had been kept in the ordinary course before it could be produced. Despite these representations, BOC never produced any additional documents.

On November 4, 2011, Plaintiffs received an email from BOC attaching a copy of the November 3, 2011 letter from People's Bank of China ("PBOC") and China Banking Regulatory Commission ("CBRC"), regulators of BOC and other Chinese Banks. Dkt. No. 91-9. The PBOC Letter was addressed to several judges in this District, including this Court, and purported to set forth the views of PBOC and CBRC regarding this Court's August 23 Order and the decision of Magistrate Judge Henry Pitman in *Tiffany (NJ) LLC, et al. v. Qi Andrew, et al.*, No. 10 Civ. 9471 (WHP) (HBP), denying the plaintiffs' motion to compel the production of documents from BOC and two other Chinese banks. *Id.* Among other things, the PBOC Letter stated that PBOC and CBRC were aware of BOC's production of documents in accordance with the August 23 Order and that BOC had received a "severe warning" as a result. *Id.* at 9.

On November 30, 2011—nearly four weeks after the PBOC Letter was sent to this Court and three months after the Order was entered—BOC moved for reconsideration of the August 23 Order pursuant to Federal Rule of Civil Procedure 60(b).  Dkt. Nos. 88-91.  Relying primarily upon the PBOC Letter, BOC sought reconsideration of both the Court's grant of Plaintiffs' motion to compel and the Court's denial of BOC's motion to modify the PI.  Dkt. No. 90 at 20. The same day, BOC filed a motion in the Second Circuit seeking to stay its appeal of that portion of the August 23 Order denying the Bank's motion to modify the PI.[4]

## ARGUMENT

## I.      BOC IS NOT ENTITLED TO RELIEF UNDER RULE 60(b)

The Second Circuit has long-held that Rule 60(b) is "extraordinary judicial relief" that can only be granted "upon a showing of exceptional circumstances."  *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *Mendell ex rel Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990), *aff'd*, 501 U.S. 115 (1991) (Rule 60(b) motions "are generally granted only upon a showing of exceptional circumstances"); *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994) (same).  Putting aside the motion's fatal procedural defects, BOC cannot demonstrate the type of "exceptional circumstances" that would justify the "extraordinary remedy" of reconsideration under Rule 60(b).  *In re Optionable Sec. Litig.*, No. 07 Civ. 3753 (PAC), 2009 WL 1653552, at *2 (S.D.N.Y. June 15, 2009) (citations omitted).

Moreover, BOC has long missed the fourteen-day deadline for seeking relief under Local Rule 6.3, which does allow for reconsideration of interlocutory orders.  "[A]fter the Local Rule 6.3 deadline has passed, a court in this district must closely scrutinize a litigant's Rule 60(b) motion in order to insure that the motion is properly brought pursuant to that rule."  *Alvarez v.*

---

[4]  *Gucci Am., Inc. v. Li*, Case No. 11-3934 (2d Cir.), Dkt. No. 37.

*Am. Airlines*, No. 98 Civ. 1027 (MBM), 2000 WL 145746, at *2 (S.D.N.Y. Feb. 8, 2000)

(Mukasey, J.).

 For the reasons set forth herein, BOC's motion for reconsideration should be denied.

### A. BOC's Motion is Procedurally Improper

 BOC's motion is improper under the explicit terms of Rule 60(b), the Federal Rule upon

which the Bank relies in seeking relief.  It is well-settled that a threshold "requirement under

Rule 60(b) [is] that the reconsidered order or judgment be 'final.'"  *In re Bear Stearns Cos., Inc.*

*Sec., Derivative, and ERISA Litig.*, 08 MDL No. 1963, 2011 WL 321142, at *3 (S.D.N.Y. Feb. 1,

2011) (citing *Indem. Ins. Co. of N. Am. v. Reisley*, 153 F.2d 296, 299 (2d Cir. 1946) (*on petition*

*for reh'g*)); *S.E.C. v. Save the World Air, Inc.*, No. 01 Civ. 11586 (GBD), 2005 WL 1208525, at

*1 (S.D.N.Y. May 19, 2005); *Cancel v. Mazzuca*, No. 01 Civ. 3129 (NRB), 2002 WL 1891395,

at *3 (S.D.N.Y. Aug. 15, 2002); *Charter Oak Fire Ins. Co. v. Nat'l Wholesale Liquidators*, No.

