UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUCCI AMERICA, INC., *et al.*,

                 Plaintiffs,

  – against –

WEIXING LI, *et al.*,

                Defendants.

10 Civ. 4974 (RJS)

ECF CASE


## NON-PARTY BANK OF CHINA'S MEMORANDUM OF LAW IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE DATED SEPTEMBER 27, 2012


ALLEN & OVERY LLP
Andrew Rhys Davies
Bradley S. Pensyl
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

*Attorneys for Non-Party Bank of China*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 3

      A.    Gucci Served A Subpoena Seeking Documents Concerning Two
            Specific Accounts; The Court Compelled Compliance, And Bank
            Of China Complied With The Court's Order ........................................... 3

      B.    February 2011: Gucci Serves A Second Subpoena Seeking
            Documents Concerning The New Accounts ............................................. 5

      C.    November 2011: Bank of China Moves For Reconsideration Of
            The August 2011 Order, Based On A Letter From The Chinese
            Regulators .............................................................................................. 6

      D.    May 2012: In The Related *Tiffany v. Forbse* Case, Judge Buchwald
            Orders Discovery From Chinese Banks To Proceed Under The
            Hague Evidence Convention .................................................................... 7

      E.    August 2012: In The Related *Tiffany v. Qi Andrew* Case, The
            Chinese Ministry Of Justice Executes The Letter Of Request
            Approved By Judge Pitman .................................................................... 8

      F.    China's Central Bank Has Instructed Bank Of China Not To
            Produce Further Documents Absent Extraordinary Permission
            From The Chinese Government; Bank Of China Has Sought Such
            Permission And Is Awaiting The Government's Response ...................... 9

STANDARD OF LAW ...................................................................................................... 9

ARGUMENT .................................................................................................................... 10

  I.    BANK OF CHINA SHOULD NOT BE SANCTIONED BECAUSE
      GUCCI CANNOT MEET ITS HEAVY BURDEN TO ESTABLISH THE
      ELEMENTS OF CONTEMPT ...................................................................... 10

      A.    Bank Of China Has Not Violated A Clear And Unambiguous
            Order ...................................................................................................... 10

      B.    Gucci Cannot Show That Bank of China Has Failed To Exercise
            Reasonable Diligence To Comply With Any Order Of The Court ........ 15

      C.    Even If The Court Disagrees With Bank Of China And Holds The
            Bank In Contempt, Any Sanctions Should Be Stayed Pending
            Appeal ................................................................................................... 17

II.    BANK OF CHINA SHOULD NOT NOW BE ORDERED TO COMPLY
WITH THE 2011 SUBPOENA ........................................................................ 18

    A.    BOC Should Not Be Ordered To Comply With The 2011
Subpoena, And Gucci Should Be Required To Seek Responsive
Documents Under The Hague Evidence Convention ............................. 18

    B.    In The Alternative, Bank Of China Requests That The Court
Execute A Letter Of Request So That Bank of China Can Comply
Both With The 2011 Subpoena And The Instructions Of Its
Chinese Regulators ............................................................................... 23

CONCLUSION ........................................................................................................ 24

## TABLE OF AUTHORITIES

### CASES

*Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust)*,
  634 F.3d 678 (2d Cir. 2011).................................................................................12

*Dove v. Atlantic Capital Corp.*,
  963 F.2d 15 (2d Cir. 1992)............................................................................ 17-18

*Dunn v. New York State Dep't of Labor*,
  47 F.3d 485 (2d Cir. 1995)..............................................................................14

*First American Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998)..............................................................................16

*Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty Ltd.*,
  No. CV 06-0356(FB)(JO), 2006 WL 1720442 (E.D.N.Y. June 22, 2006)......................10

*Golan v. American Airlines, Inc. (In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001)*,
  490 F.3d 99 (2d Cir. 2007)..............................................................................17

*Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States*,
  657 F.2d 5 (2d Cir. 1981)................................................................................18

*Gucci America, Inc. v. Curveal Fashion*,
  No. 09 Civ. 8458, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) ......................................3-4

*Gucci America, Inc. v. Weixing Li*,
  No. 10 Civ. 4974 (RJS), 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) .................. passim

*In re Application of Morocco*,
  Misc. Case No. M8-85, 2009 WL 1059786 (S.D.N.Y. Apr. 16, 2009) ......................10, 19

*In re Anschuetz & Co., GmbH*,
  754 F.2d 602 (5th Cir. 1985), *vacated* 483 U.S. 1002,
  *remanded to* 838 F.2d 1262 (5th Cir. 1988) ..................................................21

*In re Application to Quash Subpoena to Nat'l. Broad. Co.*,
  79 F.3d 346 (2d Cir. 1996)..............................................................................18

*In re Sealed Case*,
  825 F.2d 494 (D.C. Cir. 1987), *cert. denied* 484 U.S. 963 (1987) ....................................16

*In re Westinghouse Electric Corp. Uranium Contracts Litigation,*
    563 F.2d 992 (10th Cir. 1977) .......................................................................................16

*Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.,*
    No. 04 Civ. 7369, 2006 WL 2128785 (S.D.N.Y. July 28, 2006) ....................................11

*King v. Allied Vision, Ltd.,*
    65 F.3d 1051 (2d Cir. 1995)..........................................................................10-11, 13-14

*Milliken & Co. v. Bank of China,*
    758 F. Supp. 2d 238 (S.D.N.Y. 2010)..............................................................................4

*Mount Sinai School of Medicine v. American Tobacco Co. (Application of*
    *American Tobacco Co.),*
    880 F.2d 1520 (2d Cir. 1989)........................................................................................18

*OSRecovery, Inc. v. One Groupe Int'l, Inc.,*
    462 F.3d 87 (2d Cir. 2006)............................................................................................18

*Perez v. Danbury Hosp.,*
    347 F.3d 419 (2d Cir. 2003)................................................................................ 10-11, 15

*Roe v. United States (In re Three Grand Jury Subpoenas Dated Jan. 5, 1988),*
    847 F.2d 1024 (2d Cir. 1988)................................................................................... 17-18

