UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                       :

GUCCI AMERICA, INC., BALENCIAGA
AMERICA, INC., BALENCIAGA S.A., BOTTEGA
VENETA INTERNATIONAL S.A.R.L.,
BOTTEGA VENETA INC., LUXURY GOODS
INTERNATIONAL (L.G.I.) S.A. and YVES SAINT
LAURENT AMERICA, INC.

                                       :            2010 Civ. 4974 (RJS)

           Plaintiffs,

     -against-

WEIXING LI a/k/a XIN LI, LIJUN XU a/k/a JACK
LONDON and TING XU a/k/a JACK LONDON
a/k/a XU TING a/k/a REBECCA XU, WENYING
GUO, XIAOCHAO SHANG, LEI XU, FENGYUAN
ZHAO, LIQUN ZHAO, MING ZHAO, and
PEIYUAN ZHAO, all doing business as
REDTAGPARTY, MYLUXURYBAGS.COM,
KUELALA.COM, XPRESSDESIGNERS.COM,
XPRESSDESIGNER.NET, and DESIGNER
HANDBAGS; ABC COMPANIES;
and JOHN DOES,

          Defendants.
---------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO
## THE COURT'S SEPTEMBER 27, 2012 ORDER TO SHOW CAUSE

GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,*
*Balenciaga America, Inc., Balenciaga S.A.,*
*Bottega Veneta International S.A.R.L., Bottega*
*Veneta Inc., Luxury Goods International S.A. and*
*Yves Saint Laurent America, Inc.*

New York, New York
October 19, 2012

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT ................................................................................................................. 11

I.  THE COURT HAS AUTHORITY TO SANCTION BANK OF CHINA TO
    ENFORCE COMPLIANCE WITH THE AUGUST 23 ORDER .................................. 11

II. BANK OF CHINA IS IN CONTEMPT OF THE AUGUST 23 ORDER ...................... 12

    A.  The August 23 Order Clearly and Unambiguously Ordered Bank of China to
        Produce "All Information Requested by the Subpoena" ............................................ 13

    B.  Bank of China's Non-Compliance with the August 23 Order is Clear and
        Convincing .............................................................................................................. 16

    C.  Bank of China Has Not Attempted to Comply with the August 23 Order in a
        Reasonable Manner .................................................................................................. 16

        1.  BOC Conflicting Obligations Under Foreign Law Do Not Excuse Its
            Contempt of the August 23 Order ....................................................................... 17

        2.  BOC's Cannot Excuse Its Contempt by Attempting to Re-litigate Its Comity
            Argument ........................................................................................................... 20

III. BANK OF CHINA'S LONG HISTORY OF NON-COMPLIANCE WITH
     COURT ORDERS FURTHER JUSTIFIES SANCTIONS ............................................ 25

IV.  THE COURT HAS BROAD AUTHORITY TO FASHION AN APPROPRIATE
     REMEDY ...................................................................................................................... 22

    A.  The Court May Award Compensatory Damages for Attorneys' Fees and Harm
        Resulting from Bank of China's Conduct ................................................................. 23

    B.  The Court May Require Bank of China to Pay a Daily Coercive Fine for Its
        Continued Non-Compliance ..................................................................................... 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust)*,
  634 F.3d 678 (2d Cir. 2011)................................................................................. 15

*Chere Amie, Inc. v. Windstar Apparel Corp.*,
  175 F.Supp.2d 562 (S.D.N.Y. 2001)............................................................... 23, 24

*Cont'l Ins. Co. v. Alt. Cas. Ins. Co.*,
  No. 07 Civ. 3635 (DC), 2008 WL 3852046 (S.D.N.Y. Aug. 13, 2008) ................... 24

*Crosby v. City of N.Y.*,
  269 F.R.D. 267 (S.D.N.Y. 2010) ........................................................................ 14

*Dole Fresh Fruit Co. v. United Banana Co. Inc.*,
  821 F.2d 106 (2d Cir. 1987)................................................................................. 22

*F.T.C. v. Verity Int'l, Ltd.*,
  140 F. Supp. 2d 313 (S.D.N.Y. 2001).................................................................... 24

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998)................................................................................... 18

*First Indem. of Am. Ins. Co. v. Shinas*,
  No. 03 Civ. 6634, 2005 WL 3535069 (S.D.N.Y. Dec. 23, 2005)...................... 12, 24

*Garpeg v. U.S.*,
  588 F. Supp. 1240 (S.D.N.Y. 1984).................................................................... 12

*In re Dickinson*,
  763 F.2d 84 (2d Cir. 1985).................................................................................. 22

*In re Grand Jury Proceedings the Bank of Nova Scotia*,
  F.2d 817 (11th Cir. 1982), *cert. denied*, 469 U.S. 1106 (1985)....................... 18, 24

*In re Sealed Case*,
  825 F.2d 494 (D.D.C. 1987) ............................................................................... 18

*In re Westinghouse Elec. Corp. Uranium Contracts Litig.*,
  563 F.2d 992 (10th Cir. 1977) ........................................................................ 17, 18

*Leadsinger, Inc. v. Cole*,
  No. 05 Civ. 5606, 2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006) ............................ 15

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243 (2d Cir. 2002)................................................................................. 15

*Marc Rich & Co., A.G. v. U.S.*,
   736 F.2d 864 ......................................................................................................... 17

*Nolan v. Primagency, Inc.*,
   No. 07 Civ. 134 (RJS), 2008 WL 650387 (S. D.N.Y. Mar. 4, 2008) ...................... 12

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003).................................................................................. 19

*Paramedics Electromedicina Commercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir.2004).................................................................................... 12

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
   673 F.2d 53 (2d Cir. 1982)....................................................................... 22, 23, 24

*SEC v. Platinum Inv. Corp.*,
   2004 WL 1886401 (S.D.N.Y. Aug. 24, 2004)......................................................... 12

*Spallone v. U.S.*,
   493 U.S. 265 (1990)................................................................................................ 12

*Summit Bank v. Taylor*,
   No. 96 Civ. 7229 (BSJ), 1997 WL 811526 (S.D.N.Y. Nov. 12, 1997) .............. 12,24

*Tiffany (NJ) LLC v. Forbse*,
   No. 11 Civ. 4976 (NRB), 2012 WL 1918866 (S.D.N.Y. May 23, 2012)................ 21

*Tifffany (NJ) LLC v. Qi Andrew*,
   No. 10 Civ. 9471 (RA) (HBP), 276 F.R.D. 143 (S.D.N.Y. 2011)........................... 14

*U.S. v. Chase Manhattan Bank, N.A.*,
   590 F. Supp. 1160 (S.D.N.Y. 1984)........................................................... 3, 19, 24

*U.S. v. Rylander*,
   460 U.S. 752 (1983)........................................................................................... 3, 19

*Upjohn Co. v. Medtron Labs., Inc.*,
   2005 WL 3078232 (S.D.N.Y. Nov. 16, 2005).......................................................... 12

