UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUCCI AMERICA, INC., *et al*.,

                      Plaintiffs,

– against –

WEIXING LI, *et al*.,

                      Defendants.

No. 10 Civ. 4974 (RJS)

ECF CASE

# MEMORANDUM OF LAW OF NON-PARTY BANK OF CHINA IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER COMPELLING BANK OF CHINA'S PRODUCTION OF DOCUMENTS REQUESTED IN PLAINTIFFS' 2010 AND 2011 SUBPOENAS

ALLEN & OVERY LLP
Andrew Rhys Davies
Justin L. Ormand
Brian T. Fitzpatrick
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

January 23, 2015

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

BACKGROUND ....................................................................................................... 1

    A.    The Second Circuit Holds That Bank Of China Is Not Subject To
General Jurisdiction And Specifies The Arguments That May Be
Considered On Remand .......................................................................... 1

    B.    To The Extent Gucci Needs Any Evidence From Bank Of China, It
Is Available Through The Hague Convention ........................................... 1

    C.    New York's Highest Court Reaffirms The Separate Entity Rule,
Cautioning That Subjecting Banks To Conflicting Mandates
Threatens New York's Status As A Leading Financial Center ................. 3

    D.    Bank Of China Is Subject To An Adverse Final Judgment In China
As A Result Of This Court's Orders ....................................................... 3

ARGUMENT ............................................................................................................ 4

    I.    GUCCI'S ARGUMENTS THAT SERVICE OF A SUBPOENA
CONFERS JURISDICTION AND THAT BANK OF CHINA HAS
CONSENTED TO JURISDICTION ARE BARRED BY THE
MANDATE RULE AND ARE INCORRECT ........................................ 4

        A.    Gucci's Argument That Service Of A Subpoena Confers
Jurisdiction Is Barred By The Mandate Rule And Is Incorrect ............... 4

        B.    Gucci's Argument That Bank Of China Has Consented To
Jurisdiction Is Barred By The Mandate Rule And Is Incorrect ............... 6

    II.    GUCCI HAS NOT SHOWN THAT THIS COURT HAS SPECIFIC
JURISDICTION TO COMPEL BANK OF CHINA TO PRODUCE
DOCUMENTS CONCERNING BANKING ACTIVITY IN CHINA ................. 8

        A.    Gucci Must Show That Jurisdiction Is Authorized By A New York
Statute And By The Federal Due Process Clause ................................. 8

        B.    Gucci Has Shown Neither A Statutory Basis For Jurisdiction Nor
That This Court May Exercise Jurisdiction Consistent With The
Due Process Clause ............................................................................... 10

            1.    Gucci Is Not Seeking Information About Banking
Transactions That Bank Of China Purposefully Aimed At
New York ........................................................................... 10

2.     Bank Of China's Passive Receipt Of Transfers Made By Defendants And Chase Bank Neither Constitutes Minimum Contacts Nor Satisfies New York's Long-Arm Statute .................13

C.     It Would Be Unreasonable And Unfair To Exercise Jurisdiction Over Bank Of China In The Transnational Context Of This Case ............15

1.     Bank Of China Would Be Severely Burdened If The Court Were To Exercise Jurisdiction In This Case ..................................16

2.     China Has Asserted A Vital National Interest In Applying Its Banking Laws To Bank Accounts In China .............................18

3.     Gucci Has No Substantial Or Legitimate Interest In Having This Court Compel Bank Of China To Produce Documents.........19

4.     There Is No Substantial Forum Interest In Compelling Bank Of China To Produce Documents In Violation Of Chinese Law.....................................................................................20

III.     EVEN IF THE COURT HAD JURISDICTION, GUCCI'S MOTION SHOULD BE DENIED DUE TO THE GRAVE THREAT TO INTERNATIONAL COMITY ...........................................................22

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ...................................................21

*Asahi Metal Indus. Co. v. Superior Court of California*,
   480 U.S. 102 (1987)..................................................16, 18, 20

*AstraZeneca AB v. Mylan Pharms., Inc.*,
   --- F. Supp. 3d -- 2014 WL 5778016 (D. Del. Nov. 5, 2014) ...................8

*Bagdon v. Phila. & Reading Coal & Iron Co.*,
   217 N.Y. 432 (1916) .........................................................8

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ............................................13, 17

*Ballard v. Walker*,
   No. 11 Civ. 5874 (LLS), 2013 WL 6501234 (S.D.N.Y. Dec. 11, 2013)............15

*Buccellati Holdings Italia SPA v. Laura Buccellati, LLC*,
   935 F. Supp. 2d 615 (S.D.N.Y. 2013).........................................21

*Burnham v. Superior Court of California*,
   495 U.S. 604 (1990)..........................................................5

*Canadian Grp. Underwriters Ins. Co. v. M/v "Arctic Trader"*,
   No. 96 Civ. 9242 (DAB), 1998 WL 730334 (S.D.N.Y. Oct. 19, 1998) ............15

*Canterbury Belts Ltd. v. Lane Walker Rudkin Ltd.*,
   869 F.2d 34 (2d Cir. 1989)...................................................8

*Cusumano v. Microsoft Corp.*,
   162 F.3d 708 (1st Cir. 1998)................................................18

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)....................................................8, 16

*Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*,
   746 F.2d 208 (3d Cir. 1984).................................................22

*Dynegy Midstream Servs., LP v. Trammochem*,
   451 F.3d 89 (2d Cir. 2006)...............................................8-9, 22

*Eikenberry v. Celsteel Ltd.*,
    Case No. 13 Civ. 4661, 2013 WL 5308028 (S.D.N.Y. Sept. 19, 2013) ....................................6

*Elmalich v. Bank of China Ltd.*,
    No. 09 Civ. 2130 (PGG), 2010 WL 1172829 (S.D.N.Y. Mar. 26, 2010)...............................22

*First Am. Corp. v. Price Waterhouse LLP*,
    154 F.3d 16 (2d Cir. 1998)...................................................................................................6, 9

*Gargano v. Cayman Nat'l Corp.*,
    No. 09-11938-JLT, 2010 WL 2245034 (D. Mass. June 2, 2010)..........................................15

*Gliklad v. Bank Hapoalim B.M.*,
    No. 155195/2014, Dkt. No. 62 (N.Y. Sup. Ct. Aug. 11, 2014) ...............................................7

*Gucci Am., Inc. v. Bagsmerchant, LLC*,
    No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012) ................................2

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014)........................................................................................ *passim*

*Gucci Am., Inc. v. Weixing Li*,
    No. 10 Civ. 4974(RJS), 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ............... 10-11, 22, 24

*In re Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*,
    87 F.3d 413 (10th Cir. 1996) .................................................................................................10

*In re First Am. Corp.*,
    184 F.R.D. 234 (S.D.N.Y. 1998) ...........................................................................................18

*In re Jee*,
    104 B.R. 289 (Bankr. C.D. Cal. 1989)....................................................................................10

*In re Marathe*,
    459 B.R. 850 (Bankr. M.D. Fla. 2011) ...................................................................................10

*In re Terrorist Attacks on Sept. 11, 2011*,
    714 F.3d 659 (2d Cir. 2013)................................................................................................9, 13

*Leema Enters., Inc. v. Willi*,
    575 F. Supp. 1533 (S.D.N.Y. 1983)........................................................................................15

*Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012)...................................................................................................5, 8

*Licci v. Lebanese Canadian Bank, SAL*,
    20 N.Y. 3d 327 (2012) ........................................................................ 13-14

*Licci v. Lebanese Canadian Bank, SAL*
    732 F.3d 161 (2d Cir. 2013)................................................................ 13-14

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013)......................................................................8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).......................................................... 15-16, 17, 20

*Motorola Credit Corp. v. Standard Chartered Bank*,
    24 N.Y.3d 149 (2014) ..........................................................................3, 21

*N. Light Tech., Inc. v. N. Lights Club*,
    236 F.3d 57 (1st Cir. 2001) ........................................................................6

