UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
:
GUCCI AMERICA, INC., BALENCIAGA :
AMERICA INC., BALENCIAGA S.A., BOTTEGA :
VENETA INTERNATIONAL S.A.R.L., :
BOTTEGA VENETA INC., LUXURY GOODS :
INTERNATIONAL (L.G.I.) S.A. and YVES SAINT :
LAURENT AMERICA, INC. :          2010 Civ. 4974 (RJS)
:
     Plaintiffs, :
:
  -against- :
:
WEIXING LI a/k/a XIN LI, LIJUN XU a/k/a JACK :
LONDON and TING XU a/k/a JACK LONDON :
a/k/a XU TING a/k/a REBECCA XU, WENYING :
GUO, XIAOCHAO SHANG, LEI XU, FENGYUAN :
ZHAO, LIQUN ZHAO, MING ZHAO, and :
PEIYUAN ZHAO, all doing business as :
REDTAGPARTY, MYLUXURYBAGS.COM, :
KUELALA.COM, XPRESSDESIGNERS.COM, :
XPRESSDESIGNER.NET, and DESIGNER :
HANDBAGS; ABC COMPANIES; :
and JOHN DOES, :
:
     Defendants. :
:
----------------------------------------------------------------X

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
### FOR AN ORDER COMPELLING BANK OF CHINA'S PRODUCTION OF
### DOCUMENTS REQUESTED IN PLAINTIFFS' 2010 AND 2011 SUBPOENAS

                                        Robert L. Weigel
                                        Howard S. Hogan
                                        Anne M. Coyle
                                        GIBSON, DUNN & CRUTCHER, LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        (212) 351-4000

                                        *Counsel for Plaintiffs*

New York, New York
February 6, 2015

**TABLE OF CONTENTS**

**Page(s)**

ARGUMENT .................................................................................................................................. 2

I. THE EXERCISE OF SPECIFIC JURISDICTION IS PROPER HERE ................................ 2

    A. Plaintiffs Have Shown the Requisite Nexus Between BOC's Purposeful In-Forum Contacts and the Subpoenas ........................................................................ 2

    B. BOC Fails to Rebut the Strong Presumption in Favor of Personal Jurisdiction ............. 5

II. PLAINTIFFS ESTABLISHED ALTERNATIVE GROUNDS FOR JURISDICTION ......... 7

    A. The Mandate Rule Does Not Bar Plaintiffs' Alternative Arguments ............................. 7

    B. Plaintiffs' Alternative Jurisdictional Arguments Are Correct ........................................ 7

III. THERE IS NO BASIS TO DISTURB THIS COURT'S COMITY ANALYSIS ................... 8

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burnham v. Super. Ct. of Cal.*,
   495 U.S. 604 (1990) ................................................................................................................ 7, 8

*CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*,
   2013 WL 2661037 (S.D.N.Y. June 12, 2013) ............................................................................ 3

*Chew v. Dietrich*,
   143 F.3d 24 (2d Cir. 1998) ........................................................................................................ 4

*Del Ponte v. Universal City Dev. Partners, Ltd.*,
   2008 WL 169358 (S.D.N.Y. Jan. 16, 2008) .............................................................................. 4

*Dietrich v. Bauer*,
   2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) ........................................................................... 5

*Dynegy Midstream Servs. v. Trammochem*,
   451 F.3d 89 (2d Cir. 2006) ........................................................................................................ 5

*Gertz v. Robert Welch, Inc.*,
   680 F.2d 527 (7th Cir. 1982) ..................................................................................................... 7

*Greenbaum v. Svenska Handelsbanken*,
   26 F. Supp. 2d 649 (S.D.N.Y. 1998) ......................................................................................... 3

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014) ............................................................................................. *passim*

*In re Cuyahoga Equip. Corp.*,
   980 F.2d 110 (2d Cir. 1992) ...................................................................................................... 6

*In re Subpoena SEC v. Knowles*,
   87 F.3d 413 (10th Cir. 1996) ..................................................................................................... 4

*Koehler v. Bank of Bermuda Ltd.*,
   12 N.Y.3d 533 (2009) .............................................................................................................. 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013) ................................................................................................... 2, 3

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ............................................................................................................. 2, 5

