# EXHIBIT 1

# THE PEOPLE'S COURT OF CHAOYANG DISTRICT, BEIJING MUNICIPALITY

## CIVIL JUDGMENT

(2014) Chao Min Chu Zi No. 25377

**Plaintiff:**

Beijing Chaoyang Sub-Branch of Bank of China Limited, domiciled at No. 18 Xiaguangli, Dongsanhuan Beilu, Chaoyang District, Beijing.

Represented by: Huang Xiaojuan, President

Attorneys:

Zheng Yuejie, attorney-at-law with Jun He Law Offices of Beijing; and

Fu Changyu, attorney-at-law with Jun He Law Offices of Beijing

**Defendant:**

Zhao Peiyuan, female, born on 25 September 1943, ethnic Manchu and retired employee of Beijing Piano Plant, domiciled at No. 16 Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing, identification card No. 110105194309256129.

Attorney:

Chen Peng, attorney-at-law with Zhongdun Law Office of Beijing.

**Defendant:**

Xu Ting, female, born on 10 June 1970, ethic Manchu, unemployed, domiciled at the same place as Zhao Peiyuan, identification card No. 11010519700610616X.

Attorney:

Chen Peng, attorney-at-law with Zhongdun Law Office of Beijing.

**Defendant:**

Xu Lei, male, born on 25 March 1972, ethnic Manchu, unemployed, domiciled at the same place as Zhao Peiyuan, identification card No. 110105197203256132.

Attorney:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

In connection with the case brought by Plaintiff Beijing Chaoyang Sub-Branch of Bank of China Limited (the "Plaintiff") against Defendants Zhao Peiyuan, Xu Ting and Xu Lei (the "Defendants") regarding a dispute over tortious liability, this Court duly forms a collegial panel and conducts a public hearing after accepting the case. Zheng Yuejie, the attorney acting for the Plaintiff, and Chen Peng, the attorney acting for the Defendants, appear before us. This case has now been concluded.

The Plaintiff argues that: Defendant Zhao Peiyuan is the mother of Defendants Xu Ting and Xu Lei, and Defendant Xu Ting is the elder sister of Defendant Xu Lei.  From 2009 to 2011, Xu Ting opened a number of accounts with our bank.

In June 2010, Gucci and six other companies ("Gucci *et al*") commenced an action before the United States District Court for the Southern District of New York ("SDNY") against the Defendants on the grounds that the Defendants and their whole family were allegedly involved in producing and selling products bearing fake Gucci trademarks and other trademarks in the United States and remitting proceeds therefrom into China, requesting that the Defendants stop their tortious conduct and compensate for losses.

However, the Defendants refused to appear and defend their case after they were sued by Gucci *et al*.  They neither submitted any document to SDNY, nor responded to the request for evidence from Gucci *et al* as ordered by SDNY.  As a result, SDNY issued a preliminary injunction and an order, requiring BOC to freeze the funds in the accounts opened by the Defendants in China, and to provide all the account information of the Defendants and other documentation in accordance with the subpoena issued by Gucci.

In order to avoid to be ordered by the US court to disclose the account information of the Defendants and freeze the funds in the Defendants' accounts, BOC had to engage US attorneys and expert witnesses to oppose to the preliminary injunction and order issued by SDNY, and submitted a motion to modify it.  In the end, however, SDNY held on 15 November 2012 that BOC failed to comply with its preliminary injunction and order, found BOC to be in civil contempt of the court, and imposed a mandatory fine on BOC.  Throughout this process, BOC paid a large sum of attorneys' fees, expert fees and other expenses for handling the case.  The above costs amount to date to the equivalent of RMB 5,534,595.  Although BOC asked the Defendants to appear before the court, to authorise BOC to provide their account information, or otherwise to resolve the relevant disputes on several occasions, the Defendants always refused to do so. Ultimately, the above costs were borne by BOC because Defendants' accounts had been opened with our bank.

