**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert Weigel
Direct: +1 212.351.3845
Fax: +1 212.351.5236
RWeigel@gibsondunn.com

March 2, 2015

VIA CM/ECF AND ELECTRONIC MAIL

Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007
E-mail: SullivanNYSDChambers@nysd.uscourts.gov

Re:  Gucci America, Inc., et al. v. Weixing Li, et al., No. 2010 Civ. 4974 (RJS)

Dear Judge Sullivan:

We represent Plaintiffs in the above-referenced action.  I write in response to the request of Bank of China ("BOC") to file a sur-reply brief (ECF 149).  BOC did not seek our consent to the filing of a sur-reply brief.  Plaintiffs do not believe that further briefing is needed, but our main interest is in moving the case forward and in not bothering the Court with unnecessary disputes.  The arguments BOC seeks to advance have no impact on the issues already fully briefed to the Court, but if the Court is willing to entertain additional briefing Plaintiffs have no objection.  BOC is incorrect, however, that Plaintiffs made "new" arguments for the first time in their reply brief (ECF 146).

*First*, Plaintiffs have consistently argued that it is appropriate for this Court to exercise personal jurisdiction over BOC because "[a] nonparty's contacts are sufficient to support the exercise of specific jurisdiction where they relate to matters sought to be investigated," and it is beyond reasonable dispute that BOC's use of New York-based accounts to effect the conversion of the profits of Defendants' unlawful sales relate to the information sought by Plaintiffs.  *See* Opening Br., ECF 136, at 13.  Far from what BOC now characterizes as a "hodgepodge of contacts," BOC has deliberately and systematically chosen to take advantage of its physical and virtual presence in New York to support a business it claims to dominate: converting its customers' U.S. dollars to Chinese RMB.  These contacts include the maintenance of a correspondent account in New York that BOC's *head office*—not its New York branch—used to wire the proceeds of counterfeiting at issue in this litigation to the Defendants' Chinese accounts.  *Id.* at 4.  And there was nothing novel about Plaintiffs' citation to the Second Circuit's decision in *Chew v. Dietrich*, which simply noted the unremarkable proposition that "the relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend traditional notions of fair play and substantial justice." 143 F.3d 24, 29 (2d Cir. 1998) (quotations omitted).

GIBSON DUNN

Honorable Richard J. Sullivan
March 2, 2015
Page 2

*Second*, BOC is also incorrect that the Third Declaration of Professor Clarke improperly introduces new arguments merely because it responds to BOC's arguments concerning the "plain language" of BOC's own customer agreement which, by BOC's own admission, provides the legal framework for its relationship with the Defendants in this case. Professor Clarke simply offered context to the fact that BOC's Chinese law opinion had failed to cite any authority to support its claim that the term "suspected of (*shexian*) [involvement in illegal activity]" requires issuance of criminal process against the account holder. *See* ECF No. 148 ¶ 11. As Professor Clarke pointed out, BOC itself took the position in the Chinese litigation that "in our opinion, the Defendants *were suspected of* illegal acts . . . ." *Id.* ¶ 12. Thus, BOC's proposed sur-reply, again, merely seeks to explain away prior inconsistencies in its own position with respect to the plain language of its customer agreement.

*Finally*, BOC is, again, incorrect that Plaintiffs argued only for the first time in their reply brief that as U.S. plaintiffs harmed by counterfeiters doing business in the United States, they are entitled to enforce their rights under the Lanham Act in a U.S. federal court, including through the restraint of the Defendants' offshore assets. The Second Circuit unequivocally upheld this right. *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 125-26, 129-31, 141-42 (2d Cir. 2014). Whatever arguments BOC wants to make about the Plaintiffs' ability to pursue similar remedies in China are simply irrelevant: U.S. law does not require U.S. companies to seek remedies in China for sales of unlawful goods to U.S. consumers. And in any event, it is beyond serious dispute that the United States provides greater protection for these intellectual property rights than does China. Professor Clarke's declaration simply pointed out recent examples of governmental and private entities that have reached this conclusion. *See* ECF No. 148 ¶¶ 14-15. The Court, of course, is perfectly capable of comparing Professor Clarke's declaration to any number of resources that have pointed out the difficulties experienced by Western companies in enforcing IP rights in China.[1]

Respectfully submitted,

*/s/ Robert L. Weigel*

Robert L. Weigel, counsel to Plaintiffs

---

[1] *See, e.g.,* Export.gov, "Protecting Your Intellectual Property Rights (IPR) in China" (official website of the U.S. Department of Commerce's International Trade Administration, *available at* http://export.gov/China/doingbizinchina/riskmanagement/ipr/index.asp) ("China continues to be a haven for counterfeiters and pirates [where] the piracy rate remains one of the highest in the world (over 90 percent) and U.S. companies lose over one billion dollars in legitimate business each year to piracy. On average, 20 percent of all consumer products in the Chinese market are counterfeit."); Minning Yu, "Benefit of the Doubt: Obstacles to Discovery in Claims Against Chinese Counterfeiters," 81 FORDHAM L. REV. 2987 (2014) (*available at* http://fordhamlawreview.org/assets/pdfs/Vol_81/Yu_April.pdf).

GIBSON DUNN

Honorable Richard J. Sullivan
March 2, 2015
Page 3

cc: Andrew Rhys Davies, counsel to nonparty Bank of China