# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert Weigel
Direct: +1 212.351.3845
Fax: +1 212.351.5236
RWeigel@gibsondunn.com

July 24, 2015

VIA CM/ECF AND ELECTRONIC MAIL

Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007
E-mail: SullivanNYSDChambers@nysd.uscourts.gov

Re:    Gucci America, Inc., et al. v. Weixing Li, et al., No. 2010 Civ. 4974 (RJS)

Dear Judge Sullivan:

We represent Plaintiffs in the above-referenced action.  I write in response to the letter that
nonparty Bank of China ("BOC") submitted to the Court on July 8, 2015 (ECF 152).  The
letter attaches what BOC says are (1) a May 20, 2015 decision of the Third Intermediate
People's Court of Beijing Municipality dismissing an appeal in a tort suit filed by Beijing
Chaoyang Sub-branch of Bank of China Limited against Zhao Yeijuan, Xu Ting, and Xu Lei,
who are defendants in this case (ECF 152-1), and (2) a June 3, 2015 civil ruling of the
Chaoyang District People's Court of Beijing Municipality vacating an asset freeze BOC's
branch had secured against the defendants in connection with the tort suit (ECF 152-2).  The
attachments to BOC's letter purport to be copies of the original decisions of those courts, as
well as English translations performed by (Jane) Ying Jiang, a partner of Allen & Overy
LLP, counsel for BOC.[1]

BOC's letter to the Court claims that "[l]ike the trial court, the Chinese appellate court found
that BOC's [tort] claim against the Accountholders has no legal basis under Chinese law
because, *inter alia*, the harm suffered by BOC is the result, not of the unlawful acts of the
Accountholders, but rather of the orders issued by this Court."  ECF 152, at 2.  BOC's
description of the Chinese court's decision is misleading, or at least incomplete, and nothing
in the decision casts doubt on the propriety of the Court's orders in this case.  This Court

---

[1]  Plaintiffs cannot confirm the authenticity of the documents BOC has submitted because,
as BOC's expert opined earlier in this case, "in China there is no systematic reporting of
judicial or prosecutorial actions because Chinese law does not require publication or
public disclosure of judicial or prosecutorial actions."  ECF 37, at ¶ 30.

**GIBSON DUNN**

Honorable Richard J. Sullivan
July 24, 2015
Page 2

already refused BOC's attempt to file new briefing to oppose the pending motion to compel because "any additional briefing is unnecessary."  ECF 151, at 1.  That is still true.

*First*, the Intermediate People's Court's decision is not particularly relevant to the motion to compel currently before this Court (ECF 135).  BOC's tort suit against the counterfeiters has no bearing on whether jurisdiction over BOC exists and whether exercising that jurisdiction is appropriate as a matter of comity.  If anything, the decision *confirms* BOC's contractual authority to freeze the counterfeiters' assets in certain circumstances (a fact BOC previously did not disclose to Plaintiffs or to the Court)—namely, when customers are "suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities . . . as deemed justifiable by the Bank."  ECF 152-1, at 25; *see also* ECF 148-1, at 7.

Indeed, the Chinese decision strongly indicates that if this Court had issued its judgment holding the counterfeiters liable, the Chinese court would have recognized BOC's right to freeze the account.  Of course, if BOC had not opposed the discovery in this case, the Court's judgment could have issued long ago.  In any event, the Chinese court merely affirmed the judgment of the lower court and concluded that "*[f]rom evidence currently available*, there is no valid judgment" supporting BOC's assertion that the counterfeiters had violated the terms of their contract with BOC by engaging in "illegal or criminal activities."  ECF 152-1, at 27 (emphasis added).  "*Under these circumstances*," the Chinese court explained, "although BOC may have incurred case handling expenses as a result of their engagement of lawyers and expert witnesses for the US lawsuit[,] . . . these expenses . . . are necessary in response to the judicial measures taken by the US court, and *based on the existing evidence it is difficult to determine that the expenses are losses incurred by it as a result of the acts of infringements by Zhao Peiyuan et al.*"  *Id.* (emphasis added).

Had BOC provided the Chinese courts with evidence of the counterfeiters' wrongdoing, such as the evidence already in the public record in this case, the result likely would have been different.  The evidence available to BOC is voluminous and includes a previous judgment against one of the defendants in an earlier counterfeiting case.  *See, e.g.,* ECF 7 to 9, 28, 31, 53, 58, 71.  BOC's failure to provide the Chinese court with this and similar evidence cannot mean that it is inappropriate for this Court to exercise jurisdiction over BOC or compel compliance with the Court's orders.

*Second*, nothing in the Intermediate People's Court's decision criticizes, conflicts with, or otherwise casts doubt on this Court's orders.  In fact, the majority of the decision merely rehearses the procedural history of the Chinese tort suit.  The Court received the same information in a nearly identical English translation of the lower court's decision in the tort suit, issued December 30, 2014.  *Compare* ECF 148-1, at 2-10 (English translation of December 30, 2014 decision), *with* ECF 152-1, at 19-27.

**GIBSON DUNN**

Honorable Richard J. Sullivan
July 24, 2015
Page 3


As a result, even taking the unofficial copies attached to BOC's July 8 letter at face value, they are entirely "cumulative" of evidence that BOC has previously submitted to this Court, and do not provide a basis for the Court to reevaluate its previous balancing of the Chinese interests in its banking secrecy laws against the United States of America's interest in enforcing its intellectual property laws. *See* ECF 98, at 7-9; *Gucci Am. Inc. v. Bank of China*, 768 F.3d 122, 141 (2d Cir. 2014) ("We discern no abuse of discretion in this [Court's previous comity analysis with respect to Plaintiffs' previous motion to compel] and conclude that BOC's arguments to the contrary are without merit.").

Accordingly, and for the reasons set forth in Plaintiffs' pending motion for clarification and to compel the production of additional documents (ECF 135 to 138, 146 to 148), Plaintiffs respectfully request that the Court confirm that it has specific personal jurisdiction over BOC and that BOC must produce the additional materials requested concerning the counterfeiter defendants' accounts, which this Court previously and appropriately ordered to be frozen. *See Gucci Am. Inc.*, 768 F.3d at 133 (holding that "the district court had the equitable authority to issue the Asset Freeze Injunction and that the BOC's argument to the contrary is without merit").

Respectfully submitted,


 *s/ Robert L. Weigel*

Robert L. Weigel, counsel to Plaintiffs




cc: Andrew Rhys Davies, counsel to nonparty Bank of China