GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert Weigel
Direct: +1 212.351.3845
Fax: +1 212.351.5236
RWeigel@gibsondunn.com

August 28, 2015

VIA CM/ECF AND ELECTRONIC MAIL

Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007
E-mail: SullivanNYSDChambers@nysd.uscourts.gov

Re:   Gucci America, Inc., et al. v. Weixing Li, et al., No. 2010 Civ. 4974 (RJS)

Dear Judge Sullivan:

We represent Plaintiffs in the above-referenced action. I write in response to the letter that nonparty Bank of China ("BOC") submitted to the Court on August 10, 2015 (ECF 154), in which BOC notifies the Court of two recent decisions that it claims "further support BOC's opposition to Gucci's motion to compel." ECF 154, at 1; see In re LIBOR-Based Fin. Instruments Antitrust Litig., No. 11 MDL 2262 (NRB), 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015); SPV Osus Ltd. v. UBS AG, Nos. 15-cv-619 (JSR), 14-cv-9744 (JSR), 2015 WL 4394955 (S.D.N.Y. July 20, 2015). Neither of BOC's cases supports the proposition that this Court lacks personal jurisdiction to compel BOC to produce records of financial transactions that arise from BOC's authority to do business in this District and to accept U.S. dollar-denominated deposits through correspondent accounts that BOC maintains in this District. See ECF 136, at 12-21; ECF 146, at 2-8.

Indeed the law is to the contrary, as two recent decisions (both issued after *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)) make clear. Both Judge Hellerstein in *Vera v. Republic of Cuba*, No. 12 Civ. 1596(AKH), — F. Supp. 3d —, 2015 WL 1244050 (S.D.N.Y. Mar. 17, 2015), and the First Department in *B&M Kingstone, LLC v. Mega Int'l Commercial Bank Co.*, — N.Y.S.3d —, 2015 WL 4726634 (First Dept. Aug. 11, 2015), analyzed *Daimler* and the Second Circuit's decision in this case and had no trouble finding jurisdiction over two different foreign banks sufficient to order them to produce documents concerning accounts in their foreign branches. In *Vera*, Judge Hellerstein held that a foreign bank had "consented to the necessary regulatory oversight in return for permission to operate in New York, *and is therefore subject to jurisdiction requiring it to comply with*" subpoenas. 2015 WL 1244050, at *8 (emphasis added). Judge Hellerstein explained that in *Gucci America*, "[t]he Second Circuit recognized that the privileges and benefits associated with a foreign bank operating a

**GIBSON DUNN**

Honorable Richard J. Sullivan
August 28, 2015
Page 2

branch in New York give rise to commensurate, reciprocal obligations," and that foreign banks "are bound by the laws of both the state of New York and the United States, and are bound by the same judicial constraints as domestic corporations." *Id.* at *7. The "legal status" offered to banks operating in New York "*also confers obligations to participate as third-parties in lawsuits which involve assets under their management*." *Id.* (emphasis added). "There is no reason to give advantage to a foreign bank with a branch in New York, over a domestic bank," and "[w]hen corporations receive the benefits of operating in this forum, *it is critical that regulators and courts continue to have the power to compel information concerning their activities*." *Id.* at *8 (emphasis added). Addressing the Second Circuit's decision in *Gucci America* and the Supreme Court's recent decision in *Daimler*, Judge Hellerstein reasoned that "*Daimler* and *Gucci* should not be read so broadly as to eliminate the necessary regulatory oversight into foreign entities that operate within the boundaries of the United States." *Id.* Just this month, the First Department endorsed Judge Hellerstein's analysis, echoing his conclusion that foreign banks like BOC have "consented to the necessary regulatory oversight in return for permission to operate in New York" and therefore are "subject to jurisdiction requiring [them] to comply with" subpoenas. *B & M Kingstone*, 2015 WL 4726634, at *1, *4 (quoting *Vera*, 2015 WL 1244050, at *8). Both of these decisions involved post-judgment discovery of assets from third parties, and both found a sufficient nexus with New York to compel compliance with valid subpoenas.

Nothing in *In re Libor* or *SPV Osus* would suggest that this Court lacks the power to enforce a subpoena against BOC to determine what the counterfeiters did with the proceeds of their sales of counterfeit goods—money that was transferred using clearing accounts set up by BOC in New York.

*First*, both Judge Buchwald in *In re LIBOR* and Judge Rakoff in *SPV Osus* recognized that courts in the Second Circuit apply a context-sensitive, flexible approach to specific personal jurisdiction. Courts look to *both* the amount of the defendant's contacts with the relevant forum *and*, depending on the magnitude of those contacts, the closeness of the nexus between the contacts and the action initiated by the plaintiff. *See In re LIBOR*, 2015 WL 4634541, at *22-23 (citing *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)); *SPV Osus*, 2015 WL 4394955, at *5 (same). That is nothing new in this case; the Second Circuit cited *Chew* in support of the flexible nature of the specific jurisdiction inquiry in its June 2014 decision. *See Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 137-38 (2d Cir. 2014).

