**ALLEN & OVERY**

**BY ECF AND EMAIL**

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

Allen & Overy LLP
1221 Avenue of the Americas
New York NY 10020

Tel              212 610 6300
Fax              212 610 6399
Direct line      212 756 1151
andrew.rhys.davies@allenovery.com

September 4, 2015

Re:  Gucci America, Inc., et al. v. Weixing Li, et al.,
     No. 10 Civ. 4974 (RJS)

Dear Judge Sullivan:

On behalf of non-party Bank of China ("BOC" or the "Bank"), and subject to its jurisdictional objections, we write in reply to Gucci's letter dated August 28, 2015, ECF No. 155 ("Gucci Letter"). In their letter, Gucci's counsel again argue that this Court should exercise specific jurisdiction to compel BOC to produce information about the Bank's business even though that business was neither conducted in nor in any sense directed at this forum. They also draw to the Court's attention two cases that they say support Gucci's motion to compel. They are wrong on all fronts.

**Gucci Cannot Establish Specific Jurisdiction To Compel BOC To Produce Documents About Its Banking Business In China By Relying On The Bank's Wholly Irrelevant U.S. "Contacts"**

As Gucci finally admits, it is asking this Court to exercise specific personal jurisdiction to compel BOC to produce documents "concerning the counterfeiter defendants' accounts." Gucci Letter at 4. In other words, Gucci is not asking this Court to exercise specific jurisdiction with respect to acts that the Bank has conducted in or directed at New York, but rather with respect to banking that BOC has conducted *in China*, where those accounts are located. As BOC has shown, such an exercise of jurisdiction would be unconstitutional, not least because the essential link between the requested exercise of specific jurisdiction (an order relating to the Bank's business *in China*) and the in-forum "contacts" on which Gucci relies is wholly absent. *See* ECF No. 141 ("BOC Opp.") at 10-13.

Gucci persists in its attempts to base specific jurisdiction on "contacts" that are totally irrelevant because they have nothing to do with defendants' accounts in China. Again, Gucci references the fact that BOC has a New York branch and conducts other business in the United States. *See* Gucci Letter at

Allen & Overy LLP is a limited liability partnership registered in England and Wales with registered number OC306763. It is authorized and regulated by the Solicitors Regulation Authority of England and Wales. Allen & Overy LLP is a multi-jurisdictional law firm with lawyers admitted to practise in a variety of jurisdictions. A list of the members of Allen & Overy LLP and their professional qualifications is open to inspection at its registered office, One Bishops Square, London, E1 6AD and at the above address. The term partner is used to refer to a member of Allen & Overy LLP or an employee or consultant with equivalent standing and qualifications.

Allen & Overy LLP or an affiliated undertaking has an office in each of: Abu Dhabi, Amsterdam, Antwerp, Bangkok, Barcelona, Beijing, Belfast, Bratislava, Brussels, Bucharest (associated office), Budapest, Casablanca, Doha, Dubai, Düsseldorf, Frankfurt, Hamburg, Hanoi, Ho Chi Minh City, Hong Kong, Istanbul, Jakarta (associated office), Johannesburg, London, Luxembourg, Madrid, Milan, Moscow, Munich, New York, Paris, Perth, Prague, Riyadh (associated office), Rome, São Paulo, Shanghai, Singapore, Sydney, Tokyo, Toronto, Warsaw, Washington, D.C. and Yangon.

3.[1]  BOC has shown that its U.S. branches have nothing to do with the information that Gucci is seeking, *see* BOC Opp. at 10-13, and Gucci has no good faith basis to insinuate otherwise.  Similarly, Gucci refers again to the fact that BOC, like every other bank, offers wire transfer services.  *See* Gucci Letter at 3.  Gucci also well knows, however, that the transfers on which it seeks to base jurisdiction were not made using BOC's wire transfer services, but rather by defendants using Chase Bank's wire transfer services.  *See* BOC Opp. at 11-13; ECF No. 145 (Deng. Decl.); ECF No. 144 (Wagner Decl.) ¶¶ 24, 29).  Gucci's factually incorrect assertions do not become true simply because it continually repeats them.

