UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUCCI AMERICA, INC., *et al*.,

                       Plaintiffs,

– against –

WEIXING LI, *et al*.,

                       Defendants.

No. 10 Civ. 4974 (RJS)


**NON-PARTY BANK OF CHINA'S MEMORANDUM OF LAW
IN RESPONSE TO THE COURT'S ORDER TO SHOW
<u>CAUSE DATED NOVEMBER 9, 2015</u>**


ALLEN & OVERY LLP
Laura R. Hall
Justin L. Ormand
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

November 16, 2015

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ........................................................................................................3

STANDARD OF LAW.................................................................................................5

ARGUMENT .............................................................................................................6

I.   GUCCI HAS NOT CARRIED ITS BURDEN TO DEMONSTRATE THAT BOC
     SHOULD BE HELD IN CONTEMPT.............................................................................6

     A.   This Court Cannot Hold BOC In Contempt Because It Lacks
          Personal Jurisdiction Over BOC ...............................................................6

     B.   Gucci Has Not Met Its Burden To Show That BOC Has Failed To
          Exercise Reasonable Diligence To Comply With The Court's
          Orders.........................................................................................................6

II.  EVEN IF THIS COURT DETERMINES THAT BOC SHOULD BE HELD IN
     CONTEMPT, THE COURT SHOULD NOT IMPOSE SANCTIONS OR
     SHOULD STAY ITS CONTEMPT ORDER PENDING APPEAL ................................10

III. EVEN IF THE COURT WERE TO HOLD BOC IN CONTEMPT, THERE IS
     NO BASIS WHATSOEVER FOR THE EXORBITANT SANCTIONS THAT
     GUCCI SEEKS.......................................................................................................13

     A.   There Is No Basis Whatsoever For An Award Of $12 Million In
          "Compensatory" Contempt Sanctions .......................................................13

          1.   Gucci Is Not Entitled To "Adverse Inferences" Against
               Non-Party BOC...............................................................................13

          2.   There Is No Basis For Any Award Of Compensatory
               Sanctions .........................................................................................16

     B.   There Is No Basis Whatsoever For An Award Of $3.8 Million In
          Daily Coercive Sanctions..........................................................................22

     C.   There Is No Basis Whatsoever For An Award Of Attorneys' Fees..........23

CONCLUSION.......................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Badgley v. Santacroce*,
  800 F.2d 33 (2d Cir. 1986) ............................................................................... 17

*Canterbury Belts, Ltd. v. Lane Walker Rudkin*,
  869 F.2d 34 (2d Cir. 1989) ................................................................................. 6

*Chem. Bank v. Affiliated FM Ins. Co.*,
  154 F.R.D. 91 (S.D.N.Y. 1994) ........................................................................ 13

*Chevron Corp. v. Donziger*,
  296 F.R.D. 168 (S.D.N.Y. 2013) ...................................................................... 15

*Comverse, Inc. v. American Telecommc'ns, Inc. Chile. S.A.*,
  No. 07 Civ. 11131 (PKL) (HBP), 2009 WL 464446 (S.D.N.Y. Feb. 24, 2009) .................... 6

*Cont'l Cas. Ins. Co. v. Atl. Cas. Co.*,
  No. 07 Civ. 3635(DC), 2007 WL 3852046 (S.D.N.Y. Aug. 13, 2008) ...................... 13-14, 23

*Contempo Acquisition, LLC v. U.S. Dep't of Hous. & Urban Dev.*,
  No. 06 Civ. 3654 (DF), 2007 WL 3254916 (S.D.N.Y. Oct. 30, 2007) .................................. 16

*Cretella v. Liriano*,
  370 F. App'x 157 (2d Cir. 2010) ....................................................................... 14

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ........................................................................................ 18

*Dove v. Atl. Capital Corp.*,
  963 F.2d 15 (2d Cir. 1992) ........................................................................... 11, 14

*Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T. AFL-CIO v.*
  *Local 530 of Operative Plasterers & Cement Masons Int'l Assoc.*,
  889 F.2d 389 (2d Cir. 1989) .............................................................................. 17

*First Am. Corp. v. Price Waterhouse LLP*
  154 F.3d 16 (2d Cir. 1998) .................................................................................. 8

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  131 F. Supp. 2d 540 (S.D.N.Y. 2001) ............................................................... 11

*First National City Bank of New York v. IRS*,
  271 F.2d 616 (2d Cir. 1959)........................................................................................21

*Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States*,
  657 F.2d 5 (2d Cir. 1981) ...........................................................................................12

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014)................................................................................ *passim*

*Gucci Am., Inc. v. Weixing Li*,
  No. 10 Civ. 4974 (RJS), 2012 WL 5992142 (S.D.N.Y. Nov. 15, 2012) .........................13, 22

*Gucci Am., Inc. v. Bagsmerchant LLC*,
  No. 10 Civ. 2911 (SAS), 2012 WL 4468192 (S.D.N.Y. Sept. 27, 2012)...............................16

*IBM v. United States*,
  493 F.2d 112 (2d Cir. 1973)........................................................................................23

*In re Application to Quash Subpoena to Nat'l Broad. Co.*,
  79 F.3d 346 (2d Cir. 1996)..........................................................................................12

*In re DG Acquisition Corp.*,
  151 F.3d 75 (2d Cir. 1998)............................................................................................7

*In re Grand Jury Proceedings (The Bank of Nova Scotia)*,
  740 F.2d 817 (11th Cir. 1984) ....................................................................................8, 9

*In re Grand Jury Subpoena Dated Aug. 9, 2000*,
  218 F. Supp. 2d 544 (S.D.N.Y. 2002)............................................................................7

*In re Sealed Case*,
  825 F.2d 494 (D.C. Cir. 1987).............................................................................8, 9, 12

*In re Westinghouse Elec.Corp. Uranium Contracts Litig.*
  563 F.2d 992 (10th Cir. 1977) .....................................................................................9

*King v. Allied Vision, Ltd.*,
  65 F.3d 1051 (2d Cir. 1995).........................................................................................24

*Koehler v Bank of Bermuda Ltd.*,
  12 N.Y.3d 533 (2009) ..................................................................................................19

*Latino Officers Ass'n City of N.Y. v. City of N.Y.*,
  519 F. Supp. 2d 438 (S.D.N.Y. 2007)............................................................................5

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*,
  885 F.2d 1 (2d Cir. 1989) ............................................................................................17

*Mikutaitis v. United States*,
    478 U.S. 1306 (1986)...............................................................................................11

*Milburn v. Coughlin*,
    83 F. App'x 378 (2d Cir. 2003) ...........................................................................17

*Motorola Credit Corp. v. Standard Chartered Bank*,
    24 N.Y.3d 149 (2014) ................................................................................18, 19, 21

*Mount Sinai School of Medicine v. Am. Tobacco Co. (Application of Am. Tobacco Co.)*,
    880 F.2d 1520 (2d Cir. 1989)................................................................................12

*N.Y. State NOW v. Terry*,
    886 F.2d 1339 (2d Cir. 1989)..........................................................................17, 18

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
    462 F.3d 87 (2d Cir. 2006)....................................................................................12

*Perez v. Danbury Hosp.*,
    347 F.3d 419 (2d Cir. 2003).................................................................................6-7

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
    306 F.3d 99 (2d Cir. 2002)........................................................................13, 14, 15

