UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                           :

GUCCI AMERICA, INC., BALENCIAGA      :
AMERICA INC., BALENCIAGA S.A., BOTTEGA  :
VENETA INTERNATIONAL S.A.R.L.,      :
BOTTEGA VENETA INC., LUXURY GOODS   :
INTERNATIONAL (L.G.I.) S.A. and YVES SAINT  :
LAURENT AMERICA, INC.             :               2010 Civ. 4974 (RJS)
                           :
         Plaintiffs,            :
                           :
      -against-            :
                           :

WEIXING LI a/k/a XIN LI, LIJUN XU a/k/a JACK  :
LONDON and TING XU a/k/a JACK LONDON   :
a/k/a XU TING a/k/a REBECCA XU, WENYING  :
GUO, XIAOCHAO SHANG, LEI XU, FENGYUAN  :
ZHAO, LIQUN ZHAO, MING ZHAO, and    :
PEIYUAN ZHAO, all doing business as     :
REDTAGPARTY, MYLUXURYBAGS.COM,    :
KUELALA.COM, XPRESSDESIGNERS.COM,   :
XPRESSDESIGNER.NET, and DESIGNER    :
HANDBAGS; ABC COMPANIES;        :
and JOHN DOES,                 :
                           :
         Defendants.         :

------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO SANCTION AND HOLD BANK OF CHINA IN CIVIL
CONTEMPT FOR REFUSING TO COMPLY WITH THE COURT'S
SEPTEMBER 29 AND OCTOBER 16, 2015 ORDERS**

Robert L. Weigel
Howard S. Hogan
Anne M. Coyle
Casey K. Lee
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Counsel for Plaintiffs*

New York, New York
November 23, 2015

## TABLE OF CONTENTS

Page(s)

I.   BOC IMPROPERLY SEEKS TO RELITIGATE ISSUES ALREADY DECIDED ........ 2

II.  BOC IS IN CONTEMPT OF COURT ...................................................................... 4

III. IMMEDIATE SANCTIONS ARE WARRANTED ............................................... 5

     A.   Compensatory Damages and an Adverse Inference Are Appropriate ................... 5

     B.   Daily Coercive Fines Are Also Appropriate .......................................................... 9

     C.   BOC Is Not Entitled to a Stay .............................................................................. 9

IV.  CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Am. Tobacco Co.*,
  880 F.2d 1520 (2d Cir. 1989)...................................................................................10

*In re Appl'n to Quash Subpoena to NBC*,
  79 F.3d 346 (2d Cir. 1996).....................................................................................10

*DeCastro v. Kavadia*,
  309 F.R.D. 167 (S.D.N.Y. 2015)...............................................................................6

*Dove v. Atl. Capital Corp.*,
  963 F.2d 15 (2d Cir. 1992).......................................................................................9

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998).......................................................................................5

*In re Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981*,
  657 F.2d 5 (2d Cir. 1981) ......................................................................................10

*Gucci Am., Inc. v. Li*,
  768 F.3d 122 (2d Cir. 2014)........................................................................1, 3, 5, 10

*Koehler v. Bank of Bermuda Ltd.*,
  12 N.Y.3d 533 (N.Y. 2009) ......................................................................................9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  20 N.Y.3d 327 (N.Y. 2012) ...................................................................................2, 9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013).....................................................................................1

*Mali v. Fed. Ins. Co.*,
  720 F.3d 387 (2d Cir. 2013).....................................................................................6

*Motorola Credit Corp. v. Standard Chartered Bank*,
  24 N.Y.3d 149 (N.Y. 2014) ......................................................................................9

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*,
  462 F.3d 87 (2d Cir. 2006).....................................................................................10

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
  673 F.2d 53 (2d Cir. 1982).......................................................................................9

*Reilly v. Natwest Mkts. Grp. Inc.*,
  181 F.3d 253 (2d Cir. 1999).....................................................................................7

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002).......................................................................................7

*In re Sealed Case*,
  825 F.2d 494 (D.C. Cir. 1987)..................................................................................4

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Shamis v. Ambassador Factors Corp.*,
    34 F. Supp. 2d 879 (S.D.N.Y. 1999)..........................................................................................7

