UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-30-15

GUCCI AMERICA, INC., *et al.*,

                                        Plaintiffs,

        -v-                                             No. 10-cv-4974 (RJS)
                                                        OPINION AND ORDER
WEIXING LI, *et al.*,

                                        Defendants.

RICHARD J. SULLIVAN, District Judge:

        On November 9, 2015, the Court ordered that non-party Bank of China ("BOC") show

cause as to why it should not be held in civil contempt and sanctioned for failing to comply with:

(1) the Court's September 29, 2015 Opinion and Order (the "September 29 Order"), compelling

BOC to produce all account documents requested in two subpoenas served in 2010 and 2011 (Doc.

No. 158); and (2) the Court's October 16, 2015 Order setting a compliance deadline of October

23, 2015 (Doc. No. 164).  (Doc. No. 162.)  In response to the Court's Order to Show Cause,

Plaintiffs and BOC submitted briefing (Doc. Nos. 164, 171 & 172), and, on November 24, 2015,

the Court heard argument on the motion.  For the reasons that follow, in addition to those stated

on the record at the November 24, 2015 hearing, the Court holds BOC in civil contempt and, in

the event that BOC fails to comply with the September 29, 2015 Order by December 7, 2015, the

Court imposes a coercive fine of $50,000 for each subsequent day of non-compliance.  The Court

also grants Plaintiffs' request for reasonable attorneys' fees and costs, and denies BOC's request

for a stay of this order pending appeal.

## I.   DISCUSSION

The Court presumes the parties' familiarity with the facts underlying this case, which were thoroughly discussed in the Court's August 23, 2011 Memorandum and Order (Doc. No. 75 ("August 23 Order")), May 18, 2012 Memorandum and Order (Doc. No. 98 ("May 18 Order")), and September 29 Order.

### A.   Civil Contempt

It is well established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal quotation marks omitted).  Specifically, Federal Rule of Civil Procedure 45(g) authorizes a court to "hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena or an order related to it."  *See also* 18 U.S.C. § 401 (authorizing courts "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command").  "The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of [it]."  *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986).  "Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases."  *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (collecting cases).  Thus, a court may hold a party or a non-party in civil contempt for failing to comply with a court order where: "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks

omitted).

Here, BOC concedes that the first two factors of *Paramedics* have been met (Transcript of Proceedings dated Nov. 24, 2015, at 16:2-9), but argues that it has diligently attempted to comply in a reasonable manner. "Reasonable diligence, at the very least, requires a party [or non-party] to develop reasonably effective methods of compliance." *Zino Davidoff SA v. CVS Corp.*, No. 06 Civ. 15332 (RJS), 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008); *see, e.g.*, *Cancer Research Inst., Inc. v. Cancer Research Soc'y, Inc.*, 744 F. Supp. 526, 530 (S.D.N.Y. 1990) (holding defendant in contempt for failure to implement "a plan of attack on compliance"). "Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." *Yurman Studio*, 2009 WL 454275, at *2 (citations omitted).

As a preliminary matter, BOC asserts that its disagreement with the September 29 Order, which found that the Court had jurisdiction over BOC for purposes of enforcing the subpoenas, and its intention to pursue an appeal with the Second Circuit constitute reasonable diligence to comply. However, BOC does not and cannot cite a single case or other authority to support that argument. This is not surprising, since accepting this proposition would effectively mean that any party could avoid compliance with a court's discovery order simply by arguing that it intends to pursue an appeal. Obviously, "reasonable diligence" must require more.

In any event, the Court has previously heard and rejected BOC's arguments with respect to the Court's jurisdiction over BOC in this matter. For its part, BOC has made clear, in writing and in conferences before the Court, that it does not intend to comply with the Court's orders, and it offers no new basis – in law or in fact – to justify its non-compliance. Indeed, BOC's written opposition to the Order to Show Cause points to the same two out-of-Circuit cases that it cited

when the Court first held BOC in contempt in 2012: *In re Sealed Case*, 825 F.2d 494 (D.C. Cir. 1987), and *In re Westinghouse Electric Corp. Uranium Contracts Litigation*, 563 F.2d 992 (10th Cir. 1977). For the same reasons stated in the Court's November 15, 2012 Order – which held BOC in contempt for its non-compliance with the August 23 Order (Doc. No. 116 at 7) – these cases are easily distinguishable and do not bar the Court from holding BOC in civil contempt for its failure to comply with the September 29 Order compelling compliance with the two subpoena requests. BOC has certainly not achieved "substantial compliance" in this case, as it has made no effort to turn over the subpoenaed account documents. Consequently, since BOC has shown no intention of complying with the Court's orders, the Court has little difficulty concluding that BOC's conduct satisfies the civil contempt standard.

