UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUCCI AMERICA, INC., *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>– against –<br><br>WEIXING LI, *et al.*,<br><br>　　　　　　　Defendants. | 10 Civ. 4974 (RJS)<br><br>**NON-PARTY BANK OF CHINA'S OBJECTIONS TO PLAINTIFFS' FEE APPLICATION** |

　　　　Non-party Bank of China ("BOC"), through its undersigned counsel, respectfully submits these objections to the request by plaintiffs (collectively "Gucci") for attorneys' fees and costs, as set forth in the Declaration of Robert L. Weigel dated December 11, 2015, D.I. 185 (the "Fee Application").

　　　　On November 30, 2015, this Court entered an order (i) holding non-party BOC in contempt for failing to comply with the Court's orders of September 29, 2015 and October 16, 2015 (the "Compulsion Orders"), (ii) directing BOC to comply with the Compulsion Orders by December 7, 2015, and (iii) imposing a daily coercive fine of $50,000 for each subsequent day of non-compliance (the "Contempt Order"). Contempt Order, D.I. 176, at 12. The Court also granted Gucci's request for its "reasonable attorneys' fees and costs incurred in bringing the instant contempt motion." *Id.* The Court did not, however, grant Gucci's request for adverse inference sanctions against BOC and denied Gucci's request for compensatory contempt sanctions against non-party BOC in the amount of an as-yet-unentered default judgment against defendants. *Id.* at 4-5.

　　　　Almost all of the legal argument in Gucci's contempt motion and at oral argument was dedicated to requests that the Court did not grant, specifically, Gucci's requests that the

Court (i) impose adverse inferences on BOC and (ii) award compensatory contempt sanctions to Gucci in the amount of the $12 million in statutory damages that the Court was prepared to, but did not, enter as a default judgment against defendants in January 2011. It is therefore reasonable to presume that the bulk of the time Gucci devoted to preparing its briefs and argument was focused on those arguments, which lacked merit and correctly were rejected by the Court. Contempt Order, D.I. 176, at 4-5. Indeed, while most of counsel's descriptions lack specificity, it is evident that substantial effort was expended on the losing compensatory sanctions and adverse inference arguments. *See*, *e.g.*, 10/16/15 time entry for Robert L. Weigel (1.00 hour spent in part on reviewing cases on "damages for contempt"); 10/21/15 time entry for Casey K. Lee (7.40 hours spent in part on "e-mails re legal research re compensatory damages"); 10/27/14 time entry for Anne M. Coyle (3.60 hours spent in part on "[r]eview[ing] research re sanctions, cases re adverse inferences"); 10/26/15 time entry for Anne M. Coyle (4.00 hours spent in part on "review[ing] documents re defendants' business"); 10/29/15 time entry for Anne M. Coyle (1.30 hours spent in part on "[r]eview[ing] cases re adverse inference"); 11/02/15 time entry for Robert L. Weigel (1.50 hours spent in part on "work on adverse inference"); 11/02/15 time entry for Anne M. Coyle (0.20 hours spent in part on "email with K. Friedman re factual issues relating to defendants"); 11/03/15 time entry for Casey K. Lee (2.20 hours spent in part on "drafting of section re adverse inferences, research assignments to M. Policastro re same"); 11/04/15 time entry for Anne M. Coyle (1.20 hours spent in part on "[c]onfer K. Friedman re brief and review additional factual information re defendants' websites"); 11/17/15 time entry for Casey K. Lee (2.30 hours spent in part on "correspond[ing] with K. Friedman on adverse inference argument"); 11/18/15 time entry for Jason E. Neal (8.30 hours spent in part on "[r]esearch[ing] legal issues relating to compensatory sanctions for civil contempt"); 11/19/15

time entry for Jason E. Neal (3.30 hours spent in part on "[r]esearch[ing] legal issues relating to . . . court authority to draw adverse inferences").

Where "most of the arguments advanced . . . were *rejected* by the Court, which ultimately granted sanctions only on the narrowest of grounds," a claimant's "effort to obtain substantial compensation for the time [it] spent researching and drafting arguments on which [it] did not succeed is misplaced." *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW)(DF), 2012 WL 5816878, at *8 (S.D.N.Y. Nov. 24, 2012) (emphasis in original). Rather, the award "should be limited to the attorneys' fees reasonably incurred in obtaining the sanctions that were actually awarded." *Id.* (awarding only 25% of sanctions requested); *see also id.* at *9 ("Given Petitioner's modest 'degree of success' on the sanctions cross-motion, at least some reduction should be made to Petitioner's requested hours.") (citation omitted). The fees and costs associated with Gucci's unsuccessful arguments were not reasonably incurred, and they should not be included in the award.

BOC does not dispute that Gucci is entitled to be awarded its reasonable attorneys' fees expended to present its arguments for attorneys' fees and coercive contempt fines, which the Court granted (at a lower level than requested by Gucci). These arguments, however, were straightforward, relied on basic principles of law and cannot have required significant time to develop. Indeed, Gucci made essentially the same arguments in late 2012 when it sought to have BOC held in contempt, and re-presenting those arguments should therefore have required very little attorney time beyond updating legal research. The fees and costs Gucci seeks are excessive as compared to the limited effort required to present the arguments on which it succeeded, and the Court's award should be reduced as a result. *Id.* at *3 ("Where the requested amount of fees is excessive because the number of stated hours is greater than should have been

3

required, the Court should reduce the stated hours accordingly.") (citing *Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002)).

Unfortunately, it is not possible from Gucci's descriptions of the time spent on legal research and drafting associated with the contempt motion to discern how much of that time was devoted to the arguments the Court rejected. In fact, most of Gucci's counsel's time entries lack specificity about what was being researched or drafted, or, in the case of time that was block billed, how much time was devoted to particular tasks. D.I. 185-3. For this reason alone, the amount of fees and costs requested by Gucci should be discounted. *Thai-Lao Lignite*, 2012 WL 5816878, at *10-11 (concluding that where, as here, a fee application relies on block billing that is "insufficiently precise to enable the Court to assess the reasonableness of the hours spent on the stated tasks," a discount is warranted, and observing that "Courts frequently respond to vague and difficult-to-decipher billing statements with an across-the-board percentage reduction in the fees claimed, often in the range of 20-30 percent") (collecting cases).

As Gucci's arguments in support of compensatory contempt and adverse inference sanctions comprised the majority of its briefing and argument, and as Gucci's contemporaneous time records lack the specificity necessary to determine how much time was spent developing and briefing these arguments, BOC respectfully requests that the Court discount Gucci's fee request by 70% for this unnecessary work, and award Gucci no more than $51,338.24 in fees and costs. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (observing that the court may make percentage cuts in a fee application "as a practical means of trimming fat from a fee application"); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (approving a percentage reduction).

4

Dated: New York, New York
January 25, 2016

By: <u>/s/ David C. Esseks</u>
David C. Esseks
Laura R. Hall
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: 212-610-6300

5