GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Robert Weigel
Direct: +1 212.351.3845
Fax: +1 212.351.5236
RWeigel@gibsondunn.com

February 11, 2016

VIA CM/ECF AND E-MAIL

Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2104
New York, New York 10007
E-mail: SullivanNYSDChambers@nysd.uscourts.gov

Re:   Gucci America, Inc., et al. v. Weixing Li, et al., No. 2010 Civ. 4974 (RJS)

Dear Judge Sullivan:

Plaintiffs and nonparty Bank of China ("BOC") respectfully submit this joint letter in response to this Court's order dated February 1, 2016 directing the parties to meet and confer and then to apprise the Court of the status of BOC's production and any outstanding issues.

**Agreed Summary of Meet and Confer Efforts**

As the Court is aware, on January 20, 2016, BOC provided approximately 7,000 pages of Chinese language documents responsive to Plaintiffs' subpoenas. This production contained a number of Excel spreadsheets showing historical transaction data for some of Defendants' accounts.

Plaintiffs identified additional accounts for which spreadsheets had not been provided in their January 29, 2016 letter to the Court and, by letter to BOC dated February 3, 2016, Plaintiffs requested that BOC provide similar documentation for all Defendants' known accounts.

On February 4, 2016, BOC produced an additional 64 Excel account detail spreadsheets and 15 PDFs of account detail printouts that were not contained in the January 20, 2016 production. BOC has not produced any emails concerning Defendants.

On February 5, 2016, BOC provided a letter with additional information about its production and an additional summary of the documents that were produced on February 4, 2016.

Counsel for Plaintiffs and BOC met and conferred on February 5, 2016, and BOC agreed to provide additional information and documentation requested by Plaintiffs in their February 3, 2016 letter.

GIBSON DUNN

Honorable Richard J. Sullivan
February 11, 2016
Page 2

On February 9, BOC produced 29 pages of additional materials to Plaintiffs that had not previously been produced, consisting of Excel account detail statements for certain wealth management accounts held by two Defendants, pre-2002 records for an account owned by one Defendant, and transactions between April 1, 2010 and November 30, 2012 for an account owned by one Defendant.  Counsel met and conferred again on February 10, 2016.

To the extent BOC can confirm it possesses the following information, BOC has agreed to provide to Plaintiffs the following no later than February 26, 2016:

(1)  A spreadsheet reflecting all incoming and outgoing wire transfer records, including date of transfer, amount of transfer, currency of transfer, originating accountholder name, originating accountholder bank, originating account number, receiving accountholder name, receiving accountholder bank, and receiving account number; and

(2)  A spreadsheet cross-referencing old and new account numbers including accountholder, old account number, new account number, account type, account status, and associated debit cards and VIP cards.

Plaintiffs have requested and BOC's counsel has agreed to consult with BOC following the Chinese New Year holiday to determine whether the following information is available with respect to the above-listed spreadsheets:

(1) any identifying information about the sender and recipient of each wire transfer, including English and Chinese names, addresses and ID numbers; and

(2) sub-accounts, and any linked credit cards or other linked accounts or cards, including the account or card number of any sub-accounts or sub-cards, and their account holders.

BOC's counsel is consulting with its client and researching Chinese and U.S. law regarding whether BOC can legally disclose the existence of or produce Suspicious Activity Reports (SARs) concerning Defendants as called for by Request No. 8 of the first subpoena.

In addition, counsel will confer with its client and confirm the following:

- BOC will either produce any non-privileged internal Bank emails concerning Defendants or confirm none exist;
- BOC will confirm that no transactions occurred in any of the Defendants' accounts after October 2015 except the crediting of interest for open accounts;
- BOC will investigate the questions posed by Plaintiffs about the litigation documents that have been produced and will confirm that the final versions of all such documents have been produced.  In addition, BOC will investigate whether the plaintiffs in the Chinese litigation (Defendants in this action) submitted any evidence or briefing in support of

GIBSON DUNN

- their complaint or in opposition to BOC's counterclaim, or any brief to the appellate court;
- BOC will provide answers to Plaintiffs' requests for clarification of account spreadsheet details with respect to the Excel spreadsheets produced on January 20, February 5, and February 9;
- BOC will either produce the most up-to-date contact information in its records for each of Defendants or confirm that the current contact information for each Defendant has already been produced;
- BOC will investigate whether it has produced all responsive documents from its pre-2002 hard copy archives concerning Defendants' accounts or confirm that such documents have been provided;

BOC's counsel has agreed to consult with BOC to determine whether it is feasible to identify accounts held by Defendant Lijun Xu by running a search of the name Lijun Xu against the addresses of Lijun Xu's wife Ting Xu, as well as the addresses of Ting Xu's mother and brother, Peiyuan Zhao and Lei Xu.

Finally, BOC has not yet produced a privilege log but intends to do so if there are otherwise responsive documents over which BOC asserts privilege.

**Plaintiffs' Position**

Although BOC represented to this Court that it was in substantial compliance with this Court's orders as of January 20, 2016, it is Plaintiffs' position that the Bank was not in substantial compliance as a result of the deficiencies catalogued in Plaintiffs' letter dated January 29, 2016, and especially BOC's failure to provide account statements reflecting the details of historical account transaction information for dozens accounts. BOC contends that it was under no obligation to produce spreadsheets pulled from its internal database, claiming that such statements are work product it created. Contrary to BOC's position, the Bank's production of electronically stored information in its systems did not require BOC to "create" documents. *See, e.g., Health Alliance Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007) ("[P]roducing limited data from a larger database is more akin to reviewing a set of documents in response to a discovery request and producing only responsive documents, than it is to creating a new data compilation or document . . . ."); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 683 (N.D. Cal. 2006) (ordering third party to litigation to "extract . . . information requested from its existing systems," even though entity "d[id] not maintain . . . that information in the ordinary course of business in the format requested," and rejecting argument that such action would require improper "creat[ion]" of new documents).

Plaintiffs are still in the process of confirming whether BOC has produced records for all known accounts based on the additional materials produced by the Bank in the past week. But the meet and confer process confirms that BOC still has not made a reasonable inquiry as

**GIBSON DUNN**

Honorable Richard J. Sullivan
February 11, 2016
Page 4

to specific categories of documents that were specified with particularity in the subpoenas, such as Suspicious Activity Reports, had not searched its email systems for responsive documents, or taken simple steps to ensure that it had produced all records for all Defendants. In addition, Plaintiffs are awaiting the information and clarification from BOC noted above.[1]

If the Bank provides this additional information by February 26 as promised, Plaintiffs see no reason for the imposition of additional coercive fines. However, the representation that BOC made to this Court that BOC's production was complete on January 20 was not accurate, as the Bank had not provided more than 64 critical electronic account statements, or confirmed basic things such as the existence of internal emails concerning the Defendants or Suspicious Activity Reports. BOC received the subpoenas years ago and had months after this Court's September 29, 2015 order compelling production to collect and review the documents in their possession or control responsive to the subpoenas. Haste is not an excuse for BOC's failure to produce all of its responsive documents—as claimed—on January 20. Even assuming BOC's compliance was substantial as of February 4 when it produced the additional 64 spreadsheets and 15 PDFs withheld on January 20, the Bank saved itself $700,000 in fines by prematurely certifying its production was complete. Plaintiffs respectfully submit that sanctions are appropriate, including an award of the attorneys' fees that Plaintiffs were forced to incur as a result of time spent meeting and conferring with counsel for BOC as well as drafting letters to both this Court and the Bank's counsel pointing out deficiencies in BOC's production. *See Fendi Adele S.R.L. v. Filene's Basement, Inc.*, No. 06 Civ. 244 (RMB) (MHD), 2009 WL 855955, at *8 (S.D.N.Y. Mar. 24, 2009) (sanctioning party's "pattern of non-production of documents, coupled with false assurances that [defendant] had produced all of its documents" and finding that "excess expenses, whether in the form of repeated phone calls, letters sent, time spent in some of the conferences on this topic . . . were plainly attributable to defendants' repeated and extended discovery defaults" and therefore "it is appropriate to impose that monetary burden on defendants."). At every turn, BOC has made it as difficult and expensive as possible for Plaintiffs to obtain the documents they need to enforce their rights against the counterfeiters. At a minimum, Plaintiffs request that the Court take into consideration BOC's conduct in awarding Plaintiffs the full amount of attorneys' fees incurred in the contempt proceedings.

Furthermore, as indicated in our letters to the Court dated January 29 and February 2, 2016, BOC's production to date indicates that it allowed Defendants to drain dozens of accounts after the Second Circuit upheld this Court's authority to freeze Defendants' assets in China and while this Court was considering Plaintiffs' motion to compel on remand. Indeed, our

---

[1] In addition, although BOC has said it will produce a privilege log, it has not done so yet and may never produce an adequate log. As set forth in our prior letters, Plaintiffs' position is that the failure to timely assert privilege and produce a privilege log operates as a waiver. *See* Fed. R. Civ. P. 45(e)(2)(A); S.D.N.Y. Local Civ. R. 26.2(b).

preliminary analysis indicates transfers out of *forty-five* restrained accounts of approximately **13,673,318 RMB—more than $2 million—**(including proceeds from the liquidation of Defendants' investment accounts) *after* the Bank was undisputedly on notice of the preliminary injunction and its application to *all* specific individual Defendants and their identified accounts.

Accordingly, Plaintiffs intend to seek relief from this Court for the Bank's deliberate assistance of the Defendants' brazen violations of this Court's asset freeze once the Bank has finally provided all outstanding information concerning the Defendants' accounts and transfers of funds.

**BOC's Position**

Since BOC's production of thousands of documents on January 20, 2016, we have proactively engaged with counsel for Gucci, including participating in several conference calls and drafting letters responding to Gucci's questions so that they may better understand the Chinese bank account records and to negotiate a protective order. [2] In our February 5 letter, we agreed to create new documents to organize the information produced, despite having no obligation to do so, [3] subject to Gucci's agreement not to argue that creation and protection of such documents waives attorney client privilege or work product protection with respect to the subject matter.

The bulk of information generated and produced has been Defendants' bank account information, but BOC has also produced all the pleadings in the Chinese litigation in its possession. In response to inquiries by Gucci's counsel, BOC has confirmed that it has not had any written communications with Defendants, and has not had any written communications with Defendants' counsel outside of court. To further cooperate with Gucci, BOC is in the process of confirming whether it possesses any non-privileged internal communications concerning Defendants, and will produce any such documents.

During this meet and confer period, BOC has made supplemental productions of documents, on February 4 and February 9, including spreadsheets showing account information that were generated by BOC in order to provide further assistance to Gucci and its counsel. Some of the documents produced were only made available after a hand-search of archives conducted by BOC. As discussed above, by the conclusion of the meet and confer process, BOC intends to produce a privilege log of withheld documents.

---

[2] The draft protective order remains under negotiation, but Gucci has agreed to hold the documents produced by BOC confidential pending agreement on and entry of the order.

[3] *See, e.g., Nunez v. City of New York*, No. 11 Civ. 5845(LTS)(JCF), 2013 WL 2149869, at *6 (S.D.N.Y. May 17, 2013) (denying motion to compel with respect to request that defendants create "an easy-to-understand list or index" of information they had produced) (internal quotation marks and modifications omitted).

GIBSON DUNN

Honorable Richard J. Sullivan
February 11, 2016
Page 6

Counsel for BOC and Gucci have worked together constructively since the Court's February 1 meet-and-confer order to resolve questions about the scope of the production and to explain the account information. We affirm our earlier position that BOC is in substantial compliance with the Plaintiff's first and second subpoenas, and we remain committed to cooperating with Plaintiff to enable them to use the information provided to pursue their investigation of Defendants' wrongdoing.

As to any request by Plaintiff with respect to attorney's fees or additional sanctions, we reserve our right to present evidence to the Court of our compliance and good faith. We believe these issues are more appropriately addressed at the end of what has been a constructive meet-and-confer process.

Respectfully submitted,


/s/ Robert L. Weigel

Robert L. Weigel, counsel to Plaintiffs


/s/ Pamela Chepiga

Pamela Chepiga, counsel to nonparty Bank of China

GIBSON DUNN