UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



GUCCI AMERICA, INC., *et al.*,

                Plaintiffs,

-v-

WEIXING LI, *et al.*,

                Defendants.

No. 10-cv-4974 (RJS)
DEFAULT JUDGMENT AND ORDER

RICHARD J. SULLIVAN, District Judge:

On June 25, 2010, Plaintiffs commenced this action against Defendants Weixing Li (also known as Xin Li), Lijun Xu (also known as Jack London), Ting Xu (also known as Jack London, Xu Ting, and Rebecca Xu), Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao, Peiyuan Zhao, and Vivian Peng (also known as Peng Guangyu), all doing business as Redtagparty, Myluxurybags.com, Kuelala.com, Xpressdesigners.com, Xpressdesigner.net, and Designer Handbags, along with various unknown Defendants identified merely as ABC Companies and John Doe individuals, alleging claims of unlawful trademark infringement, trademark counterfeiting, false designation of origin, trademark dilution, unfair competition, and deception under federal and New York law as a result of their unauthorized use of trademarks owned by Plaintiffs. (Doc. No. 1.) Plaintiffs subsequently filed several amended complaints, including the Third Amended Complaint filed on April 22, 2016. (Doc. No. 211.)

On June 25, 2010, the Court issued an order (the "June 25 Order") restraining Defendants from, *inter alia*, manufacturing, distributing, delivering, shipping, importing,

exporting, advertising, marketing, promoting, selling or otherwise offering for sale Counterfeit Products[1] or any other products produced by Plaintiffs or confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks. (Doc. No. 3.) The Court also ordered Defendants to appear on July 9, 2010 to show cause why the Court should not issue an order granting a preliminary injunction, and further ordered Defendants to respond to Plaintiffs' discovery requests by July 8, 2010. (*Id.*)

On July 12, 2010, Plaintiffs filed an affidavit of service indicating that they served Defendants Lijun Xu and Weixing Li with (i) the Summons and Complaint, dated June 25, 2010, (ii) the Declaration of Michael F. Falsone, dated June 24, 2010, together with the exhibits thereto; (iii) the Declaration of Stacy Feldman, dated June 24, 2010, together with the exhibits thereto; (iv) the Declaration of Robert L. Weigel, dated June 24, 2010, together with the exhibits attached thereto; (v) the Memorandum of Law in Support of Plaintiffs' Ex Parte Application for Temporary Restraining Order, Asset Restraining Order, Expedited Discovery Order, and Order to Show Cause for Preliminary Injunction, dated June 24, 2010; and (vi) the Temporary Restraining Order, Asset Restraining Order, Order Authorizing Expedited Discovery, and Order to Show Cause, dated June 25, 2010. (Doc. No. 11.)

Defendants (other than Lijun Xu) failed to comply with the June 25 Order to show cause by failing to appear before the Court on July 9, 2010 and failing to submit any opposition

---

[1] As used in this Order, the terms "Counterfeit Products," "Plaintiffs' Products," and "Plaintiffs' Marks" carry the definitions set forth in Plaintiffs' Complaint, First Amended Complaint, Second Amended Complaint, and Third Amended Complaint. (Doc. Nos. 1, 18, 55, 211.)

2

papers to the Court. (Doc. No. 5.) On July 12, 2010, the Court granted Plaintiffs' motion for a preliminary injunction and expedited discovery. (Doc. No. 12 (the "July 12 Order").) Plaintiffs served Defendants Weixing Li and Ting Xu with copies of the Preliminary Injunction via email.

On October 4, 2010, Plaintiffs filed an Amended Complaint naming Defendant Ting Xu. (Doc. No. 18.) Plaintiffs filed an affidavit of service as to Defendant Ting Xu with the Summons and Amended Complaint on October 8, 2010. (Doc. No. 20.) On March 10, 2011, Plaintiffs filed a Second Amended Complaint adding the name Xin Li as an alias used by Defendant Weixing Li and substituting Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao, and Peiyuan Zhao (collectively, the "New Defendants") in place of certain John Doe Defendants. (Doc. No. 55.) The Court issued an order directing alternative service of process upon the New Defendants pursuant to Fed. R. Civ. P. 4(f)(3). (Doc. No. 72 (the "Alternative Service Order").) Pursuant to the Alternative Service Order, Plaintiffs effectuated service of the Summons, Second Amended Complaint, July 12 Order, and Alternative Service Order upon the New Defendants. (Doc. No. 76.)

On November 1, 2010, a final judgment on consent was entered by the Court against Defendant Lijun Xu. (Doc. No. 21.) Plaintiffs filed a Third Amended Complaint naming Vivian Peng (also known as Peng Guangyu) as a Defendant. (Doc. No. 211.) On August 3, 2016, a final judgment on consent was entered by the Court against Defendant Vivian Peng. (Doc. No. 224.)

In the June 25 Order and the July 12 Order, the Court ordered that any money, stocks, bonds, real or personal property, or other assets of Defendants (collectively "Defendants'

3

Assets") were enjoined from being transferred, disposed of, secreted, or otherwise made unavailable to provide final relief to Plaintiffs. The terms of the asset restraint provisions of the June 25 Order and July 12 Order were made applicable to any banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real or personal property, and all persons acting in concert or in participation with any of the Defendants who are in possession of Defendants' Assets (collectively, "Defendants' Assets Holders"). Plaintiffs' original and amended complaints made clear that Plaintiffs would seek the relief provided herein and monetary damages in excess of $330,000,000. (*See* Doc. Nos. 1, 18, 55, and 211.)

Defendant Weixing Li has not answered the Complaint, and the deadline to answer has expired. Defendant Ting Xu has not answered the Amended Complaint, and the deadline to answer has expired. The New Defendants have not answered the Second Amended Complaint, and the deadline to answer has expired. On August 8, 2016, the Clerk issued a Certificate of Default as to Defendants Weixing Li, Ting Xu, and the New Defendants (Doc. No. 226), and on August 25, 2016, the Court issued an Order to Show Cause as to why default judgment should not be entered against Defendants Weixing Li, Ting Xu, and the New Defendants, directing them to submit a written response by September 9, 2016, and to appear for a hearing on September 15, 2016. Since then, Defendants Weixing Li, Ting Xu, and the New Defendants have not made any submission to the Court and did not appear at the September 15, 2016 hearing.

Throughout the litigation in this case, which began over six years ago, Defendants have failed to appear in court, refused to answer the complaints or make any submissions, defied

4

court orders, and deliberately arranged matters to make it impossible for others to comply with court orders. Safely ensconced overseas, Defendants have enriched themselves at others' expense, in gross violation of the law, while openly obstructing the Court's enforcement of the law. Accordingly, for the reasons stated on the record at the September 15, 2016 hearing,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

1. Defendants Weixing Li (also known as Xin Li), Ting Xu (also known as Jack London, Xu Ting, and Rebecca Xu), Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao, and Peiyuan Zhao, all doing business as Redtagparty, Myluxurybags.com, Kuelala.com, Xpressdesigners.com, Xpressdesigner.net, and Designer Handbags (collectively, the "Defaulting Defendants"), their agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them are permanently enjoined from:

   (a) manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling, or otherwise offering for sale Counterfeit Products or any other products produced by Plaintiffs or confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

   (b) making or employing any other commercial use of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark

confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(c) using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that the Defaulting Defendants' products or activities are in any way sponsored, licensed, or authorized by or affiliated or connected with Plaintiffs; and

(d) doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by the Defaulting Defendants come from Plaintiffs or their licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs; and

(e) moving, returning, or otherwise disposing of, in any manner, any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks; and

 (f) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, or displaying of all unauthorized products which infringe Plaintiff's Trademarks; and

 (g) further diluting and infringing all Plaintiffs' Marks and damaging Plaintiffs' goodwill; and

 (h) otherwise competing unfairly with Plaintiffs or any of their authorized licensees in any manner; and

 (i) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (h), or effecting any assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (h).

2. The Defaulting Defendants shall recall and remove from all stores, shops, markets, outlets, catalogues, websites, or other channels of commerce any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs'

Marks, that are in the Defaulting Defendants' possession or control and all means of making the same;

3. The Defaulting Defendants shall deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in the Defaulting Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

4. The Defaulting Defendants shall deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of the Defaulting Defendants bearing any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

5. The Defaulting Defendants shall supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

6. The Defaulting Defendants shall, for the reasons stated on the record at the September 15, 2016 hearing, pay Plaintiffs statutory damages of $37,000,000 (the "Damages Award") in lieu of an award of actual damages and profits, pursuant to 15 U.S.C. § 1117(c);

7. In accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, all Asset Holders of the Defaulting Defendants who receive notice of this order by personal service or otherwise are ordered to liquidate the assets of the Defaulting Defendants that have been previously identified as frozen or otherwise restrained in compliance with the July 12 Order, and pay the value of such assets to Plaintiffs in partial satisfaction of the Damages Award. This includes, but is not limited to: (*i*) any and all Global Payment accounts that are associated with or utilized by the Defaulting Defendants, including but not limited to, accounts held by or on behalf of the Defaulting Defendants; (*ii*) any and all accounts with any and all financial institutions (except Bank of China, which has separately resolved its related disputes with Plaintiffs), including but not limited to JPM Chase Bank, Wells Fargo Bank, and Bank of Communications, including but not limited to Bank of Communications account number 910001374550, that are associated with, utilized by, and/or held by or on behalf of the Defaulting Defendants; and (*iii*) any and all PayPal, MasterCard, Visa, American Express and/or Discover credit or debit card payment accounts that are associated with or utilized by the Defaulting Defendants, and the financial institutions responsible for processing credit or debit card purchases that are associated with or made in connection with www.Myluxurybags.com, www.Kuelala.com, or any other of the Defaulting Defendants' websites offering for sale Counterfeit Products;

8. In accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, in addition to liquidating the assets of the Defaulting Defendants identified

in Paragraph 7 above and paying them to the Plaintiffs as set forth above, any person currently holding any other assets of the Defaulting Defendants ("Defaulting Defendants' Assets") and any persons who come into the possession of the Defaulting Defendants' Assets who receive actual notice of this order by personal service, registered or certified mail, or other means reasonably calculated to give actual notice are permanently restrained and enjoined from transferring, disposing of, secreting, or otherwise paying or transferring into or out of any accounts associated with or utilized by the Defaulting Defendants, any Defaulting Defendants' Assets that may be identified in the future and/or that have not yet been frozen, without prior approval of the Court, and shall respond to an information subpoena consisting of written questions within seven days of its receipt.  To the extent that such additional Defaulting Defendants' Assets may be necessary to satisfy any remaining unpaid portion of the Damages Award, the Asset Holders are directed to liquidate the Defaulting Defendants' Assets and take such other steps as may be reasonable and appropriate to pay the value of the Defaulting Defendants' Assets to Plaintiffs up to the amount of the Damages Award.  Plaintiffs shall not collect any assets in excess of the amount of the Damages Award and shall promptly return any funds received in excess of the Damages Award to the Defaulting Defendants;

9. The Defaulting Defendants shall file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of this Default Judgment an account setting forth in detail the manner and form in which they have complied with the terms of this Default Judgment; and

10. The Clerk of the Court shall close this case and remove it from my docket, without prejudice to Plaintiffs' ability to: (a) enforce this Default Judgment or any outstanding

obligations to comply with the discovery provisions of this Court's prior orders; (b) file a motion to find any of the Asset Holders in contempt of this Court's orders; or (c) make an application to reopen this matter in the event it is necessary to pursue sanctions for any violations of this Default Judgment.

SO ORDERED.

Dated:     September 30, 2016
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE