G9f2gucH

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GUCCI AMERICA, INC., et al.,

                Plaintiffs,              New York, N.Y.

           v.                            10 Civ. 4974(RJS)

WEIXING LI, et al.,

                Defendants.

------------------------------x
                                         September 15, 2016
                                         11:15 a.m.


Before:

                 HON. RICHARD J. SULLIVAN,

                                         District Judge



                         APPEARANCES


GIBSON, DUNN & CRUTCHER, LLP
     Attorneys for Plaintiffs
BY:  ROBERT L. WEIGEL
     KIMBERLY LINDSAY FRIEDMAN
```

1           (Case called)

2           THE COURT:  Let me take appearances for the plaintiff.

3           MS. FRIEDMAN:  Kimberly Friedman, Gibson, Dunn &
4   Crutcher, your Honor.

5           THE COURT:  Ms. Friedman, good morning.  And with you
6   at counsel table?

7           MR. WEIGEL:  Robert Weigel from Gibson Dunn.

8           THE COURT:  Mr. Weigel, good morning to you.

9           I will note for the record that that there is nobody
10  else here; not a shock, perhaps, but the defendants are
11  certainly not here, although I believe they have been noticed.

12          We are here on order to show cause as to why a default
13  judgment should not be entered against the remaining defendants
14  in this case.

15          I have a declaration from Mr. Weigel, I have a
16  certificate of default from the Clerk of the Court,  and
17  proposed judgment from Mr. Weigel.  What plaintiffs are
18  proposing is that I enter a judgment with statutory damages of
19  $37 million.

20          MR. WEIGEL:  Yes, your Honor.

21          THE COURT:  As well as some other injunctive relief
22  and things.

23          MR. WEIGEL:  Your Honor, Ms. Friedman is going to
24  argue this.

25          THE COURT:  Oh, okay.  All right.

1             So, Ms. Friedman, here is my question for you, and
2    maybe I just missed it.  It wasn't clear from the clerk's
3    certificate of default or from your declaration.  So I have got
4    four different complaints that have been filed in this case.  I
5    have got the third amended complaint, which Mr. Weigel
6    described as the operative complaint, I think.  So was that
7    complaint served on all of these defendants?
8             MS. FRIEDMAN:  Yes, your Honor.  The third operative
9    complaint, which added Vivian Peng as a defendant, was served
10   and a certificate of service was filed with this court.  It was
11   served via e-mail and to the same mailing address that your
12   Honor asked us to effectuate service.
13            THE COURT:  For all the defendants.
14            MS. FRIEDMAN:  Yes.
15            THE COURT:  Not just for Ms. Peng.
16            MS. FRIEDMAN:  All of the defendants are operating the
17   Web sites and their businesses from the same exact address.
18            THE COURT:  Because I think --
19            MR. WEIGEL:  Your Honor, perhaps I can clarify just
20   one thing.
21            THE COURT:  Yes.
22            MR. WEIGEL:  The third amended -- or the second
23   amended complaint is the same complaint with just some
24   additional assertions against Ms. Peng.  Ms. Peng has appeared
25   by counsel and we reached a settlement with her.

1       THE COURT:  Right.

2       MR. WEIGEL:  All the other individuals were served
3  originally --

4       THE COURT:  I know they were served originally, right.

5       MR. WEIGEL:  -- and chose not to appear.  So this was
6  posted on ECF.  I believe we served some of those individuals
7  by --

8       THE COURT:  For the original complaints you are
9  talking about or not the original complaint?

10      MR. WEIGEL:  We served the first amended complaint on
11 a number of individuals pursuant to your Honor's order by
12 publication.

13      THE COURT:  What the clerk said, maybe the clerk has
14 misstated it, but what the clerk said is that, pursuant to the
15 federal rules and the court's June 2010 and June 2011 orders, a
16 copy of the summons and complaint was served on defendant
17 Weixing Li on July 7, 2010; a copy of the amended complaint was
18 served on defendant Ting Xu on October 8, 2010; a copy of the
19 second amended complaint was served on defendants, and it lists
20 the remaining defendants, on August 11, 2011.

21      So it doesn't say anything about the third amended
22 complaint, which is described as the operative complaint, I
23 think, according to you, Mr. Weigel, and it is not clear to me
24 whether defendant Weixing Li has been served with anything
25 other than the original complaint.  I am not sure that that

1    matters, but it may matter because there are some different

2    allegations in the different complaints, right?

3             MR. WEIGEL:  The amendment --

4             MS. FRIEDMAN:  To clarify, I'm sorry, your Honor, we

5    did serve Weixing with the second amended complaint along with

6    the additional defendants that were added pursuant to your

7    order directing alternative service via e-mail and also via

8    personal service.

9             THE COURT:  That's really what I wanted to make sure.

10   As I said, I suspected that this might be a problem just with

11   the clerk's certificate.  On the face of the clerk's

12   certificate, it looks as though the first named defendant,

13   Weixing Li, was only served with the first complaint.  But you

14   are tell me that he or she -- I'm not sure which -- has been

15   served with all the complaints.

16            MS. FRIEDMAN:  Correct.

17            THE COURT:  And everybody has received a copy of the

18   latest complaint, which is the third amended complaint, right?

19            MS. FRIEDMAN:  Correct.

20            THE COURT:  And for some reason the certificate of

21   default doesn't say anything about the third amended complaint.

22            MS. FRIEDMAN:  The third amended complaint, perhaps

23   that's because it serves to add Vivian Peng as a defendant, and

24   we since have -- we are not seeking a default against her.  So

25   she, in terms of the additions that were made to the third

1    amended complaint, which we describe as the operative complaint
2    because it is the most recent one, those additions with regards
3    to her are not relevant for the purposes of the default we are
4    seeking since we are not seeking a default against Ms. Peng.
5             THE COURT:  That may be.  I'm just not sure, if the
6    third amended complaint is the operative complaint and
7    Mr. Weigel's declaration is largely based on facts alleged in
8    the third amended complaint, it could matter if there are facts
9    in the third that aren't in the preceding three if defendants
10   weren't served with the third.
11            MS. FRIEDMAN:  Correct.
12            THE COURT:  Am I making myself unclear?  I probably
13   am.
14            MS. FRIEDMAN:  The facts that are set forth in the
15   declaration are primarily based upon the original moving papers
16   for the temporary restraining order in addition to the facts
17   alleged in both the first and second amended complaint.
18            THE COURT:  So there are 74 violations is basically
19   total, right?
20            MS. FRIEDMAN:  Correct.
21            THE COURT:  And those 74 violations are contained in
22   the second amended complaint as well?
23            MS. FRIEDMAN:  Yes, where the new defendants are
24   substituted for the John Does.
25            THE COURT:  Yes, all right.

1     MS. FRIEDMAN:  So the third amended complaint does add
2  an additional defendant, but one we are not seeking a default
3  judgment against, Ms. Peng.
4     THE COURT:  Okay.  I think that that solves my
5  problem.  I just wanted to make sure that I don't have a
6  defendant running back to me saying, well, yeah, I defaulted
7  and I should have had a judgment against me on liability, but
8  these damages that you have imposed are not justified by what I
9  was served with, and I didn't have notice of other stuff.  I
10 don't think that could be said at this point.  Do you agree?
11    MS. FRIEDMAN:  Yes, your Honor.  Correct.
12    THE COURT:  I have read your declaration.  I am
13 familiar with the law in this area.  I am familiar with the
14 discretion that I have.  It's a whopping amount of discretion,
15 basically from practically nothing all the way to over $100
16 million in statutory damages.  I guess 2 million per violation
17 is the maximum, I have got 74 violations, which would get me, I
18 guess, $148 million worth of damages.  I could do that if I
19 wanted to do it.  You are asking me to not be so tough and only
20 impose a quarter of that, so $37 million, right?
21    MS. FRIEDMAN:  Correct, your Honor.
22    THE COURT:  And the main reason that is set forth in
23 the declaration -- that's still a lot of money obviously,
24 whether you can collect on it, who knows -- but the point being
25 that these folks have not merely failed to show, they have not

1  merely absented themselves, they have effectively defied court
2  orders. They have taken steps that would have made it
3  impossible for others to comply with court orders. They have
4  remotely done everything they could to frustrate the plaintiffs
5  and the court from proceeding with this litigation which began,
6  let us all remember, back in 2010.
7          MS. FRIEDMAN: Correct. And we feel that the record
8  has established, over the past five years, especially as we
9  have gotten documents from third parties, a level of
10 willfulness among the defendants that was not known to us to be
11 true when we initially filed the action that would warrant your
12 Honor to allot damages in the amount of $500,000 per category
13 of good.
14         THE COURT: I guess one question or one response that
15 somebody might have is, well, you settled with certain of the
16 defendants for a fraction, a tiny fraction of that, and so
17 shouldn't the court have to inquire as to why some folks are
18 settling for pennies and others are going to be on the hook for
19 a $37 million judgment?
20         MS. FRIEDMAN: Correct.
21         THE COURT: What's the basis? I don't know enough
22 about what went into the settlements with a handful of the
23 defendants, but what justifies it?
24         MS. FRIEDMAN: Our first settlement with Ms. Xu an
25 initial defendant to the original complaint was for $407,000,

1 so not pennies necessarily, and as part --

2 THE COURT: That's not pennies.

3 MS. FRIEDMAN: And as part of that settlement and with
4 Ms. Peng earlier in August of this year, they both agreed to
5 stop operating their businesses, to close their bank accounts,
6 to no longer be part of these Web sites.

7 THE COURT: And what is the settlement for Ms. Peng,
8 the dollar value.

9 MR. WEIGEL: Nominal dollars, your Honor. Part of the
10 calculus was this case was filed in 2010. Ms. Peng received
11 money from this. She hired lawyers. She was going to come in
12 and fight it. It was rather than let this case drag out for
13 another several years, they maintain she was sort of an
14 ancillary player.

15 THE COURT: That's the point. She is not anybody who
16 is moving assets out of Chinese bank accounts or litigating in
17 China in order to get Chinese authorities to prevent the Bank
18 of China or others from complying with court orders and
19 subpoenas. So she has got no fingerprints on those things
20 which are the most, I guess, the most glaring examples of
21 willfulness.

22 MR. WEIGEL: And, in fact, also Ting Xu and some of
23 the others we mentioned were also operating other Web sites
24 prior to this and had been --

25 THE COURT: So Ms. Peng is not in that category

G9f2gucH

1      either.

2              MR. WEIGEL:  She is not in that category.

3              THE COURT:  All right.  I think I have heard enough.
4      I am going to issue an order for a default judgment with
5      statutory damages of at least $37 million.  I might go higher
6      than that.  I have no tolerance for this kind of nonsense.  I
7      think I have made that pretty clear throughout this proceeding,
8      but also in other proceedings, some of which I think have
9      included at least you firm, maybe even the same client, I don't
10     remember, but I just think that this is not only a statute,
11     there is also a criminal analog.  This is clearly criminal
12     conduct that people lose their liberty over in some cases.
13     What goes on here and what has gone on here in this case is
14     very serious.  I think it is incredibly serious.  I think it
15     goes to the heart of what courts do and it goes to the heart of
16     the rule of law, and it really undermines the ability of a
17     sovereign to conduct its own affairs.  It can't be that people
18     get to just perch themselves overseas and enrich themselves at
19     others' expense, in gross violation of the law, and then
20     continue to thwart the courts in their ability to enforce the
21     law.  That is just, it goes so far beyond the pale that I just
22     think that the court has to at least, as a gesture, indicate
23     that this will not be tolerated.

24             Now, maybe this is Monopoly money.  I don't know.  I
25     don't know how you will collect.  You might be spending a long

1   time trying to collect.  And even if you found these folks and
2   could bring a collection action against them, wherever they
3   are, I don't know what assets they have, so it might be utterly
4   Pyrrhic and not worth the effort.  I don't know.  But the only
5   thing I can do is issue an order that conveys my sense of
6   outrage and my sense of frustration and my admonition to others
7   in the future that this will not be tolerated, period; that the
8   law is entitled to respect and people who would thwart the law
9   and who would thwart the court's ability to enforce the law are
10  playing a dangerous game.
11            So I will make that clear in my own order which I will
12  get out shortly, but for the record -- and I can put this in a
13  minute entry -- I am granting the request for a default
14  judgment on liability and damages.  Okay?
15            MS. FRIEDMAN:  Thank you, your Honor.
16            MR. WEIGEL:  Thank you, your Honor.
17            THE COURT:  Anything else we should chat about today?
18            MR. WEIGEL:  No, your Honor.
19            THE COURT:  Thank you.  Good luck to you,
20  Ms. Friedman.
21            Let me thank the court reporter, as always.  If anyone
22  needs a copy of the transcript, you can take that up with her
23  either now or later through the Web site.
24            Okay.  Thank you.
25                                 - - -