99 Civ. 5756 (JSR), 2003 WL 22455321, at *1 (S.D.N.Y. Oct. 29, 2003) ("[Rule 60(b)] is

inapplicable, as the August 29 Order was not a '*final*' judgment, order, or proceeding within the

meaning of that rule.") (emphasis in original).

 There is no question that the August 23 Order is not a final order.  *Constr. Prods.*

*Research, Inc.*, 73 F.3d at 468 ("orders enforcing subpoenas issued in connection with civil and

criminal actions . . . are *not* final") (emphasis in original); *Nat'l Asbestos Workers Med. Fund v.*

*Philip Morris, Inc.*, 71 F. Supp. 2d 139, 155 (E.D.N.Y. 1999) (order refusing to modify a

preliminary injunction is "interlocutory").

 There is also no question that BOC was well-aware of the interlocutory, non-final nature

of the August 23 Order before filing a baseless motion for reconsideration.  Indeed, BOC

specifically requested that this Court grant it permission to take an "*interlocutory appeal*" of the

August 23 Order's provisions regarding the motion to compel.  Dkt. No. 79 at 3 (emphasis

added); *see also* Dkt. No. 81 (Transcript of Sept. 12, 2011 Hr'g) at 8:15-17 (denying BOC's

request for interlocutory relief).  Further, in *Kurzweil v. Phillip Morris Cos*., one of the cases

primarily relied upon by BOC, the court states expressly that "Rule 60(b)(2) authorizes relief

from a *final order* based only on newly discovered evidence."  Nos. 94 Civ. 2373 (MBM), 94

Civ. 2576 (MBM), 1997 WL 167043, at *5 (S.D.N.Y. April 9, 1997) (emphasis added).

Rule 60(b) therefore provides no basis for BOC to seek relief of this Court's August 23

Order.  *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 WL

1739893, at *2 n.1 (S.D.N.Y. June 16, 2009) ("Since the discovery orders at issue here are

interlocutory orders, . . . Rule 60(b) has no application."); *Sank v. City Univ. of N.Y.*, No. 94 Civ.

0253 (RWS), 1997 WL 65910, at *1 (S.D.N.Y. Feb. 13, 1997) ("Rule 60(b) applies only to 'final

judgment[s]' and not to interlocutory orders.") (alteration in original).  Consequently, BOC's

motion is fatally defective and should be denied.

## B.    BOC's Motion Fails As A Matter of Substance

Even if BOC's motion for reconsideration under Rule 60(b) was properly before the

Court, the motion would fail on the merits.

### 1.    The PBOC Letter is Not "Newly Discovered Evidence" Under Rule 60(b)(2)

As an initial matter, BOC incorrectly asserts that the PBOC Letter justifies a grant of

relief under either Rule 60(b)(2) or Rule 60(b)(6), *see* Dkt. No. 90 at 8.  Only Rule 60(b)(2) is

applicable, however.

It is well-settled that "[w]here a claim sounds very much like a claim regarding newly

discovered evidence, the claim is controlled by 60(b)(2) and should not be labeled as if brought

under a different provision of Rule 60(b)."  *State St. Bank & Trust Co. v. Inversiones Errazuriz*

*Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) (citation and internal quotations omitted); *Nemaizer*,

793 F.2d at 63 ("[Rule 60(b)(6)] is properly invoked only . . . when the asserted grounds for

relief are not recognized in clauses (1)-(5) of the Rule.").  As BOC itself describes the PBOC

Letter as "newly-discovered evidence," Rule 60(b)(2) governs BOC's motion.  *Am. Civil*

*Liberties Union v. Dep't of Def.*, 406 F. Supp. 2d 330, 332 (S.D.N.Y. 2005) ("Because the

asserted grounds for relief, 'newly discovered evidence,' are recognized in clause two of Rule

60, relief under clause 6 of Rule 60 is unavailable.").

More substantively, BOC is not entitled to relief under Rule 60(b)(2) because the PBOC

Letter fails to meet the Second Circuit's "onerous" four-part test for Rule 60(b)(2) motions:

> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (alteration in original).

The Second Circuit has made clear that a movant bears the burden of satisfying *all four factors*

for the evidence to be "newly discovered" under Rule 60(b)(2).

BOC meets none of these factors and, moreover, fails to mention or address the fourth

factor—that "the evidence must not be merely cumulative or impeaching."  Rather, BOC devotes

nearly all of its Rule 60(b)(2) discussion to only a *part* of the third factor—whether the evidence

would have changed the outcome of the prior ruling.  Dkt. No. 90 at 8-9.  In a footnote, BOC

asserts conclusorily that the PBOC Letter meets the other requirements of Rule 60(b)(2).  *Id.* at 8

n.7.  BOC falls far short of making the required showing to justify granting reconsideration

under Rule 60(b).

**a)     The PBOC Letter is New, Not "Newly Discovered"**

BOC admits that "the [PBOC] Letter itself did not exist at the time of the August 23

Order."  Dkt. No. 90 at 8 n.7.  As a matter of law then, the PBOC Letter does not constitute

"newly discovered evidence" within the meaning of Rule 60(b)(2).  BOC's contention that the

PBOC Letter falls under Rule 60(b)(2) because "the facts underlying [the PBOC Letter] . . .

clearly did exist at [the] time," Dkt. No. 90 at 8 n.7, has been specifically rejected by the Second

Circuit.  *Ryan v. U.S. Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962).

In *Ryan*, the movant sought reconsideration of an order based on the results of a post-

judgment physical examination.  *Id.* at 433.  The Second Circuit affirmed the lower court's

denial of reconsideration, finding that Rule 60(b)(2) "permits reopening a judgment only on the

discovery of evidence in existence and hidden at the time of the judgment, and the results of

new physical examinations are not such evidence."  *Id.* at 434.  Although the facts underlying the

new evidence (*i.e.*, the movant's pre-judgment injuries) existed prior to the new physical

examination, the results of the exam were not "newly discovered evidence" within the meaning

of Rule 60(b)(2).  *Id.* at 434; *see also Am. Civil Liberties Union*, 406 F. Supp. at 332 (CIA's

public admissions after judgment regarding interrogation of detainees did not constitute "newly

discovered evidence"); *Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996)

(post-judgment financial report was not "newly discovered evidence" because "all of the material

facts in the new . . . report were in existence at the time the original motion was litigated").

Similarly, in *Kurzweil*, a case relied upon by BOC to support its assertion that the PBOC

Letter is "newly discovered evidence," the court expressly concluded that evidence created *after*

the relevant order issued "is not newly *discovered* evidence that was in existence at the time of

the order; it is simply new evidence."  1997 WL 167043, at *5 (emphasis in original) (holding

that such evidence is "not cognizable on a Rule 60(b)(2) motion").  The same is true of the

PBOC Letter here and "is sufficient to warrant denial of [the] motion." *Frankel*, 939 F. Supp. at 1127.

### b)   BOC Offers No Evidence to Support a Finding of "Due Diligence"

A denial of BOC's motion is further justified because BOC's papers are devoid of any evidence as to the Bank's due diligence. *Lykes Pasco, Inc. v. Ahava Dairy Prods. Corp.*, No. CV-97-0652, 1998 WL 427570, at *3 (E.D.N.Y. Jan. 26, 1998) ("Without demonstrating its due diligence, [a movant] cannot meet the standards for a Rule 60(b)(2) motion."); *Boule v. Hutton*, 170 F. Supp. 2d 441, 445 (S.D.N.Y. 2001) (denying reconsideration based upon post-judgment affirmations where movants failed to demonstrate due diligence).

Although BOC made Chinese bank secrecy laws a central theme of its submissions to this Court, the Bank offers no evidence that it attempted to reach out to (or obtain an advisory opinion from) PBOC or CBRC at any time during the *nine months* that the relevant motions were pending.  There is no reason to believe that BOC could not have obtained the PBOC Letter earlier given that, as BOC admits, "the facts underlying [the PBOC Letter], *i.e.*, China's prohibition on the production of account documents located in China and on the freezing or turnover of accounts in China . . . clearly did exist at [the] time" the August 23 Order was issued. Dkt. No. 90 at 8 n.7.

The Bank provides no information to the Court as to when and how the PBOC Letter came into its possession (indeed, it was BOC—not its regulators—that provided Plaintiffs and the Court with a copy of the PBOC Letter).  If the PBOC Letter came about as a result of BOC contacting its regulators regarding the August 23 Order, this would certainly weigh against a finding that BOC could not have obtained the letter earlier through due diligence.  *See Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (denial of reconsideration was not an

abuse of discretion where "[t]here was no indication that [movant] could not have discovered this evidence earlier"); *see also Kurzweil*, 1997 WL 167043, at *4 (Rule 60(b)'s due diligence requirement insures that parties do not "relitigate decided issues based on evidence . . . capable of discovery at a time when it could be presented to the court").

### c)      The PBOC Letter is Not "Admissible"

BOC's showing of admissibility is limited to a single sentence that the PBOC Letter is "'admissible' for purposes of Rule 60(b)(2) to support BOC's opposition to plaintiffs' motion to compel and BOC's motion to modify the Preliminary Injunction." Dkt. No. 90 at 8 n.7.  This conclusory statement does not suffice to meet BOC's burden.  *See Lykes*, 1998 WL 427570, at *3 (denying Rule 60(b)(2) motion where, *inter alia*, "no foundation has been laid for the admission of the letter into evidence").

BOC fails to acknowledge or address the serious questions as to the admissibility of the PBOC Letter, such as the lack of any authentication.  Authentication is a pre-requisite to admissibility, and the PBOC Letter does not qualify as a self-authenticating document.  "To meet the standards for self-authentication under Fed. R. Evid. 902(3), a foreign affidavit must generally be accompanied by a 'final certification,' by either an embassy or consular agent of the United States or a diplomatic or consular official of the foreign country, as to the genuineness of the signature and the official position of the attesting person."  *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334, 344 (S.D.N.Y. 2007) (finding foreign affidavit inadmissible as it "provides no such certification as to the genuineness of [the affiant's] signature, nor his position").

In *BS Sun Shipping*, the court ruled that a foreign affidavit that was "notarized by a [foreign] attorney" was nonetheless inadmissible because "[s]uch notarization is insufficient to authenticate [the] affidavit such that it may be admitted as evidence."  *Id.*  Unlike the contested

affidavit in *BS Sun Shipping*, here, the PBOC Letter is not a sworn statement and is therefore inadmissible on its face. *See Leone v. CSX Transp., Inc.*, No. 5:06-CV-0389 (NAM/GJD), 2008 WL 828125, at *9 (N.D.N.Y. Mar. 26, 2008) (unsworn statement "[was] not compliant with the evidentiary standard of Fed. R. Civ. P. 56(e)," which requires the submission of "admissible" evidence). Not only is the PBOC Letter an unsworn statement, but it was not accompanied by any certification as to its authenticity or the position of the signatories. Dkt. No. 91-9 at 6, 10.[5] In fact, the individual at CBRC appears to have signed the letter "on behalf of" someone else. Moreover, the PBOC Letter was not drafted on any official letterhead nor does there appear to be any government seal affixed to the letter.

Further, the English language translation of the PBOC Letter was not accompanied by a certificate of accuracy attesting to the quality of the translation, nor was there any indication as to who actually provided the translation. Courts have found that "[t]ranslations of foreign-language documents which are not certified as true and accurate translations and which do not even identify the translator are not properly authenticated and are not admissible evidence." *Quiroga v. Fall River Music, Inc.*, No. 93 Civ. 3914 (RPP), 1998 WL 851574, at *2 n.3 (S.D.N.Y. Dec. 7, 1998) (disregarding all such translations as inadmissible evidence).

        **d)**        **The PBOC Letter is "Cumulative" of Other Evidence and Does Not Change the Court's Comity Analysis**

BOC fails to address the fourth prong of the Second Circuit's test, which requires that the "newly discovered evidence" not be "merely cumulative" of evidence already before the court. *See Int'l Bhd. of Teamsters*, 247 F.3d at 392. Regardless, BOC cannot make the required showing since the PBOC Letter is almost entirely duplicative of the opinions previously offered

_____

[5] To the extent the PBOC Letter submitted to this Court did not contain an original signature, this further supports a finding that the letter is inadmissible. *See BS Sun Shipping*, 509 F. Supp. 2d at 344 n.27 (noting that "only a copy" of the contested affidavit was submitted "without an original signature").

on behalf of BOC by Zhipan Wu and James Feinerman.  *See, e.g.*, Dkt. Nos. 37 ("Wu Decl."), 67

("Feinerman Decl.").

Among other things, the PBOC Letter repeats at least the following opinions that this

Court already received and considered from Wu and Feinerman:

- China has an interest in upholding its bank secrecy laws in order to ensure client confidence in the country's banking system.  Wu Decl. ¶¶ 11; Feinerman Decl. ¶ 22.

- Chinese law prohibits banks from disclosing information relating to customer accounts in the absence of customer consent.  Wu Decl. ¶¶ 12-13, 16; Feinerman Decl. ¶¶ 24-26.

- Chinese law prohibits freezing of customer bank accounts in the absence of customer consent.  Wu Decl. ¶¶ 14-16.

- China will not recognize an order from a New York court directing a Chinese bank to turn over funds on deposit in China.  *Id*. ¶ 16.

- China takes its Hague Convention obligations seriously.  *Id*. ¶ 32; Feinerman Decl. ¶ 28.

Where the "new evidence is essentially cumulative" of other evidence before the Court,

relief is not warranted under Rule 60(b)(2).  *BFI Grp. Divino Corp. v. JSC Russian Aluminum*,

247 F.R.D. 427, 431 (S.D.N.Y. 2007) (denying motion for reconsideration under Rule 60(b)(2)),

*aff'd*, 298 Fed. App'x 87 (2d Cir. 2008); *Am. Civil Liberties Union*, 406 F. Supp. 2d at 332

(denying reconsideration where, *inter alia*, CIA's public admissions after judgment were

"merely cumulative"); *Mancuso v. Consol. Edison Co. of N.Y., Inc.*, 905 F. Supp. 1251, 1265

(S.D.N.Y. 1995) (denying reconsideration where "the newly discovered evidence is cumulative

when considered in conjunction with evidence . . . . previously before the court").

Moreover, the PBOC Letter does not alter the comity analysis that the parties have

already briefed or that this Court thoroughly analyzed in the August 23 Order.  If anything, the

new submission by these Chinese governmental officials at this late date merely *confirms* the

arguments that Plaintiffs have previously advanced:

14

*First*, the PBOC Letter provides no indication that the Chinese authorities have taken any action against BOC for producing documents in response to the August 23 Order.  According to the PBOC Letter, BOC received nothing more than a "severe warning" for complying with its obligations under U.S. law.  As a result, the PBOC Letter simply confirms this Court's finding that BOC's "representation of the liability that it faces" is "speculative."  August 23 Order at 12; *see also In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 563 (S.D.N.Y. 2002) ("neither the Corporation nor the Republic has presented any evidence that the confidentiality asserted by the Republic is enforced by any active prosecution").

Further, it is well-settled that foreign law prohibitions on disclosure do not act as a bar to ordering the production of documents.  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987); *In re Grand Jury Subpoena*, 218 F. Supp. 2d at 562 ("[T]he Corporation must produce the records in question, notwithstanding a risk that doing so will subject it to criminal or civil penalties in the Republic."); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1478 (9th Cir. 1992) (requiring production of documents from China despite letter from China's State Secrecy Bureau ordering defendant not to disclose documents).[6]

---

[6]  More recently, in *Munoz v. China Expert Technology, Inc.*, No. 07 Civ. 10531 (AKH) (S.D.N.Y. Nov. 4, 2011) ("*Munoz* Order"), Judge Hellerstein rejected the defendants' argument that the discovery of documents located in China should proceed according to the Hague Convention where, as here, the U.S. had a strong interest in the lawsuit that "implicate[d] important United States' policies and practices."  *Munoz* Order at  ¶¶ 2-3.  While acknowledging that "China's state secrecy and other related laws . . . criminalize the disclosure of information that relates to Chinese national security and other potentially sensitive interests," the Court required discovery to proceed under the Federal Rules finding "[t]he national interest of the United States . . . observably strong."  *Id.* ¶ 3.  Judge Hellerstein further recognized that because the Chinese "laws have broad sweep and can preclude a host of nebulously defined categories of information. . . . they are viewed with some skepticism in U.S. courts."  *Id.* (citing *Richmark*, 959 F.2d at 1477).  A copy of the *Munoz* Order is attached as Exhibit B to the Halter Declaration.

*Second*, the PBOC Letter does not affect the Court's analysis of the important U.S. interests in enforcing the rights of U.S. trademark holders and protecting the interests of U.S. consumers.  These interests have been long recognized by all branches of the U.S. government and consistently reaffirmed in recent months.  *See* Dkt. No. 7-11 (Office of the Press Secretary, *President Signs 'Stop Counterfeiting in Manufactured Goods' Act* (Mar. 16, 2006)); Halter Decl. Ex. C (Michael Martina, *Geithner slams China's intellectual property policies*, REUTERS, Sept. 23, 2011); *id.* Ex. D (Dept. of Justice Office of Public Affairs, Press Release, Nov. 29, 2011); *id.* Ex. E (U.S. Trade Rep. Report to Congress, Dec. 2011).

Here, Congress has enacted a *specific statute* that eliminates any doubt that the U.S. interest favors allowing U.S. trademark owners immediate access to the "records documenting the manufacture, sale, or receipt of things involved in" counterfeiting.  15 U.S.C. § 1116 (d)(1)(A).  The importance of these records is so great that Congress authorized courts to issue *ex parte* orders allowing the seizure of counterfeiters' business records.  *Id.*  Indeed, it is precisely because "counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in" that obtaining these documents immediately is essential. *See* S. Rep. No. 104-177, at 10 (1995).

*Third*, neither PBOC nor CBRC suggest that they are moving to intervene in any of the pending matters, indicating a lack of strong Chinese interest in these matters.  Indeed, the PBOC Letter does not explain or address how China's interests are furthered by allowing its bank secrecy laws to protect international counterfeiters.  The Second Circuit has made clear that each case requires "a careful balancing of the interests involved and a precise understanding of the facts and circumstances of the particular case".  *United States v. First Nat'l City Bank*, 396 F.2d

897, 901 (2d Cir. 1968).  Here, as this Court correctly concluded in granting Plaintiffs' motion to compel,

> there is a significant public interest in enforcing the Lanham Act, which protects consumers and manufacturers from a variety of harms.  The Court fails to see how that interest is outweighed by Chinese bank secrecy laws, the protections of which may be waived, especially where such laws are susceptible to use and exploitation by international counterfeiters.

August 23 Order at 11 n.8 (internal citation omitted).

*Finally*, the PBOC Letter offers no solution to the problem that Plaintiffs and this Court face in enforcing U.S. trademark laws against counterfeiters who intentionally violate U.S. law and then hide behind the protections of Chinese bank secrecy laws.  Rather, the PBOC Letter suggests that, in addition to giving the counterfeiters a 6-12 month period to hide their assets while plaintiffs and other brand owners seek documents through the Hague Convention request, Plaintiffs *also* should not be allowed to recover the counterfeiters' illicit proceeds once this Court issues a judgment.  *See* PBOC Letter at 3 ("We prohibit any disclosure of information or turn over of assets in violation of Chinese law.").  The position of PBOC and CBRC would not only handcuff the efforts of legitimate brand owners to enforce their intellectual property rights, but it runs contrary to the well-established rule that "the Court has authority to freeze [defendants'] assets 'within or without the United States.'"  *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 WL 3952850, at *8 (S.D.N.Y. Oct. 8, 2010) (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965)).

### 2. There Are No "Extraordinary Circumstances" Justifying Relief Under Rule 60(b)(6)

To the extent it can be considered under Rule 60(b)(6), the motion fails on the merits.[7] BOC argues that this Court should reconsider its denial of the Bank's motion to modify the PI on the grounds that the Court supposedly failed to address BOC's comity argument. Dkt. No. 90 at 12-14. BOC further asserts that the PBOC Letter "underscores the Court's error in failing to address BOC's comity-based objections to the Preliminary Injunction." *Id.* at 13. There is no basis to BOC's assertions.

### a) The Court Properly Considered BOC's Comity Argument

Even a cursory review of the August 23 Order shows that the Court conducted a thorough comity analysis. The fact that the Court discussed the comity factors in the second half of the August 23 Order rather than the first half of the opinion does not constitute error because courts consider the *same factors* in determining whether to excuse compliance with an order as they do in analyzing whether to require the production of foreign documents. *Compare JW Oilfield Equip., LLC v. Commerzbank AG*, 764 F. Supp. 2d 587, 597 (S.D.N.Y. 2011), *with Minpeco, S.A. v. Conticommodity Servs., Inc.*, 116 F.R.D. 517, 522-23 (S.D.N.Y. 1987).

In *JW Oilfield*, the court rejected a foreign bank's argument that an order requiring the bank to turn over assets in Germany would violate principles of international comity. In evaluating the foreign bank's comity-based objections to the turnover order, Judge Castel expressly adopted the test that was used by the *Minpeco* court in connection with a motion to compel the production of foreign bank documents:

---

[7] "To prevail under the catch-all provision of a Rule 60(b)(6) motion, the party must show that the asserted grounds for relief are other than those recognized in clauses one through five of Rule 60, in addition to showing extraordinary circumstances justifying relief." *Am. Civil Liberties Union*, 406 F. Supp. 2d at 332.

- vital national interests of each of the states,

- the extent and nature of the hardship that inconsistent enforcement actions would impose upon the person,

- the extent to which the required conduct is to take place in the territory of the other states,

- the nationality of the person, and

- the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

*JW Oilfield*, 764 F. Supp. 2d at 596; *Minpeco*, 116 F.R.D. at 522.

Specifically, Judge Castel noted that "[w]hile the turnover order at issue here is different from an order compelling discovery, both are orders subject to enforcement and backed by the contempt power of the court.  Therefore, the five-factor balancing test from *Minpeco* is appropriate for evaluating the question of comity here."  764 F. Supp. 2d at 597.[8]  Judge Castel also observed, like other courts in this Circuit, "that the first two factors are 'far more important in the balancing test than the last three.'"  *Id.* at 598 (quoting *Minpeco*, 116 F.R.D. at 522).  It cannot be credibly disputed that the August 23 Order contains a detailed and thorough consideration of both of these factors.

### b)    BOC's Conflicting Obligations Do Not Constitute "Exceptional Circumstances"

BOC also fails to demonstrate the "extraordinary circumstances" or "extreme and undue hardship" necessary for relief under Rule 60(b)(6).  *See United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (internal quotation marks and citation omitted).  The PBOC Letter just confirms that BOC faces conflicting obligations as a result of having availed itself of the privilege of doing business in the United States.

---

[8]  BOC expressly relied upon the *Minpeco* decision in opposing Plaintiffs' motion to compel. Dkt. No. 35 at 7, 10.

There is simply nothing "exceptional" about an international bank facing conflicting obligations between the laws of its home country and one of the many countries in which it has chosen to operate. *See, e.g., First Nat'l City Bank of N.Y. v. I.R.S.*, 271 F.2d 616, 620 (2d Cir. 1959); *In re Grand Jury Subpoena*, 218 F. Supp. 2d at 554 ("Courts consistently hold that the United States interest in law enforcement outweighs the interests of the foreign states in bank secrecy and the hardships imposed on the entity subject to compliance.") (collecting cases). *See Alvarez*, 2000 WL 145746, at *2 ("[T]his 'extraordinary circumstance' is in fact strikingly ordinary.") (denying reconsideration under Rule 60(b)(6)).

BOC chose to open multiple accounts for counterfeiters and chose to accept the U.S. Dollar wire transfers into these accounts that represented the proceeds of Defendants' unlawful sales in the U.S. It should come as no surprise to BOC that a bank taking U.S. Dollar deposits from the U.S. and doing business in New York must obey a federal court located in New York. That BOC must weigh the consequences of complying with the laws of one jurisdiction over another is not a basis for relief under Rule 60(b)(6), however. "As several courts have noted, banks involved in international commerce must often face the risk of inconsistent government actions. That risk is an incident of international banking, and with the decision to enter that field of commerce comes such a risk." *In re One Grand Jury Subpoena Returnable Jan. 11, 1989*, CIV. Nos. N-89-7 (TFGD), N-89-6 (TFGD), 1989 WL 49165, at *3 (D. Conn. Mar. 22, 1989).

Accordingly, to the extent BOC's motion for reconsideration can be evaluated under Rule 60(b)(6), this matter does not present the type of "exceptional circumstances" that would warrant the extraordinary remedy of reconsideration.

## II.   BOC WOULD FAIL TO SATISFY THE REQUIREMENTS FOR RECONSIDERATION OF NON-FINAL ORDERS UNDER LOCAL RULE 6.3

As the court noted in *Grand River*, Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York allows the Court to consider motions for reconsideration of non-final orders.  2009 WL 1739893, at *1-2.  Although BOC's moving papers rely upon Rule 60(b) as the sole basis for relief, the Bank's motion would fare no better under Local Rule 6.3.

### A.   BOC's Motion Would Be Untimely

BOC's motion would be untimely under Local Rule 6.3, which requires that a motion for reconsideration be served "within fourteen (14) days after the entry of the Court's determination of the original motion."  Local Rule 6.3.  Courts have held that the "failure to make a motion for reconsideration [under Local Rule 6.3] in a timely manner is by itself a sufficient basis for denial of the motion."  *Grand River*, 2009 WL 1739893, at *1.

### B.   BOC's Motion Would Fail on the Merits

Moreover, for the reasons set forth in Section I, *supra*, BOC would not meet the requirements for relief under Local Rule 6.3 even if the Bank had filed a timely motion.  To succeed on a motion for reconsideration pursuant to Local Rule 6.3, "a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion."  *Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also Cancel*, 2002 WL 1891395, at *4 ("In determining whether a motion for reconsideration should be granted, Local Civil Rule 6.3 should be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court.") (internal quotation marks and citation omitted); *Finkelstein v. Mardkha*, 518 F. Supp. 2d 609, 611 (S.D.N.Y. 2007) ("[A] motion for reconsideration is not a

21

motion to reargue those issues already considered when a party does not like the way the original motion was resolved.") (internal quotation marks and citation omitted); *In re World Trade Ctr. Disaster Site Litig.*, No. 21 MC 100 (AKH), 2008 WL 2704317, at *1 (S.D.N.Y. July 10, 2008) (same).

## III.    BOC'S RECONSIDERATION MOTION IS AN ATTEMPT TO ESCAPE THE CONSEQUENCES OF ITS DEFIANCE OF THIS COURT'S ORDERS

BOC's motion, moreover, is also an improper attempt to distract the Court from BOC's open and conscious refusal to comply with the very Order from which it now seeks relief.  There is no debate that this Court—after granting BOC a ten-day extension—ordered the Bank, explicitly and without any ambiguity, to produce all documents responsive to Plaintiffs' subpoena by September 22, 2011.  Dkt. Nos. 79, 81.[9]  BOC admits, however, that it failed to comply with the Court's directive.  Dkt. No. 90 at 3-4.

As set forth in Plaintiffs' December 14, 2011 letter to the Court, BOC has failed to produce Defendants' account records, in direct violation of this Court's Orders.  Halter Decl. Ex. A at 4-5.  Moreover, the limited documents Plaintiffs did receive from BOC show in no uncertain terms that the Bank allowed the counterfeiters to close their accounts several days after BOC was personally served with the Court's temporary restraining order.  *Id.*

BOC makes no attempt to explain how its failure to comply with the Court-ordered September 22 production deadline is excused by the PBOC Letter—a letter dated well over a month after BOC was required to comply with the August 23 Order.

---

[9]   *See also* Dkt. No. 28-5 (copy of the subpoena requesting, *inter alia*, documents associated with "*any* open or closed checking, savings, money market accounts, and certificates of deposits held in the name of any of the defendants, including but not limited to" the accounts ending in 2443 and 1235) (emphasis added).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (i)

denying BOC's motion for reconsideration; and (ii) granting such other relief as the Court may

deem just and proper.

Dated:  New York, New York
        December 23, 2011

Respectfully submitted,

GIBSON, DUNN & CRUTCHER, LLP

By:      /s/ Robert L. Weigel
         Robert L. Weigel (RW 0163)
         Howard S. Hogan (HH 7995)
         Jennifer C. Halter (JH 7032)
         Anne M. Coyle (AC 3158)
         200 Park Avenue
         New York, New York 10166
         (212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,*
*Balenciaga America, Inc., Balenciaga S.A.*
*Bottega Veneta International S.A.R.L.,*
*Bottega Veneta Inc., Luxury Goods International*
*S.A. and Yves Saint Laurent America, Inc.*

23