*Société Nationale Industrielle Aerospatiale v. U.S. District Court*
    *for Southern District of Iowa,*
    482 U.S. 522 (1987)........................................................................................................4

*SEC v. Hyatt,*
    621 F.3d 687 (7th Cir. 2010) .........................................................................................19

*Tiffany (NJ) LLC v. Qi Andrew,*
    276 F.R.D. 143 (S.D.N.Y. 2011) .....................................................................................8

*United States v. First Nat'l City Bank,*
    396 F.2d 897 (2d Cir. 1968)..................................................................................17, 22

*Zino Davidoff SA v. CVS Corp.,*
    No. 06 Civ. 15332 (RJS), 2008 WL 1775410 (S.D.N.Y. Apr. 17, 2008)....................10, 15

## STATUTES AND RULES

Fed. R. Civ. P. 37..................................................................................................................10

Fed. R. Civ. P. 45............................................................................................................10, 19

15 U.S.C. § 3105..................................................................................................................22

Non-party Bank of China ("BOC") respectfully submits this memorandum of law in response to the Court's Order dated September 27, 2012, which requires BOC to show cause why it should not be sanctioned for allegedly failing to comply with the Court's Orders.

## PRELIMINARY STATEMENT

The Court's Order dated September 27, 2012 requires BOC to "show cause why it should not be sanctioned for violating the Court's Orders." Very simply, BOC should not be sanctioned because, contrary to the plaintiffs' ("Gucci" or "Plaintiffs") assertions, BOC has not violated any order of the Court.

In its Order dated August 23, 2011 (the "August 2011 Order"), the Court compelled BOC to produce documents in response to one subpoena—a subpoena that Gucci served in July 2010 (the "2010 Subpoena"). In support of its motion to compel compliance with the 2010 Subpoena, and to avoid having to use the Hague Evidence Convention, Gucci told the Court that the 2010 Subpoena was narrowly focused on two specific accounts held at BOC by the defendants. Following the August 2011 Order, BOC complied with the 2010 Subpoena by producing documents relating to those two accounts.

Armed with the August 2011 Order, however, Gucci attempted a bait-and-switch maneuver, by arguing that the 2010 Subpoena is broad enough to encompass many more accounts than the two it disclosed to the Court—broad enough, even, to encompass not only accounts held by the defendants, but also accounts into which the defendants allegedly made payments from other banks located in the United States.

Showing vividly the disingenuousness of Gucci's contrived position, after briefing on the motion to compel compliance with the 2010 Subpoena had been completed, in February 2011, Gucci served a second subpoena (the "2011 Subpoena") that, for the first time,

actually identified the additional accounts as to which Gucci complains account statements have

not been produced, and that did, in fact, request production of those account documents.  Gucci

now insists that these documents were already covered by the 2010 Subpoena, and that it served

the 2011 Subpoena only to request those account records "explicitly," "out of an abundance of

caution," but if the 2010 Subpoena clearly and unambiguously required production of these

documents there would have been no need for the 2011 Subpoena.

       Gucci has been aware since at least October 2011 that BOC did not interpret the

August 2011 Order as compelling production of documents relating to accounts that were not

identified in the 2010 Subpoena and that were identified and requested for the first time in the

2011 Subpoena.  Instead of moving to compel compliance with the 2011 Subpoena, which is the

proper course when a subpoenaed person serves formal objections, as BOC has done, Gucci has

proceeded directly to a request to hold BOC in contempt.

       Gucci's request to hold BOC in contempt should be swiftly denied for the

fundamental reason that BOC has never clearly and unambiguously been ordered to produce the

documents that Gucci complains have not been produced.  Gucci's request to hold BOC in

contempt is a gross overreach by Gucci and its counsel, apparently motivated by a wish to try to

derive some benefit by improperly threatening BOC with the ignominy of contempt proceedings.

Gucci's frustration with the defendants and the challenges it faces in securing compensation

from them is understandable.  Its misdirection of that frustration at non-party BOC in the form of

an unfounded contempt motion is not.

       For these reasons, and for other reasons set forth below, Gucci's contempt motion

is without basis in law or fact and, therefore, should be denied.

## BACKGROUND

A.     **Gucci Served A Subpoena Seeking Documents Concerning Two Specific Accounts; The Court Compelled Compliance, And Bank Of China Complied With The Court's Order**

The August 2011 order that Gucci accuses BOC of violating compelled BOC to produce documents in response to the 2010 Subpoena, which Gucci served on the New York branch of BOC on July 16, 2010. Davies Decl. Ex. 1 (2010 Subpoena).[1]  The 2010 Subpoena requested information relating to bank accounts "held by Defendants," and specified two such accounts. *Id.* at Definitions ¶ 4, Requests ¶¶ 1-8.

In December 2010, Gucci moved to compel compliance with the 2010 Subpoena. BOC cross-moved to modify the 2010 Subpoena to eliminate any requirement to produce account records from China and asked the Court to require Gucci to seek discovery of account records in China under the Hague Evidence Convention. ECF Nos. 26-28, 34-38.  The cross-motions were fully briefed on January 3, 2011.

In its opposition to BOC's argument that Gucci should be required to utilize the Hague Evidence Convention, Gucci argued that the 2010 Subpoena was narrowly tailored, because it was "directed towards *specific account numbers* at BOC" that were owned by one or more of the named defendants. ECF No. 39 at 17-18 (emphasis added).  Gucci contended that because the 2010 Subpoena was limited to specific identified accounts, it was analogous to the subpoena upheld in *Gucci America, Inc. v. Curveal Fashion*, No. 09 Civ. 8458, 2010 WL 808639 (S.D.N.Y. Mar. 8, 2010), which was "directed 'towards a *specific [bank] account number*, belonging to an account believed to be *owned by Defendant. . . .*'" ECF No. 39 at 17-18 (emphasis added) (quoting *Curveal Fashion*, 2010 WL 808639, at *3).

---

[1]     The exhibits ("Ex.") cited herein are attached to the declaration of Andrew Rhys Davies ("Davies Decl.") dated October 12, 2012.

To determine whether to order Bank of China to produce documents in response to the 2010 Subpoena in violation of Chinese law, the Court conducted a comity-based analysis, as required by *Société Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987). *See Gucci America, Inc. v. Weixing Li*, No. 10 Civ. 4974 (RJS), 2011 WL 6156936, at *5-12 (S.D.N.Y. Aug. 23, 2011). The Court held that, although the factors were "far from completely one-sided," *id.* at *12, they ultimately weighed in favor of granting Gucci's motion to compel and denying BOC's cross-motion.

The Court held that the second factor in the comity analysis—the specificity of the requests—weighed in favor of Gucci, because, as Gucci had argued, the 2010 Subpoena was limited to two specific accounts held by Defendants at BOC. *Id.* at *6 ("The Subpoena seeks production of information limited solely to Defendants' accounts at Bank of China. Plaintiffs have already identified two such accounts and have connected them to Defendants' counterfeiting activities.").

Based on Gucci's portrayal of the 2010 Subpoena as limited to two specific accounts, the Court found the 2010 Subpoena to be similar to the subpoenas that were upheld in *Curveal Fashion*, 2010 WL 808639 and in *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238 (S.D.N.Y. 2010), which were, respectively, "directed . . . towards a specific UOB account number, belonging to an account believed to be owned by Defendant Curveal Fashion," *Curveal*, 2010 WL 808639, at *3, and "directed exclusively" to a single account that was specifically identified in the subpoena, *Milliken*, 758 F. Supp. 2d at 247. *See Weixing Li*, 2011 WL 6156936, at *6.

On September 22 and September 29, 2011, in compliance with the August 2011 Order, BOC produced account records requested by the 2010 Subpoena. As BOC stated in the

4

cover letters to Plaintiffs' counsel, BOC's production comprised the responsive documents that it was able to locate after a reasonable search based on the two account numbers identified in the 2010 Subpoena.  Davies Decl. Exs. 2, 3.

**B.      February 2011: Gucci Serves A Second Subpoena Seeking Documents Concerning The New Accounts**

On February 23, 2011, approximately seven weeks after the cross-motions relating to the 2010 Subpoena were fully submitted, Gucci served on BOC the 2011 Subpoena. Davies Decl. Ex. 4.  It was the 2011 Subpoena that identified for the first time and sought documents concerning six or seven additional accounts (the "New Accounts").[2]  Gucci asserts that BOC should be help in contempt for failing to produce documents concerning these New Accounts.

In addition to identifying the New Accounts that had not been identified in the 2010 Subpoena, the 2011 Subpoena is broader than the 2010 Subpoena in that it was not "limited solely to Defendants' accounts at Bank of China," *Weixing Li*, 2011 WL 6156936, at *6, but also seeks documents concerning accounts "into which Defendants transferred funds" from other banks in the United States.  Davies Decl. Ex. 4 at Definitions ¶ 4, Requests ¶¶ 1-5.  Emphasizing that the 2011 Subpoena is substantially broader in scope than the 2010 Subpoena, the New Accounts are identified in the 2011 Subpoena as "accounts held by Defendants *or* into which Defendants transferred funds." *Id.* at Definitions ¶ 4 (emphasis added).  Likewise, the cover letter that accompanied the 2011 Subpoena does not describe the New Accounts as accounts held by Defendants but as "accounts into which Defendants wired proceeds from their counterfeiting operation." Davies Decl. Ex. 4.  In addition, the 2011 Subpoena contains a broad request for

---

[2]      Although Gucci alleges that the 2011 Subpoena identifies seven additional accounts, it in fact mentions six accounts that were not identified in the 2010 Subpoena.  Davies Decl. Ex. 4.

documents concerning any other accounts held at BOC by the owners of the New Accounts. *Id.* at Requests ¶ 2.

On March 7, 2011, BOC served formal objections to the 2011 Subpoena, stating that BOC's New York branch had located no responsive documents, and objecting to the Subpoena to the extent it would require documents to be produced in violation of the laws of China and to the extent it does not conform to the Hague Evidence Convention process. Davies Decl. Ex. 5.

Gucci has been aware since at least October 2011 that BOC does not interpret the August 2011 Order as compelling compliance with the 2011 Subpoena, and that BOC does not interpret the 2010 Subpoena as calling for production of documents concerning the New Accounts that were only identified in the 2011 Subpoena. Davies Decl. Exs. 6-9. Gucci has never, however, moved to compel compliance with the 2011 Subpoena. Instead, Gucci has now asked the Court to hold BOC in contempt, based on its theory that, contrary to the arguments Gucci made to the Court to secure the August 2011 Order, the 2010 Subpoena called for production of documents concerning the New Accounts.

C.   **November 2011: Bank of China Moves For Reconsideration Of The August 2011 Order, Based On A Letter From The Chinese Regulators**

On November 30, 2011, BOC moved to reconsider the August 2011 Order, based on a letter that The People's Bank of China (the "PBOC") and the China Banking Regulatory Commission (the "CBRC"), BOC's regulators in China (collectively, the "Chinese Regulators"), submitted on November 3, 2011 to this Court and to several other judges of this district who are overseeing related cases brought by Gucci and by its counsel (the "Chinese Regulators' Letter"). ECF. Nos. 88, 90, 91-1.

In their letter, the Chinese Regulators stated that: (i) China's banking

confidentiality laws prohibit banks from disclosing information about accounts located in China or freezing such accounts in response to the order of a foreign court and that BOC's September 2011 production of documents pursuant to the 2010 Subpoena violated Chinese law; (ii) China has "material interests" in the enforcement of its banking privacy laws, which play an important part in engendering client confidence in China's relatively underdeveloped financial system; (iii) U.S. court orders such as the August 2011 Order will have an adverse impact on Sino-American government-to-government efforts to foster cooperation in cross-border legal matters; and (iv) the Hague Evidence Convention is the proper way to obtain the production of documents from China and that the regulators are committed to working with the Chinese Ministry of Justice to ensure that such requests are satisfied.  ECF No. 91-1.

Based on the Chinese Regulators' Letter, BOC asked the Court to reconsider its August 2011 Order insofar as it extended the asset freeze of the preliminary injunction to accounts in China, ECF No. 90 at 12-15, and inasmuch as BOC anticipated that the Court would apply its August 2011 Order to any future motion to compel compliance with the 2011 Subpoena, to reconsider the August 2011 ruling as to document production.  ECF No. 90 at 7-12.

On May 18, 2012, the Court denied BOC's motion for reconsideration, ruling that the motion was procedurally impermissible and that the Chinese Regulators' Letter would not change the result of the August 2011 ruling.  ECF No. 98.

### D.   May 2012: In The Related *Tiffany v. Forbse* Case, Judge Buchwald Orders Discovery From Chinese Banks To Proceed Under The Hague Evidence Convention

On May 23, 2012, the Honorable Naomi Reice Buchwald, who is presiding over a related case brought by Gucci's counsel, *Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976 (S.D.N.Y.), in which plaintiffs obtained a preliminary injunction that purported to require several Chinese banks to produce account documents from China, ruled that plaintiffs should pursue discovery of

such documents in China under the Hague Evidence Convention. *Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976, ECF No. 38 (S.D.N.Y. May 23, 2012).   Relying on the Chinese Regulators' Letter, the Court held that "[g]iven the Chinese government's stated intention to cooperate with such a request, as well as the near certainty that this issue will continue to arise in future litigation, we consider it appropriate to require Tiffany to direct its discovery requests for [Industrial and Commercial Bank of China] and [China Merchants Bank] through the Hague Convention in the first instance." *Id.* at 26.   Judge Buchwald did not extend that ruling to BOC, for case-specific reasons that have no impact on the case before this Court. *See id.* at 5.

E.   **August 2012: In The Related** *Tiffany v. Qi Andrew* **Case, The Chinese Ministry Of Justice Executes The Letter Of Request Approved By Judge Pitman**

As the Court is aware from the briefing leading up to the August 2011 Order, in another related case brought by Gucci's counsel, *Tiffany (NJ) LLC v. Qi Andrew*, No. 10 Civ. 9471 (S.D.N.Y.), the Honorable Henry B. Pitman ordered that plaintiffs should seek discovery from nonparty Chinese banks under the Hague Evidence Convention. *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160 (S.D.N.Y. 2011).

On August 7, 2012, the Chinese Ministry of Justice transmitted its response to the letter of request in the *Qi Andrew* case. Davies Decl. Ex. 10.   The materials produced by the Ministry included precisely the kinds of documents that plaintiffs' counsel have represented to be important to the prosecution of these cases. At oral argument before Judge Buchwald in the *Forbse* case, when pressed by the court to explain the importance of the documents that plaintiffs seek from the banks, plaintiffs' counsel referred to account-opening forms and proof of account-holder identities, explaining that such documents would permit plaintiffs to identify individual account-holders and add them as defendants. Davies Decl. Ex. 11 at 27:4-30:6. The documents produced by the Ministry of Justice in the *Qi Andrew* case include five sets of account-opening

and accountholder-identifying documents, including for individuals who are not currently

defendants in that case, Davies Decl. Ex. 10, and plaintiffs have informed the court that they

intend to amend their complaint to incorporate information learned from the Ministry of Justice's

production.

**F.      China's Central Bank Has Instructed Bank Of China Not To Produce Further Documents Absent Extraordinary Permission From The Chinese Government; Bank Of China Has Sought Such Permission And Is Awaiting The Government's Response**

In May 2012, Gucci renewed its request to BOC to produce documents in

response to the 2011 Subpoena. *See* Davies Decl. Ex. 8. BOC informed Gucci that, in light of

the severe warning the Chinese Regulators issued to BOC after it produced documents in

response to the August 2011 Order, BOC had raised with the Chinese Regulators the 2011

Subpoena, and was awaiting their response and instructions. Davies Decl. Ex. 12.

In a letter dated September 11, 2012, BOC informed Gucci's counsel (in a letter

sent under the caption of the *Tiffany v. Forbse* case) that China's Central Bank, the PBOC, has

reaffirmed to Bank of China that the Hague Evidence Convention represents the only process

through which BOC may disclose account-related documents for purposes of overseas litigation,

and has instructed BOC that it must not produce account-related documents outside the Hague

Evidence Convention process unless and until it receives and obtains an extraordinary approval

for such action from the Chinese government. Davies Decl. Ex. 13. BOC has sought the

Chinese government's approval to turn over documents in the pending cases, and is awaiting the

government's response. *See* Declaration of Fan Yirong dated October 12, 2012 ("Fan Decl.") ¶

4.

## STANDARD OF LAW

For BOC to be held in contempt, Gucci would have to establish that "'(1) the

order violated by the contemnor is clear and unambiguous, (2) the proof of non-compliance is

clear and convincing, and (3) the contemnor was not reasonably diligent in attempting to

comply.'" *Zino Davidoff SA v. CVS Corp.*, No. 06 Civ. 15332 (RJS), 2008 WL 1775410, at *5

(S.D.N.Y. Apr. 17, 2008) (Sullivan, J.) (quotation omitted).  "'An order of contempt leading to

the imposition of sanctions is a drastic remedy.'"  *In re Application of Morocco,* Misc. Case No.

M8-85, 2009 WL 1059786, at *2 (S.D.N.Y. Apr. 16, 2009) (quotations omitted).  Thus, BOC

cannot be held in contempt if there is "a fair ground of doubt" as to any of these elements. *Id.*

("[I]t is well-settled that contempt is a 'potent weapon' that should not be exercised 'where there

is fair ground of doubt as to the wrongfulness of the defendant's conduct.'" (quotation

omitted)).[3]

## ARGUMENT

I.  **BANK OF CHINA SHOULD NOT BE SANCTIONED BECAUSE GUCCI
    CANNOT MEET ITS HEAVY BURDEN TO ESTABLISH THE
    ELEMENTS OF CONTEMPT**

   A.  **Bank Of China Has Not Violated A Clear And Unambiguous Order**

For the Court to hold BOC in contempt, Gucci must establish beyond "'a fair

ground of doubt'" that BOC violated a plain and unambiguous directive contained in the August

2011 Order. *See Zino Davidoff SA*, 2008 WL 1775410, at *5 (quotation omitted).  This is a

heavy burden, which Gucci cannot meet.

An order is "clear and unambiguous" only if it "'leaves no uncertainty in the

---

[3]     As the sanctions provisions of Federal Rule of Civil Procedure 37 do not apply to non-
parties, *see, e.g., Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty Ltd.*, No. CV 06-
0356(FB)(JO), 2006 WL 1720442, at *2 (E.D.N.Y. June 22, 2006), BOC interprets the Court's
order to show cause why it should not be sanctioned as requiring BOC to show why it should not
be held in contempt. *See id.* (holding that contempt is the "*only* authorized sanction under Rule
45") (emphasis in original).

minds of those to whom [the order] is addressed.'" *Perez v. Danbury Hosp.*, 347 F.3d 419, 424

(2d Cir. 2003) (alterations in original) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058

(2d Cir. 1995)).  The parties "'must be able to ascertain from the four corners of the order

precisely what acts are forbidden.'" *King*, 65 F.3d at 1058 (quotation omitted).  "Any

ambiguities in an order should be read in favor of the person charged with contempt." *Johnson*

*& Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04 Civ. 7369, 2006 WL 2128785, at *3

(S.D.N.Y. July 28, 2006).

      Gucci's contention that the August 2011 order, which compelled compliance with

the 2010 Subpoena, clearly and unambiguously applies to the New Accounts that were identified

for the first time in the later 2011 Subpoena is barred by judicial estoppel, contradicted by

Gucci's previous admissions and at odds with the plain language of the 2010 Subpoena and the

August 2011 Order.

      <u>First</u>, in connection with the motion practice that led to the August 2011 Order, in

an effort to avoid having to use the Hague Evidence Convention, Gucci argued that the 2010

Subpoena was a narrowly-tailored document that was limited to "specific account numbers at

BOC" that were owned by Defendants and that they had shown to be a repository for funds

derived from their counterfeiting.  ECF No. 39 at 18.  In that regard, Gucci referred the Court to

the Preliminary Injunction dated July 13, 2010, *id.*, which identified two such accounts with

account numbers ending in 2443 and 1235, *i.e.*, the two accounts listed in the 2010 Subpoena.

Davies Decl. Ex. 1.

      In granting Gucci's motion to compel and declining to order Gucci to utilize the

Hague Evidence Convention, the Court relied on and adopted Gucci's narrow characterization of

the 2010 Subpoena as being limited to those "specific accounts." *See Weixing Li*, 2011 WL

6156936, at *6. Having prevailed on its motion to compel by arguing that the 2010 Subpoena was limited to two accounts, Gucci should be judicially estopped from now advocating a much broader interpretation of the 2010 Subpoena, under which it would cover not just the two accounts belonging to Defendants that were identified in it, but any number of other accounts that were never identified in the 2010 Subpoena or referenced during the motion practice leading to the August 2011 Order, including the New Accounts and any other accounts into which Defendants allegedly transferred funds. *See Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust)*, 634 F.3d 678, 695 (2d Cir. 2011) ("'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . . .'" (quotation omitted)).

    <u>Second</u>, even if Gucci were not estopped from contradicting itself in this manner, its contempt motion would still fail because the 2010 Subpoena, and, therefore, the August 2011 Order that compelled compliance with it, does not clearly and unambiguously require production of any documents relating to the New Accounts. Gucci admitted as much when it served the 2011 Subpoena. Had the 2010 Subpoena clearly and unambiguously applied to the New Accounts, Gucci would have had no reason to serve a second subpoena requesting the production of documents relating to the New Accounts.

    In its most recent letter to the Court, Gucci says that it served the 2011 Subpoena "in an abundance of caution," to request "explicitly" documents relating to the New Accounts Davies Decl. Ex. 14 at 1-2 n.1. In other words, Gucci concedes that the 2010 Subpoena did not "explicitly," or, using the terminology of contempt, did not clearly and unambiguously apply to the New Accounts, so it served a second subpoena. Under these circumstances, Gucci cannot

establish by clear and convincing proof that BOC violated a clear and unambiguous order by not producing records relating to the New Accounts, so BOC should not be held in contempt.

Indeed, Gucci's tortured argument as to why the 2010 Subpoena covered the New Accounts demonstrates precisely why the 2010 Subpoena did not clearly and unambiguously apply to the New Accounts.

The 2010 Subpoena is limited in scope to documents concerning "accounts at Bank of China *held by Defendants*." Davies Decl. Ex. 1 at Definitions ¶ 4, Requests ¶¶1-8 (emphasis added). The 2010 Subpoena defines "Defendants" as follows:

> DEFENDANTS as used herein means Weixing Li, Lijun Xu a/k/a Jack London, all doing business as Redtagparty, Myluxurybags.com, Xpressdesigner.net, Xpressdesigners.com, Designer Handbags ABC Companies and John Does, as well as their officers, directors, agents, representatives, and all persons acting on their behalf.

Davies Decl. Ex. 1 at Definitions ¶ 3.

The New Accounts, as described by Gucci itself, are not "held by Defendants," as defined in the 2010 Subpoena, at all, but rather are accounts into which Defendants Lijun Xu and Ting Wu wired money. Davies Decl. Ex. 4. As Gucci concedes in its recent letter to the Court, Davies Decl. Ex. 14, the New Accounts are held, not by the "Defendants" identified in the 2010 Subpoena, but by the so-called "New Defendants"—people whom Gucci added as defendants when it filed the Second Amended Complaint on March 10, 2011—*eight months after it served the 2010 Subpoena.*

Gucci's untenable theory is apparently that the term "Defendant," as used in the 2010 Subpoena, is an elastic, ever-changing concept that, in addition to the catch-all, unidentified and unidentifiable group of "ABC Companies and John Does, as well as their officers, directors, agents, representatives, and all persons acting on their behalf," includes

anyone Gucci chooses to add as a defendant through future amended pleadings.  *See* Davies Decl. Ex. 14.

It is the four corners of the 2010 Subpoena, however, and not pleadings filed months after the Subpoena was issued, that supplies the definition of "Defendants."  *See King*, 65 F.3d at 1058 (noting that for an order to be clear and unambiguous, the person charged with contempt "'must be able to ascertain from the four corners of the order precisely what acts are forbidden'" (quotation omitted)).

The problem that would arise if an order enforceable by contempt were permitted to incorporate by reference unfixed court documents that are subject to future revision, such as the pleadings Gucci seeks to incorporate here, was addressed by the Second Circuit in *Dunn v. New York State Department of Labor*, 47 F.3d 485 (2d Cir. 1995).  In *Dunn*, the court held that the district court should not have incorporated by reference into its order a consent judgment in another case, because the resulting order would be ambiguous.  *See id.* at 489.  The court was particularly concerned that, because the consent judgment was not "a fixed document" but was "currently the subject of ongoing litigation," it might change, leaving it "unclear whether the order . . . would incorporate the original or conform to the revision."  *Id.*

The interpretation of the 2010 Subpoena advanced by Gucci here would cause the same ambiguity and same lack of clarity: if the term "Defendants" was not circumscribed by the definition provided on the face of the 2010 Subpoena and instead included any person subsequently named as a defendant in Gucci's pleadings, it would be "unclear" whether the term included the individuals named in Gucci's original complaint, amended complaint, second amended complaint or some future amendment.  *Dunn*, 47 F.3d at 489.  Indeed, the problem would be magnified in this case given that BOC is not even a party, so is under no obligation to

monitor the docket for amended pleadings, lest Gucci seek to hold it in contempt for not

producing documents relating to any "New Defendants" that Gucci adds in the future.

      For all the foregoing reasons, Gucci cannot establish that the 2010 Subpoena

clearly and unambiguously required BOC to produce records relating to the New Accounts.

Gucci's request to hold BOC in contempt should, therefore, be denied.

      **B.**    **Gucci Cannot Show That Bank of China Has Failed To Exercise
Reasonable Diligence To Comply With Any Order Of The Court**

      As set forth above, Gucci's inability to carry its burden to show that BOC has

violated a clear and unambiguous order requires the Court to deny Gucci's request to hold BOC

in contempt.  Even if the Court were to disagree, however, and were to find that BOC violated an

obligation enforceable in contempt to produce the documents requested in the 2010 Subpoena,

Gucci's request should also be denied because Gucci cannot carry its burden to show that any

noncompliance was the result of a failure by BOC to make a reasonable attempt to comply.  *See*

*Perez*, 347 F.3d at 425 (vacating an order holding defendants in contempt, holding that "[t]here

is no evidence, at least none credited by the district court, that defendants have not attempted to

comply in a reasonable manner with the terms of the Decree"); *Zino Davidoff SA*, 2008 WL

1775410, at *8 (denying contempt because "Davidoff has failed to demonstrate that CVS has not

been making reasonably diligent and energetic attempts to comply with the Court's orders").

      In this case, through no fault of its own, BOC has found itself in an impossible

position, between directly conflicting obligations under U.S. law and Chinese law—between

production obligations under U.S. law and the orders of this Court and the directly contrary

instructions of its primary domestic regulators.  *See supra* at 9.  Thus, any non-compliance the

Court might find to have taken place is certainly not the result of a lack of diligence.  As BOC

has made clear to Gucci, it is not producing the documents sought by the 2011 Subpoena at the

direct instruction of its domestic regulators. BOC has, moreover, acted diligently and in good faith by seeking extraordinary permission from the Chinese government to comply with the demands it faces in this series of cases, and is awaiting their response. Under these circumstances, it would be wholly inappropriate to hold BOC in contempt.

As the Second Circuit held in *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998), even in cases where the court does not quash a subpoena because foreign law prohibits compliance, the foreign law may still constitute "substantial justification" for the non-party's failure to comply with subpoena, allowing it to "thereby avoid contempt sanctions." *Id.* at 22-23 (citing Fed. R. Civ. P. 37(c)(1)). Thus, in *In re Sealed Case*, 825 F.2d 494 (D.C. Cir. 1987), *cert. denied* 484 U.S. 963 (1987), the court vacated a contempt citation against a non-party foreign bank that declined to comply with a grand jury subpoena in circumstances where compliance would have violated the criminal law of its home jurisdiction, noting a line of case law that distinguishes between a court's ability to compel the production of documents in violation of foreign law, and its "ability to impose sanctions for disobedience to that order, which is thought to be much more problematic." *Id.* at 497-98 (citations omitted).

Similarly, in *In re Westinghouse Electric Corp. Uranium Contracts Litigation*, 563 F.2d 992 (10th Cir. 1977), the court vacated an order holding a non-party in contempt, because production of the subpoenaed documents would have violated the criminal law of Canada, where the documents were located. The Court held that "though a local court has the power to order a party to produce foreign documents despite the fact that production may subject the party to criminal proceedings in the foreign country, still the fact of foreign illegality may prevent the imposition of sanctions for subsequent disobedience to the discovery order." *Id.* at 997. The court found it particularly inappropriate to issue a contempt citation because the

16

subpoenaed person had sought a waiver from the Canadian authorities, *see id.* at 998, just as

BOC has sought permission from the Chinese government.

Applying the law as set forth in these cases, there should be little doubt that a

direct instruction from BOC's principal domestic regulator precludes the imposition of contempt.

Indeed, the Second Circuit has made clear that regulations or orders promulgated by a banking

regulator may carry more weight even than criminal statutes or other laws, due to the extreme

power the regulator holds over the bank. *See United States v. First Nat'l City Bank*, 396 F.2d

897, 902 (2d Cir. 1968). Under these circumstances, Gucci's request to hold BOC in contempt

should be denied.

### C. Even If The Court Disagrees With Bank Of China And Holds The Bank In Contempt, Any Sanctions Should Be Stayed Pending Appeal

Even if, notwithstanding the foregoing, the Court were to hold BOC in contempt,

BOC respectfully requests that, in light of the fact that the Bank's ability to comply with the

2011 Subpoena is circumscribed by Chinese law and by the instructions of its principal domestic

regulators, any sanctions should be stayed pending appeal.

Under established Second Circuit precedent, an order compelling compliance with

a document subpoena is not "final" for purposes of appeal unless and until the appellant is held

in contempt. *See Golan v. American Airlines, Inc. (In re Air Crash at Belle Harbor, N.Y. on*

*Nov. 12, 2001)*, 490 F.3d 99, 104 (2d Cir. 2007). Although the Court of Appeals has expressed a

preference that district courts formulate contempt sanctions prior to appeal, a contempt citation is

appealable even if sanctions are stayed. *See Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 17-18

(2d Cir. 1992); *Roe v. United States (In re Three Grand Jury Subpoenas Dated Jan. 5, 1988)*,

847 F.2d 1024, 1028 (2d Cir. 1988).

Recognizing that a contempt citation often represents the only route for a non-

party to obtain appellate review of an order compelling compliance with a subpoena, there are numerous examples of courts in this Circuit staying contempt sanctions pending appeal. *See, e.g., Mount Sinai School of Medicine v. American Tobacco Co. (Application of American Tobacco Co.)*, 880 F.2d 1520, 1526 (2d Cir. 1989) (noting that contempt sanctions based on failure to comply with subpoena were stayed by the district court pending appeal); *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States*, 657 F.2d 5, 7 (2d Cir. 1981) (same); *In re Three Grand Jury Subpoenas Dated Jan. 5, 1988*, 847 F.2d at 1027 (same); *In re Application to Quash Subpoena to Nat'l. Broad. Co.*, 79 F.3d 346, 350 (2d Cir. 1996) (Second Circuit granted stay of sanctions pending appeal); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 92 (2d Cir. 2006) (same).

Indeed, the rule that contempt citations are appealable even when sanctions are not imposed originated from cases where subpoenaed persons asserted non-frivolous privilege claims at the request of a government agency, it being thought unfair to require such persons to take a contempt citation under those circumstances. *See Dove*, 963 F.2d at 18. BOC is in an analogous position, forced, in light of Chinese law and the instructions of its principal domestic regulators, to oppose production in violation of China's bank privacy laws. If, notwithstanding BOC's showing that it has not violated a clear and unambiguous order, BOC is found in contempt, therefore, the Court should stay any sanctions pending appeal.

## II.    BANK OF CHINA SHOULD NOT NOW BE ORDERED TO COMPLY WITH THE 2011 SUBPOENA

### A.    BOC Should Not Be Ordered To Comply With The 2011 Subpoena, And Gucci Should Be Required To Seek Responsive Documents Under The Hague Evidence Convention

As demonstrated above, BOC cannot be held in contempt of the August 2011 Order because, based on Gucci's own characterization of the 2010 Subpoena, the 2010

Subpoena, and, therefore, the August 2011 Order that compelled compliance with it, did not clearly and unambiguously require the production of documents concerning the New Accounts.

BOC cannot be held in contempt in respect of the 2011 Subpoena either, because BOC has served objections and Gucci has never moved to compel, let alone obtained an order compelling compliance.  As the court held in *In re Application of Morocco,* "courts in the Second Circuit have often held that before imposing sanctions under Rule 45(e) for failure to comply with an attorney-issued subpoena, a court should first issue an order compelling compliance with the subpoena."  2009 WL 1059786, at *2 (citations omitted); *see also SEC v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010) ("[U]nder Rule 45(c), intervening court involvement is required prior to initiation of contempt proceedings if the recipient of the subpoena serves a written objection on the party or attorney designated in the subpoena.").

To the extent Gucci now seeks an order compelling compliance with the 2011 Subpoena, that request should be denied, and Gucci should be ordered to proceed under the Hague Evidence Convention to obtain the information sought by the 2011 Subpoena.   Although the Court found in August 2011 that the seven-factor comity analysis weighed in favor of Gucci with respect to the 2010 Subpoena, the same cannot be said with respect to the 2011 Subpoena.[4] Applying the seven-factor comity analysis to the more expansive 2011 Subpoena based on the current record compels the opposite result.

In the August 2011 Order, the Court concluded that factors three (the origin of the

---

[4]      As the Court noted in its August 2011 Order, when deciding "whether to order a party to produce documents in contravention of the laws of a foreign country," courts in the Second Circuit weigh: (1) the importance of the documents to the litigation, (2) "'the degree of specificity of the request'"; (3) "'whether the information originated in the United States'"; (4) "'the availability of alternative means of securing the information'"; (5) balance of the respective interests of the United States and China; (6) "'the hardship of compliance on the party or witness from whom discovery is sought'"; and (7) "'the good faith of the party resisting discovery.'"

information) and seven (the good faith of the party resisting discovery) weighed in favor of
BOC, and there is no basis to change that view, particularly in light of BOC's good faith efforts
to negotiate the conflicting demands of the 2011 Subpoena and the instructions of its principal
domestic regulators by seeking the extraordinary approval of the Chinese government.

Further, the factors that the Court found to weigh in favor of Gucci in the August
2011 Order weigh in favor of BOC when the analysis is conducted with respect to the 2011
Subpoena based on the current record.[5]

First, with respect to the second factor (specificity of the requests), the 2011
Subpoena is substantially broader than the 2010 Subpoena.  While the 2010 Subpoena was
purportedly "directed toward specific accounts" held by the defendants, the 2011 Subpoena
demands documents relating to accounts "into which Defendants have transferred funds," as well
as "[a]ny and all documents concerning any other accounts at Bank of China" held by the owners
of those accounts.  Davies Decl. Ex. 4 at Requests ¶ 2.  Gucci's sweeping request has the
potential, therefore, to capture the confidential information of a wide-range of third-party
accountholders who have nothing to do with this lawsuit.  The Court should also take into
account the tactic Gucci adopted with the 2010 Subpoena—advocating a narrow interpretation
for purposes of avoiding the Hague Evidence Convention, then, having obtained an order
compelling production, arguing that it required production of a much broader range of

---

*Weixing Li*, 2011 WL 6156936, *5 (quotations and citations omitted).

[5]     BOC respectfully submits that the first factor (the importance of the documents to the
litigation) weighs in its favor, because the discovery sought by the 2011 Subpoena is not relevant
to the claims Gucci has actually asserted, as opposed to claims Gucci might assert against other
defendants in future, and that Gucci should not be entitled to discovery in aid of enforcement of a
judgment before it obtains any judgment.  BOC recognizes, however, that the Court ruled against
BOC with respect to that factor.  In order to preserve the point for appeal, BOC respectfully
reasserts its argument that the documents sought by the 2011 Subpoena are not sufficiently
important to warrant exposing BOC to legal jeopardy in China.

documents. Gucci should not be permitted to play that game again.

Second, since the Court last considered this issue, the fourth factor (alternative means of securing information) has shifted decidedly in favor of BOC.   Contrary to the Court's view as of August 2011 that the Hague Evidence Convention did not provide Gucci a realistic alternative means to obtain discovery from BOC, in August 2012, the Chinese Ministry of Justice executed the Hague Evidence Convention request that was submitted in *Tiffany (NJ) LLC v. Qi Andrew*. *See supra* at 8-9.  Indeed, the documents produced in the *Qi Andrew* case include, among other account information, precisely the kinds of documents that plaintiffs and their counsel have contended are most important to the prosecution of these cases, *i.e.*, information identifying the individual account-holders and their addresses, which will allow those individuals to be added as defendants. *See id.*

The successful execution of the Hague Evidence Convention request in *Qi Andrew* also confirms the sincerity of the Chinese Regulators' representation to this Court in their November 2011 letter that they are committed to satisfying Hague Evidence Convention requests within a reasonable time period, and validates the reliance by the Honorable Naomi Reice Buchwald on that representation in her order directing plaintiffs to utilize the Hague Evidence Convention in the *Forbse* case. *See supra* at 6-8.

Third, the fifth and sixth factors (balance of national interests and hardship of compliance to BOC) have, likewise, swung in BOC's favor since the Court last considered these issues.

BOC has shown that Chinese law prohibits it from producing account-related information from China in response to a U.S. subpoena or court order, and that violation of those laws expose the Bank and its employees to criminal, regulatory and civil liability in China.  ECF

No. 37 ¶¶ 8-32.  China's bank privacy laws are neither mere "blocking statute[s]," enacted simply to frustrate U.S. discovery, *see In re Anschuetz & Co., GmbH*, 754 F.2d 602, 614 n.29 (5th Cir. 1985), *vacated* 483 U.S. 1002, *remanded to* 838 F.2d 1262 (5th Cir. 1988), nor private contractual confidentiality obligations that are enforceable only by the customer, *see First Nat'l City Bank*, 396 F.2d at 903.  To the contrary, they are statutory and enforceable through the criminal law, and, in their November 2011 letter to the Court, the Chinese regulators stated that China "has material interests in strictly enforcing" those laws, as a means of engendering trust among the population in China's developing banking system.  ECF No. 91-1 at 3.

Although the Court previously found the risk to BOC to be speculative, the Chinese Regulators have now specifically instructed BOC that the Hague Evidence Convention provides the only mechanism through which it may produce account-related information for purposes of foreign litigation, and that it must not produce such information outside the Hague Evidence Convention process without the extraordinary approval of the Chinese government, which approval has not been granted. *See supra* at 9.  Thus, now BOC is subject to a specific instruction from its principal domestic regulators and, therefore, faces much more than a theoretical, speculative risk. *See First Nat'l City Bank*, 396 F.2d at 902 (noting that orders promulgated by a banking regulator may carry more weight even than criminal statutes or other laws, due to the extreme power the regulator holds over the bank).

Finally, any suggestion that BOC assumed the risk of being required to violate the law of its home jurisdiction simply because it opened a branch in New York is wholly contrary to the comity analysis mandated by *Aerospatiale*.  That argument is also irreconcilable with the very structure of federal regulation of foreign bank branches.  Under the Foreign Bank Supervision and Enhancement Act of 1991, 12 U.S.C. § 3105, *et seq.*, foreign banks require the

approval of the Board of Governors of the Federal Reserve (the "Board") to conduct banking activities in the United States, and submit to federal regulation with respect to such activities. The Board recognizes, however, that foreign banks' ability to disclose information to the Board may be limited by foreign bank privacy laws.  Under such circumstances, the Board requires banks to commit to "cooperate with" the Board, for example, by seeking waivers of or exemptions from those foreign laws, but does not require them to turn over information in violation of the law of their home jurisdiction.[6]  As the federal banking regulators do not assert the power to require foreign banks to turn over documents in violation of the law of their home jurisdiction, private parties like Gucci certainly should not enjoy that power.

For all the foregoing reasons, the *Aerospatiale* factors now clearly weigh in favor of BOC, so Gucci should be required to use the Hague Evidence Convention to obtain the documents sought by the 2011 Subpoena.

**B.     In The Alternative, Bank Of China Requests That The Court Execute A Letter Of Request So That Bank of China Can Comply Both With The 2011 Subpoena And The Instructions Of Its Chinese Regulators**

Finally, even if the Court is not prepared to modify the 2011 Subpoena to eliminate any obligation to produce documents from China, or to require Gucci to utilize the Hague Evidence Convention, BOC respectfully requests that the Court execute the letter of request provided as Exhibit 15 to the Declaration of Andrew Rhys Davies dated October 12, 2012.  In light of the Chinese regulators' position that BOC may only produce documents pursuant to the Hague Evidence Convention, and in light of the fact that the letter of request in *Qi Andrew* resulted in production of precisely the types of documents that plaintiffs' counsel

---

[6]     *See* Board of Governors of the Federal Reserve System, International Applications & Prior Notifications Under Subpart B of Regulation K, Attachment E (FR K-2, OMB No. 7100-0284), *available at* www.federalreserve.gov/reportforms/forms/FR_K-220110331_f.pdf.

have represented to be important, BOC respectfully submits that it is appropriate for the Court to execute a letter of request so that BOC can comply both with the 2011 Subpoena and with the instructions of its domestic regulators.

## CONCLUSION

For the foregoing reasons, BOC should not be held in contempt and should not be sanctioned.

Dated:   New York, New York          ALLEN & OVERY LLP
        October 12, 2012

By: /s/  Andrew Rhys Davies
    Andrew Rhys Davies
    Bradley S. Pensyl

1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300
Fax: 212-610-6399

*Attorneys for Non-Party Bank of China*