*Yurman Studio, Inc. v. Castaneda*,
   No. 07 Civ. 1241 (SAS), 07 Civ. 7862 (SAS),
   2009 WL 454275 (S.D.N.Y. Feb. 23, 2009)...................................................... 11, 23

*Zdanok v. Glidden Co.*,
    327 F.2d 944 (2d Cir. 1964).............................................................................. 19

**Statutes**

18 U.S.C. § 401 ........................................................................................................... 11

28 U.S.C. § 1292(b) ............................................................................................... 9, 16

**Rules**

Fed. R. Civ. P. 37(c)(1)............................................................................................... 19

Fed. R. Civ. P. 45(e) .............................................................................................. 12, 24

Plaintiffs Gucci America, Inc., Balenciaga America, Inc., Balenciaga S.A., Bottega Veneta International S.a.r.L., Bottega Veneta Inc., Luxury Goods International (L.G.I.) S.A. and Yves Saint Laurent America, Inc. (collectively, "Plaintiffs" or "Gucci") respectfully submit this memorandum of law in response to the Court's order, dated September 27, 2012, requiring non-party Bank of China ("BOC" or the "Bank") to show cause why it should not be sanctioned for its failure to comply with this Court's orders (the "Order to Show Cause").

## PRELIMINARY STATEMENT

The discovery dispute between Gucci and BOC should have ended when this Court issued the August 23, 2011 order (the "August 23 Order") requiring BOC to comply in full with a subpoena that was properly issued and served over two years ago (the "Subpoena"), and there should have been no need for this Court to expend further judicial resources on a nonparty discovery dispute in a case where all of the Defendants have defaulted.  But if there had been any remaining ambiguity, it was resolved on May 18, 2012, when this court rejected the Bank's attempt to undo the August 23 Order.  Because the Bank continues to hide behind semantics, flawed legal arguments, and a willful misreading of the Subpoena, Gucci has no alternative but to seek the Court's assistance to address the Bank's contumacious refusal to comply with this Court's discovery order.

BOC's submission in response to the Order to Show Cause, far from justifying its position, in fact offers clear and convincing proof that the Bank has not and, absent further Court intervention, will not "produce ***all information requested*** by the Subpoena"—much less within fourteen days of" the August 23 Order.  Dkt. 79 (Aug. 23 Order) at 13 (emphasis added).  Indeed, BOC's response is little more than a pale attempt to rehash arguments that this Court has already heard and rejected.

Critically, BOC does not dispute certain key facts:

- This Court ordered it to produce—without limitation or qualification—"all information requested by the Subpoena" (Aug. 23 Order at 13);

- The Subpoena specifically requested documents relating to "*any* open or closed . . . accounts . . . held in the name of *any* of the Defendants, ***including but not limited to***" the BOC accounts ending in 1235 and 2443 (Dkt. 28-5, at 3 (emphasis added));

- Gucci provided specific notice to the Bank as to the existence of accounts owned by Defendants above and beyond the two accounts ending 1235 and 2443 well before the Court issued the August 23 Order;

- The Bank, nevertheless, has produced documents concerning only the two accounts ending 1235 and 2443; and

- The Bank has no intention of producing any more documents.

These admissions are sufficient on their face to establish BOC's contempt.  This Court ordered BOC to produce ***all*** of responsive documents, not just documents related to the two accounts identified as examples in the Subpoena.

There is, moreover, no basis for BOC's claim that Gucci "attempted a bait-and-switch maneuver" regarding the scope of the Subpoena.  As set forth in greater detail below, Gucci provided both the Court and the Bank with specific details and account numbers for all nine of Defendants' BOC accounts both through direct correspondence (Dkt. 58-1, 8, 9) and also in connection with Gucci's motion for an order permitting alternative service on the New Defendants.  *See* Dkt. 56-58.  BOC certainly had notice of that motion, because it filed its own opposition papers, going so far as to attach to its own papers a copy of the Second Amended Complaint that listed all the "John Doe" Defendants who had been identified by name.  Dkt. 66-1.  As a result, the Bank's claim of ignorance as to the Defendants covered by the Subpoena rings hollow.

2

And even as to the two accounts for which BOC acknowledges it was required to produce documents, BOC has not fully complied with the August 23 Order.  The Subpoena very clearly requests copies of "Bank statements or account statements" as well as "[a]ny documentation that relates to the deposit, withdrawal, or transfer of funds, into, out of, or between any of" the Defendants' accounts.  Dkt. 109-1.  And yet, the Bank has refused to produce any records for the accounts in question showing the source of funds into the accounts and the destination of funds from the accounts—which are critical to proving the scope of the counterfeiting operation and tracing the ultimate destination of Defendants' unlawful profits.  *See* Dkt. 109-6.  The Bank attempts to justify its unilateral narrowing of the Subpoena by pointing to oral argument *in a separate pending matter* explaining why account opening documents are important.  But the Bank does not—and cannot—point to any letter or filing from either Gucci or the Court that relieves the Bank from producing the rest of the documents requested.

The Bank's memorandum is nothing more than its latest attempt to insert ambiguity where none exists.  Both the Subpoena and this Court's orders, however, have been clear:  The Bank must produce the information that it has about the Defendants' accounts.  As this Court has previously held, compliance with court orders is the price of doing business in this District and in this nation.  Aug. 23 Order at 11.  As a matter of black-letter law, the Bank's attempt to try to reargue the these issues is simply improper.  *See U.S. v. Chase Manhattan Bank, N.A.*, 590 F. Supp. 1160, 1163 (S.D.N.Y. 1984) ("[A] contempt proceeding does not open to reconsideration the legal and factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy") (quoting *U.S. v. Rylander*, 460 U.S. 752, 756 (1983)).

For these reasons, and as set forth below, Gucci respectfully requests that this Court find BOC in contempt for failure to comply with the August 23 Order, impose a daily coercive fine

until such time as BOC complies, award Gucci attorneys' fees and costs incurred in obtaining

compliance with the August 23 Order, and any other relief the Court may deem just and proper.

## STATEMENT OF FACTS

Because the Court is by now familiar with this dispute, Gucci will not repeat, and instead

incorporates by reference, the facts set forth in the "Background" section of the August 23 Order.

*See* Aug. 23 Order at 2-4.  A discussion of certain facts, however, is necessary to set straight the

record as described in BOC's submission.

### The July 12, 2010 Preliminary Injunction

On July 12, 2010, this Court issued a preliminary injunction (the "Injunction") that

ordered expedited discovery "as to . . . any banking or other institutions, that received or

transferred funds from accounts maintained by Defendants," and further provided that "any third

party receiving a subpoena pursuant to this Order shall produce documents responsive to such

requests within ten (10) days of service of such subpoena." Dkt. 12 at 9.  Gucci served BOC

with the Injunction at a New York City branch on July 13, 2010.  Aug. 23 Order at 2.

### The 2010 Subpoena to BOC

Pursuant to the Injunction, on July 16, 2010, Gucci served BOC with a subpoena

requesting documents pertaining "any" BOC accounts maintained by the Defendants.  Dkt. 28-5

at 3.  The Subpoena listed as examples two accounts that had been identified by counsel for

Defendant Lijun Xu.  Dkt. 28-1.  The Subpoena, however, expressly defined the term

"ACCOUNTS" to include "all . . . accounts at Bank of China held by Defendants; including, but

not limited to" the specific BOC accounts ending in 1235 and 2443.  Dkt. 28-5 at 1.  Similarly, in

Request No. 4, the Subpoena requested "documents associated with any open or closed checking,

savings, money market accounts, and certificates of deposit held in the name of any of the

Defendants, including but not limited to" the same two specific accounts.  *Id.* at 3.  BOC refused

to produce responsive documents located in any of its branches in China.  Aug. 23 Order at 3.

**Defendants' Other BOC Accounts are Revealed by the Chase Wire Transfer Records**

On January 31, 2011 and March 1, 2011, Gucci received copies of wire transfer records

from JPMorgan Chase ("Chase"), a bank used by Defendants Ting Xu and Lijun Xu that

complied with its discovery obligations in this case.  Dkt. 58-3. Through these wire transfer

records, Gucci was able to identify the beneficiaries and destination accounts of funds transferred

by Defendants Lijun Xu and Ting Xu.  In particular, the Chase documents showed that all of the

wire transfers made by Defendants Lijun Xu and Ting Xu between 2009 and 2010 were

transferred into accounts at a BOC branch office in Beijing, China.

**The Second Amended Complaint**

On February 10, 2011, based on this new information, Gucci submitted a letter to the

Court requesting permission to file a Second Amended Complaint to specifically name as

defendants certain individuals who were identified in the complaint as "John Does."  The

individuals that Gucci sought to name as additional defendants in the Second Amended

Complaint—Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao,

Ming Zhao and Peiyuan Zhao—were identified in the Chase wire transfer records as

beneficiaries of the transfers made from the Chase accounts of Defendants Lijun Xu and Ting Xu

into accounts at BOC.  In seeking leave to file the Second Amended Complaint, Gucci

specifically informed the Court that the New Defendants received wire transfers into BOC

accounts other than the two BOC accounts ending 1235 and 2443.  Dkt. 58-1.  On February 23,

2011, the Court granted Gucci leave to file a Second Amended Complaint on or before March

10, 2011 (Dkt. 54 (the "February 23 Order")).

**The 2011 Subpoena to BOC**

Gucci promptly provided BOC with the additional information supplied by Chase.  Dkt 109-4.  Specifically, on February 23, Gucci sent a letter to counsel for BOC setting forth the dates and amounts of ten wire transfers into eight different accounts at BOC, including the two accounts referenced in the 2010 Subpoena and the Injunction.  *Id.*  These transfers totaled approximately $500,000.  *Id.*

Gucci also served BOC with a new Subpoena at its New York branch (the "2011 Subpoena") to make sure there was no question that BOC was obligated to produce documents related to these additional accounts.  *Id.*  The cover letter noted that the July 12 Injunction applied to "any and all Bank of China accounts" used by the Defendants and not just the two accounts specifically listed in the Injunction.  *Id.*  Gucci also enclosed a copy of the wire transfer records produced by Chase to facilitate the Bank's ability to locate and freeze the accounts at issue and to assist the Bank in responding to the 2011 Subpoena.  *Id.*; *see also* Dkt. 58-4, 5. Days later, when Chase produced additional records that identified one further account, Gucci promptly provided notice of that additional account to BOC, bringing the total number of accounts identified by Gucci to nine.  Dkt. 58-9.[1]

The 2011 Subpoena did include certain new requests for, among other things, "contact information associated with each of the Bank of China Accounts" into which Defendants Lijun Xu and Ting Xu transferred funds, including "mailing and e-mail addresses" (Dkt. 58-7), which were designed to assist Gucci in serving process on additional "John Doe" defendants.  Gucci

---

[1]  BOC questions whether Gucci identified "seven additional accounts" that were not listed formally in the Subpoena or only "six accounts."  BOC Mem. at 5 & n.2.  In addition to the accounts listed in the 2011 Subpoena and acknowledged by the Bank (Dkt 109-4), Gucci received a supplemental production of wire transfer records from Chase on March 1, 2011. Dkt. 58-9.  These records revealed an additional BOC account into which Defendants Lijun Xu and Ting Xu transferred funds from their Chase accounts.  *Id.*

has not placed those new requests at issue for the purposes of this order to show cause. But as the Bank itself confirmed in objecting to the 2011 Subpoena, the majority of the requests were "plainly duplicative of those in the first subpoena." Dkt. 58-10 at 3. As a result, service of the 2011 Subpoena did not excuse the BOC's failure to comply with the 2010 Subpoena.

**<u>Gucci's Motion for Alternative Service</u>**

On March 10, 2011, Gucci filed its Second Amended Complaint, naming the following individuals as additional Defendants in this action: Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao and Peiyuan Zhao (collectively, the "New Defendants"). All of the New Defendants received wire transfers into accounts at BOC from Defendants Lijun Xu and Ting Xu's U.S.-based accounts at Chase.[2]

The Second Amended Complaint also contained specific allegations regarding the New Defendants' relationship with BOC; namely, that each of the New Defendants "maintain[ed] one or more accounts with Bank of China," "conducted financial transactions through a Bank of China branch in Beijing, China," and "directly benefitted from the manufacture, distribution, sale and advertisement of Counterfeit Products by receiving and accepting . . . wire transfers" from Defendant Ting Xu and/or Lijun Xu. Dkt. 55. ¶ 13(b)-(h). The funds wired to the New Defendants "originated from bank accounts into which the proceeds from Defendants' counterfeiting operation were deposited directly by Defendants' credit card processor and/or indirectly through inter-account transfers effectuated by Defendants Lijun Xu and Ting Xu." *Id.*

On March 31, 2011, after BOC refused to provide contact information for the New Defendants, Gucci moved for an order authorizing service by alternative means. Dkt. 56. Gucci

---

[2] The Second Amended Complaint also included three additional aliases used by the existing Defendants—"Xu Ting" and "Rebecca Xu" for Defendant Ting Xu and "Xin Li" for Defendant Weixing Li.

provided the Court with specific details regarding the nine different BOC accounts identified in the wire transfer records provided by Chase, including the BOC account numbers for all nine of Defendants' identified BOC accounts as well as the dates and amounts of transfers reflected in Chase's records.  Dkt. 58-4, 5; Dkt. 57 at 7-8.  One method of service Gucci proposed involved asking the Bank to forward the Second Amended Complaint to its customers.  Dkt. 57 at 16-19.

Not only was BOC served with a copy of Gucci's motion for alternative service in which this information appeared (Dkt. 52-2), but BOC filed an opposition to that motion (Dkt. 65-67). The Bank's opposition papers specifically referenced the New Defendants by name and acknowledged that Gucci alleged "that the New Defendants maintain bank accounts at BOC in China into which Defendants Lijun Xu and Ting Xu wired funds."  Dkt. 65 at 7.[3]

### The August 23 Order

The August 23 Order granted Gucci's motion to compel the production of documents from BOC and required the Bank to "produce all information requested by the Subpoena within fourteen days."  Aug. 23 Order at 14.  The August 23 Order specifically referenced all of the Defendants named in the operative Second Amended Complaint and noted the additional of the New Defendants in the Second Amended Complaint.  *Id.* at 2, 3 n. 4 ("The Second Amended Complaint added the following Defendants: Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao, and Peiyuan Zhao (collectively, the 'New Defendants.'").

---

[3] In opposing Gucci's motion for alternative service, BOC stated its willingness to work with Gucci to seek "documents from the current and New Defendants" via the Hague Convention and opined that "if Plaintiffs had chosen to go through the Hague Evidence Convention back in July 2010 when they served their first Subpoena on BOC-NY, they may very well have already obtained the documents they seek."  Dkt. 65 at 12-13, 13 n.4.  BOC has therefore conceded that documents concerning all of the Defendants' accounts were called for by the 2010 Subpoena.

The Court subsequently extended BOC's fourteen day production deadline pending a decision on BOC's request to certify the discovery portion of the August 23 Order for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).  On September 12, 2011, on the record and by formal order, the Court denied BOC's motion to for leave to appeal as well as BOC's request for an additional twenty-one days to comply with the August 23 Order.  Dkt. 79 at 1-2.  The Court ordered BOC to produce all documents by September 22, 2011.  *Id.* at 2.

**BOC's Deficient Document Production**

On the Court-ordered production deadline of September 22, 2011, BOC produced 66 pages of documents, all of which were in Chinese, followed by a supplemental production of eight pages on September 29, 2011, (the "BOC Production").

The BOC Production contained documents relating to only two of the nine BOC accounts Gucci identified; namely, the accounts ending in 1235 and 2443.  The BOC Production, however, was incomplete even with respect to the two accounts for which the Bank did provide documentation.  The BOC Production did not include any documents reflecting deposits and withdrawals into the account, such as a monthly account statement, even though these were among the documents Gucci specifically requested.[4]

The BOC Production regarding the BOC accounts ending in 1235 and 2443 showed that once the Defendants transferred funds into these two accounts, they would then make inter-account transfers to other BOC accounts.  Halter Decl. Exs. A-D.  BOC did not provide any

---

[4]  In a separate litigation, BOC admitted that it keeps a computerized record of customer deposits and withdrawals:  "Each passbook contains the name of the customer, the account number, the name of the sub-branch which issued the passbook, the date of a transaction, the currency used in the transaction, the amount of each deposit or withdrawal, and the balance in the account. . . . .  The information included in the passbook is maintained in the Bank's computer system by account number."  Declaration of Ling Yu, Vice-President, BOC Guangzhou Branch, dated June 30, 2009, at ¶¶ 5-6 (appended to the Halter Decl. as Ex. E).

documents for these other accounts, however.  For example, the BOC Production shows inter-account transfers into the BOC account held by Defendant Peiyuan Zhao ending in 3435.  *Id.* Exs. B, D.  However, BOC provided no documents for Peiyuan Zhao's account beyond those reflecting transfers from the BOC accounts ending in 1235 and 2443.

On October 10, 2011, counsel for Gucci wrote to the Bank's counsel regarding the BOC Production and requested "that BOC remedy the deficiencies in its production by, among other things, producing documents relating to the other seven accounts maintained by Defendants." Dkt. 109-6.  Gucci requested a meet-and-confer with BOC in order to resolve the document production issue and address Gucci's questions regarding the Bank's apparent failure to freeze the BOC accounts ending in 1235 and 2443.

On October 24, 2011, Gucci and BOC held a telephonic meet-and-confer regarding the production.  Dkt. 95-1 at 5.  Although BOC represented that it was in the process of completing its document collection (*id.*), no additional documents were produced by BOC.

**BOC's Motion for Reconsideration and the May 18 Order**

On November 11, 2011, BOC filed a motion seeking reconsideration of the August 23 Order.  Dkt. 88.  Among other things, BOC specifically argued that the documents relating to Defendants' other BOC accounts "were not the subject of the August 23 Order."  Dkt. 90, at 3. BOC formally requested that the Court "require plaintiffs to *try* to obtain the documents they seek through the Hague Convention" and "afford BOC relief from the August 23 Order by requiring plaintiffs to use the Hague Convention to obtain any further documents they may seek, including documents responsive to the 2011 Subpoena."  *Id.* at 12.[5]  On May 18, 2012, the Court

---

[5]  If BOC truly believed that it fully complied with the August 23 Order as of September 2011, there would be no reason for BOC to seek relief from the August 23 Order two months after BOC made its document production to Gucci.

rejected BOC's motion for reconsideration, thereby rejecting the Bank's explicit request that

Gucci seek discovery through the Hague Convention.  Dkt. 98 (the "May 18 Order").

A week later, Gucci again reached out to BOC regarding the Bank's failure to remedy the

deficiencies set forth in Gucci's October 10, 2011 letter.  Dkt. 109-8.  Gucci asked BOC to

confirm whether it would produce the remaining documents called for by the August 23 Order.

*Id.*  On May 30, 2012, BOC responded by reiterating its position that BOC had "completed its

production of documents responsive to [the 2010] Subpoena in September 2011, and thereby

complied with the August 23 Order."  Halter Decl. Ex. F (May 30, 2012 Letter).  BOC stated,

however, that it was considering the May 18 Order denying its request for further discovery to

proceed through the Hague Convention and would revert to Gucci regarding "whether Bank of

China intends to produce documents in response to the [2011] subpoena."  *Id.*

On June 11, 2012, BOC informed Gucci that it was awaiting instructions from its Chinese

regulators regarding the Bank's ability to produce documents responsive to the 2011 Subpoena.

Dkt. 109-12.  To date, BOC still has not produced any more documents, nor any indication that it

has been penalized by Chinese regulators for the September 2011 BOC Production in this case.

## ARGUMENT

### I.  THE COURT HAS AUTHORITY TO SANCTION BANK OF CHINA TO ENFORCE COMPLIANCE WITH THE AUGUST 23 ORDER

It is well-established that courts have the inherent power to enforce compliance with their

lawful orders through the imposition of civil contempt sanctions.  *See* 18 U.S.C. § 401

(authorizing courts "to punish by fine or imprisonment, or both, at its discretion, such contempt

of its authority" as "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or

command"); *Yurman Studio, Inc. v. Castaneda*, 07 Civ. 1241 (SAS), 2009 WL 454275, at *2

(S.D.N.Y. Feb. 23, 2009) ("[C]ourts have inherent power to enforce compliance with their lawful

orders through civil contempt.") (quoting *Spallone v. U.S.*, 493 U.S. 265, 276 (1990)).

Non-parties, like BOC, are also subject to contempt proceedings if they fail to follow clear court orders.  *See, e.g., Garpeg Ltd. v. U.S.*, 588 F. Supp. 1240 (S.D.N.Y. 1984) (holding Chase, a third-party, in contempt for failure to comply with a court summons); *see also Upjohn Co. v. Medtron Labs., Inc.*, 87 Civ. 6773 (SWK), 2005 WL 3078232 (S.D.N.Y. Nov. 16, 2005) (third-parties held in contempt for failure to comply with a court order and subpoenas); *SEC v. Platinum Inv. Corp.*, 02 Civ. 6093 (JSR), 2004 WL 1886401 (S.D.N.Y. Aug. 24, 2004) (third-party held in contempt for failure to comply with a court order relating to an asset freeze).

The Court is also empowered to find BOC in contempt for failing to comply with the Subpoena pursuant to Federal Rule of Civil Procedure 45(e), which provides that "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." *See Summit Bank v. Taylor*, 96 Civ. 7229 (BSJ), 1997 WL 811526, at *2, 4 (S.D.N.Y. Nov. 12, 1997) (finding party in contempt for failure to comply with subpoena and imposing daily fine for continued noncompliance); *see also First Indem. of Am. Ins. Co. v. Shinas*, 03 Civ. 6634 (KMW) (KNF) 2005 WL 3535069, at *4 (S.D.N.Y. Dec. 23, 2005) (pursuant to Fed. R. Civ. P. 45(e) "the court has power to issue an order of contempt on the basis of [non-party's] failure to comply with the Subpoena").

## II.   BANK OF CHINA IS IN CONTEMPT OF THE AUGUST 23 ORDER

A finding of contempt is appropriate where "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Commercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir.2004) (citation omitted); *see also Nolan v. Primagency, Inc.*, 07 Civ. 134 (RJS), 2008 WL 650387, at *1 (S. D.N.Y. Mar. 3, 2008).  Here, all three elements are present, and a contempt

order should be issued against BOC for its failure to comply with the August 23 Order.

### A. The August 23 Order Clearly and Unambiguously Ordered Bank of China to Produce "All Information Requested by the Subpoena"

The August 23 Order set forth in clear terms that BOC was required to "produce **all information requested** by the Subpoena." Aug. 23 Order at 13 (emphasis added). BOC's contention that the August 23 Order did not require it to produce documents regarding all nine of the accounts that Gucci identified as affiliated with the Defendants is at odds with the order's unambiguous directive that the Bank produce "all information" requested by the Subpoena. The plain language of the Subpoena made clear that its requests were not limited to the two accounts identified by account number. Dkt. 28-5 (requesting, *inter alia*, documents associated with "*any* open or closed . . . accounts . . . held in the name of any of the Defendants, including but not limted to" the BOC accounts ending in 1235 and 2443). And the August 23 Order made clear that "after receiving permission from the Court," the Second Amended Complaint identified "seven new Defendants" as Defendants previous identified as "John Does," and it "alleges that the New Defendants are recipients of wire transfers from Bank of China accounts registered to Defendants." Aug. 23 Order at 3 (citing Dkt. 55). Accordingly, the Order left no doubt as to the Court's determination that BOC must respond in full to the Subpoena.

Moreover, BOC's reading of the August 23 Order is not sustainable in light of the Court's discussion concerning the importance of the documents sought by Gucci and the specificity of the Subpoena requests. *See id.* at 6-7. In finding that "documents related to Defendants' bank accounts in China . . . . are important to the litigation," the Court observed that "information related to Defendants' bank accounts is likely to provide the most effective measure of the revenues generated by Defendants in contravention of United States trademark laws." *Id.* at 6-7. Given the Court's rationale for concluding that the Defendants' bank records

13

are important, it would make no sense to read the August 23 Order as limiting discovery to the two accounts referenced in the Subpoena—particularly where the Court, Gucci, and BOC were aware of at least nine BOC accounts held by Defendants.  *See* Dkt. 58, Exs. 1, 4, 5.

Further, when the Court concluded that the Subpoena requests were "sufficiently specific," Aug. 23 Order at 7, the Court did not give any indication of an intent to narrow or limit the requests to documents concerning only the BOC accounts ending in 1235 and 2443. Importantly, the Court found that the Subpoena was narrowly-tailored because it sought information "limited solely to *Defendants' accounts* at Bank of China," not, as BOC suggests, solely because the Subpoena identified specific *account numbers*.  *See id.* at 7 (emphasis added).[6] The seven accounts that BOC is refusing to produce for fit clearly within the plain text of the order:  (1) They "were owned by Defendants," each of whom is specifically referenced as a "Defendant" in the August 23 Order;[7] and (2) Gucci has "shown [these accounts] to be a repository for funds derived from their counterfeiting," as evidenced by the wire transfers depositing their illicit proceeds.[8]  Moreover, there is no reasonable dispute that Gucci identified these seven accounts for BOC long ago.  *See* Dkt. 58-9, Dkt. 109-4.  As a result, BOC's argument that the Court somehow narrowed the subpoena by referring to the account numbers

---

[6]  *See also Tiffany (NJ) LLC v. Qi Andrew*, 10 Civ. 9471 (WHP) (HBP), 276 F.R.D. 143, 152 (S.D.N.Y. 2011) ("CMB argues that . . . plaintiffs' current requests are not targeted at specific accounts.  To the contrary, these requests . . . are directed to the accounts of the defendants.") (citations omitted); *Crosby v. City of N.Y.*, 269 F.R.D. 267, 272, 275 (S.D.N.Y. 2010) (rejecting non-party's "suggestion that plaintiffs are on a fishing expedition" and ordering production in response to subpoena requesting "all documents . . . including but not limited to" documents concerning individuals identified by name in the subpoena).

[7]  *See* Aug. 23 Order at 2-3 & n.3.

[8]  *See Id.* at 7; Dkt. 55 (Second Am. Compl.), ¶ 13(b)-(h) (alleging that each of the New Defendants "maintain[ed] one or more accounts with Bank of China,"  "conducted financial transactions through a Bank of China branch in Beijing, China," and "directly benefitted from the manufacture, distribution, sale and advertisement of Counterfeit Products by receiving and accepting . . . wire transfers" from Defendant Ting Xu and/or Lijun Xu).

that were originally specified is simply not tenable.[9]

**B.     Bank of China's Non-Compliance with the August 23 Order is Clear and Convincing**

The "clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Leadsinger, Inc. v. Cole*, 05 Civ. 5606 (HBP), 2006 WL 2266312, at *9 (S.D.N.Y. Aug. 4, 2006) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)).  Here:

- The Court issued the July 12, 2010 Injunction compelling subpoena recipients (including BOC) to "produce documents responsive to [the Subpoena] within ten (10) days," Dkt. 12 at 9.

- Then, on August 23, 2011, after giving BOC every reasonable opportunity to contest the Injunction, the Court ordered the Bank to "produce all information requested by the Subpoena within fourteen days of the date of this Order," Dkt. 75 at 13.

- After another series of letters and giving BOC a further opportunity to be heard, on September 12, 2011, the Court ordered the Bank "to comply with the Court's August 23, 2011 Order by September 22, 2011," Dkt. 79 at 2;

- The Court then heard and, in a thorough decision, denied the Bank's motion for reconsideration of the August 23 Order on May 18, 2012, Dkt. 98.

Despite these clear directives, BOC has refused to produce all documents responsive to the Subpoena.[10]  There is no dispute that the Defendants maintain at least nine BOC accounts, and that BOC has limited its production to only two of Defendants' BOC accounts.  BOC Mem. at 9.  Even as to those two accounts—which BOC agrees are covered by the August 23 Order—

---

[9]  *Adelphia Recovery Trust v. HSBC Bank USA (In re Adelphia Recovery Trust)*, 634 F.3d 678 (2d Cir. 2011), cited in BOC's brief at 12, does not support its position.  In *Adelphia*, the Second Circuit concluded that judicial estoppel would bar a party from asserting a fraudulent conveyance claim where it participated in an asset sale hearing and never disclosed to the court that it intended to assert a such a claim.  634 F.3d at 697.  Here, Gucci has been consistent that it sought the records of all Defendants' accounts.

[10]  In light of this record, there is no justification for BOC's suggestion that Gucci must again seek an order to compel the production of documents concerning Defendants' accounts.  *See* BOC Mem. at 19.

it has withheld information regarding deposits and withdrawals into and out of the BOC accounts ending in 1235 and 2443.  *See* Dkt. 109-6.  BOC's non-compliance with the August 23 Order is thus clear and convincing.

### C. Bank of China Has Not Attempted to Comply with the August 23 Order in a Reasonable Manner

Far from making a reasonable effort to comply with the August 23 Order, BOC has done everything it could to avoid compliance.  BOC first sought to stall complying with the August 23 Order by asking the Court to certify this discovery order for interlocutory appellate review under 28 USC 1292(b).  When that effort failed (Dkt. 79), BOC simply made a unilateral decision to limit its production to documents concerning only two of Defendants' nine BOC accounts—even though the Subpoena called for documents relating to all accounts held by Defendants.  In response to Gucci's inquiries, BOC represented that it was collecting the missing documents, but never produced the missing documents.  Dkt. 95-1.

Two months later, and still having failed to produce the missing documents, BOC moved for reconsideration of the August 23 Order.  When that motion was denied by this Court as procedurally improper and otherwise meritless (Dkt. 98), Gucci again inquired as to a production date for the missing documents.  Dkt. 109-8.  In response, and despite this Court's orders rejecting the Bank's comity-based arguments, BOC contended that conflicts with Chinese law prevented it from producing the missing documents.  Dkt. 109-12.   This latest excuse also fails.

### 1. Bank of China's Conflicting Obligations Under Foreign Law Do Not Excuse Its Contempt of the August 23 Order

In its submission to this Court, BOC repeats its excuse that Chinese regulators have not given it permission to comply with this Court's orders.  But this is precisely the argument that this Court rejected in an opinion authored by Magistrate Judge Katz and adopted by this Court. In *Gucci America, Inc. v. Curveal Fashion*, 09 Civ. 8458 (RJS) (THK) (S.D.N.Y. May 13, 2010),

16

*adopted*, (S.D.N.Y. May 27, 2010), this Court was faced with an indistinguishable situation: a foreign bank with U.S. presence seeking to avoid responsibility for its failure to obey an order compelling production in response to a subpoena.  This Court clearly held that seeking authorization from foreign regulators in the face of a clear order to produce did not constitute reasonable compliance.  "While disclosure with consent of [foreign regulators] would serve to alleviate [the bank's] concerns about its obligations under [foreign law], the Court must only consider [the bank's] good faith efforts to comply with the Order, not [foreign] law [because t]he Order did not purport to direct disclosure contingent upon strict compliance with" foreign law. *See* Halter Decl. Ex. G.  The same is true here.  *See also In re Marc Rich & Co., A.G.*, 736 F.2d 864, 866-67 (2d Cir. 1984) (contemnor "barred from relying on Swiss law or orders of the Swiss Government as an excuse for its noncompliance with the subpoena").[11]

The cases relied upon by BOC are not to the contrary.  *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992 (10th Cir. 1977), for example, did not establish a rule that a non-party can never be held in contempt as long as compliance may put it at odds with a foreign law.  To the contrary, the Second Circuit explicitly confirmed that "that foreign illegality does not necessarily prevent a local court from imposing sanctions when due to the threat of prosecution in a foreign country, a party fails to comply with a discovery order." *Id.* at 997. Rather, the Second Circuit looked at the particular foreign interest implicated, Canada's "national interest in controlling and supervising atomic energy," and concluded that contempt was not justified "on the basis of the present record." *Id.* at 998.  Here, in contrast, the Court has

---

[11]  BOC, moreover, admits that it only contacted the Chinese government *this summer* to obtain permission to comply with the Court's production order.  *See* Dkt. 110 (Declaration of Fan Yirong, dated Oct. 12, 2012 ("Yirong Decl.")), at ¶¶ 3, 4.  It was neither "reasonable" nor "diligent" for BOC to wait so long to seek permission to comply with the Court's orders.

repeatedly balanced these interests and concluded that they weigh in favor of compelling BOC to produce responsive documents.  *See* Aug. 23 Order at 11; May 18 Order at 7-9.[12]

The D.C. Circuit's holding in *In re Sealed Case*, 825 F.2d 494 (D.D.C. 1987) is also unavailing.  In that case, the court of appeals noted several cases in which other courts, based on the particular facts at hand, had reached a contrary result and imposed sanctions despite a claim that foreign secrecy laws prohibited production.  *See id.* at 498 (citing *In re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817 (11th Cir. 1982), *cert. denied*, 469 U.S. 1106 (1985); *In re Grand Jury Proceedings*, 691 F.2d 1384 (11th Cir. 1982), *cert. denied*, 462 U.S. 1119 (1983)).  The court departed from those precedents only because deferring to foreign law would not leave the grand jury "empty-handewed" because the information was available from live testimony by the bank's manager.  825 F.2d at 499.  Here, there are no means for Gucci to obtain the information other than through BOC where, among other things, the Hague Convention response in the *Tiffany v. Andrew* matter "confirm[s] that the Hague Convention procedures will not afford access to documents that would be available under the Federal Rules."  *See First American Corp. v. Price Waterhouse*, 154 F.3d 16, 23 (2d Cir. 1998) (concluding that the Hague Convention "did not offer a meaningful avenue of discovery").[13]

---

[12] The timing of BOC's request for a government exemption in this case is also distinguishable from that of the non-party in *Westinghouse*, where the non-party sought an exemption from its regulator one month after being ordered to produce documents, 563 F.2d at 998. Here, as noted above, BOC waited for nearly a year before seeking permission from its regulators. Further, unlike BOC's submission in this action, the non-party in *Westinghouse* appears to have submitted documentation to the court evidencing "a lengthy formal request" to its regulators and seeking permission to produce the documents.  *Id.*  By contrast, BOC states only that it "approached" its regulators "to seek their guidance as to how BOC should respond."  Yirong Decl. ¶ 3.  BOC provides no documentation reflecting its request for the "Chinese government's approval to turn over documents in these cases." *Id.* ¶ 4.

[13] Contrary to BOC's suggestion (BOC Mem. at 16), the Second Circuit in *Price Waterhouse* did not hold that foreign law always provides a "substantial justification" for non-compliance with a subpoena.  To the contrary, that case arose in the context of sanctions imposed under

2.  **Bank of China Cannot Excuse Its Contempt by Attempting to Re-Litigate Its Comity Argument**

Further, the Court's Order to Show Cause is not a platform for BOC to seek further reconsideration of the Court's orders rejecting the Bank's comity-based arguments to avoid complying with the Subpoena.  *U.S. v. Chase Manhattan Bank, N.A.*, 590 F. Supp. 1160, 1163 (S.D.N.Y. 1984) ("[A] contempt proceeding does not open to reconsideration the legal and factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy") (quoting *U.S. v. Rylander*, 460 U.S. 752, 756 (1983)).  "Once a court has issued an order, the validity of that order may not be relitigated."  *Id*. (citing *Rylander*, 460 U.S. 752).[14]

And even if the court were inclined to revisit its prior rulings, BOC's assertion that the comity analysis would now run in the Bank's favor (BOC Mem. at 19) is simply wrong:

*First*, for the reasons previously set forth, *supra* II.A., the Subpoena requests that this Court upheld are "sufficiently specific" because they are "limited solely to Defendants' accounts at Bank of China."  *See* Aug. 23 Order at 7.  Despite BOC's protestations, Gucci has never changed its position; it has always sought documents necessary to show the "the sources and uses of the funds" in Defendants' accounts.  *See, e.g.,* Dkt. 30 at 15-16.

*Second*, the "alternative means" factor has not shifted in BOC's favor.  The Hague Convention response in *Tiffany v. Qi Andrew* was far from the success that BOC attempts to portray.  China's Ministry of Justice ("MOJ") determined that "some evidence required lacks

_____

Federal Rule of Civil Procedure 37.  154 F.3d at 22 (citing Fed. R. Civ. P. 37(c)(1)).  As BOC concedes in his submission, however, "the sanctions provisions of Federal Rule of Civil Procedure 37 do not apply to non-parties."  BOC Mem. at 10, n.3.

[14]  Indeed, the law of the case doctrine rests on the consideration that "'where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted, to battle for it again."  *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).

direct and close connection with the litigation."  Dkt. 109-12.  As a result, the MOJ rejected or limited Tiffany's requests—which BOC and the other banks had expressly agreed to support—with no explanation or information as to which requests were denied, granted or limited.  *Id.* Moreover, the fact that the Hague Convention failed to result in the production of key information, such as information regarding the sources and destination of the funds in the defendants' accounts, it can hardly be stated the Hague Convention request was "successful." Halter Decl. Ex. H (Sept. 20, 2012 Letter to Judge Abrams).[15]

*Third*, in asserting that the national interests and hardship of compliance factors have shifted in its favor, BOC relies upon the same information that it submitted to this Court in seeking reconsideration of the August 23 Order.  *See* BOC Mem. at 22 (citing Dkt. 37, 91-1).  As this Court concluded in the May 18 Order denying reconsideration, none of this information "changes the Court's conclusion that BOC's 'representation of liability that it faces . . . [is] unduly speculative.'"  May 18 Order at 8 (quoting Aug. 23 Order at 11).

*Lastly*, as discussed immediately below, BOC's continued efforts to avoid complying with lawful court orders in this District suggests that the seventh factor, the bad faith of the party resisting discovery, would now favor Gucci.

## III.   BANK OF CHINA'S LONG HISTORY OF NON-COMPLIANCE WITH COURT ORDERS FURTHER JUSTIFIES SANCTIONS

BOC's assertion that this Court's orders were somehow unclear is just the latest example of the Bank's ongoing campaign to shield its counterfeiting clients from lawful process by any means that it can conjure.

---

[15]   The relevance of information regarding the sources and destination of Defendants' funds cannot be understated.  Indeed, it was precisely this type of information, as reflected in the documents produced by Chase, that enabled Gucci to identify additional Defendants and bank accounts in this action.

In July 2008, for example, BOC forced Gucci and other trademark holders to bring formal contempt proceedings before Judge Koeltl in order to obtain discovery that is virtually identical to the discovery sought here.  Halter Decl. Ex. I (Order, *Gucci America, Inc. et al v. MyReplicaHandbag.com*, 07 Civ. 2438 (JGK), Dkt. 36 (setting briefing schedule for motion for civil contempt against non-party BOC)).  BOC ended up producing responsive documents from its Chinese clients in that matter (Dkt. 28-16), and in the years since, it has not been able to produce one iota of evidence that it has been sanctioned for complying with this Court's orders. Now that this Court has again ordered production, BOC proffers nothing but new excuses for its continuing non-compliance.

Interestingly, BOC confirms that it has also been ordered to produce similar documents in the *Tiffany v. Forbse* matter, but asserts that the Judge Buchwald's findings "have no impact on the case before this Court.  BOC Mem. at 8.   In fact, however, Judge Buchwald found not once, but twice, that BOC has acted in bad faith in attempting to shield the records of its counterfeiter clients.  *First*, Judge Buchwald found that BOC acted in bad faith where it provided credit card processing services for a counterfeiter after it had notice of the preliminary injunction.  *Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976 (NRB), 2012 WL 1918866, at *10 (S.D.N.Y. May 23, 2012). *Second,* in denying BOC's motion for reconsideration, Judge Buchwald concluded that the Bank's motion

> actually strengthens the inference that it has resisted discovery in bad faith.  From our view, BOC's actions reflect a conscious decision to selectively disclose information pertinent to the case, and to the discovery dispute more specifically, only as it suits BOC's litigation interests.

*Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976 (NRB), 2012 WL 3686289, at *6 (S.D.N.Y. Aug. 23, 2012).

Despite Judge Buchwald's order denying the Bank's motion for reconsideration, BOC has refused to produce *any* documents to the plaintiffs in that case and, instead, has approached the Court for a third time requesting that discovery proceed through the Hague Convention.  Dkt. 109-13 ("Bank of China will oppose any request to impose a deadline for the document production that pre-dates the PRC government's response to Bank of China's pending request.").

BOC's ongoing pattern of non-compliance and delay with the lawful orders of Courts in this District leaves no doubt that, absent the imposition of sanctions, the Bank will continue to defy the August 23 Order.  In light of this pattern, moreover, there is no reason to delay imposing sanctions pending BOC's appeal from any contempt order this Court issues.  BOC's documented record of avoiding compliance with this Court's orders clearly demonstrates that without an award of sanctions, it will likely never produce "all information requested" by the Subpoena.

## IV.   THE COURT HAS BROAD AUTHORITY TO FASHION AN APPROPRIATE REMEDY

Once it has been established that a party is in contempt, the Court has "broad discretion to design a remedy that will bring about compliance."  *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982); *In re Dickinson*, 763 F.2d 84, 87-88 (2d Cir. 1985) (it is "the district court's responsibility to" set "the most effective coercive remedy").

In devising an appropriate remedy, courts consider the following factors:  (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him.  *Dole Fresh Fruit Co. v. United Banana Co. Inc.*, 821 F.2d 106, 110 (2d Cir. 1987); *Perfect Fit Indus., Inc.*, 673 F.2d at 57.  Here, an order compelling BOC to produce all documents relating to Defendants' accounts combined with coercive and compensatory sanctions is justified:

*First*, BOC's continuing efforts to shield its counterfeiter clients from discovery is, whether intentional or not, aiding and abetting the theft of Gucci's valuable intellectual property and contributing to the efficient operation of international schemes designed to defraud Americans.  Gucci, moreover, has been waiting for more than two years to receive the Bank's records.  Its' continuing defiance of the Court's orders is not justifiable.

*Second*, we know that the threat of sanctions forced BOC to comply with its obligations in the *MyReplicaHandbag.com* matter, discussed above.  *See* Halter Decl. Ex. I; Dkt. 28-16.

*Third*, the BOC status as one of the world's premier banks means that it has the financial resources to ignore any sanction that is not substantial.  In 2011, BOC achieved after-tax profits in excess of RMB 130.319 billion (approximately $20.8 billion).  *See* Halter Decl. Ex. J (BOC's 2011 Annual Results).  "[I]n order for the sanctions to be effective at bringing about [its] compliance, the amount must outweigh the potential benefits" of continued non-compliance.  *See Yurman Studio Inc.*, 2009 WL 454275, at *5 (imposing daily fine for non-compliance); *Perfect Fit Indus.*, 673 F.2d at 57 (sanctions should be "substantial enough to make it more economical . . . to comply than not to comply").

Given BOC's history of non-compliance, a sanction aimed at coercing future compliance and compensating Gucci for the harm caused by such non-compliance is more than appropriate. *See Chere Amie, Inc. v. Windstar Apparel Corp.*, 175 F.Supp.2d 562, 565 (S.D.N.Y. 2001) ("Civil contempt is designed to coerce a reluctant party to obey a court's directive.").

## A.    The Court May Award Compensatory Damages for Attorneys' Fees and Harm Resulting from Bank of China's Conduct

Gucci is entitled to recover compensatory damages that resulted from BOC's non-compliance, including the costs and attorneys' fees associated with bringing this motion.  An award of attorneys' fees is appropriate where, as here, the contemnor had actual notice of the

Court's order, was able to comply, and did not make a good faith effort to comply.  *See Chere Amie, Inc.*, 175 F.Supp.2d at 567-68 (awarding attorneys' fees associated with prosecution of the contempt motion); *see also Shinas*, 2005 WL 3535069, at *4 (awarding plaintiff attorneys' fees and costs incurred as a result of bringing contempt motion against non-party for failure to produce documents and appear for oral examination).  An award of attorneys' fees is also appropriate pursuant to Rule 45(e) for failure to comply with the Subpoena.  *Summit Bank*, 1997 WL 811526, at *4 (awarding attorneys' fees incurred as a result of failure to comply with subpoena).[16]

### B.      The Court May Require Bank of China to Pay a Daily Coercive Fine for Its Continued Non-Compliance

In addition to attorneys' fees, Gucci requests that BOC be required to pay to the Court a coercive fine for each day that its non-compliance continues.  Courts in this Circuit have not hesitated to impose a daily fine upon a contemnor in an effort to coerce compliance with a court order.[17]  Gucci further requests that such coercive fine against BOC accrue each day until it fully complies with the August 23 Order's directive to produce all information requested by the

---

[16]   Should the Court grant this request for costs and attorneys' fees, Gucci will submit an affidavit setting forth its actual costs and fees incurred in its efforts to compel BOC's compliance with the August 23 Order.  *See Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 07 Civ. 3635 (DC), 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008) (directing complaining party to submit proposed order setting forth "actual costs").

[17]   *See, e.g., Perfect Fit Indus., Inc.*, 673 F.2d 53, 57-58 (affirming $5,000 per day coercive fine); *Chere Amie, Inc.*, 175 F.Supp.2d at 567 (directing contemnor to pay an initial $25,000 fine to the Court for non-compliance and a daily fine of $10,000 for each subsequent day of non-compliance); *F.T.C. v. Verity Int'l, Ltd.*, 140 F. Supp. 2d 313, 317-18 (S.D.N.Y. 2001) (imposing sanction of $10,000 per day for each day that contemnor refused to provide court-ordered discovery); *Summit Bank*, 1997 WL 811526, at *5 (imposing fine of $500 per day for continued noncompliance); *U.S. v. Chase Manhattan Bank*, 590 F. Supp. at 1163 (imposing a $5,000 per day fine for each day Chase refused to produce documents; *see also In re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817 (issuing $25,000 daily fine to coerce production of documents even though bank submitted a statement from the foreign government explaining its interest in upholding its bank secrecy laws).

Subpoena, and by providing an affidavit under penalty of perjury that BOC has produced

documents concerning all of Defendants' nine BOC accounts.

## CONCLUSION

For the foregoing reasons, Gucci respectfully requests that the Court enter an order: (a)

adjudging BOC in contempt for failing to comply with the August 23 Order; (b) compelling

BOC to comply with the August 23 Order by providing Gucci with all records relating to all of

Defendants' BOC accounts; (c) awarding Gucci attorneys' fees for costs incurred in obtaining

compliance; (d) requiring BOC to pay to the Court a daily coercive fine in an amount to be

determined by the Court for each day that BOC fails to comply with the August 23 Order; and

(e) awarding such other relief as this Court may deem just and proper.

Dated:  New York, New York
　　　　October 19, 2012

Respectfully submitted,

GIBSON, DUNN & CRUTCHER, LLP

By:　　　/s/ Robert L. Weigel　　　
　　　　Robert L. Weigel (RW 0163)
　　　　Howard S. Hogan (HH 7995)
　　　　Jennifer C. Halter (JH 7032)
　　　　Anne M. Coyle (AC 3158)
　　　　200 Park Avenue
　　　　New York, New York 10166
　　　　(212) 351-4000

*Attorneys for Plaintiffs Gucci America, Inc.,*
*Balenciaga America, Inc., Balenciaga S.A.,*
*Bottega Veneta International S.a.r.L.,*
*Bottega Veneta Inc., Luxury Goods International*
*S.A. and Yves Saint Laurent America, Inc.*