*Nowak v. Tak How Invs., Ltd.*,
    94 F.3d 708 (1st Cir. 1996)...................................................................17, 20

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007)................................................................. 9-13

*Phillips Petroleum Corp. v. Shutts*,
    472 U.S. 797 (1985)................................................................................17

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998)........................................................................9

*R. Siskand & Co. v. Ashworth, Inc.*,
    Case No. 95 Civ. 7707, 1996 WL 167722 (S.D.N.Y. Apr. 10, 1996) .......................6

*Rushiad v. Pictet & Cie*,
    No. 652375/2011, Dkt. No. 42 (N.Y. Sup. Ct. Aug. 27, 2014) ..............................15

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014)....................................................................5, 7

*Tiffany (NJ) LLC v. Forbse*,
    No. 11 Civ. 4976 (NRB), 2012 WL 1918866 (S.D.N.Y. May 23, 2012)................................2

*Tiffany (NJ) LLC v. Qi Andrew*,
    No. 10 Civ. 9471(RA)(HBP), 2012 WL 5451259 (S.D.N.Y. Nov. 7, 2012)...........................2

*Ungar v. Palestinian Auth.*,
    400 F. Supp. 2d 541 (S.D.N.Y. 2005)...........................................................6, 8-9

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)...................................................................................9, 14

*Wenche Siemer v. Learjet Acquisition Corp.*,
    966 F.2d 179 (5th Cir. 1992) ...........................................................................5-6

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)...............................................................................17

### STATUTES

12 C.F.R. § 28.21 ...................................................................................................6, 7

12 U.S.C. § 3101 ......................................................................................................22

15 U.S.C. § 78aa .......................................................................................................8

18 U.S.C. § 1965(c) ..................................................................................................8

28 U.S.C. § 1348 ......................................................................................................22

Fed. R. Civ. P. 11(b)(3)............................................................................................24

Fed. R. Civ. P. 45 ...............................................................................................5, 7, 9

N.Y. Banking Law § 200 ..........................................................................................7

N.Y. Bus. Corp. Law § 103(a) .................................................................................7

N.Y. Bus. Corp. Law § 1301 ...................................................................................7

N.Y. Bus. Corp. Law § 1304 ...................................................................................7

N.Y.C.P.L.R. 302(a)(1).............................................................................................11

### OTHER AUTHORITIES

4 Charles A. Wright et al., <u>Federal Practice and Procedure</u> § 1066 (3d ed. 1992) ..........................5

Fed. R. Civ. P. 45 Advisory Committee Notes to 2013 Amendment ...............................................9

Ryan W. Scott, Note, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for
    Nonparty Discovery*, 88 Minn. L. Rev. 968 (2004) ................................................18

## BACKGROUND

**A.    The Second Circuit Holds That Bank Of China Is Not Subject To General Jurisdiction And Specifies The Arguments That May Be Considered On Remand**

In its September 17, 2014 decision, the Court of Appeals held that Bank of China ("BOC" or the "Bank") is not subject to this Court's general jurisdiction, vacated this Court's August 23, 2011 Order (the "August 2011 Order"), which compelled the Bank to comply with the subpoena served on July 16, 2010 (the "2010 Subpoena"), and reversed this Court's November 15, 2012 Order, which held the Bank in contempt of the August 2011 Order. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 125-26, 135, 141, 145 (2d Cir. 2014).

The Court of Appeals specified that, on remand, this Court may consider two potential bases for jurisdiction to compel discovery: (1) whether BOC has consented to jurisdiction by complying with specified New York statutory requirements to designate the Secretary of State as its process agent, and (2) whether this Court has specific jurisdiction to order BOC "to comply with particular discovery demands." *See id.* at 137 n.15, 141-42, 145.

The Second Circuit also mandated that, if this Court concludes that it has jurisdiction to compel BOC to provide discovery, then, in light of developments that have taken place since 2011, it must consider afresh "whether proper application of the principles of comity demonstrates that it may exercise such jurisdiction." *Id.* at 142, 145.

**B.    To The Extent Gucci Needs Any Evidence From Bank Of China, It Is Available Through The Hague Convention**

This is one in a series of trademark cases that Gucci and other luxury goods manufacturers, all represented by the same counsel, have filed against predominantly Chinese defendants who allegedly have accounts at Chinese banks in China. In *Gucci America, Inc. et al. v. Bagsmerchant, LLC, et al.*, No. 10 Civ. 2911 (SAS), and in *Tiffany (NJ) LLC, et al. v. Dong, et al.*, No. 11 Civ. 2183 (GBD) (FM), plaintiffs have obtained default judgments that include wide-

ranging injunctive relief and substantial statutory damages, without compelling discovery from the Chinese banks.  *See* Davies Ex. 1 (*Bagsmerchant*, ECF No. 19 (Judgment dated July 11, 2011));[1] *id.* Ex. 2 (*Dong*, ECF No. 48 (Judgment dated Oct. 27, 2014)).

In two other cases, the Hague Convention yielded the very evidence that plaintiffs said they needed, *i.e.*, the true identities and addresses of the accountholders.  *Id.* Ex. 3 (*Forbse*, ECF No. 33 (Tr. dated Apr. 20, 2012) at 27-30).  In *Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976 (NRB), plaintiffs have amended their complaint to allege this information, *compare* Davies Ex. 4 (*Forbse*, ECF No. 68 (Am. Compl.) ¶¶ 16 (Xinying Lai)), *with id.* Ex. 5 at 23-24, 27-29, 71-72, 75-77, and will move for judgment as soon as the new defendants default.  *Forbse*, ECF No. 66.[2]  In *Tiffany (NJ) LLC v. Qi Andrew*, No. 10 Civ. 9471 (KPF) (HBP), the court determined that the Hague Convention had resulted in the production of documents from the Chinese banks (including BOC) within a reasonable timeframe and of a scope that was sufficient.  *See Tiffany (NJ) LLC v. Qi Andrew*, No. 10 Civ. 9471(RA)(HBP), 2012 WL 5451259 (S.D.N.Y. Nov. 7, 2012), *aff'd*, ECF No. 70.  As in *Forbse*, the Hague Convention provided the information that plaintiffs have said they need.  Plaintiffs used it to amend their complaint,[3] and they have since moved for a default judgment.  *Qi Andrew*, ECF No. 79.

---

[1] A turnover order that Gucci improperly inserted into the default judgment without notice to the banks was later vacated.  *See Gucci Am., Inc. v. Bagsmerchant, LLC*, No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012).  The declarations filed herewith as well as those filed by Gucci on December 1, 2014, are cited by reference to the declarant's surname.  Gucci's memorandum of law filed December 1, 2014, is cited as "Mem."

[2] The court ordered plaintiffs to pursue discovery from two Chinese Banks under the Hague Convention, but for case-specific reasons ordered BOC to produce documents.  *See Tiffany (NJ) LLC v. Forbse*, No. 11 Civ. 4976 (NRB), 2012 WL 1918866 (S.D.N.Y. May 23, 2012).

[3] *Compare* Davies Ex. 6 (*Qi Andrew*, ECF No. 76 (Am. Compl.) ¶¶ 8 (Qi Ji), 10 (Deng Yuchan), 11 (Deng Yongxi), 12 (Ma Li)), *with id.* Ex. 7 at 6-7, 39-40 (Ma Li), 11-12, 44-45 (Deng Yongxi), 17-19, 50-52 (Qi Ji), 23-27, 56-60 (Deng Yuchan)).

**C.      New York's Highest Court Reaffirms The Separate Entity Rule, Cautioning That Subjecting Banks To Conflicting Mandates Threatens New York's Status As A Leading Financial Center**

In *Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149 (2014), the New York Court of Appeals reaffirmed New York's separate entity rule, thereby rejecting Gucci's argument that it would be able to enforce a future judgment in this action by bringing turnover proceedings against BOC before this Court.  ECF No. 52, at 7-10.[4]

The Court of Appeals noted that the separate entity rule protects international banks from being exposed to the risk of competing mandates and double liability, and promotes international comity by avoiding conflicts among competing legal systems.  *Motorola*, 24 N.Y.3d at 159.  It determined that these "underlying reasons that led to the adoption of the separate entity rule still ring true today," and acknowledged the crucial public policy that the rule promotes—fostering and preserving New York's "status as the preeminent commercial and financial nerve center of the Nation and the world," *id*. at 162 (citation and internal quotation omitted).  The court put the issue starkly: "[W]e believe that abolition of the separate entity rule would result in serious consequences in the realm of international banking to the detriment of New York's preeminence in global financial affairs."  *Id.* at 163.

**D.      Bank Of China Is Subject To An Adverse Final Judgment In China As A Result Of This Court's Orders**

On January 6, 2013, the Second Intermediate People's Court in Beijing accepted jurisdiction over a case filed by three of the defendants in this lawsuit—Zhao Peiyuan, Xu Ting, and Xu Lei—who alleged that as a result of this lawsuit the Bank had restrained their accounts in China in violation of Article 29 of China's Commercial Bank Law.  Zhang Ex. 10 ("Beijing

---

[4] Gucci has conceded that defendants' accounts at BOC in China represent the only known source of funds to enforce any monetary judgment in this case, ECF No. 49-50 (Tr. dated Jan. 5, 2011) at 61:15-16, and states that a U.S. judgment would not be enforced in China, Clarke Ex. B ¶¶ 12-25.

Judgment"), at 15 of 24.[5]  In defense, BOC argued that the account agreements permitted it to suspend access to the accounts.  *Id*. at 15-16 of 24.  On December 4, 2013, the trial court ruled against BOC, holding that BOC has "no contractual or legal basis . . . to unilaterally stop financial service and suspend usage of the accounts."  *Id*. at 20 of 24 (citing Articles 4, 6 and 29 of China's Commercial Bank Law).  On June 20, 2014, the Beijing Judgment was affirmed, and is now final and not subject to further appeal.  Zhang ¶ 30 & n.13.  If BOC were to violate the Beijing Judgment, it and/or its responsible employees would be exposed to contempt sanctions, including fines and/or detention.  *Id.* ¶ 34.

As BOC notified the Second Circuit, *Gucci*, No. 11-3934 (2d Cir.), ECF No. 334, on May 30, 2014, the Bank filed suit against Peiyuan, Ting, and Lei, seeking compensation for the harm BOC has suffered as a result of this lawsuit.  On June 24, 2014, BOC obtained from the Chinese court an interim attachment to preserve assets to satisfy a potential future judgment in that case.  Davies Ex. 8.  On December 30, 2014, the Chinese first instance court dismissed BOC's claim.

## ARGUMENT

### I.   GUCCI'S ARGUMENTS THAT SERVICE OF A SUBPOENA CONFERS JURISDICTION AND THAT BANK OF CHINA HAS CONSENTED TO JURISDICTION ARE BARRED BY THE MANDATE RULE AND ARE INCORRECT

#### A.   Gucci's Argument That Service Of A Subpoena Confers Jurisdiction Is Barred By The Mandate Rule And Is Incorrect

Gucci proffers "two independent reasons" that this Court may exercise jurisdiction over BOC, even absent minimum contacts.  *See* Mem. at 5, 19-22.  Gucci's first such

---

[5] Gucci is wrong that the Beijing Judgment is not authenticated.  Mem. at 11 n.7.  The notarial certificate states that the document is a true and correct photocopy of the original, not that it is a copy of a photocopy.  Zhang Ex. 10 at 21 of 24.

argument, which it also made to the Court of Appeals,[6] is that valid service of a subpoena is all that is required to establish personal jurisdiction, that BOC is subject to "tag" jurisdiction because the subpoenas were served in New York, and that Rule 45 creates jurisdiction because BOC does business in New York within 100 miles of the place set for production.

The Court of Appeals squarely rejected this argument, by holding that "[a] district court . . . must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45," *Gucci*, 768 F.3d at 141, and by requiring Gucci to establish jurisdiction by showing either minimum contacts or consent, *see id.* at 137 n.15, 141-42. Gucci's argument is, therefore, barred by the mandate rule, which "prevents relitigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) (citation omitted).

Although Gucci's arguments are foreclosed by the mandate rule, it bears noting that they are also utterly incorrect. Service, by itself, does not confer personal jurisdiction over a corporation, *see, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012), and "tag" jurisdiction does not apply to corporations.[7] Finally, Rule 45 also does not confer personal jurisdiction.[8]

---

[6] Davies ¶ 10 & Ex. 9 (*Gucci*, No. 11-3934 (2d Cir.), ECF No. 311, at 1-3).

[7] *Burnham v. Superior Court of California*, 495 U.S. 604, 610-16, 622 (1990), turned on the fact that "tag" jurisdiction over *individuals* is "[a]mong the most firmly established principles of personal jurisdiction in American tradition[,]" 495 U.S. at 610, but "[t]he rule permitting 'tagging' never was adopted as to corporations." 4 Charles A. Wright, *et al.*, Fed. Prac. & Proc. Civ. § 1066 (3d ed. 1992). *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 182-83 (5th Cir. 1992) (noting that "*Burnham* did not involve a corporation and did not decide any jurisdictional issues pertaining to corporations," and that extending tag jurisdiction to corporations would be "directly contrary to the historical rationale of *International Shoe* and

**B.      Gucci's Argument That Bank Of China Has Consented To Jurisdiction Is
Barred By The Mandate Rule And Is Incorrect**

Gucci's second "independent" argument is that BOC has consented to all-purpose
jurisdiction in New York because 12 C.F.R. § 28.21 states that "[a] foreign bank operating at any
Federal branch or agency is subject to service of process at the location of the Federal Branch or
agency." *See* Mem. at 22.  Again, this argument is both barred by the mandate rule and
meritless.

Gucci argued to the Second Circuit that 12 C.F.R. § 28.21 conferred jurisdiction
over BOC.[9]  Consistent with its rejection of Gucci's argument that service confers jurisdiction,
*see* Point I.A., the Court of Appeals did not accept Gucci's argument, and did not remand it to
this Court.  The only consent-based argument that the Court of Appeals did remand was
"whether BOC has consented to personal jurisdiction in New York by applying for authorization
to conduct business in New York and designating the New York Secretary of State as its agent
for the service of process."  *Gucci*, 768 F.3d at 137 n.15 (citing N.Y. Bus. Corp. Law §§ 1301(a),

subsequent Supreme Court decisions").  None of Gucci's cases applied the tag rule to
corporations.  In *First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 19 (2d Cir. 1998),
the witness was an unincorporated "partnership that (unlike a corporation) has no separate
existence," so that jurisdiction could be established by service on a partner without satisfying the
additional requirements for exercising jurisdiction over corporations.  In *Eikenberry v. Celsteel
Ltd.*, Case No. 13 Civ. 4661, 2013 WL 5308028 (S.D.N.Y. Sept. 19, 2013), and *R. Siskand &
Co. v. Ashworth, Inc.*, Case No. 95 Civ. 7707, 1996 WL 167722 (S.D.N.Y. Apr. 10, 1996), the
defendants were subject to general jurisdiction by virtue of "doing business" in New York, not
through "tag" jurisdiction.  And, in *Northern Light Technology, Inc. v. Northern Lights Club*,
236 F.3d 57 (1st Cir. 2001), the defendants waived any argument that personal jurisdiction was
not established by service.

[8] *See Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541 (S.D.N.Y. 2005) ("Fed. R. Civ. P. 45,
which defines the procedure for the issuance and enforcement of subpoenas generally, also does
not speak to personal jurisdiction issues.").

[9] Davies ¶ 11 & Ex. 10 (*Gucci*, No. 11-3934 (2d Cir.), ECF No. 288).

1304(a)(6); N.Y. Banking Law § 200; *Bagdon v. Phila. & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916)).[10]

Gucci has, however, correctly abandoned the remanded argument, because Section 200 of the New York Banking Law is inapplicable to federally licensed branches like BOC's New York branch,[11] and Sections 1301 and 1304 of the New York Business Corporations Law do not apply to foreign banks, *see* N.Y. Bus. Corp. Law § 103(a).[12]  Having abandoned the remanded argument, Gucci is barred from pursuing its alternative argument based on 12 C.F.R. § 28.21, which the Court of Appeals neither accepted nor remanded.  *See Sompo Japan*, 762 F.3d at 175 (noting that, in addition to barring arguments explicitly or implicitly rejected by the Court of Appeals, the mandate rule provides that "where the mandate limits the issues open for consideration on remand, the district court ordinarily may not deviate from the specific dictates or spirit of the mandate by considering additional issues on remand").

In addition to being barred, Gucci's argument is baseless because it relies on cases that inferred consent to all-purpose jurisdiction from a defendant's compliance with statutory requirements to designate state officials as process agents as a condition to doing business in the

---

[10] Davies ¶ 12 & Ex. 11 (*Gucci*, No. 11-3934 (2d Cir.), ECF No. 322, at 3-4).

[11] Even when Section 200 does apply, the designation does not extend to service of subpoenas, only process that initiates litigation, and only then as to claims arising from transactions entered into by the New York branch.  *See* Davies ¶ 13 & Ex. 12; N.Y. Banking Law § 200(c); *Gliklad v. Bank Hapoalim B.M.*, No. 155195/2014, Dkt. No. 62, at 4-5 (N.Y. Sup. Ct. Aug. 11, 2014) (holding that Section 200 is limited to claims arising out of a transaction undertaken by the New York branch) (Davies Ex. 13).

[12] For completeness, when foreign banks open federally licensed branches, they are required to execute a form of consent to jurisdiction, but it is limited to regulatory actions filed by specified U.S. authorities under specified federal banking laws.  Davies ¶ 15 & Ex. 14.

state.  In this case, there is no such statute, and, therefore, no designation that could form the basis for a finding of consent.[13]

## II.   GUCCI HAS NOT SHOWN THAT THIS COURT HAS SPECIFIC JURISDICTION TO COMPEL BANK OF CHINA TO PRODUCE DOCUMENTS CONCERNING BANKING ACTIVITY IN CHINA

### A.   Gucci Must Show That Jurisdiction Is Authorized By A New York Statute And By The Federal Due Process Clause

In addition to service of process, there are two prerequisites to the "lawful exercise of personal jurisdiction by a federal court."  *Licci*, 673 F.3d at 59-60.  First, there must be "a statutory basis for personal jurisdiction" and, second, "the exercise of personal jurisdiction must comport with constitutional due process principles."  *Id*.

In this case, Gucci must demonstrate that the New York long-arm statute permits the exercise of jurisdiction.  Although certain federal statutes create nationwide subpoena jurisdiction, *see, e.g.*, 15 U.S.C. § 78aa; 18 U.S.C. § 1965(c), the Lanham Act does not authorize nationwide jurisdiction, either in respect of subpoenas or generally.  *See Canterbury Belts Ltd. v. Lane Walker Rudkin Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989).  When no federal statute authorizes nationwide jurisdiction, federal courts apply the forum state's personal jurisdiction statutes.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).[14]  Thus, in *Ungar*, 400 F.

---

[13] The Court need not, therefore, address an additional fatal flaw in Gucci's argument—that following *Daimler*'s rejection of the "doing business" standard for general jurisdiction, compliance with domestication statutes that apply to those "doing business" in a State "cannot constitute consent to jurisdiction."  *AstraZeneca AB v. Mylan Pharms., Inc.*, --- F. Supp. 3d ----, 2014 WL 5778016, at *5 (D. Del. Nov. 5, 2014).  *Bagdon v. Phila. & Reading Coal & Iron Co.*, 217 N.Y. 432 (1916), itself turned on the proposition that doing business warrants the exercise of general jurisdiction.  *See id*. at 438 (citing *Barrow S.S. Co. v. Kane*, 170 U.S. 100 (1898)); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.18 (2014) (disapproving *Barrow*).

[14] The Court of Appeals invited this Court to consider whether a recent amendment to Rule 45 means that nationwide, as opposed to New York, contacts might be relevant.  *See Gucci*, 768 F.3d at 142 n.21.  BOC lacks the required contacts either way, but New York contacts are controlling.  In *Dynegy Midstream Services, LP v. Trammochem*, 451 F.3d 89, 94-96 (2d Cir. 2006), the court

Supp. 2d at 549-52, and in *First American*, 154 F.3d at 19, both of which the Court of Appeals

cited with approval, *Gucci*, 768 F.3d at 141 n.20, the courts considered whether a New York

statute authorized subpoena jurisdiction over the foreign witnesses.

      To show that the Due Process Clause permits the exercise of jurisdiction over

BOC, Gucci must show, *first*, that BOC has "'purposefully directed' [its] activities at residents of

the forum." *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 674 (2d Cir. 2013) (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "Put another way, specific personal

jurisdiction properly exists where" the defendant's intentional acts were "'expressly aimed at'

the forum." *In re Terrorist Attacks*, 714 F.3d at 674 (quoting *Calder v. Jones*, 465 U.S. 783, 789

(1984)); *see also O`Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 317 (3d Cir. 2007) (holding

that purposeful availment requires "a deliberate targeting of the forum").  In this analysis, the

only relevant contacts are those "that the 'defendant *himself*' creates with the forum State."

*Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King*, 471 U.S. at 475) (emphasis

in original).

      *Second*, to satisfy the Due Process Clause, the requested exercise of jurisdiction

must "'arise out of or relate to'" contacts that BOC has purposefully created with the forum.  *In*

*re Terrorist Attacks*, 714 F.3d at 674 (quoting *Burger King*, 471 U.S. at 472-73).  This essential

---

held that federal courts do not have nationwide subpoena jurisdiction because under unamended
Rule 45 "both service and enforcement proceedings ha[d] clear territorial limitations." *Id*. at 95.
Although the procedure for serving subpoenas has been simplified by the recent amendment, *see*
Fed. R. Civ. P. 45 Advisory Committee Notes to 2013 Amendment, enforcement—*i.e.*, the
court's power to exercise jurisdiction over the non-party witness—remains geographically
limited.  A motion to compel must still be filed in the court where the witness is located, Fed. R.
Civ. P. 45(d)(2)(b), 45(d)(3), and although it may be transferred to the trial court, enforcement
must take place in the transferor court where the witness is subject to personal jurisdiction.  *See*
Fed. R. Civ. P. 45(f); Fed. R. Civ. P. 45 Advisory Committee Notes to 2013 Amendment.  Rule
45 cannot, therefore, be interpreted to create nationwide jurisdiction.  *Cf. PT United Can Co. v.*
*Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998) (requiring that a statute be construed in
its entirety to determine whether it creates nationwide jurisdiction).

link between the in-forum conduct and the exercise of jurisdiction constitutes "an independent

constitutional mandate." *O'Connor*, 496 F.3d at 323.

   *In re Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*,

87 F.3d 413 (10th Cir. 1996), is fully consistent with these principles.  In *Knowles*, the SEC

served an administrative subpoena on a foreign national, seeking information concerning

business that he had conducted in the United States, during which he had met clients, signed

documents, and opened a brokerage account.  *See id*. at 417.  As "Knowles' continuing

investment contacts with United States citizens, companies and brokerage accounts were not

random, fortuitous, or attenuated . . . [but] were purposeful, continuous, and systematic[,]" and as

the subpoena sought information concerning those very activities, the court had jurisdiction to

enforce the subpoena.  *See id.* at 417-19.[15]

### B.   Gucci Has Shown Neither A Statutory Basis For Jurisdiction Nor That This Court May Exercise Jurisdiction Consistent With The Due Process Clause

#### 1.   Gucci Is Not Seeking Information About Banking Transactions That Bank Of China Purposefully Aimed At New York

   Unlike the *Knowles* subpoena, which sought information about the witness'

conduct of business in the United States, *id.* at 417-19, Gucci has conceded and this Court has

correctly held that Gucci is seeking information about defendants' bank accounts *in China*.[16]  As

---

[15] In *Knowles*, the relevant contacts were with the United States as a whole because the Securities Exchange Act of 1934 creates nationwide subpoena jurisdiction.  *See Knowles*, 87 F.3d at 417.  The out-of-Circuit bankruptcy court cases on which Gucci relies add nothing to the analysis.  In *In re Jee*, 104 B.R. 289, 293-94 (Bankr. C.D. Cal. 1989), the court noted that minimum contacts was not disputed, and that the subpoena sought information about a transaction performed by the bank through its in-forum branch.  In *In re Marathe*, 459 B.R. 850 (Bankr. M.D. Fla. 2011), the court rejected an argument that a debtor's daughter could not be subpoenaed to testify in New York, where she worked and lived.

[16] *See Gucci Am., Inc. v. Weixing Li*, No. 10 Civ. 4974(RJS), 2011 WL 6156936, at *6 (S.D.N.Y. Aug. 23, 2011) ("The Subpoena seeks production of information *limited solely to Defendants' accounts at Bank of China. . . .*  There is no genuine dispute that the information that Plaintiffs

10

a result, Gucci cannot satisfy the "independent constitutional mandate" that the requested

exercise of jurisdiction (an order to compel discovery of documents about accounts in China)

arises from BOC's in-forum conduct.  *O'Connor*, 496 F.3d at 323.  Nor, as a result, can Gucci

establish that the New York long-arm statute, N.Y.C.P.L.R. 302(a)(1), applies, because the

subpoenas do not arise from BOC's transaction of business in New York.

 Gucci seeks to base jurisdiction on the fortuity that defendants and Chase Bank

made a handful of transfers from defendants' accounts at Chase Bank in the United States to

defendants' accounts at BOC in Beijing, specifically:

- Four transfers that defendants and Chase Bank made from defendants' accounts at Chase Bank in Louisiana to defendants' accounts at BOC's Beijing branch and that are referenced in four SWIFT messages.  *See* Weigel Exs. 9-12.[17]

- Seven transfers that defendants and Chase Bank made from defendants' accounts at Chase Bank in Louisiana to defendants' accounts at BOC Beijing branch via a correspondent account that BOC's head office maintains at Chase Bank.  *See* Weigel Exs. 2-8.

As BOC is a non-party that has no ability to subpoena evidence, BOC asked

Gucci turn over all documents it has gathered concerning these transfers to help BOC evaluate

these documents and respond to Gucci's arguments concerning them.  Betraying the

gamesmanship underlying its conduct of this litigation against BOC, Gucci refused, citing, *inter

alia*, confidentiality.  Davies Ex. 15.

---

seek in the Subpoena *originated in China* and is currently located there."); *id.* at *5 ("Plaintiffs assert that the information they seek—documents related to Defendants' *bank accounts in China* . . . ."); ECF No. 27 (Gucci's Mem. of Law filed Dec. 6, 2010) at 18 ("Because Bank of China controls its *overseas accounts*, it should be compelled to produce documents responsive to Plaintiffs' Subpoena, regardless of location."), 21 ("It is clear that banks doing business in the United States are under an obligation to disclose *foreign documents regarding foreign accounts and assets* . . . .") (all emphases added).

[17] ECF No. 71-4, 71-5 (reflecting that several of defendants' accounts, including the transferor account reflected in Weigel Ex. 7, were held at Chase Bank in Louisiana).

Gucci's attempt to base specific jurisdiction over BOC on these eleven transfers is utterly baseless for two independent reasons.  As shown in Point II.B.2, BOC's passive receipt of transfers made by defendants and Chase Bank does not constitute purposeful availment by BOC of the privilege of conducting business in New York.  Gucci's argument also fails because it cannot establish the essential link between the exercise of jurisdiction that it is requesting, *i.e.*, an order compelling the production of information about defendants' accounts in China, and the in-forum conduct that it claims gives rise to that jurisdiction.  Put simply, unlike the subpoenas in *Knowles*, Gucci is not seeking discovery into anything that BOC did in New York, so the "independent constitutional mandate," *O'Connor*, 496 F.3d at 323, is not satisfied.

For the same reason, BOC's membership in CHIPS and Fedwire does not create jurisdiction to order discovery into defendants' accounts in China.  The documents on which Gucci relies do not show that CHIPS or Fedwire had anything to do with these transfers, Wagner ¶¶ 21-29, but even if they did, Gucci is not seeking discovery into BOC's interactions with CHIPS or Fedwire.  Moreover, as this is not a dispute between BOC and CHIPS or Fedwire, the fact that BOC's contractual agreements with those entities are governed by New York law and subject to New York jurisdiction, Mem. at 8-10, 15, is completely beside the point.

Also for the same reason, the fact that BOC's New York branch, as a general matter, offers wire transfer services, *id.* at 7-9, is entirely irrelevant.  The transfers on which Gucci seeks to base jurisdiction were made by Chase Bank to BOC's Beijing branch (Weigel Exs. 9-12), and by Chase Bank to BOC's head office (Weigel Exs. 2-8).  BOC's New York branch had nothing to do with them.  Wagner ¶¶ 24, 29; Deng ¶ 5.  Similarly irrelevant is BOC's New York branch's role as the "U.S. dollar funding pool within the Bank's global operations," Mem. at 7, 15, because the Subpoenas do not seek discovery into how BOC internally manages

its global inventory of dollars (which would be entirely irrelevant to this case anyway).  *See also* Wagner ¶ 14.

In sum, the Court lacks jurisdiction to compel BOC to respond to the Subpoenas, as they do not "arise out of or relate to" BOC's deliberate targeting of New York.  *In re Terrorist Attacks*, 714 F.3d at 674.

### 2.    Bank Of China's Passive Receipt Of Transfers Made By Defendants And Chase Bank Neither Constitutes Minimum Contacts Nor Satisfies New York's Long-Arm Statute

The fact that Gucci is seeking information about bank accounts in China also precludes it from demonstrating either minimum contacts or compliance with New York's long-arm statute.  Providing banking services in China obviously does not constitute "purposeful[]" or "intentional" action "expressly aimed at" New York, *id.*, or a "deliberate targeting of the forum," *O'Connor*, 496 F.3d at 317.  Gucci attempts to shoehorn the eleven transfers that defendants and Chase Bank made to BOC in China into the holding in *Licci*, but they will not fit.  *Licci* does not authorize the exercise of jurisdiction over BOC.[18]

In *Licci*, the Court of Appeals held that a foreign bank's use of a U.S. correspondent account can constitute a transaction of business under New York's long-arm statute, but only if it is "purposeful."  *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y. 3d 327, 338-39 (2012)).  Purposefulness was shown by the bank's frequent and deliberate use of a correspondent account to make dozens of wire transfers totaling millions of dollars for a client that that bank knew to be

---

[18] *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995), cited in Mem. at 16-18, also does not support Gucci's position.  In that case, jurisdiction was obtained over a foreign bank with respect to claims that it had knowingly facilitated a Ponzi scheme, because those claims arose from the bank's "considerable" purposeful availment of the privilege of doing business in the United States, including, among other things, its deposit-taking operations, which included receipt of deposits from victims of the Ponzi scheme into a U.S. account.  *See id.* at 1500-01.

part of Hizbollah, and which the bank executed "to assist and advance Hizbollah's goal of using terrorism to destroy the State of Israel." *Licci*, 20 N.Y.3d at 332, 339 (citation and internal quotation omitted). The Second Circuit concluded that this purposeful, deliberate and recurrent conduct also satisfied the purposeful availment requirement of the federal Due Process Clause. *See Licci*, 732 F.3d at 169-71.

As the case law recognizes, however, there is a vast difference between a bank's purposeful *use* of a correspondent account in the United States to *make* illegal payments for a client, as in *Licci*, and BOC's passive receipt of transfers that defendants and Chase Bank initiated and routed to BOC. When a foreign bank receives a funds transfer from the United States for the benefit of its overseas customer, whether the transfer is made into a correspondent account or via SWIFT or CHIPS, the only action the foreign bank takes is to make a book entry overseas, crediting the transfer to the customer's account. Wagner ¶¶ 13, 19, 21-29.

In *Licci*, both appellate courts emphasized that, in contrast to the purposeful, recurrent and deliberate *use* of a U.S. correspondent account to *make* wire transfers, mere *maintenance* of a U.S. correspondent account does not subject the foreign bank to jurisdiction. *See Licci*, 732 F.3d at 171; *Licci*, 20 N.Y. 3d at 337-39. Nor does a foreign bank purposefully avail itself of the privilege of conducting business in New York when it is "'passively and unilaterally'" made the recipient of a funds transfer. *Id.* at 335-38 (citing *Amigo Foods Corp v. Marine Midland Bank-N.Y.*, 61 A.D.2d 896, 897 (1st Dep't 1978), *aff'd*, 46 N.Y.2d 855 (1979)). That is because when someone else deposits funds into a bank's correspondent account, the bank's use of that account is "adventitious," *i.e.*, it is "not even [the bank's] doing." *Id.* at 338.[19]

---

[19] *Accord Walden*, 134 S. Ct. at 1122-23 (holding that contacts created by others are not relevant to the specific jurisdiction analysis).

Thus, the case law holds uniformly that receiving a transfer of funds, whether via a U.S. correspondent account or through wire services, does not subject the recipient to personal jurisdiction, either under New York's long-arm state or federal Due Process standards.[20]  There is therefore no conceivable basis to hold that BOC's passive, "adventitious" receipt of a handful of transfers initiated and routed by defendants and Chase Bank subjects it to personal jurisdiction.

C.     **It Would Be Unreasonable And Unfair To Exercise Jurisdiction Over Bank Of China In The Transnational Context Of This Case**

Even when minimum contacts are present, a court may exercise jurisdiction only if "'the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Gucci*, 768 F.3d at 136 (quoting *Burger King*, 471 U.S. at 476; and citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113-14 (1987)).  This inquiry "evokes a sliding scale: the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  *Metropolitan Life Ins. Co. v.*

---

[20] *See Rushaid v. Pictet & Cie*, No. 652375/2011, Dkt. No. 42, at 7 (N.Y. Sup. Ct. Aug. 27, 2014) (Davies Ex. 16) (holding that, in contrast to the active, purposeful conduct at issue in *Licci*, a foreign bank's passive receipt of wire transfers into its correspondent account in New York did not constitute purposeful availment for purposes of New York's long-arm statute); *Ballard v. Walker*, No. 11 Civ. 5874 (LLS), 2013 WL 6501234, at *3 (S.D.N.Y. Dec. 11, 2013) (holding that the "passive receipt of royalty payments in New York" is insufficient to show purposeful availment for federal due process purposes); *Gargano v. Cayman Nat'l Corp.*, No. 09-11938-JLT, 2010 WL 2245034, at *6 (D. Mass. June 2, 2010) (noting that "[t]he receipt of a wire transfer is an inherently passive action[,]" and holding that the "fact that Defendants *received* money from Plaintiff's United States bank account is not purposeful availment of an opportunity to act in the United States") (emphasis in original); *Canadian Grp. Underwriters Ins. Co. v. M/V "Arctic Trader"*, No. 96 Civ. 9242 (DAB), 1998 WL 730334, at *3-4 (S.D.N.Y. Oct. 19, 1998) (holding that defendants' passive receipt of funds from a New York bank was insufficient to show specific jurisdiction); *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) (holding that a foreign bank's passive receipt of funds into its correspondent account in New York did not support the exercise of jurisdiction).

*Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (alteration in original; citation and internal quotation omitted).

As the Supreme Court held in *Daimler*, in the "transnational context," expansive exercises of jurisdiction can threaten international comity, and exercising jurisdiction in those circumstances violates the "'fair play and substantial justice'" criterion. 134 S. Ct. at 762-63 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, in *Asahi*, it was "unreasonable and unfair" to require a foreign defendant to defend claims arising from a foreign transaction that a foreign plaintiff asserted in California. 480 U.S. at 113-16. In this case, it would be unreasonable and unfair for this Court to exercise jurisdiction over BOC simply because a French luxury goods conglomerate insists on suing in New York even though apparently the defendants, their assets, and the evidence sought through this motion are all in China.[21]

### 1. Bank Of China Would Be Severely Burdened If The Court Were To Exercise Jurisdiction In This Case

BOC faces not only the "severe" burden at issue in *Asahi*, *i.e.*, having to litigate in a U.S. court, 480 U.S. at 114, but also the very severe burden of being ordered to violate Chinese law. An order compelling compliance with the subpoenas would require BOC to violate Chinese law again, exposing the Bank and its employees to the risk of regulatory sanctions, criminal prosecution and civil liability. *See* Zhang ¶¶ 22-24, 34-36. Chinese judicial decisions confirm that banks must comply strictly with China's banking laws, and that they face liability if they do not. *Id.* ¶¶ 24-25, 28-31. Gucci's contention that BOC faces no risk of enforcement action because of the Chinese government's indirect ownership interest is unsupportable, as there are

---

[21] As all the plaintiffs are wholly owned vehicles of French luxury goods conglomerate Pinault-Printemps-Redoute S.A. (now Kering S.A.), *see Gucci*, No. 11-3934 (2d Cir.), ECF No. 220 (Corporate Disclosure Statement), Gucci's claim to be a forum "resident" is wholly insubstantial.

multiple examples of such actions.  *See id.* ¶¶ 39-40.[22]  Moreover, the Beijing Judgment

demonstrates the liability to which BOC is exposed as a result of orders compelling it to violate

China's banking law, and the lack of defenses to such claims.  *See id.* ¶¶ 30-31.[23]

      Tellingly, in none of Gucci's cases did a court find it reasonable to assert

jurisdiction for the sole purpose of ordering a foreign non-party to violate the law of its home

jurisdiction.  Gucci's reliance on *Metropolitan Life*, which addressed the burden of shipping

documents from Pennsylvania to Vermont, *see* 84 F.3d at 573-74, shows the complete

irrelevance of Gucci's legal authority.[24]  Notably, in another of Gucci's cases, *Ballard v. Savage*,

65 F.3d 1495, 1501 (9th Cir. 1995), the court recognized that a conflict with foreign law weighed

against exercising jurisdiction, but concluded that that issue would be addressed through choice

of law principles.  Gucci, however, insists that this Court not only exercise jurisdiction, but do so

in order to order production in complete disregard of the conflicting laws.

      Gucci's argument that BOC's non-party status diminishes its due process rights

has no basis at all.  *See* Mem. at 3, 20-21.  Unlike the absent class plaintiffs in *Phillips Petroleum*

*Corp. v. Shutts*, 472 U.S. 797, 806-12 (1985), the risks and burdens facing non-party witnesses,

---

[22] Gucci's expert contends that prosecution is unlikely on the basis that he failed to find a case in which a Chinese bank had been prosecuted under circumstances identical to this case, *see* Clarke ¶¶ 14, 22(g), but he neglects to consider any other explanation for his failure—including China's historical lack of systematic case reporting, and the question of how many times this exact fact pattern has occurred and come to the attention of the authorities, Zhang ¶ 25.

[23] Gucci willfully exacerbates the risk to BOC by again filing on the public docket the account records that this Court compelled BOC to produce in violation of Chinese law, Weigel Exs. 28-36, even though Gucci is well aware that such confidential materials should be filed under seal. ECF No. 115 (order sealing account records); ECF No. 119 (Tr. dated Oct. 25, 2012) at 2-3.

[24] Neither *Nowak v. Tak How Investments, Ltd*., 94 F.3d 708 (1st Cir. 1996), nor *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88 (2d Cir. 2000), addressed the reasonableness of exercising jurisdiction to order a violation of the law, merely "the ordinary cost and inconvenience of defending an action so far from its place of business."  *Nowak*, 94 F.3d at 718.

including contempt citations, are much more like those faced by defendants,[25] certainly given the extraordinarily aggressive fashion in which Gucci has prosecuted this case against BOC. Equally baseless is Gucci's inconsistent argument that BOC's due process rights are diminished because it should be treated as though it *were* a party.  Mem. at 19.  BOC has no interest in this lawsuit, and none of the cases from which Gucci quotes decontextualized snippets of text have anything to do with jurisdiction.[26]

Finally, there is nothing to Gucci's argument that BOC is not burdened because it "regularly litigates in New York by choice[.]"  Mem. at 17.  Gucci identifies only nine cases that BOC has filed in two decades, and none in which it chose to bring claims in New York arising from banking business conducted under Chinese law in China.

### 2. China Has Asserted A Vital National Interest In Applying Its Banking Laws To Bank Accounts In China

Where, as here, the interests of a foreign sovereign are at stake, the reasonableness inquiry "calls for a court to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction[.]"  *Asahi*, 480 U.S. at 115 (emphasis in original).  Through its banking regulators and its Embassy, China has asserted its vital national interest in enforcement of its banking laws to accounts in China, and its strong objections to U.S. court orders that require Chinese banks to violate those laws by disclosing

---

[25] *See* Ryan W. Scott, Note, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery*, 88 Minn. L. Rev. 968, 996-97 (2004); *see also Gucci*, 768 F.3d at 137 n.17 (noting that a person's non-party status may impact the equities of asserting jurisdiction, either for or against, depending on the circumstances).

[26] In *In re First American Corp.*, 184 F.R.D. 234, 236 (S.D.N.Y. 1998), the court merely limited the costs recoverable by a non-party witness under Rule 45 because of its involvement in the underlying facts, as the auditor that failed to uncover "the largest bank fraud in world history[.]" In *Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998), the court affirmed the denial of a motion to compel the production of investigative materials, principally on First Amendment grounds.

account information.[27]  China's banking law reflects that nation's policy judgments as to the circumstances in which bank accounts in China should be subject to disclosure or freezing. Zhang ¶¶ 17-18.  As China's government has explained, "[i]t is of vital importance to China, a country with a relatively underdeveloped financial sector, to strictly ensure the security of information of bank clients since this will help engender client confidence in the banking system and therefore promote the further development of the banking system."  *Id.* Ex. 12, at 2.

In its *amicus* brief, the United States recognized that this Court's August 2011 Order incorrectly discounted China's interest in its banking laws by mischaracterizing them as "blocking statutes" that merely conferred an individual privilege on customers.  Davies Ex. 19, at 24-25.  As the United States also acknowledged, China's banking laws have a broader national purpose, *i.e.*, promoting the development of China's banking system, China's views concerning its own laws were entitled to deference, and this Court "should not have summarily dismissed representations describing the national importance of China's banking secrecy laws."  *Id.*

### 3.    Gucci Has No Substantial Or Legitimate Interest In Having This Court Compel Bank Of China To Produce Documents

Gucci insists upon prosecuting these claims in the United States, even though the defendants, their assets, and the evidence it claims to need are all in China.  It is clear that Gucci can obtain a judgment that includes substantial equitable and monetary relief without compelling discovery from BOC, but to the extent Gucci does need evidence from BOC, it is available under the Hague Convention.  *See* Background § B.  Other than via the Hague Convention, that evidence is not available without harming the interests of a non-party and a foreign nation.

---

[27] Zhang Ex. 12 (letter from People's Bank of China ("PBOC") and China Banking Regulatory Commission ("CBRC") dated Nov. 3, 2011);  Davies Ex. 17 (letter from Embassy of the People's Republic of China to United States Department of State dated May 15, 2003); Davies Ex. 18 (letter from PBOC and CBRC to the Court of Appeals dated Dec. 19, 2013).

Further, as a result of *Motorola*, Gucci has, as a practical matter, no means to enforce any ultimate monetary judgment. *See id*. § C. Under all these circumstances, Gucci cannot possibly show that this lawsuit, much less this motion, serves any "interest in obtaining convenient and effective relief[.]" *Metro. Life*, 84 F.3d at 568 (citation omitted).

Just as the *Asahi* plaintiff could not demonstrate that it would be more convenient to litigate in California than in Japan (where the defendant was based) or Taiwan (where the transaction took place), *Asahi*, 480 U.S. at 114, Gucci cannot show that it would be more convenient to litigate in New York than in China, where the defendants, their assets, and the account records all reside. China offers victims of trademark infringement a wide variety of effective remedies to enforce their rights, including through criminal, civil and administrative actions. Zhang ¶¶ 41-47. Gucci has registered its trademarks in China, *id*. ¶ 41 & n.16, where it has more stores than it does in the United States,[28] and where it has, at least three times, successfully prosecuted trademark claims. Zhang ¶¶ 57-59. There is no reason why Gucci should not once again litigate in China these overwhelmingly China-focused claims.[29]

### 4.    There Is No Substantial Forum Interest In Compelling Bank Of China To Produce Documents In Violation Of Chinese Law

Each of Gucci's attempts to manufacture a forum interest fails. *First*, as the only purchases in the record appear to have been made by Gucci's investigator, ECF No. 9-2 (investigator's declaration), ¶¶ 23-46, the national interest in enforcement of the Lanham Act is barely implicated. The "vast weight of authority" holds that plaintiffs cannot establish

---

[28] Gucci's store locater, available at http://www.gucci.com/us/stores, indicates that Gucci has approximately 86 boutiques in China and approximately 55 in the United States (including territories).

[29] This case is, therefore, wholly dissimilar to *Nowak*, where it appeared that there would be no adjudication of plaintiff's claim if the U.S. court declined jurisdiction. *See Nowak*, 94 F.3d at 718.

jurisdiction by manufacturing contacts in this way.  *Buccellati Holdings Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623-24 (S.D.N.Y. 2013) (noting that there is no consumer confusion when the only sale is to the plaintiff).  Even if there were real sales, however, Gucci cannot show how granting this motion would promote enforcement of the Lanham Act.  It has previously obtained a substantial judgment without such evidence, and, as a result of *Motorola*, it has no means to enforce any judgment even if this motion were granted.  *See* Background §§ B, C.

Meanwhile, Gucci ignores the forum interest that is really threatened by this motion, *i.e.*, the public interest in not damaging New York's status as a financial center by subjecting banks to "contradictory directives of multiple sovereign nations."  *Motorola,* 24 N.Y.3d at 162-63; Background § C.  Just as that vital forum interest led the *Motorola* court to reaffirm the separate entity rule, it militates powerfully against the exercise of jurisdiction here.[30]

*Second*, the Court should not take seriously Gucci's overwrought claim that denying this motion would "unquestionably debilitate civil litigation."  Mem. at 19.  Witnesses with relevant evidence will typically be subject to subpoena jurisdiction, if not in New York then elsewhere in the United States.  But if they are not, traditions of expansive discovery cannot possibly trump core principles of Constitutional Due Process, particularly as there are other means, including the Hague Convention, to obtain evidence that cannot be compelled.

---

[30] Further, in 2014, SWIFT processed 5.6 *trillion* messages, CHIPS processed more than 109 million transfers with a value of $390 *trillion* and, during the first eleven months of 2014, Fedwire processed 122 million transfers with a value in excess of $811 *trillion*.  Wagner ¶¶ 16-18.  If every one (or even eleven) of them subjected a passive recipient bank to personal jurisdiction, the practical result would be "*de facto* universal jurisdiction[,]" contrary to decades of Supreme Court jurisprudence.  *Cf. Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 801-02 (7th Cir. 2014).

Indeed, in *Dynegy Midstream Servs., LP v. Trammochem*, 451 F.3d 89 (2d Cir. 2006), the court reversed an order compelling compliance with an arbitration subpoena on the ground that the witness was not subject to personal jurisdiction.  The court reasoned that if the parties really needed the evidence they should have arbitrated in Texas, where the non-party was subject to jurisdiction, but having chosen to proceed in New York, they would have to do without it.  *Id.* at 96.  In exactly the same way, Gucci must live with the consequences of its insistence upon litigating in New York, even though the defendants, their assets, and the evidence sought by this motion are all located in China.

*Finally*, Gucci's argument that the policy underlying the International Banking Act, 12 U.S.C. §§ 3101 *et seq.*, supports the exercise of jurisdiction makes no sense.  Mem. at 19.  That statute has no relevance, as no aspect of this matter pertains to BOC's New York branch.  *See* Deng ¶ 5; Wagner ¶¶ 24, 29.[31]  Moreover, national banks are subject to the same jurisdictional rules as any other corporation, *see, e.g.*, *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984), so, just like BOC, a national bank that lacked minimum contacts would not be subject to this Court's subpoena jurisdiction.

## III.   EVEN IF THE COURT HAD JURISDICTION, GUCCI'S MOTION SHOULD BE DENIED DUE TO THE GRAVE THREAT TO INTERNATIONAL COMITY

Although the Court of Appeals held that this Court's earlier *Aérospatiale* analysis did not amount to an abuse of discretion, it mandated a fresh comity analysis on remand.  *Gucci*, 768 F.3d at 141-42.  This Court previously acknowledged that the *Aérospatiale* factors were "far from completely one-sided."  *Gucci Am.*, 2011 WL 6156936 at *12.  In light of a number of

---

[31] In *Elmalich v. Bank of China Ltd.*, No. 09 Civ. 2130 (PGG), 2010 WL 1172829, at *9-11 (S.D.N.Y. Mar. 26, 2010), cited in Mem. at 19, the court rejected an argument that, by virtue of the International Banking Act, Bank of China should be deemed to be a citizen of New York for purposes of 28 U.S.C. § 1348.  The case has no bearing on the issues before this Court.

significant developments since 2011, including the Beijing Judgment, there is no doubt that the factors now tip heavily in favor of BOC.

*First*, violating China's banking laws exposes BOC and its employees to criminal, regulatory and civil litigation risk in China, and the Beijing Judgment demonstrates vividly the civil liability to which BOC is exposed by U.S. court orders that compel it to violate China's banking law.  Zhang ¶¶ 30-31; Point II.C.1.

*Second*, China has strongly and repeatedly asserted its vital national interest in the enforcement of its banking laws as to accounts in China and its objections to foreign court orders that compel Chinese banks to violate those laws, and the United States has acknowledged that this Court previously erred by failing to defer to those statements of interest and by mischaracterizing the nature of China's banking laws.  *See* Point II.C.2.  In addition, New York's highest court has recently asserted a compelling public interest in not jeopardizing New York's position as a global financial center by subjecting banks to conflicting mandates.  *See* Point II.C.4.  Moreover, Gucci cannot show that granting this motion actually promotes any public or private interest.  *See* Point II.C.3, II.C.4.  Thus, the balance of national interests weighs strongly against ordering production.

*Third*, the documents Gucci seeks are not important.  Plaintiffs have obtained substantial judgments without such documents in *Bagsmerchant* and in *Dong*, and, in light of *Motorola*, Gucci has no means to enforce any judgment as to assets held at BOC in China, further confirming that Gucci has no need of records from BOC.  *See* Background §§ B, C.

*Fourth*, actual experience with the Hague Convention in the *Forbse* and *Qi Andrew* cases shows that, to the extent Gucci actually needs any evidence from BOC, the Hague Convention provides a viable alternative means to obtain it.  *See* Background § B.

23

*Fifth*, the Subpoenas are, on their faces, open-ended and sprawling.  Certainly, Gucci's prior conduct cautions that it would tactically argue as much after an order had been issued.  ECF No. 111 (Gucci contempt brief), at 13-15.

*Sixth*, as this Court previously held, the responsive documents originated in China.  *Gucci Am.,* 2011 WL 6156936 at *6.

*Seventh*, as the Court correctly found, there is no basis whatsoever to conclude that BOC has acted in bad faith.  *See id.* at *12.  Predictably, Gucci argues otherwise, but the Court should not countenance Gucci's attempt to obfuscate the weakness of its arguments with name-calling.

Gucci's omission of a chronology from its discussion of the Beijing litigation results in a seriously distortive picture.  BOC notified the Second Circuit about the Beijing Judgment the day after it was issued, *Gucci*, No. 11-3934 (2d Cir.), ECF No. 268 (order), not "when BOC decided it was strategically advantageous to do so[.]"  Mem. at 6.  As BOC notified the Court of Appeals, it was on June 24, 2014 that BOC obtained a restraining order from the Chinese court to preserve assets to satisfy any future judgment in its case against Peiyuan, Ting and Lei.  Background § D.  Gucci's outrage that "BOC did not actually let the counterfeiters empty their accounts[,]" Mem. at 11, demonstrates again how little integrity there is to Gucci's opportunistic litigation positions.

Indeed, far from demonstrating BOC's "bad faith," the Beijing Judgment confirms that the arguments that BOC has made to this Court were absolutely correct—BOC has no legal right to stop the defendants from accessing their accounts simply because they are accused of counterfeiting.  Nor does Gucci have any good faith basis for the ludicrous suggestion that BOC "did not wish to prevail" in the Beijing litigation.  *Cf.* Fed. R. Civ. P. 11(b)(3).

Contrary to Gucci's insinuation, BOC made the Beijing courts well aware of Gucci's claims, and that the accountholders were "tr[ying] to evade the jurisdiction of the US Court and to evade their infringement liabilities." Zhang Ex. 10, at 16 of 24.[32]

Gucci's frivolous arguments reach a nadir with its reference to the fact that the court fee awarded against BOC was "*less than twelve dollars*." Mem. at 11 (emphasis in original). As the Beijing Judgment makes clear, the plaintiffs sought only two forms of relief: a mandatory injunction to resume provisions of account services and court fees. Zhang Ex. 10, at 15 of 24. Obviously, the substantive relief that plaintiffs sought and the court granted was the injunction, which, if violated, will expose BOC to civil and criminal contempt sanctions. *Id.* ¶ 34.

Thus, as all the *Aérospatiale* factors show that this Court should not compel BOC to produce documents in violation of Chinese law, Gucci's motion should be denied.

## CONCLUSION

For the foregoing reasons, non-party Bank of China respectfully requests that the Court deny Gucci's motion to compel.

---

[32] Gucci's argument that BOC can freeze an account merely because it "suspects" improper conduct is based on counsel's unqualified interpretation of a foreign law contract, and it notably is not endorsed by Gucci's Chinese law expert. In fact, the contractual language would be applicable only if the accountholder were subject to criminal proceedings in China (rendering her a criminal "suspect"). Zhang ¶ 33. Nor does the Beijing Judgment "belie BOC's claims of absolute bank secrecy law." Mem. at 12. The Beijing Judgment's reference to limited information about the plaintiffs' transactions does not excuse BOC from its confidentiality obligations. Zhang ¶ 32. Nor, finally, does BOC's failure to produce the account agreements addressed in the Beijing Judgment pursuant to the vacated August 2011 Order constitute "bad faith." The August 2011 Order did not apply to these defendants' accounts, *Gucci*, 768 F.3d at 143-44, and if Gucci genuinely wanted to know whether account agreements existed for the two accounts that were referenced in the 2010 Subpoena, no doubt it would have followed up when it received BOC's production in September 2011, as opposed to raising this complaint for the first time in December 2014.

Dated: January 23, 2015                    Respectfully submitted,
      New York, New York


                                          /s/ Andrew Rhys Davies
                                          ALLEN & OVERY LLP
                                          Andrew Rhys Davies
                                          andrew.rhys.davies@allenovery.com
                                          Justin L. Ormand
                                          justin.ormand@allenovery.com
                                          Brian T. Fitzpatrick
                                          brian.fitzpatrick@allenovery.com
                                          1221 Avenue of the Americas
                                          New York, New York 10020
                                          Tel: (212) 610-6300
                                          Fax: (212) 610-6399

                                          *Attorneys for Non-Party Bank of China*