*Motorola Credit Corp. v. Standard Chartered Bank*,
   24 N.Y.3d 149 (2014) ............................................................................................................... 4

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Motorola Credit Corp. v. Uzan*,
 -- F.R.D.--, 2014 WL 7269724 (S.D.N.Y. Dec. 22, 2014) ................................................... 4, 9

*New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
 352 F.3d 599 (2d Cir. 2003) ................................................................................................. 7

*Wultz v. Bank of China Ltd.*,
 910 F. Supp. 2d 548 (S.D.N.Y. 2012) ................................................................................. 9

**Statutes**

12 U.S.C. § 3102(b) ................................................................................................................. 8

**Rules**

Fed. R. Civ. P. 45(b)(2) ............................................................................................................ 5

**Regulations**

12 C.F.R. § 28.21 .................................................................................................................... 8

BOC does not dispute the existence of any of the jurisdictional contacts documented in Plaintiffs' opening brief, including that the Bank "has direct correspondent relationships with hundreds of banks in the U.S," owns property in New York, participates in Fedwire and CHIPS in New York, and litigates regularly in New York.  BOC also does not deny that it used a correspondent account at Chase in New York—an account maintained by its *head office* in China— to transfer Defendants' profits of their counterfeiting scheme back to China.  BOC was a crucial participant in the counterfeiters' operation, and BOC's systematic and continuous transaction of business in New York is designed precisely to allow customers to move funds from the United States to China.  Under New York law and Second Circuit precedent, such contacts are more than sufficient to support jurisdiction over BOC to enforce the Subpoenas.

Comity concerns are no barrier to enforcement here.  Both the Second Circuit and the United States government as *amicus* concluded this Court did not abuse its discretion in its original analysis of the respective interests at stake.  The Beijing Judgment does not demonstrate any compelling Chinese interest implicated by the enforcement of Plaintiffs' Subpoenas.  The Beijing Judgment, moreover, makes clear that BOC made a strategic choice not to reveal to this Court the Bank's contractual rights to freeze its customers' accounts.  BOC offers no explanation as to why it failed to disclose this information to the Court, even though Plaintiffs requested, and this Court ordered, that customer agreements be produced.  In addition, the conveniently timed judgment—rendered on the eve of argument before the Second Circuit—recites more than thirty accounts and transactions (including specific amounts) Defendants had with the Bank, belying claims of the sacrosanct confidentiality of bank records in China.

Finally, after producing documents from China, not only in this case but in at least two other cases in this jurisdiction, BOC is still unable to point to any criminal or civil sanction by the Chinese

1

government beyond the "warning" it received from the Chinese regulators in 2011.

## ARGUMENT

**I.      THE EXERCISE OF SPECIFIC JURISDICTION IS PROPER HERE**

    **A.      Plaintiffs Have Shown the Requisite Nexus Between BOC's Purposeful In-Forum Contacts and the Subpoenas**

BOC's contacts with New York and the United States are abundant, deliberate, and closely related to the information sought in Plaintiffs' Subpoenas. ECF 136 at 7-10, 12-15 ("Pls.' Br."). BOC nowhere disputes the contacts Plaintiffs identified, including that BOC's *head office* executed wire transfers on behalf of Defendants through that head office's correspondent account in New York. *See* ECF 141 at 11 ("BOC Br."); ECF 144. Instead, BOC contends that its systematic transaction of business in New York should not factor into a minimum contacts analysis at all. BOC Br. 10-15. BOC is wrong.

Both the Second Circuit and the New York Court of Appeals have made unmistakably clear that a bank's recurring use of a correspondent account in New York to effectuate Defendants' dollar-denominated fund transfers is itself sufficient to meet both state law and constitutional minimum contacts requirements for the exercise of specific jurisdiction. In *Licci v. Lebanese Canadian Bank, SAL,* the New York Court of Appeals, answering the question certified by the Second Circuit, held that "a foreign bank's repeated use of a correspondent account in New York on behalf of a client—in effect, a 'course of dealing'—show[s] purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." 20 N.Y.3d 327, 339 (2012). The Second Circuit then confirmed that the bank's recurring use of the correspondent account satisfied due process, even though the bank had no other New York contacts. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 171 (2d Cir. 2013). BOC engaged in exactly the

same conduct here, in addition to numerous contacts—including owning property in New York and litigating in the New York courts—absent in *Licci*. BOC's contacts with New York well exceed the threshold set forth by the Second Circuit and the New York Court of Appeals.

BOC's contention that it was merely the "passive" recipient of funds does not distinguish *Licci*. BOC Br. 14-15. BOC not only received Defendants' counterfeiting proceeds in its correspondent account, but also deliberately and repeatedly *transferred those funds to Defendants' accounts* in China. Pls.' Br. 3-4, 8. BOC's activities are therefore entirely distinguishable from the cases it cites, all of which involved only the receipt of funds. BOC Br. 14-15 & n.20. BOC also tries to distinguish *Licci* on the ground that here, only the receipt of funds occurred in the United States, while the crediting of Defendants' accounts took effect in China. BOC Br. 14. But the Second Circuit explicitly rejected this reasoning. *Licci*, 732 F.3d at 173. *Licci* makes clear that "[s]o long as [BOC's] in-forum activity sufficiently reflects [BOC's] 'purposeful availment' of the privilege of carrying on its activities here, minimum contacts are established, *even if the effects of [BOC's] entire course of conduct are felt elsewhere*." *Id.* (emphasis added). That BOC credited the money it received in New York to accounts opened in China is irrelevant. BOC's bid to suppress its purposeful in-forum contacts as merely those of its various bank branches is wrong on the facts and the law. BOC Br. 11-13, 22. The Chase correspondent account belongs to BOC's *head office*. And for purposes of a subpoena, it is "well-settled that the domestic branch of a foreign bank is not a separate legal entity under either New York or federal law." *Greenbaum v. Svenska Handelsbanken*, 26 F. Supp. 2d 649, 652 (S.D.N.Y. 1998) (Sotomayor, J.). Indeed, "where the remedy sought is … a subpoena, the separate entity rule has not barred enforcement." *CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 WL 2661037, at *17 (S.D.N.Y. June 12, 2013). "[O]nly personal jurisdiction over the legal entity, *the bank and its branches*, is necessary." *Id.* (emphasis added).

3

Accordingly, all of BOC's in-forum contacts—including the activities of its New York branch—are properly considered.[1]

BOC does not dispute that the requisite nexus here is between its in-forum contacts and the information Plaintiffs seek (BOC Br. 10), *i.e.*, information concerning the Defendants' counterfeiting scheme as revealed by the flow of funds in and out of their bank accounts in the United States and China. Instead, BOC invents a test where that nexus can only be met where Plaintiff seeks discovery into the contacts themselves. *Id.* at 12-13. But specific jurisdiction in the subpoena context merely requires that "the underlying action [be] based upon activities that arise out of *or relate to* [BOC's] contacts with the forum." *In re Subpoena SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996).

The relatedness test is a flexible one that "is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend traditional notions of fair play and substantial justice." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (quotations omitted); *accord Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 138 (2d Cir. 2014). As a result, since BOC "has substantial contacts with the forum (even if not sufficient to establish general jurisdiction), the court may accept a more attenuated relation between [BOC's] contacts with the forum and the plaintiff's" requested action. *Del Ponte v. Universal City Dev. Partners, Ltd.*, 2008 WL 169358, at *10 (S.D.N.Y. Jan. 16, 2008). BOC cannot import a proximate cause limitation to the relatedness test. *See id.* The information Gucci seeks about the bank accounts into which Defendants transferred their profits is related to BOC's in-forum activities in transferring the funds into those accounts. BOC's maintenance of a correspondent account in New

---

[1] Although BOC attempts to rely on the New York Court of Appeals' recent decision in *Motorola Credit Corp. v. Standard Chartered Bank*, that case addressed only the attachment of funds held abroad through a restraining notice served on a bank branch in New York. 24 N.Y.3d 149, 158 (2014). Following the decision, the district court vacated the restraining notice served on the foreign bank but enforced the subpoena seeking documents held abroad by the same bank. *See Motorola Credit Corp. v. Uzan*, -- F.R.D.--, 2014 WL 7269724 (S.D.N.Y. Dec. 22, 2014).

York and use of that account to wire funds to China, its domestic branches, and its deliberate use of New York based wire services to be "the No. 1 choice of U.S. dollar wire transfers to and from China," ECF 138-1, considered alongside Plaintiffs' requests for information linked to the use of those very contacts, leave no doubt that the required nexus is present.

BOC falsely asserts that because Plaintiffs' information requests *include* information about Defendants' accounts located in China, Plaintiffs seek information *solely* regarding overseas activities. BOC Br. 10-11 & n.16. To start, it is "immaterial that the documents sought may be located abroad, as the test for production of documents is control, not location." *Dietrich v. Bauer*, 2000 WL 1171132, at *2 (S.D.N.Y. Aug. 16, 2000). Further, the Subpoenas cover *all* information regarding Defendants' counterfeiting proceeds, obtained in U.S. dollars in the United States, and the means by which they used BOC's services *in New York and the United States* to transfer those U.S. dollars to China. *See* ECF 138-37, 138-38. Such requests include records of the Chase transfers BOC executed through its New York correspondent account, which the Bank never produced.

Finally, there is no basis for BOC to interpose New York's "long-arm state [sic]" in the minimum contacts analysis. BOC Br. 15. The statute defines who may be *sued* in New York, not who may be made a witness here. "[W]hen Congress intends to permit nationwide personal jurisdiction it uses language permitting service … 'anywhere in the United States.'" *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 95-96 (2d Cir. 2006). Rule 45 expressly provides that "[a] subpoena may be served at *any place within the United States*." Fed. R. Civ. P. 45(b)(2) (emphasis added). The Second Circuit invited this Court to consider BOC's nationwide contacts. *Gucci*, 768 F.3d at 142 n.21. In any case, *Licci* makes clear that BOC's use of a correspondent account to effectuate Defendants' fund transfers meets satisfies the statute. *See* 20 N.Y.3d at 339.

**B.   BOC Fails to Rebut the Strong Presumption in Favor of Personal Jurisdiction**

BOC's analysis of the reasonableness of specific jurisdiction (BOC Br. 15-22) is also

5

incorrect as a matter of law. Its comity arguments lack merit and cannot replace the five-factor analysis that this Court must apply. *See* Pls.' Br. 16-19.

*First*, as noted above, the separate entity rule does not apply in the subpoena context, and this Court has properly refused to consider that rule prematurely. ECF 75 at 5 n.6. The rule is also irrelevant because BOC's *head office*—not only its New York branch—is present and holds funds in this forum. But even assuming *arguendo* that the separate entity rule applies, courts have made clear the rule does not moot requests for discovery. *See supra* note 1.

*Second*, BOC's assertion that Plaintiffs—U.S. companies harmed by trademark violations in New York—should litigate in China rather than enforce their rights under the Lanham Act (BOC Br. 19-20) is wrong and irrelevant. The Second Circuit held that Plaintiffs are entitled to pursue relief against Defendants here, including through the restraint of funds in China.² *Gucci*, 768 F.3d at 129. Further, a non-party such as BOC lacks standing to argue that Plaintiffs should have chosen a different forum. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116 (2d Cir. 1992).

*Third*, BOC has no serious answer to the strong policy considerations that counsel in favor of exercising specific jurisdiction. BOC's response to the critical importance of Rule 45 subpoenas is to assert that witnesses with relevant evidence will typically be subject to jurisdiction. BOC Br. 21. Yet BOC apparently contends that, despite its numerous branches in the United States and critical role in providing banking services to individuals with a need to wire large sums of cash offshore, it would never be subject to service in any U.S. jurisdiction. BOC also raises no plausible objection to the clear national policy, as expressed in the International Banking Act, of putting foreign and domestic banks on equal footing. Pls.' Br. 19. Any domestic bank that regularly transacted business in New York and provided banking services to Defendants would unquestionably be subject to this

---

² Intellectual property rights enforcement in China continues to be significantly weaker than in the United States. *See* Third Decl. Donald Clarke ¶¶ 14-15.

6

Court's specific jurisdiction. BOC completely fails to explain why it should be the exception.

## II. PLAINTIFFS ESTABLISHED ALTERNATIVE GROUNDS FOR JURISDICTION

### A. The Mandate Rule Does Not Bar Plaintiffs' Alternative Arguments

The mandate rule "does not extend to issues an appellate court did not address," *New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003), nor to "observations, commentary, or mere dicta touching upon issues not formally before the Court," *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 533 (7th Cir. 1982). The Second Circuit held only that BOC's in-forum contacts were insufficient to permit the exercise of *general* jurisdiction and expressly left it to this Court to consider other bases for personal jurisdiction. *Gucci*, 768 F.3d at 137 & n.15, 141. Accordingly, this Court may consider all of Plaintiffs' arguments. For the Rule 45 argument, the Second Circuit simply required that this Court find a basis for specific jurisdiction. *Id.* at 141. The Circuit expressly permitted this Court to consider whether BOC consented to personal jurisdiction and emphasized that such consent is distinct from general jurisdiction. *Id.* at 137 n.15. The Second Circuit's opinion is simply silent on the applicability of tag jurisdiction.

### B. Plaintiffs' Alternative Jurisdictional Arguments Are Correct

BOC offers no real challenge to Plaintiffs' alternative arguments, nor can it. To start, BOC does not meaningfully dispute that it is entitled only to minimal due process protections due to its non-party status. Rule 45's protections well-exceed that minimum.

Next, BOC's contention that tag jurisdiction is inapplicable to corporations is rooted in an out-of-Circuit case where the sole in-forum contact resulted from a corporate agent's presence in the forum. BOC Br. 5 n.7. BOC's in-forum contacts are far greater. Tag jurisdiction "is entitled to a strong presumption that it comports with due process," as by being in the forum, a transient party "actually avails himself of significant benefits provided by the" forum. *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 637 (1990) (Brennan, J., concurring) (quotations and citation omitted).

7

Although *Burnham* did not decide the issue, *id.* at 610 n.1 (plurality op.), the logic applies to corporations as well, particularly a corporation like BOC with a fixed presence in New York.

BOC also cannot deny that it consented to jurisdiction. As the Second Circuit recognized, receiving authorization under state law to conduct business in the forum and submitting to service of process constitutes consent to jurisdiction. *Gucci*, 768 F.3d at 137 n.15. Although the Second Circuit focused on Section 200 of the New York banking law, BOC was authorized to open its New York branches under federal law, which similarly requires the bank to consent to service of process. *See* 12 U.S.C. § 3102(b); 12 C.F.R. § 28.21 ("A foreign bank operating at any Federal branch or agency is subject to service of process at the location of the Federal branch or agency."). BOC's argument that consent requires designation of a service *agent* draws a distinction without a difference. BOC Br. 7-8. Here, BOC consented to jurisdiction by subjecting itself to service directly, thus there was no need to appoint an agent.

## III. THERE IS NO BASIS TO DISTURB THIS COURT'S COMITY ANALYSIS

Despite touting "significant developments since 2011" that supposedly demand a comity analysis in its favor, BOC Br. 23, the passage of time and the absence of any sanctions weigh against BOC's argument. BOC's purportedly new arguments are wholly without merit.

*First,* BOC's insistence that the production of documents will expose the bank to serious liability does nothing to change this Court's original conclusion that the Bank's assertions of harm were "unduly speculative." ECF 75 at 12. Indeed, BOC's assertions ring hollower still following its production of supposedly confidential documents in other U.S. civil actions without consequence.[3] None of the cases cited by its latest expert, for example, show that BOC or its employees (or indeed any Chinese banks) were ever subject to criminal liability for producing documents. Third Decl.

---

[3] BOC does not deny it produced documents in *Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976 (NRB) (S.D.N.Y.) and *Wultz v. Bank of China Ltd.*, 11 Civ. 1266 (SAS) (S.D.N.Y.) after receiving a warning from their regulators in 2011. *See* Pls.' Br. 23-24.

8

Donald Clarke ¶¶ 5-6; ECF 142 ¶¶ 25-29.  Nor does BOC provide evidence of any regulatory sanctions beyond the mere warning it received in 2011.  *See Motorola*, 2014 WL 7269724 at *7.

*Second*, BOC completely ignores the United States' interest here.  In its *amicus* brief, the United States stated plainly that "[e]nforcement of the Lanham Act is of special importance because the United States has a strong continuing interest in keeping counterfeit goods out of the domestic marketplace" as well as a strong interest in "a litigation system that provides for timely and fair opportunities for parties to obtain evidence" and "the good-faith participation of entities that choose to do business in the United States."  ECF143-19 at 25.

*Third*, this Court's prior finding that the Hague Convention is not a viable means for securing information from China holds true.  ECF 75 at 7-10.  In both Tiffany cases referenced by BOC, the plaintiffs' Hague requests were not executed for nine to eleven months, and then the Chinese Ministry of Justice only partly executed the requests without explanation.  *See Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 557 (S.D.N.Y. 2012) ("[T]he Chinese [MOJ's] response to the Hague request in *Qi Andrew* denied some of the valid discovery requested by the court's Letter of Request."); ECF 143-5; ECF 143-7.  The United States opined that this Court "was 'properly reluctant to discount Plaintiffs' evidence and the case law cited . . . solely because of an unexplained revision to the State Department's website'" and confirmed that "the State Department … did not intend to express any opinion by eliminating characterizations of other countries' practices on its website."  ECF 143-19.[4]

*Fourth*, BOC offers no basis to relitigate this Court's prior conclusion that the documents Plaintiffs seek are "important" to the litigation.  ECF 75 at 7.  The Second Circuit upheld Plaintiffs'

---

[4] The United States also characterized the Chinese banking regulators' letter as misconstruing the Federal Reserve's Assurances Commitment, which "do[es] not support the Regulators' argument that BOC has only a 'limited' obligation to supply information."  ECF 143-19 at 28.

9

right to freeze Defendants' funds to obtain an equitable accounting under the Lanham Act. The account records remain critical to this relief. And this Court has the authority to order Defendants to bring their assets into this jurisdiction, under this Court's inherent equitable authority and under New York Law. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 539-40 (2009).

*Fifth*, this Court already determined that Plaintiffs' requests were sufficiently specific, and the Second Circuit nowhere questioned this determination. ECF 75 at 7.

Finally, BOC's reliance on the December 2013 Beijing Judgment cannot excuse its bad faith. BOC insisted that Chinese law prohibited it from freezing Defendants' Chinese accounts, when in fact it had contractually reserved the right to do so.[5] BOC never informed this Court of the suit leading to the Beijing Judgment even though the suit was filed in China in November 2011, 2d Cir. Dkt 185-2, prior to this Court's orders denying BOC's motion for reconsideration and finding BOC in contempt, ECF 98, 116. And, despite putting the Chinese Judgment at issue, BOC refused to provide Plaintiffs with its filings in either the action leading to the Beijing Judgment or the case BOC brought against the counterfeiters—a case that was just conveniently dismissed. Weigel Decl. Exs. 1-2, Feb. 6, 2015.[6]

## CONCLUSION

For the foregoing reasons, as well as those presented in their opening brief, Plaintiffs respectfully request that the Court grant their motion in its entirety.

---

[5] BOC's claim that Plaintiffs should have "followed up" (BOC Br. 25 n.32) concerning the customer agreements ignores that Plaintiffs repeatedly informed BOC's counsel that BOC had failed to produce all documents requested, which included "account opening documents." *See* Weigel Decl. Ex. 3, Feb. 6, 2015 (Letter dated Oct. 10, 2011); ECF 109-8.

[6] BOC's assertion that the Chinese judgment makes only limited references to Defendants' accounts is simply false. That judgment identified not only the number of transactions, but also their respective amounts. *See* ECF 142-12 at 17.

Dated: New York, New York
February 6, 2015

        Respectfully submitted,

        GIBSON, DUNN & CRUTCHER LLP

By:     /s/ Robert L. Weigel
        Robert L. Weigel
        Howard S. Hogan
        Anne M. Coyle
        GIBSON, DUNN & CRUTCHER, LLP
        200 Park Avenue
        New York, New York 10166
        (212) 351-4000

*Counsel for Plaintiffs Gucci America, Inc., Balenciaga America Inc., Balenciaga S.A., Bottega Veneta International S.a.r.l., Bottega Veneta Inc., Luxury Goods International (L.G.I.) S.A. and Yves Saint Laurent America, Inc.*