In our opinion, the Defendants were allegedly involved in illegal acts of manufacturing and selling products bearing counterfeit trademarks in the US, and remitted the proceeds therefrom into the accounts opened with us in China, leading to BOC's involvement in US proceedings.  Moreover, the Defendants refused to respond to the case against them.  This eventually resulted in the preliminary injunction and order issued by the US court against BOC, to which BOC had to respond and paid a large sum of costs for that purpose, and will very likely incur further losses.  The Defendants should be held liable to compensate us for the huge losses incurred by their acts.  Moreover, the acts of the Defendants are in essence to escape from legal liability by taking advantage of the conflicts between the PRC and USA jurisdictions, and should not be protected by law.  Therefore, our bank requests in accordance with Article 6 of the Tort Liability Law and other relevant regulations that Defendants Zhao Peiyuan, Xu Ting, and Xu Lei be ordered to compensate for our losses of RMB 5,534,595 in total, and be jointly liable for compensating for our losses.

The Defendants argue that:

Firstly, the Defendants committed no tortious acts against the Plaintiff.  Our opening of accounts with the Plaintiff was civil legal behavior conducted in accordance with the *Commercial Bank Law of the People's Republic of China*, and materials were submitted in full accordance with the bank's requirements during the course of opening accounts, without any concealment or omission.  Therefore, the conduct of opening accounts is legal and valid, and cannot constitute a tort against the Plaintiff.  As to our failure to appear before and submit documents to the US court as mentioned by the Plaintiff, we have the freedom to dispose of our civil action rights under US law.  We would assume any legal consequences resulting from our disposal of such rights.  Our own acts had nothing to do with BOC NY Branch or the Plaintiff, and BOC had no right to require us to change our legal exercise of our own rights in legal proceedings.  In fact, the sanctions imposed by the US court against BOC are a result of the US court's "jurisdictional hegemony," which should not be assumed by us at all.  This is a political risk faced by BOC's overseas investments, and should be resolved by US domestic law and even through diplomatic channels, as opposed to shifting the relevant liabilities to consumers, particular to the consumers in the country, in an irresponsible manner.

Secondly, the Plaintiff suffered no actual losses. The Plaintiff is BOC Chaoyang Sub-Branch, but sought to recover damages for BOC NY Branch. This is contrary to legal principles. The BOC Chaoyang Sub-Branch and BOC NY Branch are two different entities: one is a domestic one and the other is a foreign one. The practice that the domestic entity seeks direct recovery of losses suffered by the foreign entity complies with neither domestic law nor international law. Moreover, BOC NY Branch has to date not actually paid any fine to the US court, and its case is still under trial. Therefore, the Plaintiff incurs no actual loss.

Thirdly, the dispute between the Plaintiff and us has been finally decided by the Beijing High People's Court through the (2014) Gao Min Zhong Zi No. 585 Civil Judgment, whereby the Plaintiff was ordered to unconditionally release the freezing of our accounts. However, the Plaintiff disregarded the effective judgment, intentionally concocted a course of action regarding a dispute over tortious liability, abused its right to claim, and commenced the present proceedings. This behavior has violated the basic civil procedural principle of "*ne bis in idem*" under the PRC civil procedural law, and is a waste of the increasingly constrained judicial resources in China. In relation to such behaviour, we propose a sanction by the court.

In conclusion, we did not commit any tortious act, the Plaintiff suffered no actual loss, and our proper behavior had no direct causal relationship with the expenses of the Plaintiff's overseas branch. It is legally groundless for our tort against the Plaintiff. The Plaintiff should instead be sanctioned for its disregard of judicial authority, abuse of its right to claim, and waste of judicial resources. Therefore, we request that the Plaintiff's claims be dismissed.

It is found upon a hearing that:

Xu Ting as elder sister and Xu Lei as younger brother are both children of Zhao Peiyuan.

From 2009 to 2011, Zhao Peiyuan, Xu Ting, and Xu Lei opened multiple accounts with the Beijing Lido Hotel Sub-Branch of Bank of China Limited ( "BOC Lido Sub-Branch").

Zhao Peiyuan, Xu Ting, and Xu Lei were sued by Gucci *et al* for alleged infringement in the US. The competent US court issued a preliminary injunction and a writ of discovery during the course of the proceedings. BOC NY Branch was also involved in the proceedings before the US court.

During the proceedings, BOC Lido Sub-Branch froze the bank accounts of Zhao Peiyuan, Xu Ting, and Xu Lei. Zhao Peiyuan, Xu Ting, and Xu Lei brought an action before the competent PRC court, requesting that the BOC Lido Sub-Branch promptly release the freezing of all the deposits held by Zhao Peiyuan, Xu Ting, and Xu Lei with the BOC Lido Sub-Branch.

In relation to the above case, it was found in the (2013) Er Zhong Min Chu Zi No. 01275 Civil Judgment of Beijing No. 2 Intermediate People's Court:

From 1 August 2009 to 26 April 2011, Zhao Peiyuan concluded transactions with BOC Lido Sub-Branch evidenced by the following documents: 3 gift deposit certificates (representing a total amount of RMB 257,269.70), 8 fixed term deposits (representing a total amount of RMB 510,000), two demand deposit passbooks (representing a total amount of RMB 120,683.11), 1 treasury transaction (in an amount of RMB 440,000), and 4 wealth management products (in a total amount of RMB 373,000). The total amount for the above is RMB 1,700,961.64. From 11 June 2009 to 8 April 2011, Xu Ting concluded transactions with BOC Lido Sub-Branch evidenced by the following documents: 5 gift deposit certificates (representing a total amount of RMB 416,845.58), 1 VIP card (representing a total amount of RMB 2,013), two demand deposit certificates (representing a total amount of RMB3,358.81), 2 wealth management products (in a total amount of RMB 679,000). The total amount for the above is RMB 1,101,217.39. From 17 August 2010 to 8 April 2011, Xu Lei concluded transactions with BOC Lido Sub-Branch evidenced by the following documents: 2 gift deposit certificates representing a total amount of RMB 154,553.53.

The above-mentioned fixed term deposits, treasury bonds and wealth management products have all matured in accordance with their initial terms or durations of transaction. The parties have no dispute over the information relating to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei with BOC Lido-Sub-

Branchbranch, including the account numbers, account names, transaction numbers, opening dates, relevant business, transaction dates, primary opening documents, principal amounts, initial maturity dates, carry forward status, carry forward maturity dates and other account information.

Zhao Peiyuan, Xu Ting and Xu Lei claimed that they have been unable to withdraw money from any of their accounts maintained with BOC Lido Sub-Branch branch since 10 June 2011. The bank staff merely informed them verbally or via telephone that Xu Ting has been involved in an intellectual property right dispute in the United States with Gucci and therefore all amounts have been frozen and incapable of being withdrawn, but refused providing any evidence in writing. BOC Lido Sub-Branch, while acknowledging the time of suspending transactions relating to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei, asserted that, pursuant to the provisions on account cancellation or business termination of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* signed and accepted by Zhao Peiyuan, Xu Ting and Xu Lei at the time of entering into various business transactions with the bank, if BOC is involved in any litigation or suffers any loss as a result of any dispute between Zhao Peiyuan, Xu Ting or Xu Lei (as the case may be) and any third party, or if Zhao Peiyuan, Xu Ting or Xu Lei is suspected of engaging in money laundering, fraud, financing of terrorism or other illegal activities, or if any account of Zhao Peiyuan, Xu Ting or Xu Lei is suspected of being used for money laundering, fraud or other illegal activities, the bank shall have the right to suspend business dealings with Zhao Peiyuan, Xu Ting and Xu Lei and suspend transactions of the relevant accounts. In light of the fact that it is currently involved in a lawsuit and dispute in the US Court, BOC Lido Sub-Branch may conclude that Zhao Peiyuan, Xu Ting and Xu Lei are involved in the scenarios above and that it is entitled to suspend its banking dealings with them and suspend transaction services relating to the relevant accounts, and such suspension does not constitute an account freeze.

Upon court hearing, it has been found that all business transactions that Zhao Peiyuan, Xu Ting and Xu Lei have had with BOC Lido Sub-Branch, namely opening accounts, making demand deposits and fixed term deposits, treasury bonds sales and purchases, purchasing wealth management products, bank card related transactions, and electronic-banking transactions, etc., occurred between June 2009 and May 2011. When making fixed term deposits before October 2009, each of them completed an *Account Opening Application* at the request of BOC's staff. With respect of all subsequent fixed term or demand deposits and application for wealth management VIP card, each of them completed an *Application Form for Account Opening and Comprehensive Services for Individual Accounts*, on the back of which is the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*. For their purchase of treasury bond products, each of them completed an *Application for Account Opening / Comprehensive Services for Individual Accounts*, on the back of which are notes to clients, BOC personal settlement account management agreement, and articles of association for BOC Great Wall debit card. For their purchase of wealth management products, each of them completed an *Information Confirmation Sheet for Personal Wealth Management Product Transactions*.

Below the client information blocks of the *Application Form for Account Opening and Comprehensive Services for Individual Accounts*, it contains the following language: I have read and understood the relevant provisions of the "Agreement for Applying for Account Opening and Comprehensive Services for Individual Accounts of Bank of China Limited", and undertake to carry on business transactions in compliance with the relevant provisions of the agreement, notes to the clients, the service agreement and the bank's current business articles of association, and business transaction rules and requirements. Zhao Peiyuan, Xu Ting and Xu Lei have signed their names in places marked with "applicant's signature".

According to paragraph (3) of the clause in relation to account closing or business termination in the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*, which was formulated by Bank of China Limited and effective from June 2009 to May 2011, "*[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on any reason or factor (including risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities. Termination of this*

*Agreement shall not be deemed as cancellation of any outstanding transaction instructions given prior to such termination, or discharge or release of any legal consequence of any transaction incurred prior to such termination.*"

From 1 July 2011, Bank of China Limited started to use a new version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts,* in which paragraph (3) of the clause in relation to account closing or business termination reads as follows: "*[i]f the Applicant is suspected of engaging in money laundering, fraud, financing of terrorism or other illegal activities, or violates any provision of applicable laws, regulations, regulatory rules, government policies, this Agreement, or other by-laws, business rules or regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or the Bank is involved in any litigation or incurs any loss due to any dispute between the Applicant and any third party, or the Applicant's account is suspected of being used for money laundering, fraud or other illegal purposes, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities, and the Applicant shall be liable for any and all losses incurred by the Bank due to such activities. If any fund of the Bank is deducted by any court or other judicial or governmental authority that intends to deduct the Applicant's fund, the Bank has the right to deduct the Applicant's fund to cover the loss incurred by the Bank due to the abovementioned deduction. Termination of this Agreement shall not be deemed as cancellation of any outstanding transaction instructions given prior to such termination, or discharge or release of any legal consequence of any transaction incurred prior to such termination.*" Zhao Peiyuan, Xu Ting and Xu Lei claim that the clause above is a standard term. When they went through relevant formalities in relation to account opening and making deposits with BOC Lido Sub-Branch, they signed all the forms as instructed and required by the counter staff of the bank, and the bank failed to give any explanation on any clause of the agreements. They had no way to find out when a new version was adopted or what amendments were made to the *Agreement of Account Opening and Comprehensive Services for Individual Accounts.* Therefore, they claim that the clause above is illegal and invalid. BOC Lido Sub-Branch asserts that all applicable business by-laws, rules and regulations issued and updated from time to time by Bank of China Limited shall be part of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts.* Therefore, the provisions of clauses adopted and incorporated into the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* from time to time shall be automatically applicable to the legal relationship concerned in this proceeding. The bank has published announcements in relation to the adoption of the new version of the agreement at its business locations. However, BOC Lido Sub-Branch fails to present evidence to prove how it notified Zhao Peiyuan, Xu Ting and Xu Lei of the adoption of the new version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* from 1 July 2011.

It is also found that in June 2010, seven companies representing five brands (including Gucci) filed a complaint against Xu Ting and her husband Xu Lijun *et al* with a court in the US, and included Zhao Peiyuan and Xu Lei as additional defendants in the US proceeding on 10 March 2011, alleging that those people had been involved in the manufacture and sale of counterfeits bearing the trademarks of Gucci and other plaintiffs in the US proceeding, and remitted the proceeds from the manufacture and sale of such counterfeits into China. Except Xu Lijun's attorney, who was present at the trial of the US proceeding, no defendant in the US proceeding filed any response or defence, or made any submission to Gucci *et al* or the US Court as ordered by the US Court. On 12 July 2010, the US Court issued a preliminary injunction and a writ of discovery, which prohibited Zhao Peiyuan, Xu Ting and Xu Lei *et al* from continuing the alleged infringements, and ordered the persons on whom the injunction was served (including the agents, representatives, successors and bankers of the three individuals mentioned above) to refrain from transferring any assets including the funds held in the accounts opened by Zhao Peiyuan, Xu Ting and Xu Lei *et al* with BOC in the PRC. On 13 and 16 July 2010, Gucci *et al* served upon the BOC NY Branch the said injunction, the writ of discovery and the subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action, under which BOC was commanded to take necessary steps to comply with the provisions of the preliminary injunction, and release information in relation to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei. From 21 July 2010, BOC engaged its US counsel, and as an interested third party, filed with the US Court a motion to quash the motion of Gucci for enforcing the writ of discovery, and a motion for reconsideration. On 23 August 2011, the US Court issued an order to compel BOC to comply with the

subpoena and the preliminary injunction served by Gucci *et al*, and denied the motion of BOC for reconsideration, requesting BOC to release the information required under the subpoena within 14 days after the order was issued. On 22 September 2011, BOC appealed this order to the United States Court of Appeals for the Second Circuit. On 30 November 2011, BOC also filed a motion with the US Court, requesting that the US Court grant the motion of BOC for reconsideration and for exemption from the order dated 23 August 2011, and order Gucci *et al* to seek further information from BOC via the Hague Convention procedures, and rule that the accounts inside China are not subject to the preliminary injunction. On 18 May 2012, the US Court denied the motion of BOC for a new trial. On 15 November 2012, the US Court held BOC in malicious and intentional contempt of the court order dated 23 August 2011 and the discovery obligation under the injunction for 14 months, and imposed a fine of USD 75,000 on BOC; if BOC failed to comply with the order dated 23 August 2011 within 7 days, a fine of USD 10,000 per day would be imposed on it from the expiry of such 7-day period, until BOC complied with the order. The US Court also granted the motion of Gucci *et al* to require BOC to pay the reasonable attorney's fees and court fees incurred by Gucci *et al* for filing the motion for contempt. BOC then appealed the contempt citation to the United States Court of Appeals for the Second Circuit, and filed a motion for stay of the penalty until the appeal proceeding is concluded. The motion was granted and BOC did not make any payment. In this case, BOC Lido Sub-Branch has not made any claim against Zhao Peiyuan, Xu Ting or Xu Lei for such loss allegedly incurred by it.

Beijing No. 2 Intermediate People's Court holds the opinion as follows:

1.      Whether the proceedings shall be consolidated.

According to the *Commercial Bank Law of the People's Republic of China*, a commercial bank is permitted to engage in accepting deposits from the public, trading government bonds and financial bonds, conducting bank card business, and other business approved by the banking regulatory authority under the State Council. The court of first instance finds that, in addition to the saving deposit contracts between Zhao Peiyuan, Xu Ting or Xu Lei and BOC Lido Sub-Branch, the parties also entered into other contracts including treasury bond trading contracts and wealth management contracts. The claims of Zhao Peiyuan, Xu Ting and Xu Lei are consistent and related to the same subject matter, i.e. requesting the court to order BOC Lido Sub-Branch to remove the block on all the accounts opened by them with the bank. In order to improve litigation efficiency, simplify the legal proceedings and reduce the burden of the parties, the proceedings shall be consolidated.

2.      Whether BOC Lido Sub-Branch violated any contractual or statutory provision by stopping financial service and suspending usage of the accounts of Zhao Peiyuan, Xu Ting and Xu Lei.

The undertakings and agreements in relation to the business conducted by Zhao Peiyuan, Xu Ting and Xu Lei through their accounts opened with BOC Lido Sub-Branch (including current deposits, term deposits, treasury bond trading, wealth management products, bank cards, electronic banking business) were signed between June 2009 and May 2011. BOC Lido Sub-Branch notified Zhao Peiyuan, Xu Ting and Xu Lei of its decision to suspend services to them in June 2011. Therefore, the rights and obligations of the parties to this action shall be governed by the terms of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* which was formulated by BOC and effective prior to 1 July 2011.

The clause in relation to account closing or business termination in such applicable version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* reads as follows: *[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on reason or factor (including risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities.*

According to the facts found during the trial, Zhao Peiyuan, Xu Ting and Xu Lei completed and signed the application forms as requested by the bank when conducting banking business with BOC Lido Sub-Branch.

BOC Lido Sub-Branch failed to produce evidence to prove that Zhao Peiyuan, Xu Ting and Xu Lei had actually made any operation with malicious intent, or defamed or damaged the reputation of the bank, or maliciously attacked the electronic banking system of the bank. The US proceeding in which Zhao Peiyuan, Xu Ting and Xu Lei are involved is still on-going and pending. There is no judgment that has taken effect in China and finds Zhao Peiyuan, Xu Ting and Xu Lei guilty of being involved in money laundering, financing of terrorism or other illegal or criminal activities. BOC Lido Sub-Branch also failed to produce evidence sufficient to prove that it has justifiable reason or factor to cease to provide services to the Plaintiffs (sic). BOC has not paid any fine imposed by the US Court or any amount to Gucci.

According to the *Commercial Bank Law of the People's Republic of China*, the lawful business operation of a commercial bank is free from interference of any entity or individual; a commercial bank shall protect the lawful interest of depositors from being injured by any entity or individual; personal savings deposit business with commercial banks shall be based on the principles of voluntary deposit, free withdrawal, deposit bearing interest, and the confidentiality for the depositor. Therefore, BOC Lido Sub-Branch shall fully perform its obligations in accordance with the terms as agreed. There is no contractual or legal basis for BOC Lido Sub-Branch to unilaterally stop financial service and suspend usage of the accounts of by Zhao Peiyuan, Xu Ting and Xu Lei.

Therefore, it is decided that Beijing Lido Hotel Sub-Branch of Bank of China Limited be ordered to resume the provision of services for and dealing with all the bank accounts opened by Zhao Peiyuan, Xu Ting and Xu Lei, within seven days after this judgment takes effect.

The BOC Lido Sub-Branch was dissatisfied with the above judgment and appealed the case to the Beijing High People's Court, which is of the view as follows upon a hearing:

According to the *Commercial Bank Law of the People's Republic of China*, the lawful business operation of a commercial bank is free from interference of any entity or individual; a commercial bank shall protect the lawful interest of depositors from being damaged by any entity or individual; personal savings deposit business with commercial banks shall be based on the principles of voluntary deposit, free withdraw, deposit bearing interest, and the confidentiality for the depositor. During the period from June 2009 to May 2011, Zhao Peiyuan, Xu Ting and Xu Lei each opened accounts with BOC Lido Sub-branch for transactions including demand deposits and fixed term deposits, treasury bonds sales and purchases, wealth management products, bank cards, and electronic-banking transactions, etc., and at the time same entered into undertakings and relevant agreements, including the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* which contains the following provisions in respect of account closing or business termination: *[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on any reason or factor (including any risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and the provision of services hereunder, and reserves the right to hold the Applicant liable for such activities.* BOC Lido Sub-Branch failed to produce evidence to prove that Zhao Peiyuan, Xu Ting and Xu Lei violated any contractually agreed terms, thus there is no contractual or legal basis for BOC Lido Sub-Branch to unilaterally stop financial services for and suspend usage of the accounts of Zhao Peijuan, Xu Ting and Xu Lei. In addition, the view of BOC Lido Sub-Branch that the terms and conditions of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* have taken effect since 1 July 2011 should be used as the contractual basis to govern the rights and obligations of the parties to the underlying case is not tenable and is not accepted by the court. The grounds for appeal provided by BOC Lido Sub-Branch are not tenable and are not upheld by the court. The first instance judgment has ascertained the facts clearly and applied the laws correctly, and shall be upheld by the court. It is decided on 20 June 2014 in the (2014) Gao Min Zhong Zi No. 585 Civil Judgment that the appeal be dismissed and the first instance judgment be upheld.

The Plaintiff argues that BOC Beijing Branch paid attorneys' fees and other expenses in a total amount of RMB 5,534,595 for the Plaintiff due to BOC's involvement in the above proceedings before the US court

and appointment of the US counsel for advice on the above proceedings; the relevant costs should be borne by the Plaintiff because Zhao Peiyuan, Xu Ting and Xu Lei were the customers of the Plaintiff.    The Plaintiff submits the Notice of Payment of Legal Fees and Other Expenses Regarding the GUCCI Case provided by BOC Beijing Branch, and requests that Zhao Peiyuan, Xu Ting and Xu Lei compensate for the above costs.

Upon examination, the Plaintiff says that it was faultless for the Defendants to open the accounts, but they erred as follows: they allegedly produced and sold counterfeit products in the US after the opening of the accounts, and allegedly remitted the illicit income derived therefrom into the PRC through the accounts opened with BOC; they refused to respond to the proceedings initiated by the Gucci *et al*, refused to respond to Gucci *et al* as required by the US court, and still refused to appear and respond before the court, and refused to respond to the request for evidence of Gucci even when the US court required BOC to disclose relevant information, and the Defendants knew that BOC may be fined by the US court due to refusing to disclose information; the Plaintiff is of the opinion that the Defendants erred in refusing to participate in the proceedings after being requested by the Plaintiff to do so.  The Plaintiff also argues that the above acts of the Defendant and those of the US court and Gucci constitute one single act, the result of which is that the Plaintiff had to be involved in the proceedings, and suffered losses.  The acts of the Defendants are the ultimate cause, otherwise Gucci *et al* would not have commenced the proceedings and the US court would not have issued orders.  Therefore, we request that the Defendants be liable to compensate for our losses.

Upon examination, the Defendants state that the Plaintiff has not consulted with them regarding disclosure of the relevant accounts before submitting a counter-motion to the US court.  Both the Plaintiff and the Defendants say that none of them has received a judgment from the US court.

During the hearing of this case, the Plaintiff applied for property preservation to us.  We ruled in the (2014) Chao Min Chu Zi No. 25377 Civil Ruling dated 24 June 2014 that the seizure and freezing of certain property in the name of defendants Zhao Peiyuan, Xu Ting and Xu Lei, in the amount of five million, five hundred and thirty four thousand, five hundred and ninety five yuan, be granted.

The above facts are substantiated by the (2014) Gao Min Zhong Zi No. 585 Civil Judgment submitted by the parties to this case, the submissions of the parties, and the hearing transcript.

This Court is of the opinion as follows:

A citizen or legal person shall assume civil liability for infringement upon the property of the State or the collective, or the property or body of other persons due to his, her or its own fault.  In accordance with law, four elements are required to constitute a tort:  (1) illegal act or acts; (2) fault on the part of the actor; (3) damage caused to the victim; and (4) causal relationship between the illegal act or acts and the damage.  The Plaintiff holds that the Defendants are at fault, and requires the Defendants to compensate for its losses.  However, the US proceedings in which the Defendants are involved are still on-going and pending.  There is no effective judgment in China that finds Zhao Peiyuan, Xu Ting or Xu Lei guilty of being involved in money laundering, financing of terrorism or other illegal or criminal activities.  And the Defendants' refusal to respond to the US proceedings is not an act directly against BOC.

The US court issued the preliminary injunction and the writ of discovery.  BOC engaged US counsel to submit an opposition to the motion of Gucci *et al* to enforce the writ of discovery and a motion for reconsideration in the capacity of an interested third party.  Then the US court ordered BOC to comply with the subpoena served by Gucci *et al* and the preliminary injunction, denied BOC's motion for reconsideration, required BOC to provide the information required under the subpoena within 14 days of the order, and imposed a fine on BOC, among other things.  Although the Defendants were involved in the proceedings, and external factors such as the differences between the PRC and US judicial systems, and judicial sovereignty also have a bearing here, the above acts of the US court are judicial acts at its discretion, rather than the acts of the Defendants, and may not be deemed tortious acts of the Defendants.  Moreover, the legal fees incurred by BOC for appointment of counsel to safeguard its legitimate rights are not losses directly caused by the acts of the Defendants.  It is legally groundless for the Plaintiff to claim that the Defendants compensate for the above losses, and this claim is not upheld by this Court.

In conclusion, it is decided as follows in accordance with Article 64.1 of the *Civil Procedural Law of the People's Republic of China*:

The claims of Plaintiff Beijing Chaoyang Sub-Branch of Bank of China Limited be dismissed;

The RMB 5000 fee of application for property preservation be borne by Plaintiff Beijing Chaoyang Sub-Branch of Bank of China Limited (which has been paid); and

The court costs of RMB 50,542 be borne by Plaintiff Beijing Chaoyang Sub-Branch of Bank of China Limited (which have been paid).

A party who is not satisfied with this judgment may submit a petition for appeal to this Court and appeal this case to Beijing No. 3 Intermediate People's Court by submitting copy/copies of the petition consistent with the number of persons of the opposing party, within 15 days of service of this judgment.

Chief Judge: Lei Enqiang

Juror:  Li Lihua

Juror:  Huang Min

Date: 30 December 2014

Clerk: Yu Ting

Certified true copy of the original

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States that I am a Partner employed by Allen & Overy LLP in Beijing, China, that I am proficient in the English and Chinese languages, and that this is an accurate translation of the original Chinese language document.

Executed on ⅔ January, 2015

Signed: _____

Print name:  (Jane) Ying Jiang