BOC incorrectly suggests that Judge Buchwald narrowed the Second Circuit's legal framework such that in-forum contacts that do not directly relate to a plaintiff's cause of action are irrelevant. ECF 154, at 1-2. She did not. Rather, Judge Buchwald correctly stated that depending on the magnitude of a defendant's forum contacts, "the Second Circuit applies a sliding scale" ranging at least from the lenient "but for" test some courts use to the

Honorable Richard J. Sullivan
August 28, 2015
Page 3

more rigorous "proximate cause" test others use. *In re LIBOR*, 2015 WL 4634541, at *22-23. Next, because a claim must "arise out of or relate to the defendant's contacts with the forum," Judge Buchwald reasoned, a court must apply the appropriate test to examine the connection between "the defendant's forum-directed activities and the claim." *Id.* at *22, *23. Sensibly, she noted that "a defendant's non-suit-related conduct" may not "substitute, for personal jurisdiction purposes, for suit-related conduct" at this latter stage of the analysis, *id.* at *23, but held that specific personal jurisdiction was appropriate over certain defendants in that case because they were not engaged in "one-off events[,] . . . but rather facilitated a course of dealing with plaintiffs in their home jurisdictions over time." *Id.* at *26. Judge Rakoff's opinion in *SPV Osus* applied *Chew* the same way and concluded that in that case "plaintiffs' claims fail even to meet the minimal requirement of 'but for' causation. Specifically, plaintiffs fail to allege any meaningful connection whatsoever between defendants' conduct (much less their forum-directed conduct) and plaintiffs' injuries." 2015 WL 4394955, at *6.

As Plaintiffs have already explained, BOC's contacts with New York are both significant *and* closely related to the discovery order at issue in this case, easily satisfying the Second Circuit's standard. *See, e.g.*, ECF 146, at 4-5 ("*The information Gucci seeks* about the bank accounts into which Defendants transferred their profits *is related to BOC's in-forum activities in transferring the funds into those accounts.* BOC's maintenance of a correspondent account in New York and use of that account to wire funds to China, its domestic branches, and its deliberate use of New York based wire services to be 'the No. 1 choice of U.S. dollar wire transfers to and from China,' ECF 138-1, *considered alongside Plaintiffs' requests for information linked to the use of those very contacts, leave no doubt that the required nexus is present.*") (emphasis added). Nothing in *In re LIBOR* or *SPV Osus* is to the contrary.

*Second*, neither *In re LIBOR* nor *SPV Osus* addressed (because it was not at issue in those cases) the enormous differences between cases in which a plaintiff seeks to hale a *defendant* into court in a foreign jurisdiction and cases, like this one, in which a plaintiff merely seeks to enforce a lawful *subpoena* against a *nonparty*. *See Gucci Am.*, 768 F.3d at 136-37 & n.17 (recognizing that "specific jurisdiction over nonparties" presents distinct due process concerns from those involved in cases relating to civil defendants); *id.* at 141-42 (discussing how courts have "translated [the specific jurisdiction test] to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue"); *see also* ECF 136, at 13 & n.11. Jurisdiction is completely consistent with due process where, as here, the nonparty's forum contacts "involve activities that are the very source of the [plaintiff's] interest" in the nonparty's documents. *In re Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996). That is particularly so given the substantially lower burden that a nonparty subpoena recipient like

**GIBSON DUNN**

Honorable Richard J. Sullivan
August 28, 2015
Page 4

BOC faces compared to a civil defendant. *See* ECF 136, at 21 (collecting cases). BOC attempts to argue that its contacts in the United States are minor, consisting only of "passive receipt of funds into a correspondent account." ECF 154, at 2 n.2. But that is clearly not the case. BOC facilitated at least eleven transfers totaling more than $500,000 (and likely more) for the counterfeiter defendants through BOC's correspondent accounts *and* wire services. BOC also offers a specific U.S.-China wire transfer service through its New York branches and maintains other branches across the country. *See, e.g.*, ECF 136, at 8-9; ECF 146, at 2-5.

*Third*, *In re LIBOR* and *SPV Osus* also had no occasion to consider another vital difference between a claim against a civil defendant and a subpoena issued to a nonparty under Federal Rule of Civil Procedure 45: In the latter context, the Court may consider the relevance of the nonparty's "contacts with the United States as a whole." *Gucci Am.*, 768 F.3d at 142 & n.21 (noting this issue for the Court's consideration and collecting cases holding that contacts throughout the United States should be considered). Though BOC's contacts with New York suffice to establish the Court's jurisdiction over it, the Court need not overlook BOC's similarly extensive banking activities elsewhere in the United States. *See, e.g.*, ECF 136, at 7-9 (discussing BOC's United States activities).

Both of these cases explicitly follow the Second Circuit's decision in *Chew* and purport to change nothing about the applicable legal framework. Moreover, they are distinguishable in several vital regards, including the fundamental difference between a defendant and a nonparty subpoena recipient. There are far more relevant authorities like those discussed herein that recognize the Court's authority to exercise jurisdiction over BOC.

Accordingly, and for the reasons set forth in Plaintiffs' pending motion for clarification and to compel the production of additional documents (ECF 135 to 138, 146 to 148), Plaintiffs respectfully request that the Court confirm that it has jurisdiction over BOC and that BOC must produce the additional materials requested concerning the counterfeiter defendants' accounts, which this Court previously and appropriately ordered to be frozen. *See Gucci Am.*, 768 F.3d at 133 (holding that "the district court had the equitable authority to issue the Asset Freeze Injunction and that the BOC's argument to the contrary is without merit").

Respectfully submitted,


*s/ Robert L. Weigel*

Robert L. Weigel
Counsel to Plaintiffs

cc: Andrew Rhys Davis, counsel to nonparty Bank of China