Similarly, Gucci continues to reference BOC's "maintenance of a correspondent account in New York and use of that account to wire funds to China."  *See* Gucci Letter at 3.  Those alleged "contacts" also do not permit the Court to exercise specific jurisdiction to grant Gucci's motion to compel the production of information about the Bank's business *in China*.  *First*, Gucci is not seeking information about BOC's maintenance of a correspondent account in New York (which would be irrelevant in this case), nor about the handful of transfers that defendants and Chase Bank made into that account (which information it already has from Chase Bank).  *See* ECF Nos. 138-2-138-12 (Chase Bank transfer records).  *Second*, the law is perfectly clear that neither maintaining a correspondent account in New York nor passively receiving funds into such an account constitutes purposeful direction.  *See* Opp. at 13-15.  BOC has demonstrated that it was merely the passive recipient of a handful of transfers that defendants and Chase Bank made into its correspondent account.  *See* BOC Opp. at 14.

In sum, of the "eleven transfers" BOC allegedly "facilitated . . . through [its] correspondent account *and* wire services," Gucci Letter at 4 (emphasis in original), BOC has shown that (i) four of those transfers were wired directly by defendants and Chase Bank to BOC's Beijing branch (not using BOC wire services) and (ii) the other seven were received only passively through a correspondent account that BOC's head office maintains at Chase Bank in connection with transfers made by defendants and Chase Bank to BOC's Beijing branch.  *See* BOC Opp. at 11.  Gucci has no response to that showing, other than rank speculation that there were "likely more" transfers than those of which it has obtained evidence in the five years that this case has been pending.  *See* Gucci Letter at 4.  Gucci thereby emphasizes the extent to which its arguments are based on baseless assertions and hyperbole rather than law and evidence.

Finally, notwithstanding Gucci's telling plea for a "flexible approach to specific jurisdiction," Gucci Letter at 2, the Due Process Clause simply does not permit the "flexib[ility]" that would be required to exercise specific jurisdiction to order BOC to produce documents concerning its business *in China* by aggregating a host of U.S. "contacts" that have nothing to do with that extraterritorial business.  In *Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998), specific jurisdiction was proper because the defendant had a significant number of *suit-related* contacts with the forum, even if none of those contacts proximately caused the injury.  *See id.* at 29-30.  Nothing in *Chew* or in any other case that Gucci has cited would permit this Court to exercise specific jurisdiction based on a hodgepodge of *non-suit-related* contacts, as the courts correctly held in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *23 (S.D.N.Y. Aug. 4, 2015), and in *SPV*

---

[1] As BOC has shown, BOC Opp. at 8-9 n.14, the due process analysis in this case depends on BOC's New York contacts, although BOC lacks the required contacts whether the Court considers the Bank's New York or nationwide contacts.

*OSUS Ltd. v. UBS AG*, Nos. 15 Civ. 619 (JSR), 14 Civ. 9744 (JSR), 2015 WL 4394955, at *6 (S.D.N.Y. July 20, 2015) (declining to exercise jurisdiction over "foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States").[2]

**Neither Of Gucci's "Recent" Cases Supports The Exercise Of Specific Jurisdiction Over BOC**

Contrary to Gucci's argument, *B&M Kingstone, LLC v. Mega International Commercial Bank Co.*, --- N.Y.3d ----, 2015 WL 4726634 (1st Dep't Aug. 11, 2015), and *Vera v. Republic of Cuba*, No. 12 Civ. 1596 (AKH), --- F. Supp. 3d ----, 2015 WL 1244050 (S.D.N.Y. Mar. 17, 2015), are irrelevant to the motion before this Court. Neither court held that it had specific personal jurisdiction to order a foreign bank to turn over information about banking business conducted overseas. *B&M Kingstone* and *Vera* are narrow decisions that turned on determinations that the banks in those cases had consented to personal jurisdiction sufficient to permit the courts to compel compliance with post-judgment information subpoenas, where the information was available at the banks' New York branches, and where considerations of comity did not preclude enforcement. For the reasons set forth below, those holdings are inapplicable and irrelevant here.

In *Vera*, the court noted that the foreign bank's New York branch was licensed by the New York Department of Financial Services ("DFS") under Section 200 of the New York Banking Law. *See Vera*, 2015 WL 1244050, at *7. The court further noted that, pursuant to that section, the bank had appointed the Superintendent as its agent for service of process, and held that the bank had thereby consented to personal jurisdiction. *See id.* at *7-8. The court further noted that the information sought by the subpoena "can be found via electronic searches performed in [the bank's] New York office, and are within this jurisdiction." *Id.* at *8. Under those circumstances, the court determined that it had sufficient jurisdiction to order the bank to turn over information that "is located in New York." *Id.*

Similarly, in *B&M Kingstone*, the court relied on the *Vera* court's discussion of Section 200 of the New York Banking Law to determine that the court's "general personal jurisdiction over the bank's New York branch permits it to compel that branch to produce any requested information that can be found through electronic searches performed there." *Id.* at *4-5.[3]

---

[2] As Gucci cannot establish even any cognizable connection between any in-forum contacts and the subpoenaed information, the Court need not address whether due process might permit the exercise of personal jurisdiction over a non-party based on a weaker causal connection that would be required for a party. Contrary to Gucci's suggestion, *see* Gucci Letter at 3, however, the Second Circuit did *not* decide that issue in Gucci's favor. *See* BOC Opp. at 17-18.

[3] It does not appear that the *Vera* and *B&M Kingstone* courts were directed to the DFS's interpretation of Section 200 of the New York Banking Law as not applying to service of subpoenas. *See* BOC Opp. at 7 n.11; ECF No. 143 (Davies Decl.) ¶ 13 & Ex. 12. Nor does it appear that the banks in those cases argued that, in light of the Supreme Court's rejection of the "doing business" standard for general jurisdiction, compliance with state law domestication statutes cannot constitute consent to jurisdiction. *See* BOC Opp. at 8 n.13.

In both cases, the courts determined that the banks had failed to demonstrate that principles of international comity precluded enforcement of the subpoenas.  *See id*. at *6; *Vera*, 2015 WL 1244050, at *10.

Even assuming *arguendo* that the *Vera* and *B&M Kingstone* courts were correct to hold that they had jurisdiction to enforce subpoenas served on the New York branches of foreign banks that had appointed the Superintendent as their agent for service of process under Section 200 of the New York Banking Law, under circumstances where the subpoenaed information was located at the New York branches, and where considerations of comity did not preclude enforcement, those holding are of no assistance to Gucci.[4]

*First*, BOC has shown that Section 200 of the New York Banking Law is inapplicable to federally-licensed branches like BOC's New York branch, and that there is no comparable service agent provision for federally-licensed branches.  *See* BOC Opp. at 7.

*Second*, BOC has shown that its New York branch does not have access to the documents that Gucci seeks concerning defendants' accounts in China, for several very valid reasons, including issues presented by the different regulatory regimes applicable in the two countries, by the different languages and currencies used in the two countries and by convertibility restrictions on the Chinese currency.  *See* ECF No. 38 (Beauchemin Decl.) ¶¶ 2-3.

*Third*, BOC has shown that in this case, considerations of comity clearly preclude enforcement of Gucci's subpoenas.  *See* BOC Opp. at 15-25.

For all of these reasons, *Vera* and *B&M Kingstone* do not support Gucci's motion to compel in any way.

\*     \*     \*

For all of the foregoing reasons, and all of the reasons previously advanced by BOC in opposition to Gucci's motion to compel, BOC respectfully requests that the Court deny Gucci's motion.

Respectfully submitted,

/s/ Andrew Rhys Davies

**Andrew Rhys Davies**

Copy:  All counsel of record (via ECF)

---

[4] To the extent the *Vera* court held in the alternative that the "norm of granting broad post-judgment discovery in aid of execution" authorizes a court to compel post-judgment discovery from a non-party over which it lacks personal jurisdiction, *see Vera*, 2015 WL 1244050, at *8-9, that is clearly inconsistent with the Second Circuit's decision in *Gucci America, Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014).  It is also irrelevant in the pre-judgment context of this case.