*Roe v. United States* (*In re Three Grand Jury Subpoenas Dated Jan. 5, 1988)*,
    847 F.2d 1024 (2d Cir. 1988)...............................................................................11

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)....................................................................................16

*Samsun Logix Corp. v. Bank of China*,
    No. 10562/10, 2011 WL 1844061 (Sup. Ct. N.Y. County May 12, 2011)............21

*Shaheen Sports, Inc v. Asia Ins. Co.*,
    No. 98 Civ. 5951 (LAP),11 Civ. 920 (LAP), 2012 WL 919664 (S.D.N.Y. Mar. 14, 2012)..............................................................................................................21

*Shamis v. Ambassador Factors Corp.*,
    34 F. Supp. 2d 879 (S.D.N.Y. 1999).................................................................13, 14

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
    490 F.3d 130 (2d Cir. 2007)..............................................................................14-15

*Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*,
    357 U.S. 197 (1958)................................................................................................9

*Summit Bank v. Taylor,*
    No. 96 Civ. 7229 (BSJ), 1997 WL 811526 (S.D.N.Y. Nov. 12, 1997) ...................................23

*Tiffany (NJ) LLC v. Qi Andrew,*
    No. 10 Civ. 9471(RA)(HBP), 2012 WL 5451259 (S.D.N.Y. Nov. 7, 2012),
    *aff'd,* Order, No. 10 Civ. 9471(RA)(HBP) ................................................................ 10, 20-21

*United States v. Vetco, Inc.,*
    691 F.2d 1281 (9th Cir. 1981) ......................................................................................8, 9

*Upjohn Co. v. Modtron Labs., Inc.,*
    No. 87 Civ. 5773 (SWK), 2005 WL 3078232 (S.D.N.Y. Nov. 16, 2005)............................23

*Vuitton et Fils, S.A. v. Carousel Handbags,*
    592 F.2d 126 (2d Cir. 1979).............................................................................................22

*Wolters Kluwer Fin. Serv., Inc. v. Scivantage,*
    564 F.3d 110 (2d Cir. 2009).............................................................................................14

*Zubulake v. UBS Warburg LLC,*
    229 F.R.D. 422 (S.D.N.Y. 2004) ....................................................................................13

## Rules & Statutes

15 U.S.C. § 1117(c) ...........................................................................................................19

28 U.S.C. § 1291 ...............................................................................................................11

Fed. R. Civ. P. 37..............................................................................................................13

Fed. R. Civ. P. 45(g) .........................................................................................................14

N.Y. C.P.L.R. § 5209 .........................................................................................................21

## Other Authorities

Proposed Amendments to the Federal Rules of Civil Procedure, *available at*
    http://www.uscourts.gov/rules-policies/pending+rules+amendments .....................................14

Non-party Bank of China ("BOC") respectfully submits this Response to the Court's Order to Show Cause dated November 9, 2015, subject to and without waiver of its jurisdictional objections.

## PRELIMINARY STATEMENT

Through this motion to hold non-party BOC in contempt for failure to comply with the Court's orders of September 29 and October 16 ("Orders"), plaintiffs (collectively, "Gucci") have finally admitted their true aim.   Having insisted upon litigating this case in New York even though the defendants and their assets are apparently in China, Gucci has now concluded that it has no means to enforce any judgment.   Gucci previously notified the Court that it intended to seek a turnover order against BOC.   According to Gucci, New York's separate entity rule had been abolished, so that a turnover order would reach defendants' accounts in China.   But in late 2014, the New York Court of Appeals frustrated Gucci's plan by issuing an unambiguous re-endorsement of the separate entity rule.

So Gucci has now changed tack.   Through this motion, it seeks to extract from BOC, in the guise of compensatory contempt sanctions, the $12 million statutory damages award that the Court previously agreed to enter against the defendants.   In support of this audacious contrivance, Gucci's rhetoric has reached the point of outright misrepresentation.   According to Gucci:

- "BOC[] deci[ded] to hide evidence of counterfeiting from this Court."  Br. at 5.[1]

- "BOC voluntarily chose to do business with the counterfeiters . . . ." *Id.* at 22.

- "BOC has not only buttressed the operations of international counterfeiting schemes designed to defraud Americans, but also openly permitted, encouraged, and aided Defendants (and very likely other counterfeiters) in flouting the Lanham Act, unashamedly stealing

---

[1]      "Br." refers to Gucci's Memorandum of Law, ECF No. 164.

Plaintiffs' valuable intellectual property, and shield themselves from any legal consequences for their flagrant theft." *Id.* at 23.

None of these claims is accompanied by any citation to the record. Necessarily so, because Gucci has no good faith basis to make them. The actual evidence in this case shows only that in 2009 and 2010, Chase Bank and defendants made eleven transfers from defendants' accounts at Chase Bank to their accounts at BOC in China. *See* ECF No. 138, Exs. 2-12. The evidence reveals nothing facially inappropriate about those transfers—certainly, nothing to suggest that they were the proceeds of counterfeiting Gucci's marks. *See id.*

It appears that Gucci is attempting to create so much prejudice through this irresponsible diatribe that it might obscure the lack of any proper basis for the relief that it is seeking. And certainly Gucci's outlandish and unprecedented requests are unsupportable.

Contrary to Gucci's baseless contentions, [2] BOC is not "willfully" flouting the Court's Orders. Fully acknowledging this Court's ruling, BOC notified Gucci that BOC maintains that it is not subject to the personal jurisdiction of the Court and that it cannot comply with the Court's orders without violating Chinese law. As a result, BOC notified Gucci that if it continued to press this issue then BOC would be required to seek relief from the Court of Appeals. That requires BOC not to comply with the Orders, and to appeal from any resulting contempt order. In no way can BOC's decision to do what is required to vindicate its due process rights on appeal be viewed as willfulness. Nor does it constitute "vexatious litigation tactics," "gross misconduct" or "fooling around." Br. at 22-23, 25. Given the circumstances of its non-compliance, BOC should not be held in contempt at all, but if it is, then sanctions should not be imposed, much less the exorbitant and improper sanctions sought by Gucci.

---

[2]     Gucci's brief is so packed with unsupported contentions and arguments that any failure to address any particular point explicitly should not be misunderstood to concede its validity.

Gucci's proposed daily coercive fine of *$3.8 million* would amount to *$114 million* per month, or *$1.368 billion* per year, while BOC's appeal is pending.  And the unprecedented compensatory contempt sanction that Gucci seeks—non-party BOC's satisfaction of an as-yet-un-entered $12 million default judgment against defendants—is a contrivance, designed to extract damages from BOC without having to file a complaint and without having to prove liability.  A non-party should be permitted to litigate to vindicate its due process rights on appeal without being threatened with billions of dollars in contempt sanctions that lack any proper legal basis and that are based on scurrilous assertions for which Gucci has no good faith basis, compounded by unwarranted and unauthorized "adverse inferences" against a non-party.

For all of these reasons, the Court should deny Gucci's motion to hold BOC in contempt.  In the event the Court determines that BOC should be held in contempt, then BOC respectfully requests that the Court either not impose sanctions or stay its contempt order pending appeal.  In the event the Court determines that BOC should be held in contempt and that sanctions should be imposed, the Court should deny the unwarranted and exorbitant sanctions sought by Gucci.

## BACKGROUND

On September 17, 2014, the United States Court of Appeals for the Second Circuit held that this Court lacks general personal jurisdiction over non-party Bank of China ("BOC").  *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134-39 (2d Cir. 2014).  As a result, the Court of Appeals vacated this Court's order dated August 23, 2011 (the "2011 Order") that compelled BOC to comply with a subpoena that Gucci served on BOC in 2010 (the "2010 Subpoena"), and this Court's order dated November 15, 2012 that held BOC in contempt of the 2011 Order.  *See id.* at 141-43 & n.23.

The Second Circuit remanded the matter for this Court to "consider whether it may exercise specific personal jurisdiction over the Bank to compel compliance with these orders and, if so, whether proper application of the principles of comity demonstrates that it may exercise such jurisdiction." *Id.* at 145.  The Court of Appeals specifically directed that this Court "may not impose sanctions, in the event that personal jurisdiction is appropriately exercised over the Bank, without finding a new violation of a court order." *Id.* at 142 & n. 24.

On September 29, 2015, this Court granted Gucci's motion to compel BOC to comply with the 2010 Subpoena and with a subpoena that Gucci served on BOC in 2011 (the "2011 Subpoena," and, together with the 2010 Subpoena, the "Subpoenas").  *See* Opinion and Order dated September 29, 2015, ECF No. 158.  On October 16, 2015, this Court ordered that BOC must comply with the Orders by October 23, 2015, and that, if BOC "fails to comply by this date, Plaintiffs may move for sanctions."  ECF No. 161.

On October 23, 2015, BOC notified Gucci's counsel that BOC recognizes that this Court has determined that it has specific personal jurisdiction to compel compliance with the Subpoenas and has determined that it is appropriate to exercise that jurisdiction.  Declaration of Robert L. Weigel dated November 9, 2015 ("Weigel Decl."), Ex. 1 (Letter dated Oct. 23, 2015 from A. Davies to R. Weigel).  BOC further notified Gucci's counsel that BOC maintains that it is not subject to the jurisdiction of the Court and, further, that it cannot comply with the Orders consistent with its obligations under Chinese law.  *See id*.  Under these circumstances, BOC informed Gucci that if Gucci pursued this matter further, then BOC would be forced to seek relief from the Court of Appeals, which would be possible only by BOC not complying with the Orders and, if the Court grants an order of contempt, by appealing from such order.  *See id*.  For

those reasons, BOC notified Gucci that it was not in a position to comply with the Orders.  *See id.*

On November 9, 2015, Gucci asked this Court to hold BOC in contempt. Through its motion, Gucci seeks to have this Court order BOC to pay the $12 million default judgment for statutory damages that Gucci sought and that the Court agreed to enter in 2011, but that Gucci then asked the Court not to enter so that it could continue its litigation campaign against BOC.  Declaration of Laura R. Hall dated November 16, 2015 ("Hall Decl.") Ex. 1, Tr. of Jan. 5, 2011 Hr'g at 6:16-21, 59:15-60:5, 63:20-64:3.  To avoid having to show that it could obtain specific personal jurisdiction over BOC in this Court for purposes of a turnover proceeding, Gucci seeks groundless (and unprecedented) adverse inferences against non-party BOC.  Finally, Gucci also seeks a coercive sanction of $3.8 million per day—nearly $1.4 *billion* per year—and attorneys' fees.  On November 9, 2015, this Court issued an Order to Show Cause, which afforded BOC one week to show cause why it should not be held in contempt and respond to Gucci's motion.  *See* ECF No. 162.

## STANDARD OF LAW

For BOC to be held in contempt, Gucci must establish that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of non-compliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Gucci*, 768 F.3d at 142 (internal quotations and citation omitted).  BOC cannot be held in contempt if there is "a fair ground of doubt" as to any of these elements. *Latino Officers Ass'n City of N.Y.  v. City of N.Y.*, 519 F. Supp. 2d 438, 443-44 (S.D.N.Y. 2007).

## ARGUMENT

### I.   GUCCI HAS NOT CARRIED ITS BURDEN TO DEMONSTRATE THAT BOC SHOULD BE HELD IN CONTEMPT

#### A.   This Court Cannot Hold BOC In Contempt Because It Lacks Personal Jurisdiction Over BOC

A court may not enter a contempt order against a non-party over which it lacks personal jurisdiction. *See Gucci*, 768 F.3d at 134; *Canterbury Belts, Ltd. v. Lane Walker Rudkin*, 869 F.2d 34, 40 (2d Cir. 1989); *see also Comverse, Inc. v. American Telecomm'ns, Inc. Chile. S.A.*, No. 07 Civ. 11131 (PKL) (HBP), 2009 WL 464446, at *2 (S.D.N.Y. Feb. 24, 2009) ("Without personal jurisdiction over Messrs. Nunez and Alfaro, this Court cannot hold them in contempt.") (citing *New York State NOW v. Terry*, 961 F.2d 390, 400 (2d Cir. 1992)).

The Court of Appeals has determined that BOC is not subject to this Court's general jurisdiction. *See Gucci*, 768 F.3d at 134-39. BOC acknowledges that the Court has determined that it has specific jurisdiction to compel BOC to comply with the Subpoenas. For all of the reasons stated in BOC's opposition to Gucci's motion to compel, *see* ECF No. 141 ("Opp. Br."), BOC respectfully maintains that it is not subject to the Court's jurisdiction because there is no statutory or Constitutional basis for the exercise of personal jurisdiction over it, and that, consistent with principles of international comity, the Court should not exercise any such jurisdiction. BOC respectfully asserts this objection to preserve it for appeal.

#### B.   Gucci Has Not Met Its Burden To Show That BOC Has Failed To Exercise Reasonable Diligence To Comply With The Court's Orders

Even if the Court could properly exercise personal jurisdiction over BOC, BOC should not be held in contempt because BOC's noncompliance is not the result of any lack of diligence. *See Perez v. Danbury Hosp.*, 347 F.3d 419, 425 (2d Cir. 2003) (vacating contempt

judgment and holding that "[t]here is no evidence, at least none credited by the district court, that defendants have not attempted to comply in a reasonable manner with the terms of the Decree").

As BOC has shown, its noncompliance is compelled by Chinese law because compliance with the Orders would require BOC to violate Chinese law, leading to potential criminal prosecution, regulatory sanctions, and civil liability.  *See* Declaration of Yuqing Zhang ("Zhang Decl."), ECF No. 142, at ¶¶ 13, 30-31, 34-39.[3]  China's banking regulators have objected to the issuance of court orders that compel the production of account information in violation of Chinese law.  *See id.* Ex. 12 (Letter to Hon. Richard J. Sullivan, *et al*. from People's Bank of China ("PBOC") and China Banking Regulatory Commission ("CBRC").  And, indeed, BOC has already been found civilly liable in China as a result of this Court's asset-restraining injunction.  *See* Zhang Decl., at ¶¶ 30-31.  Under these circumstances, holding BOC in contempt for non-compliance with the Orders would be wholly inappropriate.

Further, Gucci asserts that BOC has "court[ed] legal impediments," Br. at 15, but it offers no basis to compare BOC to the grand jury subpoena recipient in the one case cited by Gucci in support of its argument, which was a New York corporation that contacted foreign government officials to "suggest[] bases for non-compliance[.]"  *In re Grand Jury Subpoena Dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 547, 563-64 (S.D.N.Y. 2002) (finding that bad faith of New York corporation supported granting motion to compel document production to grand jury).

Contrary to the position advanced by Gucci, courts have declined to hold non-parties in contempt of discovery orders when their noncompliance is compelled by foreign law. In *First American Corp. v. Price Waterhouse LLP*, the Second Circuit held that the district court

---

[3]     This Court's prior consideration of the Chinese law issues is not, as Gucci contends, law of the case, Br. at 14, as the Orders are not appealable absent a contempt citation.  *See In re DG Acquisition Corp.*, 151 F.3d 75, 85-86 (2d Cir. 1998).  Thus, the Court must consider the impact of Chinese law afresh at the contempt stage.

correctly did not quash a non-party subpoena due to foreign law prohibitions on compliance, but it held that, at the contempt stage, such foreign law prohibitions could afford the non-party "substantial justification" for noncompliance, such that contempt sanctions would be unwarranted.  154 F.3d 16, 22-23 (2d Cir. 1998).[4]

    Similarly, in *In re Sealed Case*, the D.C. Circuit distinguished a court's ability to compel production of documents in violation of foreign bank privacy laws from "its ability to impose sanctions for disobedience of that order, which is thought to be much more problematic," and vacated a contempt citation against a non-party foreign bank.  825 F.2d 494, 497-98 (D.C. Cir. 1987) (citations omitted).  Vacating the contempt order, the court in *Sealed Case* identified as the "most important" factor the reality that the requested contempt sanctions represented an "attempt by an American court to compel a foreign person to violate the laws of a different foreign sovereign on that sovereign's own territory."  *Id*. at 498.  That, of course, is precisely what Gucci is asking this Court to do.  As the D.C. Circuit aptly observed, "[w]e have little doubt . . . that our government and our people would be affronted if a foreign court tried to compel someone to violate our laws within our borders."  *Id.* at 498-99.  The court also found it relevant that the bank in *Sealed Case*, like BOC in this case, was a "third party that [was] not accused of any wrongdoing."  *Id.* at 498.[5]

---

[4]  Non-parties are not subject to the discovery "sanctions under Rule 37" that are referenced in the Second Circuit's opinion, *First Am. Corp*. 154 F.3d at 22, so that reference is puzzling, but the Second Circuit made clear that it was addressing an appeal from an order "enforcing a non-party witness subpoena against a United Kingdom accounting partnership, and finding the firm in contempt," *id.* at 17.

[5]  Neither *In re Grand Jury Proceedings (The Bank of Nova Scotia)*, 740 F.2d 817 (11th Cir. 1984), nor *United States v. Vetco, Inc.*, 691 F.2d 1281 (9th Cir. 1981), is inconsistent with the D.C. Circuit's decision in *Sealed Case*.  Neither addressed discovery in private litigation. Rather, the grand jury subpoena and an IRS summons in those cases implicated core governmental interests, which "serve a more pressing national function than civil discovery." *Vetco*, 691 F.2d at 1288.  Further, there was substantial doubt in both cases that the foreign laws

Likewise, in *In re Westinghouse Electric Corp. Uranium Contracts Litigation*, although the Court of Appeals for the Tenth Circuit affirmed an order requiring the production of documents by a foreign non-party, it vacated the contempt order because compliance with the subpoena would have violated the criminal law of Canada, where the documents were located. 563 F.2d 992, 996-99 (10th Cir. 1977).  As the Tenth Circuit noted, the Supreme Court has held that, "though a local court has the power to order a party to produce foreign documents despite the fact that such production may subject the party to criminal sanctions in the foreign county, still the fact of foreign illegality may prevent the imposition of sanctions for subsequent disobedience to the discovery order." *Id.* at 997 (citing *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958)).

Among other reasons, the Tenth Circuit considered it inappropriate to hold the non-party witness in contempt because the requesting party's defense "does not stand or fall on the present discovery order." *In re Westinghouse*, 563 F.2d at 999.  Similarly, in *Sealed Case*, the D.C. Circuit considered an order of contempt to be inappropriate because "the grand jury is not left empty-handed by today's decision." *Sealed Case*, 825 F.2d at 499.  As Gucci has demonstrated through this contempt motion, it has already obtained mountains of evidence—heretofore undisclosed to BOC or this Court—concerning the counterfeiters' sales and bank accounts at U.S. banks through discovery from entities in the United States.[6]  *See* Weigel Decl.

---

actually prohibited production.  *See Nova Scotia*, 740 F.2d at 826; *Vetco*, 691 F.2d at 1287-88 & n.7.  There is no genuine dispute that, to comply with the Orders, BOC would be required to violate Chinese law.  Zhang Decl. ¶¶ 13, 35-36.

[6]       Exhibits 8, 9, 10 and 12 of the Weigel Declaration, which contain voluminous financial information, have never been filed in this case and are presented for the first time on this motion. BOC previously asked Gucci to turn over all documents it has gathered concerning the transfers at issue to help BOC evaluate Gucci's arguments concerning them.  Opp. Br. at 11.  Gucci refused, citing confidentiality.  ECF No. 143, Ex. 15.  Apparently that refusal was pure

Exs. 2-12; *see also infra* Part III.A.2.  With or without such documents, Gucci's claims equally

do not stand or fall on the documents that it seeks from BOC.  Gucci, and other luxury goods

manufacturers represented by the same counsel, have obtained substantial default judgments in

similar cases without any need for non-party discovery from Chinese banks.  *See* Opp. Br. at 1-2;

ECF No. 143, Exs. 1-2. Indeed, this Court was prepared to grant Gucci a default judgment in this

case in 2011.  *See* Hall Ex. 1, Tr. of Jan. 5, 2011 Hr'g at 4:5-6.  And as BOC has demonstrated,

Gucci has recently successfully pursued trademark infringement claims in China, and it can and

should pursue these China-centric claims in that jurisdiction.  Opp. Br. at 3, 21; Zhang Decl.

¶¶ 50-52, 56-59.

 Moreover, if Gucci is left empty-handed, it is because Gucci has steadfastly

refused to use other available and more appropriate mechanisms for obtaining the documents it

seeks.  *See* Opp. Br. at 1-2.  Other similarly situated plaintiffs represented by Gucci's counsel

have successfully used the Hague Evidence Convention to obtain documents from Chinese banks

(including BOC) for use against alleged infringers.  *See, e.g., Tiffany (NJ) LLC v. Qi Andrew*,

No. 10 Civ. 9471(RA)(HBP), 2012 WL 5451259 (S.D.N.Y. Nov. 7, 2012), *aff'd*, Order, No. 10

Civ. 9471(RA)(HBP), ECF No. 70.

## II. EVEN IF THIS COURT DETERMINES THAT BOC SHOULD BE HELD IN CONTEMPT, THE COURT SHOULD NOT IMPOSE SANCTIONS OR SHOULD STAY ITS CONTEMPT ORDER PENDING APPEAL

 Given that BOC cannot comply with the Orders without violating Chinese law

and could not appeal the Orders if it complied with them, BOC respectfully requests that if the

Court holds BOC in contempt, the Court either not impose contempt sanctions, or that the Court

stay its contempt order pending appeal.

---

gamesmanship, as Gucci has filed redacted versions of these documents on the public docket
now that their use suits its interests.

A nonparty cannot seek appellate review of a discovery order until it is held in contempt.  The contempt order is then treated as a final order for purposes of 28 U.S.C. § 1291, and is final for appellate purposes even when contempt sanctions are not imposed.  *See Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992); *Roe v. United States* (*In re Three Grand Jury Subpoenas Dated Jan. 5, 1988)*, 847 F.2d 1024, 1028 (2d Cir. 1988).  That rule originated out of a concern to avoid "the difficult position in which a government employee is placed when directed by a court to produce information and by his agency supervisors to withhold such information."  *See Dove*, 963 F.2d at 18.  More recently, however, the Court of Appeals has expanded this rule into a "'general rule . . . that only a citation for contempt, not the imposition of sanctions, is necessary for appellate review."  *Id*. (citing *Three Grand Jury Subpoenas*, 847 F.2d at 1028)).

Courts have frequently stayed pending appeal contempt orders arising from discovery orders, recognizing that it is unjust and inappropriate to require an appellant to choose between, on the one hand, enduring coercive contempt sanctions during the pendency of the appeal and, on the other hand, complying with a discovery order and thereby risking an argument that the appeal has been mooted.  *See Mikutaitis v. United States*, 478 U.S. 1306, 1309-10 (1986) (staying contempt sanctions because "it is possible that continued enforcement of the contempt order may have the practical consequence of rendering the proceeding moot if Mikutaitis is pressured into testifying"); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) ("The Court further concludes that Rafidain will suffer irreparable harm unless a stay of the discovery sought by the 1998 Subpoenas is granted, since it will then be obligated, in order to purge its contempt, to provide the very discovery it argues it has no obligation to produce.").

Indeed, the Second Circuit stayed this Court's contempt order dated November 15, 2012 pending appeal, *see Gucci*, 768 F.3d at 128 n.7, as it and other courts have done in numerous other cases.  *See OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 92 (2d Cir. 2006) (granting stay of contempt order against non-party witness pending appeal); *In re Application to Quash Subpoena to Nat'l Broad. Co.*, 79 F.3d 346, 350 (2d Cir. 1996) (same); *Mount Sinai School of Medicine v. Am. Tobacco Co. (Application of Am. Tobacco Co.)*, 880 F.2d 1520, 1526 (2d Cir. 1989) (noting that the district court stayed contempt sanctions for failure to comply with a non-party subpoena pending appeal); *Grand Jury Subpoena Duces Tecum Dated April 23, 1981 Witness v. United States*, 657 F.2d 5, 7 (2d Cir. 1981) (same); *Sealed Case*, 825 F.2d at 496 (same).

In this case, if BOC were held in contempt and if the contempt sanctions were not stayed pending appeal, BOC would have to choose between, on the one hand, enduring those sanctions as the price of prosecuting its appeal, or, on the other hand, complying with the Orders, thereby violating Chinese law and risking an argument that its appeal had been mooted.  That would be a grossly unfair situation, as the above-referenced cases acknowledge.  For these reasons, if the Court were to hold BOC in contempt, the contempt order should be stayed pending appeal.  Indeed, beyond the harm to BOC, respect for international comity demands at least this.

III.   **EVEN IF THE COURT WERE TO HOLD BOC IN CONTEMPT, THERE IS NO BASIS WHATSOEVER FOR THE EXORBITANT SANCTIONS THAT GUCCI SEEKS**

A.   **There Is No Basis Whatsoever For An Award Of $12 Million In "Compensatory" Contempt Sanctions**

1.   **Gucci Is Not Entitled To "Adverse Inferences" Against Non-Party BOC**

Gucci's request for $12 million in "compensatory" sanctions hinges on "adverse inferences"—findings of fact—that Gucci encourages this Court to draw against non-party BOC. Specifically, Gucci asks that this Court infer that (1) "BOC had or has in its possession money belong to *all* of the counterfeiters participating in Defendants' counterfeiting ring *in excess of $12 million*"; and (2) that BOC's records would establish that BOC is subject to specific personal jurisdiction in New York for purposes of a turnover order.  Br. at 21 (emphases added).  The Court should deny this baseless request.

First, adverse inferences are sanctions that spring from Rule 37 of the Federal Rules of Civil Procedure, which, as this Court has held, applies only to *parties*.  *Gucci Am., Inc. v. Weixing Li*, No. 10 Civ. 4974 (RJS), 2012 WL 5992142, at *6 n.3 (S.D.N.Y. Nov. 15, 2012). Thus, in none of the cases that Gucci cites did a court impose adverse inference against a non-party.[7]  The law is clear that "Rule 45[g] provides the only authority in the Federal Rules of Civil Procedure for imposition of sanctions against a nonparty for failure to comply with a subpoena."

---

[7]   *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 113 (2d Cir. 2002) (holding that district court abused discretion in denying motion for adverse inference instruction to jury due to plaintiff's "purposeful sluggishness" in producing emails); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 437 (S.D.N.Y. 2004) (granting adverse inference instruction to jury where defendant destroyed documents); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 890 (S.D.N.Y. 1999) (granting adverse inference instruction to jury where plaintiff knew documents had been destroyed but did not inform defendants or the court); *Chem. Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91, 94-95 (S.D.N.Y. 1994) (holding that adverse inference instruction may be appropriate depending on purpose of defendant's violation of protective order).

*Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No. 07 Civ. 3635 (DC), 2008 WL 3852046, at *2 (S.D.N.Y.

Aug. 13, 2008) (citation omitted) (Chin, J.).  Under Rule 45(g), the sole available sanction is

contempt.  Fed. R. Civ. P. 45(g).[8]

Second, a primary purpose of adverse inference sanctions is punishment.  *Shamis*

*v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 890 (S.D.N.Y. 1999) (citations omitted).  It is

"basic law" that civil contempt sanctions cannot be punitive.  *Gucci*, 768 F.3d at 144 (citations

omitted).  Therefore, adverse inferences have no place in the civil contempt context.

Third, even if adverse inferences could be imposed against a non-party as a

sanction for contempt, Gucci would not be entitled to them, because they are available only

when noncompliance is motivated by a "culpable state of mind."  *Residential Funding,* 306 F.3d

at 107.[9]  Far from meeting that standard, BOC is required not to comply with the Court's order in

order to vindicate on appeal its due process right not to be haled into court absent minimum

contacts, *see Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17 (2d Cir. 1992), and to avoid violating

the law of its home jurisdiction.  *Cf. Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130 (2d

---

[8]       Contrary to Gucci's unsupported suggestion, Br. at 5, neither the Court's "common
sense" nor its "inherent power" permit the imposition of adverse inferences against non-party
BOC.  As the Court of Appeals has held, "inherent-power sanctions are appropriate only if there
is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by
improper purposes."  *Wolters Kluwer Fin. Serv., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir.
2009) (citation omitted); *accord Cretella v. Liriano*, 370 F. App'x 157, 159 (2d Cir. 2010)
(holding that inherent authority sanctions are available only "when a party has acted in bad faith,
vexatiously, wantonly, or for oppressive reasons," and "in order to impose such sanctions bad
faith must be shown by clear evidence that the actions in question are taken for harassment or
delay or improper purposes") (citations, quotations and alterations omitted).  Gucci has not made
and cannot make any such showing against BOC.

[9]       To the extent Gucci suggests that culpability in this context can be established by
anything other than intentional wrongdoing, it is mistaken.  Indeed, as of December 1, 2015, the
Federal Rules of Civil Procedure will prohibit adverse inferences unless a party has acted with
intent to deprive another party of information's use in litigation.  *See* Proposed Amendments to
the Federal Rules of Civil Procedure at 45, *available at* http://www.uscourts.gov/rules-
policies/pending+rules+amendments (select "Pending Amendments to the Civil Rules
(Redline)").

Cir. 2007) (acknowledging, in the context of Rule 37 sanctions against a plaintiff, that "[b]oth the inquiry into Russian law and appellant's control of IPT will inform a finding as to appellant's willfulness, or lack thereof, in refusing to produce the documents").  Moreover, if Gucci's argument were accepted, any time a non-party refused to comply with a discovery order to obtain appellate review, it would be subject to adverse inferences, magnifying sanctions and hindering exercise of the due process right to appellate review.[10]

The absence of the kind of culpability required for adverse inferences is evident when BOC's conduct is compared with the conduct of the defendant in *Chevron Corp. v. Donziger*, 296 F.R.D. 168 (S.D.N.Y. 2013), the principal case on which Gucci relies.  In that case, an American defendant who had control over documents in Ecuador sought to avoid producing them by convincing some of his defaulted co-defendants to file a collusive lawsuit in Ecuador to obtain a declaration prohibiting the document production.  *Id.* at 214-16.  Not surprisingly, the court concluded that this culpable conduct by the defendant warranted an inference that the documents at issue would have been unfavorable.  *Id.* at 222-23.

Finally, Gucci has failed to establish any rational basis for the adverse inferences it seeks.  *See Residential Funding*, 306 F.3d at 109 (holding that the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that non-produced evidence would be of the nature alleged by the party affected by its nonproduction).  Gucci first encourages the Court to "infer" that "all of the counterfeiters participating in Defendants' counterfeiting ring," known and unknown, have accounts at BOC in China and that the collective balance of those accounts at one point or another exceeded $12

---

[10]     The Court should reject Gucci's attempt to deflect attention from its inability to show that BOC has acted culpably by referring to decontextualized comments made by other judges in the context of specific issues in other cases.  Br. at 21 n.4.

million, Br. at 20-21, but that would be a wholly unsupportable leap from the actual evidence

adduced by Gucci, which shows only that certain defendants transferred a small fraction of that

sum to their accounts in China.  ECF No. 138, Exs. 2-12.

    Gucci also asks the Court to "infer" that BOC is in possession of evidence that

"would establish a sufficient basis" for a turnover order requiring BOC to turn over the contents

of accounts in China to Gucci.  Not only does Gucci offer no support for that "inference," but, as

Gucci and its counsel have been cautioned when they have previously attempted to end-run New

York's judgment enforcement rules, "third-party asset holders are entitled to a special

proceeding involving notice and a hearing under [CPLR] section 5225(b)" before they can be

required to turn over assets to satisfy a judgment.  *Gucci Am., Inc. v. Bagsmerchant LLC*, No. 10

Civ. 2911 (SAS), 2012 WL 4468192, at *2 (S.D.N.Y. Sept. 27, 2012) (vacating turnover order

that Gucci improperly inserted into a proposed default judgment without notice to the garnishee

banks, including BOC).  There is no basis for Gucci's latest attempt to end-run the applicable

rules through "adverse inferences."[11]

### 2.  There Is No Basis For Any Award Of Compensatory Sanctions

    As Gucci acknowledges, it cannot obtain compensatory sanctions unless it can

carry its burden to show that BOC's non-compliance has "caused" Gucci's "inability to recoup

---

[11]  There also is no basis for this Court to "infer" that BOC has "acted in concert with
Defendants to allow them to drain their bank accounts in violation of this Court's order." Br. at
3.  Gucci explicitly has not sought "any specific relief against BOC with respect to the asset
freeze at this time," ECF No. 131, and it is not entitled to use non-party BOC's failure to provide
discovery as an excuse to fish for potential future claims against BOC.  *See S. Cherry St., LLC v.
Hennessee Group LLC*, 573 F.3d 98, 113-14 (2d Cir. 2009); *Contempo Acquisition, LLC v. U.S.
Dep't of Hous. & Urban Dev.*, No. 06 Civ. 3654 (DF), 2007 WL 3254916, *1 (S.D.N.Y. Oct. 30,
2007) (holding that defendant was not entitled to use discovery to determine whether it had a
claim against a third party).  Moreover, the Second Circuit's ruling prohibits this Court from
enforcing the preliminary injunction against BOC unless it determines that it has specific
jurisdiction to do so and that principles of comity permit it to exercise such jurisdiction.  *Gucci*,
768 F.3d at 134-40.  Gucci should not be permitted to circumvent the Second Circuit's mandate
through baseless requests for "adverse inferences."

the Defendants' profits."  Br. at 17.  Gucci cannot make this showing, with or without the

adverse inferences it seeks, and, therefore, is not entitled to a $12 million compensatory

contempt sanction (or any other compensatory sanction).[12]

   First and foremost, Gucci's request is wholly unsupported by the cases on which

it relies.  All of those cases involved compensatory contempt awards granted against defendants

that violated, among other things, injunctions and judgments.[13]  Having scoured all federal cases

available on Westlaw for support for the extraordinary relief of forcing a non-party to pay as a

compensatory contempt sanction the default judgment of another—even one that had actually

been entered—counsel found none.  Presumably that is why Gucci does not cite any.

   Second, BOC's non-compliance with the Subpoenas has in no way "caused"

Gucci's inability to collect on the requested $12 million statutory damages judgment (or any

---

[12] Gucci blithely claims that "BOC has never contended that [Chinese banking] laws prevent it from honoring a U.S. monetary award," Br. at 6, but this is the first time that Gucci has openly admitted that it is seeking damages from non-party BOC.

[13] *Milburn v. Coughlin*, 83 F. App'x 378, 380 (2d Cir. 2003) (holding that district court should have awarded compensatory contempt sanctions for medical problems plaintiffs developed as a result of defendant's violation of a judgment requiring it to provide treatment); *Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasterers & Cement Masons Int'l Assoc.*, 889 F.2d 389, 398 (2d Cir. 1989) (affirming compensatory contempt award to labor union plaintiff for wages lost as a result of defendant's performance of work on a site within plaintiff's jurisdiction in violation of an injunction); *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) (affirming compensatory contempt sanction award to City of New York for costs associated with demonstrations at an abortion clinic undertaken by defendants in violation of temporary restraining order); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989) (holding that district court should have awarded compensatory contempt for sales made by defendant in violation of a consent judgment); *Badgley v. Santacroce*, 800 F.2d 33, 39 (2d Cir. 1986) (affording a 30-day window for compliance with a contempt judgment relating to prison overcrowding and holding that district court should hold defendants in contempt and award compensation to plaintiff prisoners in the event of defendants' noncompliance).

other judgment that might be entered in this matter).[14] *N.Y. State NOW v. Terry*, 886 F.2d 1339,

1353 (2d Cir. 1989) (Where, as here, there has been "no showing of compensable injury or actual

loss due to [contemnor's] failure to obey the court order," there is no basis for a compensatory

contempt award.).

      Tellingly, when Gucci moved to hold BOC in contempt in November 2012, it did

not seek *any* compensatory sanctions.  ECF No. 108 at 23-24.  That was because BOC's

nonproduction of documents has not, in fact, caused Gucci any harm, either in November 2012

or in November 2015.  Since November 2012, however, two developments have taken place.

First, the Supreme Court decided *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), pursuant to

which the Second Circuit held that this Court lacks general personal jurisdiction over BOC.

Second, the New York Court of Appeals reaffirmed the separate entity rule in *Motorola Credit*

*Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149 (2014).  Each of these decisions

independently precludes Gucci from securing against BOC a turnover order that would reach

accounts in China.  Hence, the "Hail Mary" that Gucci now hurls at this Court, in an attempt to

recover its damages claims through the contrivance of contempt sanctions.

      Gucci has asserted that defendants' accounts at BOC in China represent the only

property that could be used to satisfy any judgment.  Hall Decl. Ex. 1, Tr. of Jan. 5, 2011 Hr'g at

61:15-16.  Gucci has also conceded that a Chinese court would not enforce a judgment of this

Court.  ECF No. 137-2 at ¶ 11.  Plainly, defendants, who have not appeared, will not comply

---

[14]     BOC also has not "brought Plaintiffs' litigation against Defendants to a screeching halt."
Br. at 27.  Gucci has done that itself by asking the Court not to enter a default judgment purely so
that it can continue to use this litigation as a proxy to assert claims against BOC without ever
having to file a complaint.  By asking for an order directing non-party BOC to pay an un-entered
default judgment against defendants, Gucci has shown its true colors.  As the transcript cited by
Gucci shows, this Court was prepared to enter a $12 million default judgment without any
discovery from BOC.  Hall Decl. Ex. 1, Tr. of Jan. 5, 2011 Hr'g at 4:5-11.

with any turnover order.  According to Gucci, therefore, BOC, as garnishee, is the only potential

source of funds to satisfy a judgment.[15]

Thus, earlier in this case—before the Supreme Court decided *Daimler* and the

New York Court of Appeals decided *Motorola*—Gucci explained that its strategy was to obtain a

turnover order against BOC that would reach accounts in China, because it believed that the New

York Court of Appeals had abrogated the separate entity rule in *Koehler v Bank of Bermuda Ltd*.,

12 N.Y.3d 533 (2009).  ECF No. 52 at 7-10.  In *Motorola*, however, the New York Court of

Appeals squarely rejected that argument.  *See Motorola*, 24 N.Y.3d at 161 ("In short, we did not

analyze, much less overrule, the separate entity doctrine in *Koehler*.").  Thus, BOC's failure to

turn over documents concerning accounts in China has in no way caused Gucci's inability to

enforce its requested award of $12 million in statutory damages.

Third, Gucci complains that BOC's noncompliance with the Subpoenas prevents

it from calculating defendants' profits, but the $12 million that Gucci is seeking to have this

Court order BOC to pay does not represent "Defendants' profits."  Br. at 17.  It represents

statutory damages, which has Gucci elected "instead of" actual profits.  15 U.S.C. § 1117(c); *see

also* Hall Decl. Ex. 3, Proposed Default Judgment ¶ 6 (requesting "statutory damages . . . in lieu

of an award of actual damages and profits").  Thus, even if BOC's noncompliance had prevented

Gucci from calculating defendants' profits, that "harm" is wholly unconnected to the $12 million

in "compensation" that Gucci is seeking.

Fourth, even if Gucci were actually seeking an accounting of profits, the evidence

submitted in support of this motion shows that Gucci has gathered extensive evidence about

---

[15]     Gucci has not explained why, for instance, it could not seek to enforce any judgment
against funds in accounts that defendants apparently hold in the U.S banks that actually received
the proceeds of the transactions reflected in the sales records that it submits in support of its
motion, including Washington Mutual, Bank of America, and Wells Fargo.  Weigel Ex. 10.

defendants' sales from other sources, including PayPal, Chase Bank, Front Line and American Express.  Weigel Decl. Exs. 7-10, 12.  Those documents reflect, moreover, that defendants paid the proceeds of those sales, not into accounts at BOC, but into three U.S. banks—Washington Mutual, Bank of America, and Wells Fargo.  *Id.* Ex. 10.

 Of course, Gucci never revealed the scale of the evidence it had already gathered to this Court or to BOC when it was insisting that BOC was an essential source of information. That evidence undercuts Gucci's contention that the documents it seeks from BOC are "important" in any respect, let alone "'likely to provide the most effective measure of the revenues generated by defendants in contravention of United States trademark laws,'" Br. at 18 (quoting ECF No. 75 at 6)—the credit card and PayPal information disclosing sales is both sufficient and far more probative.  As Gucci itself has argued, "[a] plaintiff seeking an accounting of profits is required to prove defendant's sales only[,]" because the defendant bears the burden of proving "all elements of cost or deduction claimed."  Hall Decl. Ex. 4, Brief for Plaintiffs-Appellees at 27 (internal quotations marks and citations omitted).  Again, therefore, BOC has in no way caused Gucci the alleged harm.

 Fifth, Gucci cannot show that BOC has "caused" its "inability . . . to identify additional infringers."  Br. at 17.  The evidence shows only that certain defendants made some transfers from accounts at Chase Bank to accounts in China, and Gucci offers no basis for its speculation that BOC is in possession of information about the counterfeiting, such as identifying "owners of the factories who manufactured (likely still manufacture) the counterfeit goods sold by Defendants in the United States."  *Id.*  Gucci's "argument that additional documents concerning transfers into and out of the accounts will lead to a fuller understanding of the trademark counterfeiting operation is extremely speculative."  *Qi Andrew*, 2012 WL 5451259, at

*2.  In any event, the non-production of that information has not caused Gucci $12 million in

losses (or any loss), for the reasons set forth above.

Finally, Gucci's argument that being required to pay $12 million would not

constitute a hardship to BOC cannot be taken seriously.  Under the applicable New York

judgment enforcement regime, a garnishee that pays the judgment debtor's obligation is entitled

to a release from the judgment debtor.  *See* CPLR § 5209.  Indeed, in *Motorola*, the New York

Court of Appeals recognized that, by ensuring that turnover orders do not reach accounts located

overseas, the separate entity rule addresses the "significant concern" that banks would otherwise

face "competing claims and the possibility of double liability in separate jurisdictions."

*Motorola*, 24 N.Y.3d at 162.

As BOC would remain liable to its customers for any money that it turned over to

Gucci, Zhang ¶ 24, a turnover order cannot be granted consistent with due process.  *See Shaheen*

*Sports, Inc v. Asia Ins. Co.*, No. 98 Civ. 5951 (LAP),11 Civ. 920 (LAP), 2012 WL 919664, at

*7-9 (S.D.N.Y. Mar. 14, 2012) (denying a turnover order where the garnishee would remain

liable to the judgment debtor under foreign law); *Samsun Logix Corp. v. Bank of China*, No.

10562/10, 2011 WL 1844061, at *5-7 (Sup. Ct. N.Y. Cnty. May 12, 2011) (same).[16]  Gucci

asserts, without citation, that BOC would have a "contractual right to indemnification" against its

customers, Br. at 6, but the Chinese courts held the exact opposite in the litigation that BOC

---

[16]     Relying on *First National City Bank of New York v. IRS*, 271 F.2d 616 (2d Cir. 1959),
Gucci asserts that BOC should cease operations in the United States.  Br. at 22.  Gucci's
argument is the antithesis of the comity analysis that the Second Circuit has mandated in this
case, *Gucci*, 768 F.3d at 137-40, and also is not supported by *First National*.  In that case, the
Second Circuit agreed that, if Panamanian law prohibited a New York bank from producing
documents from its Panamanian branch, "production of the Panama records should not be
ordered[,]" and remanded the case "with a direction to reinstate the subpoena as it originally
issued and in the event of noncompliance to explore in contempt proceedings under [the tax
code] the ability of the Bank to comply without subjecting its personnel to criminal sanctions
under Panamanian law."  *First Nat'l*, 271 F.2d at 619-20.

brought against several of the defendants in this case.  Hall Decl. Ex. 5 at p.8-9 of English

translation; *id.* Ex. 6 at p.9 of English translation.

　　　　　For all of these reasons, the Court cannot grant a compensatory contempt award—

which the Second Circuit has likened to "a tort judgment for damages caused by wrongful

conduct," *Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979).  The

Court should deny Gucci's request.

### B.　　There Is No Basis Whatsoever For An Award Of $3.8 Million In Daily Coercive Sanctions

　　　　　There also is no basis for the extreme "coercive" sanctions that Gucci seeks.

When Gucci sought to hold BOC in contempt for in November 2012, it requested a coercive fine

of $10,000 per day.  *See* Hall Decl. Ex. 2, Tr. of Oct. 25, 2012 Hr'g at 23:19-22 (Gucci's counsel

suggested a $10,000 daily fine and representing that that amount was "enough for them [BOC] to

comply and less expensive than not complying."); Gucci Response to Order to Show Cause, ECF

No. 111 at 24 & n.17 (citing cases that imposed coercive sanctions between $500 and $25,000

per day).  Noting that "BOC's financial resources are great" and that the coercive sanction

should be "correspondingly great," the Court imposed the daily $10,000 fine that Gucci

requested.  *Weixing Li*, 2012 WL 5992142, at *8.

　　　　　The Second Circuit stayed that sanction pending appeal and then reversed the

contempt order on two separate grounds, *Gucci*, 768 F.3d at 128 n.7, 144, so, contrary to Gucci's

suggestion, Br. at 22, it had no occasion to consider the appropriateness of the $10,000 daily

fine.  But even if the Court of Appeals had endorsed the prior coercive fine, Gucci now seeks an

award of $3.8 million per day—*380 times* the award that it and this Court considered appropriate

just three years ago.  If this Court were to hold BOC in contempt and the appeal took the 22

months that elapsed between this Court's November 2012 contempt order and the Court of

Appeals' ruling in September 2014, the coercive sanctions would amount to *$2.5 billion*.  That is obviously an impermissible punitive sanction.  *Gucci*, 768 F.3d at 144.[17]

Gucci's punitive intent is, moreover, confirmed by the kinds of arguments that it advances in support of this outlandish sanction.  Gucci's empty rhetoric—that BOC has "buttressed the operations of international counterfeiting schemes designed to defraud Americans"—has nothing to do with coercion and everything to do with Gucci's wish to punish BOC.  Br. at 23.

### C.   There Is No Basis Whatsoever For An Award Of Attorneys' Fees

Finally, the Court should reject Gucci's request for fees and costs Gucci claims to have "incurred to prosecute BOC's contempt."  Br. at 24.[18]  First, attorneys' fees are available

---

[17]   In support of this outlandish request, Gucci cites only one case—*IBM v. United States*, 493 F.2d 112 (2d Cir. 1973).  In that case, a divided Second Circuit panel held that it lacked jurisdiction over an interlocutory appeal by a defendant that had been fined five percent of its daily earnings to coerce it to produce documents to the government.  *Id.* at 115-16, 119.  The Second Circuit did not "approve" the contempt award, Br. at 24; it merely opined, over the dissent of one judge, that the amount of the sanction did not make the contempt criminal in nature.  *Id.* at 116.  Moreover, unlike BOC, IBM was not a foreign non-party that was being forced to litigate to defend itself from an unwarranted exercise of jurisdiction to compel it to violate the law of its home jurisdiction.  Rather, it was the defendant, and was refusing to turn over to the government documents that it had already produced to a private litigant.  *Id.* at 118.

[18]   It is only in support of its fee request that Gucci actually cites cases in which non-parties were held in contempt.  None of those cases remotely resemble this one.  Unlike BOC, which is having to litigate to avoid being subjected to jurisdiction in violation of its due process rights and being compelled to violate the law of its home jurisdiction, the non-parties in those cases simply defied or ignored court orders without any reason.  Even under those circumstances, the sanctions imposed were modest.  *See Cont'l Cas. Ins. Co. v. Atl. Cas. Co.*, No. 07 Civ. 3635(DC), 2007 WL 3852046, at *1-2 (S.D.N.Y. Aug. 13, 2008) (holding non-party based in New York in contempt for ignoring subpoena, motion for contempt, and court orders and awarding "actual costs incurred in its efforts to secure [non-party's] deposition"); *Summit Bank v. Taylor*, No. 96 Civ. 7229 (BSJ), 1997 WL 811526, at *3-4 (S.D.N.Y. Nov. 12, 1997) (holding non-party deponent in contempt for refusing to appear for deposition and awarding attorneys' fees to plaintiff and coercive sanction of $500 per day, but holding sanctions in abeyance for 30-day period to allow for compliance);  *Upjohn Co. v. Modtron Labs., Inc.*, No. 87 Civ. 5773 (SWK), 2005 WL 3078232, at *3 (S.D.N.Y. Nov. 16, 2005) (awarding attorneys' fees incurred in securing a non-party's compliance with subpoenas).

only in cases of willful contempt.  *See, e.g., King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d

Cir. 1995) (citations omitted).  BOC's noncompliance is not willful.  It is required, both to secure

an appealable order that will permit BOC to vindicate its due process rights on appeal, *see* Point

II, *supra*, and by Chinese law, Zhang ¶ 21.  Second, Gucci and its counsel should not be

rewarded for time spent formulating baseless arguments in support of an improper litigation

strategy.  Finally, in the event the Court grants an award of fees, BOC reserves all rights to

object to the quantum.

## CONCLUSION

For the foregoing reasons, and subject to its jurisdictional objections, non-party

BOC respectfully requests that the Court deny Gucci's contempt motion.  In the event the Court

determines that BOC should be held in contempt, then BOC respectfully requests that the Court

either not impose sanctions or stay its contempt order pending appeal.  In the event the Court

determines that BOC should be held in contempt and that sanctions should be imposed, the Court

should deny the unwarranted and exorbitant sanctions sought by Gucci.


Dated:  November 16, 2015             Respectfully submitted,
        New York, New York

                                      /s/ Laura R. Hall
                                      ALLEN & OVERY LLP
                                      Laura R. Hall
                                      laura.hall@allenovery.com
                                      Justin L. Ormand
                                      justin.ormand@allenovery.com
                                      1221 Avenue of the Americas
                                      New York, New York 10020
                                      Tel: (212) 610-6300
                                      Fax: (212) 610-6399

                                      *Attorneys for Non-Party Bank of China*

24