*United States v. 479 Tamarind Drive*,
    No. 98 Civ. 2279(DLC), 2012 WL 3886698 (S.D.N.Y. Sept. 7, 2012) .................................10

*United States v. Chase Manhattan Bank, N.A.*,
    590 F. Supp. 1160 (S.D.N.Y. 1984)...........................................................................................3

*United States v. Rylander*,
    460 U.S. 752 (1983)....................................................................................................................3

*In re Westinghouse Elec. Corp. Uranium Contracts Litig.*,
    563 F.2d 992 (10th Cir. 1977) ....................................................................................................4

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007)......................................................................................................10

### Rules

Fed. R. Civ. P. 37......................................................................................................................7

### Treatises

Restatement (Third) of Foreign Relations Law, § 442 ....................................................................3

BOC's opposition to Plaintiff's contempt motion (ECF 171 "BOC Br.") demonstrates precisely why it is in willful contempt of this Court's September 29 and October 16 Orders. Furthermore, BOC makes a number of key factual concessions that illustrate why significant sanctions are necessary to address the harm caused by BOC's contempt.

- *First*, BOC does not dispute that this Court's Orders were unambiguous in ordering BOC to "produce all documents requested" in Plaintiffs' Subpoenas "as they pertain to all Defendants," which "covers all Defendants who have been named in this action, including those in the Second Amended Complaint." (ECF 158 at 14-15).

- *Second*, BOC does not dispute that it is in possession of, but has not produced, records that this Court found "likely to provide the most effective measure of revenues generated by Defendants" and reveal the "identity of additional infringers." (ECF 75 at 7).

- *Third*, BOC does not dispute that it has not complied with this Court's Orders. Although BOC attempts to excuse its behavior (BOC Br. 6-12) for reasons this Court already considered and rejected, BOC does not claim that compliance is literally impossible (nor could it in light of the evidence that BOC has previously produced documents in this and other litigations in New York). (*See* ECF 116 at 3; ECF 111 at 9-10, 21-22).

- *Fourth*, BOC does not dispute that the Defendants in this case maintain *at least thirty accounts* with BOC—accounts which BOC concealed from Plaintiffs and this Court, despite what this Court has concluded are the bank's "broad contractual rights over its customers' account information." (ECF 158 at 13).

BOC's defense to its willful non-compliance with this Court's concededly clear Orders amounts to an untimely request for reconsideration, coupled with the brazen claim that BOC is entitled to a stay of contempt sanctions so that it can pursue a *second* appeal to the Court of Appeals. But BOC cannot show it is likely to prevail on the merits of a second appeal. The Second Circuit *already* found "no abuse of discretion" in this Court's original application of the relevant comity factors to BOC's asserted Chinese law conflict, *Gucci Am., Inc. v. Li*, 768 F.3d 122, 141 (2d Cir. 2014). Moreover, this Court's finding of specific personal jurisdiction is well supported by both the factual record in this case and recent decisions of both the New York Court of Appeals and the Second Circuit. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,

20 N.Y.3d 327, 338-40 (N.Y. 2012).

Plaintiffs have put forth sufficient evidence to show they are entitled to compensatory sanctions based on BOC's misconduct.  Specifically, the record here shows that (1) Defendants operated at least a dozen websites that sold counterfeits of Plaintiffs' trademarks during a period dating back at least a decade; (2) Defendants took in revenues of at least $2.9 million from just three of their dozen websites during a 2.5 year period based on the partial information Plaintiffs have been able to obtain from other non-parties; and (3) a brief snapshot of the funds wired by Defendants to China through BOC's New York-based accounts shows transfers of more than $500,000 to BOC.  BOC does not and cannot dispute any of this evidence.  Without the documents withheld by BOC it is impossible to know how much more revenue the Defendants generated in other years or through their other websites and credit card processors, but it is obvious that Defendants—who, contrary to BOC's claim that this litigation is "China-centric," *were operating in the U.S. and selling counterfeits to U.S. consumers*—transferred significant sums to their BOC accounts.  As this Court found, the Defendants "deliberately utilized institutions such as [BOC] to thwart Congress and the reach of the Lanham Act."  ECF 158 at 12.

BOC's conduct throughout this litigation has been to delay and obfuscate.  The bank failed to disclose to this Court either (a) the existence of the 30 accounts revealed subsequently in the Beijing Judgments, or (b) the fact that the bank possesses "broad contractual rights" over the Defendants accounts.  Indeed, the Beijing Judgments reveal that BOC did not even consult with the Defendants before opposing the Subpoenas (ECF 170-6 at 27) even though the privilege may be waived by the customer (ECF 142 at 6).  The bank's current position makes clear that its past arguments that this Court's prior orders were "ambiguous" were nothing more than a bad faith excuse, as it is now clear that the bank *never* intended to comply with the Subpoenas.

## I.     BOC IMPROPERLY SEEKS TO RELITIGATE ISSUES ALREADY DECIDED

The law is clear that "[o]nce a court has issued an order, the validity of that order may not be relitigated" on a contempt motion, *United States v. Chase Manhattan Bank, N.A.*, 590 F. Supp. 1160, 1162 (S.D.N.Y. 1984), and "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy," *United States v. Rylander*, 460 U.S. 752, 756 (1983). *See also* ECF 116 at 6-7 (rejecting BOC's attempts to relitigate in contempt proceeding). Yet BOC repeats its arguments that this Court lacks personal jurisdiction to compel it to comply with the Court's Orders, or should refrain from exercising its jurisdiction as a matter of comity. BOC Br. 6. The Court has considered and rejected those arguments. *See* ECF 158 at 3-14.

The Second Circuit expressly found "no abuse of discretion" in this Court's prior analysis of the comity factors under Section 442 of the Restatement (Third) of Foreign Relations Law. *Gucci Am.*, 768 F.3d at 141. The U.S. government agreed. 2d Cir. Dkt. 319 at 22-24. On remand, as instructed by the Circuit, this Court further considered the new Chinese Judgments filed by BOC and found that "[n]othing in the Beijing judgments suggests that China has an ironclad requirement of bank secrecy or that disclosure of the information requested by the 2010 and 2011 Subpoenas would expose BOC and its employees to serious criminal or civil liability in China." ECF 158 at 14.

Even if BOC's attempt to relitigate that finding were proper—which it is not—BOC offers no new evidence supporting its argument that Chinese law prohibits compliance. *See* BOC Br. 7 (citing ECF 142, already considered by this Court).[1] All available evidence demonstrates that the bank—despite having previously produced some documents here and other

---

[1]  BOC's argument that this is not "law of the case" (BOC Br. 7 n.3) is a red herring; BOC has offered absolutely nothing to lead this Court to reverse its previous conclusion.

litigation in this District—has never incurred any punishment beyond $22 in court costs.  ECF 158 at 13; *see also* ECF 116 at 3; ECF 111 at 9-10, 21-22.

## II.      BOC IS IN CONTEMPT OF COURT

BOC does not dispute that the Court's orders were clear and unambiguous (ECF 164 at 12-13) or that its violation of the orders is clear and convincing (ECF 164 at 13-15).  BOC argues only that its noncompliance is attributable to Chinese law, not to a lack of diligence.  BOC Br. 6-10.  This Court rejected the same argument three years ago.  ECF 116 at 6-8.

BOC attempts to rely once again on the same cases that this Court has already considered and found "readily distinguishable from the instant case."  *Id.* at 7 (discussing *In re Sealed Case*, 825 F.2d 494 (D.C. Cir. 1987) and *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992 (10th Cir. 1977)).  But as this Court already explained, "whereas in *In re Sealed Case* the information sought was otherwise available from live testimony such that the party making the request would not be left 'empty-handed,' . . . here, declining to find BOC in contempt *would* likely leave Plaintiffs empty-handed because proceeding through the Hague Convention has little likelihood of success."  *Id.* (citation omitted).  Likewise, the Court noted that *Westinghouse* "did not establish a *per se* rule that a non-party cannot be held in contempt where compliance with a court order might violate foreign law," but rather "balance[ed] a number of factors" based on the facts before it.  *Id.* at 8 (discussing *Westinghouse*, 563 F.2d at 997-98).  BOC does not even acknowledge this Court's previous ruling.  And, as this Court previously explained, *First American* is "wholly inapposite" to this one.  ECF 116 at 7 n.3 (discussing *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22-23 (2d Cir. 1998)).  In *First American*, the Second Circuit held that it was "entirely reasonable" for the district court in that case to "determin[e] that the U.S. interest in th[at] lawsuit outweigh[ed] the competing foreign interests in enforcement of local confidentiality laws," reasoning in part that "the Hague

Convention d[id] not really offer a meaningful avenue of discovery" in that case. 154 F.3d at 22-23. The same is true here. *See, e.g.*, ECF 158 at 13 ("[t]he Beijing judgments, if anything, shift the balance of national interests more firmly toward the" U.S.).

### III.   IMMEDIATE SANCTIONS ARE WARRANTED

#### A.   Compensatory Damages and an Adverse Inference Are Appropriate

"It is basic law that a civil contempt sanction must only be compensatory or coercive." *Gucci Am.*, 768 F.3d at 144. Here Plaintiffs seek compensatory sanctions. In fact, BOC *expressly agrees* that if its "non-compliance has caused Gucci's inability to recoup the Defendants' profits," the requested compensatory sanctions are warranted. BOC Br. 16-17 (internal quotation omitted). BOC instead argues that, without the records it has withheld, Plaintiffs cannot establish that the bank's noncompliance is the proximate cause of Plaintiffs' inability to collect from the counterfeiters the bank has shielded. That is nonsense. As this Court already found, BOC's records "are likely to provide the most fruitful avenue for discovering the identity of additional infringers" and the location of "the revenues generated by Defendants in contravention of United States trademark laws." ECF 75 at 6.

All the evidence in the record (which BOC ignores), moreover, confirms that it was only BOC's contempt that prevented a more significant recovery. For example, the record indicates that funds were wired from a Chase account in the name of "Ting Xu d/b/a/ Redtagparty"—a defendant and demonstrated counterfeiter. ECF 71-1 at 3. If BOC had provided information about the counterfeiters' 30 or more accounts and the transfers in and out of them, Plaintiffs could have taken concrete steps to trace the funds and learn more about Defendants' counterfeiting operation. BOC has left Plaintiffs with only evidence as to the counterfeiters' substantial profits and high-volume sales for the discrete period that Plaintiffs were able to uncover from other sources, before the trail led to BOC. *See, e.g.*, ECF 71; ECF 164 at 6-7; ECF

165 at Exs. 2-5, 7-13.[2]  Based on just the records of the U.S. accounts that Plaintiffs uncovered, Plaintiffs can establish that Defendants wired at least $530,000 from their U.S.-based accounts— including the account in the name of Defendant "Redtagparty" (ECF 71-1 at 3)—to their accounts at BOC.  *See* ECF 71; ECF 136 at 3-4, ECF 138-2–12.  Defendants must have also used other credit card processors to effectuate sales of counterfeits on the websites Defendants operated prior to opening their Frontline account in December 2007, and the proceeds of such sales likely also made their way to other bank accounts.  *See* ECF 9-2 ¶ 57; *see generally* ECF 71.  BOC's failure to comply with this Court's order to produce, *inter alia*, wire transfer records showing the number and source of the U.S. dollar wires into Defendants' 30 or more bank accounts at BOC makes it impossible to determine exactly how many different credit card processors Defendants utilized or how much money was wired into Defendants' accounts.  *See* ECF 75 at 6-7 (such records are "likely to provide the most effective measure of the revenues generated by Defendants").  This Court, as finder of fact, can infer that the records BOC continues to hide would likely reveal that BOC's obfuscation has prevented Plaintiffs from obtaining the recovery they have sought from the counterfeiters and their conspirators.  *Cf., e.g.*, *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 393 (2d Cir. 2013) (finder of fact may draw an adverse inference as part "of the reasoning process known in law as circumstantial evidence"); *DeCastro v. Kavadia*, 309 F.R.D. 167, 181-82, 181 n.16 (S.D.N.Y. 2015) (where a party could have produced material evidence, but refused to, court may infer the evidence would have been unfavorable to that party).

The Court is also authorized to draw an adverse inference as a matter of its "inherent

---

[2]  Plaintiffs served a number of third parties with subpoenas in accordance with the terms of the preliminary injunction (ECF 12).  Only BOC resisted complying with Plaintiffs' Subpoenas—a fact not unnoticed by this Court.  *See* ECF 116 at 2 n.2, 9.

power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). BOC attempts to limit adverse inferences to the Rule 37 context (BOC Br. 13), but the Second Circuit has repeatedly recognized that Rule 37 is not the only basis for the Court to address misconduct. *See, e.g.*, *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, *or* acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses." (emphasis added)); *see also* ECF 164 at 16, 20-21 (citing cases similarly identifying inherent authority as an independent basis for adverse inferences).[3] BOC likewise misses the mark in attempting to characterize the Court's inherent power as merely a "punitive" measure. BOC Br. 14. The case on which BOC relies, *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879 (S.D.N.Y. 1999), recognizes that in the context of a jury proceeding, "an 'adverse inference charge'. . . *serves to place the prejudiced party in the same position with regard to its ability to prove its case as it would have been*" absent the misconduct. *Id.* at 890 (emphasis added).

BOC's argument that the Court should excuse its contempt because Plaintiffs have been forced to pursue statutory damages is equally unavailing. Here, statutory damages are a proxy for the counterfeiters' profits, which cannot be ascertained as a direct result of BOC's misconduct. Whether characterized as profits or statutory damages, BOC's contemptuous conduct prevents Plaintiffs from recovering from the counterfeiters, because BOC has allowed the counterfeiters to conceal their funds behind the shield of Chinese bank secrecy law "to thwart Congress and the reach of the Lanham Act." ECF 158 at 12.

---

[3] BOC also erroneously states that Plaintiffs have failed to show that BOC possessed a "culpable state of mind" under *Residential Funding*. BOC Br. 14. As the Court explained in that case, knowing *or even negligent* misconduct suffices. 306 F.3d at 108. There is no doubt that BOC's willful refusal to obey this Court qualifies.

BOC contends that Plaintiffs cannot prove that the funds Defendants transferred to BOC were the proceeds of counterfeiting.  BOC Br. 19-21.  Importantly, BOC does not dispute Plaintiffs' evidence that transfers to BOC were made directly from the counterfeiters' business accounts at Chase, including an account in the name of "Ting Xu d/b/a/ Redtagparty."  ECF 71-1 at 3.  And Defendants' accounts at American Express, Global Payments, and Frontline—which processed sales from the websites (*see* ECF 71 at ¶¶ 7-11 (explaining the counterfeiters' use of Global Payments and Frontline); ECF 165-8 (Amex sales for account #5867); ECF 165-7 (Frontline account statement))—transferred funds to ***the very same accounts Defendants used to transfer more than $500,000 to BOC***.  *See* ECF 71 at Ex. 1-2 (wires to BOC from Chase accounts, including an account held by Redtagparty); ECF 138-11 ($50,000 wire transfer from account #5867).  BOC is not only aware of the Chase accounts Defendants used to hold the proceeds of their counterfeiting, but was specifically directed to provide records relating to these accounts and others.  *See* ECF 138-38 at 5 (2011 Subpoena).  BOC's refusal to provide account records is the sole reason Plaintiffs cannot provide more precision about the source of these funds.

Finally, BOC raises, yet again, the separate entity doctrine.  But that doctrine is irrelevant here.  ECF 75 at 5 n.6.  BOC's argument is also wrong, as this Court has specific personal jurisdiction over BOC's head office based on its deliberate use of correspondent accounts in New York to effectuate wire transfers for Defendants.  ECF 158 at 5.  This Court is not deciding whether to issue a turnover order but rather trying to determine the amount of the damage caused by BOC's failure to produce documents.  BOC's assertion that it might be able to defeat a turnover motion if it actually produced the documents is mere speculation.  *Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149 (N.Y. 2014) held that service of a restraining

notice on a bank branch in New York is insufficient to obtain jurisdiction over a foreign branch, but did not overturn *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 536 (N.Y. 2009). Nothing in *Motorola* precludes establishing jurisdiction over the foreign branch based on its own deliberate contacts in the jurisdiction.  *See Licci*, 20 N.Y.3d at 338-40.  In assessing the damage caused by BOC's contempt, this Court can infer that the records contemptuously withheld by BOC, if produced, would reveal additional deliberate use of correspondent accounts located in New York, which would provide further support for this Court's exercise of personal jurisdiction over BOC, if it ever came to ordering BOC to turn over Defendants' funds.

**B.     Daily Coercive Fines Are Also Appropriate**

Contrary to BOC's arguments, the daily coercive fine Plaintiffs request is tailored to coerce BOC finally to obey this Court's Orders.  *See Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982) (describing the proper considerations for setting a coercive fine).  BOC *does not dispute* that previous efforts to coerce its compliance have been unsuccessful, or that BOC's financial resources are great.  *See* ECF 164 at 22-24.  The fact that Plaintiffs suggested a $10,000 fine back in 2012 is not determinative as to amount.

**C.     BOC Is Not Entitled to a Stay**

BOC asks the Court to refrain from imposing sanctions or stay a contempt order pending an appeal to "give BOC yet further opportunity to delay proceedings and avoid compliance with" this Court's orders.  ECF 116 at 9; *see also* ECF 121 at 28:17-25 (describing BOC's established pattern of delay, including use of appeal). "[T]he Second Circuit has expressed a preference that district courts formulate contempt sanctions prior to appeal."  ECF 116 at 9 (citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 17-18 (2d Cir. 1992)).  BOC's argument is wholly at odds with the purpose of district court sanctions for discovery violations.

BOC, moreover, cannot establish it is entitled to a stay, which requires (1) a "strong

showing that [it] is likely to succeed on the merits," (2) that it will suffer irreparable injury absent a stay, (3) that issuance of a stay will not "substantially injure" Plaintiffs, and (4) that a stay is in the "public interest."  *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation omitted).  BOC neither acknowledges these factors nor argues that it has made the requisite showing.  It has accordingly forfeited any argument on these points.[4]

BOC argues that the Second Circuit previously "stayed this Court's contempt order" (BOC Br. 12), but that does not entitle BOC to a stay here.  In the prior appeal, the Second Circuit held that the previous orders underlying this Court's contempt order were not "clear and unambiguous" and that some of the sanctions were punitive.  *Gucci Am.*, 768 F.3d at 142-44. But that is not the case here.  Moreover, BOC would suffer no irreparable injury from sanctions, as its money could be returned to it if necessary, whereas this Court already has explained why BOC's continued intransigence substantially injures Plaintiffs and is contrary to the interests of the United States.  *See, e.g.*, ECF 158 at 13.[5]

## IV.   CONCLUSION

Plaintiffs respectfully request the relief requested in Plaintiffs' Opening Brief.

---

[4]  *See, e.g., United States v. 479 Tamarind Drive*, No. 98 Civ. 2279(DLC), 2012 WL 3886698, at *3 (S.D.N.Y. Sept. 7, 2012) ("It is well settled that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

[5]  The other cases BOC cites (BOC Br. 12) are inapposite.  *See OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 93 (2d Cir. 2006) (district court erroneously held non-party "in contempt as a party without sufficient explanation or citation to legal authority"); *In re Appl'n to Quash Subpoena to NBC*, 79 F.3d 346 (2d Cir. 1996) (district court erroneously found that nonparty was not entitled to journalists' qualified privilege under N.Y. Shield Law); *In re Am. Tobacco Co.*, 880 F.2d 1520, 1526 (2d Cir. 1989) (district court granted stay pending appeal in dispute over expert discovery); *In re Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981*, 657 F.2d 5 (2d Cir. 1981) ("John Doe" refused to comply with grand jury subpoena).

Dated:  New York, New York
           November 23, 2015

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:        /s/ Robert L. Weigel
           Robert L. Weigel
           Howard S. Hogan
           Anne M. Coyle
           Casey K. Lee
           GIBSON, DUNN & CRUTCHER, LLP
           200 Park Avenue
           New York, New York 10166
           (212) 351-4000

           *Counsel for Plaintiffs*

11