### B. Contempt Sanctions

Civil contempt sanctions may be used to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989); *see United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989). "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014); *see also Manhattan Indus., Inc.*, 885 F.2d at 5 ("[C]ivil contempt proceedings must be remedial and compensatory, and not punitive." (internal quotation marks omitted)).

As an initial matter, Plaintiffs cite *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir. 1979), to argue that the Court *must* impose compensatory sanctions in the amount of $12 million – the entirety of the statutory damages to be levied against the Defendant counterfeiters.

However, *Vuitton* is inapplicable here.   In *Vuitton*, the Second Circuit found that compensatory damages against defendants were warranted where defendants did not comply with injunctions imposed by the court.   *Id.* at 130.   *Vuitton* did not concern a non-party like BOC, and Plaintiffs do not cite a single case where a non-party has been ordered to pay the damages attributable to the defendants' conduct in the underlying action as compensatory contempt sanctions.   Moreover, although *Vuitton did* hold that a court *must* impose compensatory sanctions to "restore the party" injured by noncompliance, it also indicated that damages may be awarded only "to the extent they are established," *id.*, and the Second Circuit remanded the case to the district court to allow plaintiff to "prove its damages" resulting from the contemnor's past non-compliance, *id.* at 131.   Here, Plaintiffs essentially ask the Court to treat BOC as Defendants' alter ego and to hold BOC responsible for all of the damages caused by the underlying infringement.   Of course, if Plaintiffs were to amend their pleading to assert claims for contributory infringement or vicarious liability against BOC, Plaintiffs might then be entitled to seek compensatory damages of this sort from BOC.   However, such claims would require that Plaintiffs prove either that BOC "was supplying its service to individuals who it knew or had reason to know were selling counterfeit [ ] goods" for contributory infringement, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010), or that BOC and Defendants "have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product" for vicarious liability, *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013).   Plaintiffs have made no such showing.   Accordingly, although the Court recognizes that a large obstacle to Plaintiffs' ability to prove their damages has been BOC's non-compliance with the subpoena requests for account information, the Court is unwilling to treat non-party BOC as an alter ego responsible for the entirety of the statutory damages owed to Plaintiffs by Defendants.

5

However, the Court agrees that a coercive sanction is warranted here in light of BOC's repeated failure to comply with the Court's orders.  When the purpose of a sanction is coercive, courts have "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982); *see also Vuitton*, 592 F.2d at 130 ("[T]he district judge, sitting in equity, is vested with wide discretion in fashioning a remedy.").  In devising a remedy for a party or non-party's civil contempt, courts must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [it]." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).  In essence, a fine must "be substantial enough to make it more economical for [BOC] to comply than not to comply." *Perfect Fit Indus., Inc.*, 673 F.2d at 57.

Applying these factors, the Court concludes that a fine of $50,000 per day for each day of non-compliance is necessary to coerce BOC into compliance with the Court's orders.  First, BOC's continued non-compliance has made it difficult – if not impossible – for Plaintiffs to prosecute their claims against Defendants for serious violations of U.S. law by preventing access to essential account information that would allow Plaintiffs to trace funds from the sale of counterfeited goods.  This harm extends beyond the particular Plaintiffs in this case, since the Lanham Act is designed to protect both mark holders and consumers who are the victims of schemes to sell counterfeit goods.  *See, e.g., Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012) ("The principal purpose of federal trademark law is to secure the public's interest in protection against deceit as to the sources of its purchases, and the businessman's right to enjoy business earned through investment in the good will and reputation attached to a trade

6

name." (alterations and internal quotation marks omitted)); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) ("[T]he underlying purpose of the Lanham Act . . . is protecting consumers and manufacturers from deceptive representations of affiliation and origin."). In sum, BOC's refusal to comply with U.S. law, while it continues to receive the benefits attendant to its banking activity in the United States, has inflicted a significant harm on Plaintiffs and the general public, thus warranting a coercive fine.

Second, given BOC's significant financial assets and its manifest determination to avoid compliance with the subpoena requests, the Court finds that only a large fine will have a coercive effect on BOC at this stage. This is especially true where BOC has continued to flout the Court's Orders since 2011 and has pursued delay tactics designed to avoid ever having to comply with the subpoena requests. For example, in seeking an extension of time in which to respond to the Court's September 29 Order, BOC indicated to the Court that it "has been diligently working to evaluate how it should respond to its conflicting obligations" and that the "work is ongoing, and BOC is awaiting the instructions of its domestic regulators." (Doc. No. 160.) Yet, at the November 24, 2015 conference before the Court, BOC made clear that it never had any intention of complying with the subpoenas. (Transcript of Proceedings dated Nov. 24, 2015, at 35:25-36:6 (Court: "[Y]ou told me you needed more time to talk to your client to tell me whether or not you [were] going to comply with my order. . . . There was no intention of complying with this order; I think that was pretty clear. Are you suggesting otherwise?" BOC's Counsel: "No, your honor.").) In short, this unwavering strategy of delay has made it increasingly difficult for Plaintiffs to prosecute their case against counterfeiters and leaves the Court with little alternative but to impose a significant sanction that will motivate BOC to comply with the Court's Orders.

Third, there is no question that BOC has the financial resources to pay this fine and that the burden the fine imposes will be relatively minimal in light of BOC's large size. In 2014, BOC's profits were approximately $27.8 billion. (Doc. No. 165, Declaration of Robert L. Weigel, dated Nov. 9, 2015, Ex. 14.) A $50,000 per day fine represents less than a tenth of a percent of BOC's average daily profits. The Second Circuit has approved fines far in excess of this amount, and the Court is well within its discretion in imposing a $50,000 per day fine on BOC for its continued non-compliance with the Court's Orders. *See, e.g.*, *Int'l Bus. Machines Corp. v. United States*, 493 F.2d 112 (2d Cir. 1973) (daily coercive fine of $150,000 which represented five percent of average daily earnings); *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009) (summary order) (fine of $100,000 per day doubling every thirty days).

Finally, although the Court recognizes that a fine of $50,000 per day represents a significant increase from the $10,000 per day fine imposed in the Court's initial contempt order in 2012, the Court finds that this increase is necessary to ensure swift compliance. (Doc. No. 116.) More than five years have elapsed since Plaintiffs first filed their Complaint (Doc. No. 1), and BOC's strategy of delay is far more evident today than it was in 2012, as BOC continues to refuse to comply with Court orders regarding the production of documents. Moreover, given the ease with which funds can be electronically transferred and the inherent difficulties in tracing proceeds from the sale of counterfeit goods, the delays caused by BOC have made it increasingly doubtful that Plaintiffs will *ever* be able to recover fully for the harms they have suffered. As such, the Court concludes that a fine of $50,000 per day of non-compliance is necessary to coerce BOC into providing the account information that is essential to Plaintiffs' ability to fully prosecute their case.

C.  Attorneys' Fees and Costs

The Court also grants Plaintiffs' request for attorneys' fees and costs incurred as a result of their motion to hold BOC in contempt.  "[T]he decision to award fees rests in the court's equitable discretion."  *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001); *see Weitzman v. Stein*, 98 F.3d 717, 719-20 (2d Cir. 1996) (contempt case noting that "trial courts enjoy considerable discretion in determining the appropriate amount of attorney fees"); *Casale v. Kelly*, 710 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) ("A court may award appropriate attorney fees and costs to a victim of contempt." (internal quotation marks omitted)). "When deciding whether to award fees, courts have focused on the willfulness of the contemnor's misconduct."  *Weitzman*, 98 F.3d at 719.  The Second Circuit has made clear that "to survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt."  *Id.*; *see also Manhattan Indus.*, 855 F.2d at 8 ("[C]ourts in this Circuit generally award the reasonable costs of prosecuting the contempt, including attorney's fees, only where violation of a court order is found to have been willful." (internal quotation marks omitted)).  Significantly, courts in this Circuit have awarded attorneys' fees where a party or a *non-party* willfully fails to comply with a subpoena.  *See, e.g.*, *Vuitton*, 592 F.2d at 130-31; *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No. 07-cv-3635 (DC), 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008) (holding non-party in contempt for ignoring subpoena and awarding costs); *Summit Bank v. Taylor*, No. 96-cv-7229 (BSJ), 1997 WL 811526, at *4 (S.D.N.Y. Nov. 12, 1997) (awarding attorneys' fees and costs against a non-party bank).

Here, the Court finds that BOC has acted willfully in flouting the Court's orders, including the September 29 Order.  BOC has repeatedly reiterated its intention not to comply with the

9

subpoena requests, including most recently at the November 24, 2015 conference.  And while BOC argues that its non-compliance is not "willful" in light of the asserted conflict between the Court's September 29 Order and Chinese bank secrecy law, the Court has already addressed this argument in its comity analysis in the September 29 Order, in which it found that Chinese law is not an absolute bar to the disclosure of this type of account information.  As the Court noted there, "[n]othing in the Beijing judgments suggests that China has an ironclad requirement of bank secrecy or that disclosure of the information requested by the 2010 and 2011 Subpoenas would expose BOC and its employees to serious criminal or civil liability in China."  (September 29 Order at 14.)  Moreover, the Second Circuit has previously endorsed the Court's comity analysis. *Gucci Am., Inc.*, 768 F.3d at 145.  Notwithstanding the foregoing, BOC has willfully refused to comply with the Court's September 29 Order.  Consequently, the Court has no hesitation in granting Plaintiffs' request for reasonable attorneys' fees and costs incurred by Plaintiffs in bringing the instant contempt motion.  Of course, the Court will not be able to assess the reasonableness of the fees and costs incurred until Plaintiffs' counsel submits declarations and time records setting forth those expenses.  Accordingly, Plaintiffs shall make such a submission no later than December 11, 2015.

### D.  Stay of Contempt Order Pending Appeal

Finally, for the reasons stated on the record at the November 24, 2015 hearing, the Court denies BOC's request for a stay of this contempt order pending appeal.  In evaluating whether to grant a stay, a court must consider four factors, including: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other

parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr.*
*Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal quotation marks omitted).

Here, BOC does not even attempt to argue that these four factors are satisfied in its written
response to the Order to Show Cause, nor could it.  First, BOC has not shown a likelihood of
success on the merits.  To the contrary, BOC has brought forth no new evidence or law to contradict
the Court's analysis in its September 29 Order, wherein the Court found that it had specific
personal jurisdiction over BOC and that a balancing of the comity factors in Section 442 of the
Restatement (Third) of Foreign Relations Law weighed in favor of requiring compliance with the
subpoenas.  Indeed, in remanding the case to this Court to consider in the first instance whether
the Court has specific personal jurisdiction over BOC, and, if so, whether recent Chinese court
decisions affect the comity analysis, the Second Circuit specifically noted that there was "no abuse
of discretion in [the Court's prior comity] analysis" and that "BOC's arguments to the contrary are
without merit."  *Gucci Am., Inc.*, 768 F.3d at 145.  Second, BOC will suffer no irreparable injury
from the imposition of monetary sanctions.  As noted above, given BOC's massive size, a
relatively minor fine of $50,000 per day will not substantially injure BOC and, in the unlikely
event of a reversal, any money paid out could be returned to BOC. *See, e.g. Borey v. Nat'l Union*
*Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991) ("Monetary loss alone
will generally not amount to irreparable harm.").  Third, given the multi-year delay that has already
prevented Plaintiffs from fully prosecuting their case, granting a stay would substantially injure
Plaintiffs by making it increasingly difficult for them to ever trace the funds at issue in this matter.
Finally, as discussed above, the public has a strong interest in enforcing U.S. law, including the
Lanham Act, which is designed to protect trademark holders and consumers from counterfeiters.

Accordingly, the Court concludes that BOC has not made the necessary showing to warrant a stay of this contempt order pending appeal.  Put simply, the Court will not tolerate any further attempt by BOC to delay these proceedings and thwart Plaintiffs' efforts to access account information that is essential to the prosecution of Plaintiffs' claims against rampant counterfeiters who have consciously used BOC to facilitate their illegal schemes.

## II. Conclusion

For the foregoing reasons, the Court holds BOC in civil contempt for failing to comply with the Court's September 29 and October 16 Orders.  The Court also sanctions BOC for its civil contempt, ordering that, if BOC does not comply with the September 29, 2015 Order by December 7, 2015, BOC shall pay to the Court a coercive fine of $50,000 for each subsequent day of non-compliance.

The Court also grants Plaintiffs' request for reasonable attorneys' fees and costs incurred in bringing the instant contempt motion.  Accordingly, IT IS HEREBY ORDERED THAT Plaintiffs shall submit, no later than December 11, 2015, an affidavit attesting to their attorneys' fees and costs incurred in bringing this contempt motion.  IT IS FURTHER ORDERED THAT BOC shall have until December 21, 2015 to submit its objections, if any, to Plaintiffs' attorneys' fees and costs calculations.

SO ORDERED.

Dated:      November 30, 2015
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE